4810

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------x
                                        18-CR-681(WFK)
UNITED STATES OF AMERICA,

                                        United States Courthouse
          Plaintiff,                    Brooklyn, New York

          -against-                     November  22, 2019
                                        9:30 a.m.
JEAN BOUSTANI,

          Defendant.
------------------------------x

              TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
          BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
                  UNITED STATES DISTRICT JUDGE

APPEARANCES

For the Government:        UNITED STATES ATTORNEY'S OFFICE
                           Eastern District of New York
                           271 Cadman Plaza East
                           Brooklyn, New York 11201
                           BY:  MARK E. BINI
                                HIRAL D. MEHTA
                                MARGARET MOESER
                                KATHERINE NIELSEN
                           Assistant United States Attorneys

For the Defendant:         WILLKIE FARR & GALLAGHER LLP
                           787 Seventh Avenue
                           New York, New York 10019-6099
                           BY:  MICHAEL STEVEN SCHACHTER, ESQ.
                                CASEY ELLEN DONNELLY, ESQ.
                                PHILIP FRANK DiSANTO, ESQ.
                                RANDALL WADE JACKSON

Also Present:              LILLIAN DiNARDO, PARALEGAL
                           ANGELA TISSONE, SPECIAL AGENT
                           FATIMA HAQUE, SPECIAL AGENT
                           RAY McLEOD, TECHNICAL ASSISTANT

Court Reporter:            LINDA D. DANELCZYK, RPR, CSR, CCR
                           Phone:  718-613-2330
                           Email:  LindaDan226@gmail.com

Proceedings recorded by mechanical stenography.  Transcript
produced by computer-aided transcription.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                     4811

(In open court.)

(In open court; jury not present.)

THE COURTROOM DEPUTY:  All rise.  The Honorable William F. Kuntz, II is now presiding.

Criminal case on trial, Docket No. 18-CR-681, USA vs. Boustani.

Counsel, please state your appearances for the record.

MR. BINI:  Mark Bini, Hiral Mehta, Margaret Moeser, Lillian DiNardo, Katherine Nielsen, Special Agent Fatima Haque, and Angela Tassone for the United States.

Good morning, Your Honor.

THE COURT:  Good morning.

We have the spellings.  You may be seated.

Ladies and gentlemen of the public, you may be seated as well.

MR. JACKSON:  Randall Jackson on behalf of Mr. Boustani.

Good morning, Your Honor.

THE COURT:  Good morning.  You may be seated.

MR. SCHACHTER:  Good morning, Your Honor.

Michael Schachter on behalf of Mr. Boustani.

THE COURT:  Good morning.

Please be seated.

Good morning, Mr. Boustani.  Nice to see you, sir.

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

PROCEEDINGS                                    4812

THE DEFENDANT:  Thank you, Your Honor.

THE COURT:  Please be seated.

MS. DONNELLY:  Good morning, Your Honor.

Casey Donnelly on behalf of Mr. Boustani.

THE COURT:  Good morning, Ms. Donnelly.

Please be seated.

MR. DiSANTO:  Good morning, Your Honor.

Phil DiSanto on behalf of Mr. Boustani.

THE COURT:  Mr. DiSanto.

MR. DiSANTO:  Good morning, sir.

MR. MCLEOD:  Good morning, Your Honor.

Ray McLeod on behalf of Mr. Boustani.

THE COURT:  Good morning, Mr. McLeod.  Thank you.

Please be seated.

All right.  Do we have any procedural issues to address before I bring the jury in for the jury charge?

MR. BINI:  Not for the Government.

MR. JACKSON:  No, Your Honor.

THE COURT:  All right.

Please bring them in, sir.

(Pause.)

(Jury enters.)

THE COURT:  Good morning, ladies and gentlemen of the jury.  Big smiles.  Nice to see you.  Thanks again for your promptness.

PROCEEDINGS                                    4813

Please be seated.

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY CHARGE                                              4814

Ladies and gentlemen, you may be seated as well.

Ladies and gentlemen of the jury, you are now about to enter into your final duty as jurors in this case, which is to decide the factual issues in this case. You must pay close attention to me now. I will go as deliberately and methodically as I can and be as clear as I can.

As I told you at the very start of this trial, your principle function during the taking of testimony would be to listen carefully and to observe each witness who testified. It has been obvious to me, to the parties, to counsel that you have faithfully discharged this duty, and we thank you for that. Your interested never lagged, and it is evident that you followed the testimony with close attention. I now ask you to give me that same careful attention, the attention you gave during the trial, as I instruct you on the law you are to apply in this case.

Now that the evidence in this case has been presented to you and the attorneys for the United States of America and for the defendant, Mr. Jean Boustani, have concluded their closing arguments to you, it is my responsibility to instruct you with respect to the law that governs this case.

My instructions will be in three parts:

First, I will instruct you regarding the general rules that define and govern the duties of a jury in a

JURY CHARGE                                        4815

criminal case and the way in which you are to review the evidence;

Secondly, I will instruct you with respect to the legal elements of the claims in this case, that is to say, what the Government must prove beyond a reasonable doubt; and

Third, I will give you some final rules regarding your deliberations.

We begin with the general rules.

The role of the Court.

You have now heard all the evidence in this case, as well as the final arguments of the lawyers and the parties. My duty at this point is to instruct you with respect to the law. It is your duty to accept these instructions of law and to apply them to the facts as you determine them just as it has been my duty and my honor to preside over the trial and to decide what testimony and evidence is relevant under the law for your consideration.

On these legal matters, you must take the law as I give it to you now. If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions you must follow. You should not single out any instruction alone as stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

You should not, any of you, be concerned about the

JURY CHARGE                                              4816

wisdom of any rule I state regardless of any opinion you may have or any witness in the case may have as to what the law may be or ought to be.  It would violate your sworn duty to base a verdict solely upon the views of the law that I give you.  It would be a violation of your sworn duty to base a verdict upon any view of the law other than the one I give you now.

Now let me address the role of the jury.

As members of the jury, you are the sole, exclusive judges of the facts.  You and you alone pass judgment upon the evidence.  You determine the credibility of the witnesses. You resolve any conflicts in the testimony.  You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.  In determining these issues, no one may invade your province or function as jurors.  For you to determine the facts, you must rely upon your own recollection of the evidence.  What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence.  Furthermore, what I may have said -- or what I may say in these instructions -- about a fact is not evidence.  In this context, you should bear in mind that a question put to a witness is never evidence; it is only the answer which is evidence.  However, you may not consider any answer I directed you to disregard or

that I directed to be stricken from the record.  Do not consider such answers.  It only happened a couple times, but it did happen.

Now, because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts, nor do I mean to indicate what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the Government has proven its case beyond a reasonable doubt.

I also ask you to draw no inference from the fact that, upon occasion, I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible than any other witnesses.  You are expressly to understand that this Court has no opinion as to the verdict you should render in this case.

As to the facts, ladies and gentlemen, you are the exclusive judges.  You are to perform the duty of finding the facts without bias or prejudice to any party.  It would be improper for you to consider any personal feelings you may have about any of the party's race, religion, national origin, gender, or age.  It would also be improper for you to be

swayed by sympathy.

In determining the facts, you are reminded you took a solemn oath to render judgment impartially and fairly without prejudice or sympathy and without fear or favor, solely upon the evidence in this case and the applicable law. I know you will do this and reach a just and fair verdict.

You are to perform your duty of finding the facts without bias or prejudice as to any party.  You are to perform your final duty in an attitude of complete fairness and impartiality.

This case is important to the Government of the United States, for the enforcement of criminal laws is a matter of prime concern of the community.  It is equally important, however, to the defendant who is charged with serious crimes.

The fact that the prosecution is brought in the name of the United States of America entitles the Government no greater consideration than that afforded any other party in the litigation.  By the same token, it is entitled to no less consideration.  All parties, whether Government or individual, stand as equals at the bar of justice.

Now, let me address the conduct of counsel.

It is the duty of the attorneys on each side of the case to object when the other side offers testimony or other evidence which the attorney believes is not properly

admissible.  Counsel also have the right and the duty to ask the Court to make rulings of law and to request conferences at the sidebar out of the hearing of the jury.  All those questions of law must be decided by me in court.  You should not show any prejudice against an attorney or his or her client because the attorney objected to the admissibility of evidence, asked for a conference out of the hearing of the jury, or asked the Court for a ruling on the law.

As I already indicated, my ruling on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and of the weight and effect of all evidence.

Let me address the issue of improper considerations.

Your verdict must be based solely upon the evidence or the lack of evidence developed throughout this trial.  It would be improper for you to consider in reaching your decision as to whether the Government sustained its burden of proof beyond a reasonable doubt any personal feelings you may have about the defendant's race, religion, national origin, sex, or age.  All persons are entitled to the presumption of innocence and the Government has the burden of proof beyond a reasonable doubt, as I will discuss in more detail in just a moment.  It would be equally improper for you to allow any feelings you might have about the nature of the crime charged

JURY CHARGE                                              4820

to interfere with your decision-making process.  To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in this case.

Let me address the issue of sympathy.

Under your oath as jurors, you are not to be swayed by sympathy.  You are to be guided solely by the evidence in this case, and the crucial central question you must ask yourselves as you review the evidence is this:  Has the Government proven the guilt of the defendant beyond a reasonable doubt?  It is for you alone to decide whether the Government has, in fact, proven the defendant guilty of the crimes charged beyond a reasonable doubt solely on the basis of the evidence and subject to the law as I charge you.

It must be clear to you, once you let fear or prejudice, bias, or sympathy interfere with your thinking, there is a risk that you will not arrive at a true and just verdict.  If you have a reasonable doubt as to the defendant's guilt, you should not hesitate for any reason to find a verdict of not guilty.

On the other hand, if you should find the Government has met its burden of proving the defendant's guilt beyond a reasonable doubt, you should not hesitate because of sympathy or any other reason to render a verdict of guilty.

Let me address the burden of proof.

The defendant has pled not guilty to the charges of

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY CHARGE                                              4821

the superseding indictment.  To convict the defendant, the burden of proof is solely and squarely on the prosecution to prove the defendant's guilt of each element of the charges beyond a reasonable doubt.  This burden of proof never shifts to the defendant for the simple reason that the law presumes the defendant to be innocent and never imposes upon the defendant in a criminal case the burden of proof or the duty of calling any witnesses or producing any evidence.

In other words, the defendant starts with a clean slate and is presumed innocent of each charge unless and until such time, if ever, that you as a jury are satisfied the Government has proven the defendant's guilt of each charge beyond a reasonable doubt.

What is a reasonable doubt?  The words almost define themselves.  It is a doubt based upon reason.  It is a doubt a reasonable person has after carefully weighing all of the evidence.  It is a doubt that would cause a reasonable person to hesitate to act in a manner of importance in his or her personal life.

Proof beyond a reasonable doubt must, therefore, be proof of a convincing character a reasonable person would not hesitate to rely upon in making an important decision.

A reasonable doubt is not a caprice or whim.  It is not speculation or suspicion.  It is not an excuse to avoid the performance of an unpleasant duty.  The law does not

*Denise Parisi, RPR, CRR*
*Official Court Reporter*

JURY CHARGE                          4822

require the Government to prove guilt beyond all possible doubt; proof beyond a reasonable doubt is sufficient to convict the defendant.

If, after fair and impartial consideration of the evidence, you have a reasonable doubt as to the defendant's guilt with respect to the charge against him, you must find the defendant not guilty of that charge.

On the other hand, if after fair and impartial consideration of all the evidence you are satisfied beyond a reasonable doubt of the defendant's guilt with respect to a charge against him, you should find the defendant guilty of that charge.

Let me address the defendant's right to testify or not to testify.

In a criminal case, the defendant cannot be required to testify. There is never a requirement and never an expectation implicit or explicit that the defendant will take the stand and testify. He never, ever has to do so. This is because, as I've told you, the defendant is presumed innocent and the burden to prove the defendant guilty beyond a reasonable doubt remains solely on the Government at all times. The defendant does not have to prove he is innocent; he does not have to testify. In this case, as you know, the defendant did testify and he was subject to cross-examination, like any other witness.

JURY CHARGE                                          4823

Let me address the issue of punishment.

The question of possible punishment of the defendant is of no concern to the jury and should not, in any sense, enter into or influence your deliberations. The duty of imposing sentence rests exclusively upon this Court. Your function is to weigh the evidence in this case and to determine whether or not the defendant is guilty beyond a reasonable doubt solely upon the basis of such evidence. Under your oath as jurors, you cannot allow consideration of the punishment which may be imposed upon the defendant if he is convicted to influence your verdict in any way or in any sense to enter into your deliberations.

Let me address the question of evidence.

What is and what is not evidence?

The evidence in this case is the sworn testimony of the witnesses, the exhibits received in evidence, the stipulations of the parties and judicially noticed facts. You will be given copies of the stipulations, many of which, as you may recall, address the question of the certification of bank records -- and we saved some time doing that. So when you go into the jury room, one of the things we are going to send in with you are those stipulations. You may recall them. In any event, you will have them when you go into the jury room.

By contrast, the questions of a lawyer is not to be

JURY CHARGE                                                4824

considered by you as evidence.  It is a witness's answers that are evidence, not the questions.  At times, a lawyer on cross-examination may have incorporated into a question a statement which assumes certain facts to be true and ask the witness if the statement was true.  The example I gave you in the trial was suppose a lawyer said, Do you know that big foot lives in the White House?  And if you answered that question, No, I don't know that, that would be the evidence, not the question about big foot living in the White House.  Okay?

I thought I would take an absurd example so that no one would say, Oh, that's too close to the facts.

If the witness denied the truth of the statement and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the lawyer's question.

Testimony that has been stricken or excluded is not evidence and may not be considered by you in rendering your verdict.

As I said, the rhinoceros factor.  I tried to keep that down, but every now and then, I had to give you that instruction.

Also, if certain testimony was received for a limited purpose, such as for the purpose of assessing a witness's credibility, you must follow the limiting instructions I have given.

JURY CHARGE                                                    4825

An example was the demonstratives where I ruled, the parties agreed, that a given demonstrative exhibit would be used to help you in assessing the testimony, but would not be evidence that would be sent back to the jury room.  That's an example of what I'm talking about there.

Arguments by lawyers are not evidence because the lawyers are not witnesses.  What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.  You are the jury; you find the facts.

To constitute evidence, exhibits must be received in evidence.  However, exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness's recollection.

Finally, the statements I may have made concerning the quality of the evidence do not constitute evidence.  It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Now, let me address -- and I touched on this in the preliminary instructions at the beginning of the trial -- the issue of direct and circumstantial evidence.

There are two types of evidence which you may properly consider in reaching your verdict, one type of

evidence is direct evidence.  Direct evidence is when a witness testifies about something he or she knows by virtue of the witness's own senses -- something seen, felt, touched, or heard.  Direct evidence may also be in the form of an exhibit where the fact can to be proven is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts.  There is a straightforward, simple example of circumstantial evidence which is often used in this courthouse.  Assume when you came into the courthouse this morning, the sun was shining and it was a nice day.  As you were sitting here, someone walked in with an umbrella which was dripping wet.  Then a few minutes later, another person also entered with a wet umbrella.  Now, you cannot look outside of this courtroom and you cannot see whether or not it was raining, so you have no direct evidence of that fact, but on the combination of facts which I've asked you to assume, it would be reasonable and logical for you to conclude that it had, in fact, rained.

Similarly, if you see footprints in the snow, you can infer that at some point it snowed.  The witness may not have been near the cabin or in a house where it was actually snowing, but the witness can say, Well, there were footprints in the snow.  Now you can logically infer that it has snowed. That is all there is to circumstantial evidence, to infer on

JURY CHARGE                              4827

the basis of reason, experience, and common sense from one established fact to the existence or the nonexistence of some other fact.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence. You may consider either or both and may give them such weight as you conclude is warranted.

Now, the indictment is not evidence.

The defendant, Mr. Jean Boustani, was charged with crimes in an indictment, specifically here, in a superseding indictment. I will refer to the superseding indictment, the charging document, but you will not be furnished with the superseding indictment itself for one simple reason. The superseding indictment itself is merely a statement of the charges and is not itself evidence.

Let me address the question of uncharged persons.

You may not draw any inference favorable or unfavorable towards the Government or the defendant on trial from the fact that certain persons were not named as defendants in the superseding indictment or that certain persons were named as co-conspirators but not indicted. The circumstances that these persons were not indicted must play no part in your deliberations.

Whether a person should be named as a co-conspirator

JURY CHARGE                                    4828

or indicted as a defendant is a matter within the sole discretion of the office of the United States Attorney and the grand jury; therefore, you may not consider it in any way in reaching your verdict with respect to the defendant on trial before you.

There's a phrase that often is used called "dates proximate."  Let me address that.

The superseding indictment charges that each count was committed on or about a certain date or between certain dates.  Although the Government must prove beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged in the superseding indictment, it is not necessary for the Government to prove the offense was committed precisely on the date charged.

Let me again address the issue of stipulated facts.

The attorneys for the Government and the attorneys for the defendant have stipulated to certain facts.  The stipulation is an agreement among the parties that a certain fact is true.  You must regard such agreed facts as established to be true beyond a reasonable doubt.  And, again, you are going to have some of those stipulated facts go back to the jury room.

Now, all available evidence need not be produced.  Although the Government bears the burden of proof, and although a reasonable doubt can arise from lack of evidence, I

JURY CHARGE                                        4829

instruct you the law does not require the Government to call as witnesses all persons who may appear to have some knowledge of the matter at issue in the trial. Nor does the law require that all things mentioned during the course of the trial be produced as exhibits. The law does not require law enforcement authorities to use any particular investigative techniques to uncover or prosecute the crime.

This is not the TV show CSI. Okay? This is real life.

Law enforcement techniques are not your concern. Your concern is to determine whether or not, based upon all the evidence that was, in fact, presented in this case, the Government has proven the defendant guilty beyond a reasonable doubt.

Let me address summary evidence.

As you know, some exhibits were admitted into evidence in the form of charts and summaries. Those charts and summaries were admitted to save the time of reviewing voluminous records and to avoid inconvenience. You should consider these charts and summaries the same way you would any other evidence, and you know that there were tons of bank documents that were reduced to summaries and you would have all killed me if I had made the witnesses go through each and every one when they could be stipulated to and you had the summaries, so that's all that that's about.

JURY CHARGE                                    4830

Witness credibility.

I am sure it must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides.  In making these judgments, you should carefully scrutinize all the testimony of each witness.  The circumstances under which each witness testified and any other matter in evidence which may help you decide the truth and the importance of each witness's testimony.

How do you determine where the truth lies?  Well, you watched each witness testify.  Everything a witness said or did on the witness stand counts in your determination.  How did the witness impress you?  Did he or she appear to be frank, forthright, and candid, or evasive and edgy as if hiding something?  How did the witness appear to you?  What was his or her demeanor -- that is to say, his or her carriage, behavior, bearing, manner, and appearance while testifying?  Often, as you well know, it is not what people say, but how they say it that moves and informs us.

You should use all the tests for truthfulness which you use in determining matters of importance in your everyday lives.  It's important.  That's why we have juries.

You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case.  You

JURY CHARGE                                      4831

should consider the opportunity the witness had to see, to hear, and to know the things about which he or she testified, the accuracy of his or her memory, candor or lack of candor, intelligence, the reasonableness and the probability of his or her testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony.  In short, if you find a witnesses is biased, you should view that witness's testimony with caution, weight it with care, and subject it to close and searching scrutiny.

Let me address the number of witnesses.

The fact that one party may have called more witnesses and/or introduced more evidence than the other does not mean you should necessarily find the facts in favor of the side offering more witnesses and/or more evidence.  By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible.  You also have to decide which witnesses to believe and which facts are true.  To do this, you must look at all of the evidence, drawing upon your own common sense and personal experience.  After examining all the evidence, you may decide the party calling the most witnesses has not persuaded you because you do not believe

JURY CHARGE                                    4832

these witnesses, or because you believe the fewer witnesses called upon by the other side.  Because the entire burden of proof beyond a reasonable doubt is solely and exclusively on the Government, the defendant does not have any obligation to call any witness or to offer any proof at all.

Let me address the question of uncalled witnesses, uncalled witnesses equally available.

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.  I instruct you as a matter of law that each party had an equal opportunity or lack of opportunity to call any of these witnesses; therefore, you should not draw any inference or reach any conclusions one way or the other as to what those witnesses would have testified to had they been called.  Their absence should not affect your judgment in any way.

However, you should remember my instructions that the law does not impose on a defendant in a criminal case the burden or the duty of calling any witnesses or producing any evidence.  That burden of proof to prove the charges beyond a reasonable doubt always remains, as I've said before and will say again, with the Government.

Let me address the question of co-defendants' plea agreements.

You have heard from witnesses who testified they were actually involved in planning and carrying out the crimes

JURY CHARGE                              4833

charged in the superseding indictment.  There has been a great deal said about the so-called cooperating witnesses in the summations of counsel and whether or not you should believe them.

The Government argues, as it is permitted to do, that it must take the witnesses as it finds them and that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.

For those reasons, the law allows the use of cooperating witness testimony.  Indeed, it is the law in federal court that such testimony may be enough in itself for convictions if the jury finds the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case the cooperating witness testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.

I have given you some general considerations on credibility, and I will not repeat them at all here.  Nor will I repeat all the arguments made on both sides.  However, let me say a few things to you that you may want to consider during your deliberations on the subject of cooperating witnesses.

You should ask yourselves whether these witnesses would benefit more by lying or by telling the truth.  Was

there testimony made up in any way because they believed or hoped they would somehow receive favorable treatment by testifying falsely?  Or did they believe their interest would best be served by testifying truthfully?  If you believe the witness was motivated by hopes of personal gain, was motivation one that would cause him or her to lie, or was it one that would cause him or her to tell the truth?  Did this motivation color his or her testimony.

In sum, you should look at all the evidence in deciding what credence and what weight, if any, you will want to give cooperating witnesses.

The cooperating witnesses who testified in this case pled guilty after entering into an agreement with the Government to testify.  There is evidence the Government agreed to dismiss some charges against the witnesses and agreed not to prosecute them on other charges in exchange for the witnesses' agreement to plead guilty and to testify at this trial against this defendant.

The Government also promised to bring the witnesses' cooperation to the attention of the sentencing court, and I am the sentencing court.

The Government is permitted to enter into this kind of agreement.  You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone if it convinces you of the defendant's guilt

beyond a reasonable doubt.

However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different from any ordinary witness. Witnesses who realize they may be able to obtain their own freedom or receive a lighter sentence by giving testimony favorable to the prosecution have a motive to testify falsely. Therefore, you must examine their testimony with caution and weigh it with great care. If, after scrutinizing their testimony, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

You should note when someone cooperates with the Government, the Government does not determine what sentence they are going to get, nor does the Government typically make a recommendation to the sentencing judge as to how much time they're going to get. What the Government will do, if it is satisfied with the level of cooperation, is to write the sentencing judge what is known as a 5K letter, which you heard some mention of during the course of the trial. The 5K letter sets forth the cooperating witnesses' criminal acts, as well as the substantial assistance the witness has provided. I instruct you that the 5K letter does not guarantee the cooperating witness a lower sentence. This is because the sentencing court may, but is not required to, take the 5K letter into account when imposing sentence on the cooperating

JURY CHARGE 4836

witness.  This Court has discretion whether or not a 5K letter is written to impose any reasonable sentence this Court deems appropriate up to the statutory maximum.  The final determination as to the sentence to be imposed rests with this Court, not with the Government.  In sum, you should look at all the evidence in deciding what credence and what weight, if any, you want to give the cooperating witness and the 5K.

Expert testimony.

You've heard during the course of this trial the testimony of one or more individuals referred to as an expert in a particular field.  If scientific, technical, or other specialized knowledge will assist you as the jury to understand the evidence or to decide a disputed fact, a witness with particular knowledge, skill, experience, training, or education may be called to testify about such evidence or facts at issue in the case in the form of an opinion.

The rules of evidence ordinarily do not permit witnesses to testify to opinions or conclusions.  An exception to this rule, however, exists for those we call "expert" witnesses who may state their opinions and who may also state the reasons for their opinion.

You should consider the witnesses' opinions received in this case and give them such weight as you may think those opinions deserve.  If you should decide the opinions of any

JURY CHARGE                                    4837

expert witness are not based upon sufficient education or experience, or that the reasons given in support of those opinions are not sound, or that those opinions are outweighed by other evidence, you may disregard those opinions in whole or in part.

          (Continued on the following page.)

(In open court.)

THE COURT:  In sum, the expert witness is, in all other respects, the same as any other witness.  You should consider his or her qualifications, his or her experience, his or her interest in the outcome of the case, if any, his or her demeanor, and all the other factors you have been instructed to examine in assessing the credibility of other witnesses.

Let me address the question of law enforcement witness.  You have heard the testimony of law enforcement officials.  The fact that a witness may be employed by the federal government as a law enforcement official does not mean his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it's quite legitimate for defense counsel to try to attack the credibility of any law enforcement witnesses, on the grounds that their testimony may be colored by a personal or professional interest in the outcome of the case.  It is your decision, after reviewing all the evidence, whether to accept the testimony of any law enforcement witnesses and to give that testimony whatever weight, if any, you find it deserves.

Let me address the charges.  Members of the jury, the government of the United States formally charges Mr. Boustani in a superseding indictment.  The superseding

JURY CHARGE                                    4839

indictment charges this defendant with three counts, on which

each of you will be called upon to render a verdict.

Specifically, the superseding indictment charges

Mr. Boustani with conspiracy to commit wire fraud, conspiracy

to commit securities fraud, and conspiracy to commit money

laundering.  Each count charges the defendant with a different

crime.  You must consider each count separately and return a

separate verdict of guilty or not guilty for each.  Whether

you find defendant guilty or not guilty as to one offense

should not affect your verdict as to any other offense

charged.

Let me address the issue of what's referred to as

mens, M-E-N-S, rea, R-E-A.  The charges in this case implicate

the concept of knowledge, intent, and willfulness.

A, knowingly.  A person acts knowingly when he acts

intentionally and voluntarily and not because of ignorance,

mistake, accident, or carelessness.  Whether a defendant acted

knowingly may be proven by his conduct and by all the facts

and circumstances surrounding the case.

Let me deal with the question of intentionally.  A

person acts intentionally when he acts deliberately and

purposefully.  That is, the defendant's acts must have been

the product of his conscious, objective decision rather than

the product of a mistake or accident.

Let me address willfully.  To act willfully means to

act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids.  That is to say, with the bad purpose to disobey or to disregard the law.  The government is not required to prove that the defendant is aware of the law that actually forbids his conduct.  The defendant's conduct was not willful if it was due to negligence, inadvertence, or mistake.

You have heard a lot about conspiracy, so let me address the law of conspiracy.  I will now instruct you on the law of conspiracy, which applies to counts one, two, and four.  There is no count three, not that we forgot how to count.  Okay.  You have count one, count two, and count four.

A conspiracy is a kind of criminal partnership, combination or agreement of two or more persons to join together to accomplish some unlawful purpose.  The crime of conspiracy to violate a federal law is an independent offense.  It is separate and distinct from the actual violation of any specific federal laws, which the law refers to as substantive crimes.  Indeed, you may find the defendant guilty of the crime of conspiracy to commit an offense against the United States even though the substantive crime that was the object of the conspiracy was not actually committed.

Congress has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful.  This is because collective

criminal activity poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

To prove the crime of conspiracy, the government must prove two elements beyond a reasonable doubt: First, that a conspiracy existed, namely, two or more persons entered into an unlawful agreement; and, secondly, the defendant knowingly and willfully became a member of the conspiracy.

The first element is the existence of the agreement. The first element the government must prove beyond a reasonable doubt to establish the offense of conspiracy is that two or more persons entered the unlawful agreement charged in the superseding indictment. In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find the alleged conspirator stated in words or writing what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.

What the government must prove beyond a reasonable doubt is that there is a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

You may, of course, find the existence of an

agreement to disobey or to disregard the law has been established by direct proof; but, since by its very nature a conspiracy is characterized by secrecy, you may infer its existence from the circumstances of this case and the conduct of the parties involved.  In a very real sense then, in the context of conspiracy cases, actions often speak louder than words.

In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all those you find to be participants in the conspiracy as proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

Second element is membership in the conspiracy.  The second element the government must prove beyond a reasonable doubt to establish the offense of conspiracy is the defendant knowingly, willfully, and voluntarily became a member of the conspiracy.  If you are satisfied the conspiracy charged in the superseding indictment existed, you must next ask yourselves who the members of that conspiracy were.

In deciding whether this defendant whom you are considering was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  Did he participate in it with knowledge of its unlawful purpose and with the specific intention of furthering its business or objectives?

JURY CHARGE                                          4843

In that regard, it has been said in order for a defendant to be deemed a participant in a conspiracy, he must have had a stake in the venture or its outcome. You are instructed that although proof of a financial interest in the outcome of a scheme is not essential, if you find the defendant had such an interest, this is a factor that you may properly consider in determining whether or not the defendant was a member of the conspiracy charged in the superseding indictment.

Before the defendant can be found to have been a conspirator, you must first find that he knowingly joined the unlawful agreement or plan. The key question, therefore, is whether the defendant joined the conspiracy with an awareness of at least some of the basic aims and purposes of the unlawful agreement. It is important for you to note the defendant's participation in the conspiracy must be established by independent evidence of his own acts or statements as well as those of other alleged co-conspirators and the reasonable inferences that may be drawn from that.

The defendant's knowledge may be inferred from the facts proved. In that connection, to become a member of the conspiracy, a defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities. Moreover, the defendant need not have been fully informed as to all of the details or the scope

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                        4844

of the conspiracy in order justify an inference of knowledge on his part.

Furthermore, the defendant need not have joined in all of the unlawful objectives of the conspiracy.  The extent of a defendant's participation has no bearing on the issue of a defendant's guilt.

A conspirator's liability is not measured by the extent or duration of his participation.  Each member of the conspiracy may perform separate and distinct acts and may perform them at different times.  Such conspirators play major roles -- some conspirators play major roles, while others play minor roles in the scheme.  An equal role is not what the law requires.  Even a single fact may be sufficient to draw a defendant within the ambit of conspiracy.

I caution you, however, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know or be friendly with a criminal without being a criminal himself.  Mere similarity of conduct or the fact they may have assembled together and discussed common names and interests does not necessarily establish membership in a conspiracy.

I also caution you mere knowledge or acquiescence without participation in the unlawful plan is not sufficient. Moreover, the fact the acts of a defendant, without knowledge, merely happened to further the purposes or objectives of the

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                                4845

conspiracy does not make the defendant a member.  More is required under the law.

What is required is that a defendant must have participated with knowledge or at least some of the purposes or objectives of the conspiracy and with the intent of aiding in the accomplishment of those unlawful ends.

In sum, the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised, or assisted in it for the purpose of furthering the illegal undertaking.  He thereby becomes a knowing and willing participant in the unlawful agreement, that is to say, a conspiracy.

Now, would you like to take a ten-minute comfort break, or should we keep going?

JUROR:  Keep going.

THE COURT:  Keep going?  Okay.

You will see, as I continue with these instructions, that some kinds of conspiracy charges require proof of an additional element as well; but all conspiracy charges have at least these two elements in common:  That is, the existence of a conspiracy and the defendant's willing participation in it.

I will now turn to the specific counts in the superseding indictment.  Remember, again, you have to consider each count separately.

Count one:  Conspiracy to commit wire fraud.  I will

JURY CHARGE                                              4846

first instruct you on the wire fraud conspiracy charges.

Count one of the superseding indictment charges the defendant with conspiracy to commit wire fraud as follows:  In or about and between January 2011 and December 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the Defendant Jean Boustani, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more investors and potential investors in Proindicus, MAM, and the EMATUM securities and to pay money and property from them by means of one or more materially false and fraudulent pretenses, representations, and programs; and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

The relevant portion of the wire fraud conspiracy statute, Title 18, United States Code, Section 1349, provides, in relevant part, that it shall be unlawful for any person to conspire to commit wire fraud.

The government need not prove the defendant actually committed wire fraud, the unlawful acts charged in the objects of the conspiracy in count one.  However, you must find beyond a reasonable doubt that this defendant conspired with one or

*MICHELE NARDONE, CSR -- Official Court Reporter*

more individuals to commit wire fraud.

A conspiracy to commit wire fraud -- in order to prove the defendant committed conspiracy to commit wire fraud, the government must prove each of the following elements beyond a reasonable doubt:  First, the conspiracy to commit wire fraud existed; and, second, the defendant knowingly and willfully became a member of the conspiracy.

Again, these are the first and second elements I already explained to you previously, and those same instructions apply here.

Let me address wire fraud definition and elements.

I will now define for you wire fraud, which is alleged to be the object of the conspiracy charged in count one.  The relevant statute regarding wire fraud is Section 1343 of Title 18 of the United States Code.  That section provides as follows:  Whoever, having devised or intending to devise any scheme or artifice to defraud or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication, any interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice shall be guilty of a crime.

The elements of wire fraud are:  First, there was a

JURY CHARGE                                4848

scheme or artifice to defraud in order to obtain money or property by false and fraudulent pretenses, representations, or promises, as alleged in the superseding indictment; second, the defendant knowingly and willfully participated in the scheme or artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud; and, third, in the execution of that scheme, the defendant used or caused the use of interstate or international wires, as specified in the superseding indictment.

The first element is the existence of a scheme or artifice to defraud. The first element the government must prove beyond a reasonable doubt is that there was a scheme or artifice to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises.

The first element is almost self-explanatory. A scheme or artifice is simply a plan for the accomplishment of an object. A scheme to defraud is any plan, device, or course of action to obtain money or property by means of false or fraudulent pretenses, representations, or promises reasonably calculated to deceive.

Fraud is a general term that embraces all of the various means that human ingenuity can devise and that are resorted to by an individual to gain an advantage over another by false representations, suggestions, or suppression of the

truth, with deliberate disregard for the truth. Thus, a scheme to defraud is merely a plan to deprive another of money or property by trick, deceit, deception, or swindle.

The scheme to defraud is alleged to have been carried out by making false representations and half-truth statements. A representation or a statement is false if it is untrue when made and was known at the time to be untrue by the person making it and causing it to be made. A representation or statement is fraudulent if it was falsely made with the intention to deceive.

Deceitful statements or half-truths, or the concealment of material facts and the expression of an opinion not honestly entertained, may also constitute false or fraudulent representations under the statute.

Now, the deception need not be premised upon spoken or written words alone. The arrangement of the words or the circumstances in which they are used may convey the full and deceptive appearance. If there is deception, the manner in which it is accomplished is immaterial.

The false or fraudulent representation must relate to a material fact or matter. A material fact is one that reasonably would be expected to be of concern to a reasonable and prudent person, in relying upon the representation or statement in making a decision. This means if you find a particular statement of fact to have been false, you must

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                4850

determine whether that statement was one that a reasonable

person or investor might have considered important in making

his or her decision.

The same principle applies to fraudulent half-truths

of material facts.  In addition to proving a statement was

false or fraudulent and related to a material fact, in order

to establish the scheme to defraud, the government must prove

the alleged scheme contemplated depriving another of money or

property.

However, the government is not required to prove the

defendant personally originated the scheme to defraud, nor is

it necessary for the government to prove the defendant

actually realized any gain from the scheme or the intended

victim actually suffered any loss.  A scheme to defraud need

not be shown by direct evidence but may be established by all

the circumstances and the facts of the case.

The second element addresses participation in the

scheme with intent.  The second element the government must

prove beyond a reasonable doubt is that this defendant

participated in the scheme to defraud knowingly, willfully,

and with intent to defraud.

As I earlier instructed you as to the meaning of

knowingly and willfully, I refer you to those instructions, as

they apply here also.  Intent to defraud means to act

knowingly and with the specific intent to deceive for the

JURY CHARGE                                         4851

purpose of causing some financial or property loss to another.

The question of whether a person acted knowingly, willfully, and with intent to defraud is a question of fact for you to determine, like any other fact question. This question involves the defendant's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available. It would be the rare case indeed where it could be shown that a person wrote or stated that at a given time in the past he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstance evidence based upon a person's outward manifestations, his or her words, his or her conduct, his or her acts, and all the surrounding circumstances disclosed by the evidence, and the rational or logical inferences that may be drawn from them. Circumstantial evidence, if believed, is of no less value than direct evidence, as I previously instructed you.

In either case, the essential elements of the crime must be established beyond a reasonable doubt.

Under the wire fraud statute, even false representations or statements do not amount to a fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                                    4852

An honest belief in the truth of the representations made by defendant is a complete defense.  However inaccurate the statement may turn out to be, a defendant, however, has no burden to establish a defense of good faith.  The burden is on the government to prove fraudulent intent and the consequent lack of good faith beyond a reasonable doubt.

There is another consideration to bear in mind in deciding whether or not the defendant acted in good faith. You are instructed that if the defendant conspired to commit wire fraud, that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find the defendant acted in good faith.  No amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit for investors will excuse fraudulent actions or false representations caused by him through paying money or property.

I reiterate, however, that an intent to defraud for purposes of the wire fraud statute means to act knowingly and with specific intent to deceive for the purpose of causing financial loss or property loss to another.

As a practical matter, then, you may find intent to defraud if the defendant knew his conduct as a participant in the scheme was calculated to deceive and, nonetheless, he associated himself with the alleged fraudulent scheme for the

JURY CHARGE                                      4853

purpose of causing loss to another.

The third element addresses the use of the wires. The third and final element the government must prove beyond a reasonable doubt is the use of an interstate or international wire communication in furtherance of a scheme to defraud. The wire communication must pass between two or more states, as, for example, a telephone call between New York and New Jersey, or it must pass between the United States and a foreign country. Such a telephone call between New York and London would suffice.

A wire communication also includes a wire transfer of funds between banks in different states or between banks in the United States and banks in a foreign country, or telephone calls, e-mails, and facsimiles between two different states or between the United States and a foreign country.

The use of the wires need not itself be a fraudulent representation. However, it must further or assist in the carrying out of the scheme to defraud.

It is not necessary for the defendant to be directly or personally involved in the wire communications, as long as the communication was reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it is sufficient to establish this element of the crime if the evidence justifies a finding that the defendant caused the wires to be used by

*MICHELE NARDONE, CSR -- Official Court Reporter*

others.  This does not mean the defendant must specifically have authorized others to make the call, wire the money, or send the e-mail.

When one does an act with knowledge that the use of the wires will follow in the ordinary course of business, or where such use of the wires reasonably can be foreseen, even though not actually intended, then he causes the wires to be used.  It is not necessary that all or most of the wire communications involved in the alleged scheme to defraud were sent to, from, or within the United States.  However, for the wire-use element to be satisfied, the use of these wires must be a core component of the scheme to defraud.

I remind you count one does not allege, and the government need not prove, wire fraud was actually committed for you to find the defendant guilty of this count.  Rather, count one charges the defendant with conspiracy to commit wire fraud.

Let me address the question of venue, which has come up.  The government must also prove venue.  However, unlike the elements I just explained the government must prove beyond a reasonable doubt, the government must prove venue by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence -- here we are just talking about venue -- to establish a fact by a preponderance of the evidence means to

JURY CHARGE                                    4855

prove the fact is more likely true than not true.  A

preponderance of the evidence means the greater weight of the

evidence, both direct and circumstantial.  It refers to the

quality and persuasiveness of the evidence and not exclusively

to the quantity of the evidence.

To establish venue for wire fraud conspiracy in

count one, the government must prove it is more likely than

not that an act in furtherance of the conspiracy occurred at

least in part in the Eastern District of New York, which, as

you heard, consists of the counties of Kings, also known as

Brooklyn, Queens, Richmond, also known as Staten Island,

Nassau, and Suffolk, the waters surrounding all of those

counties and the waters surrounding the counties of New York

and the Bronx.

In this regard, the government need not prove the

crime itself was committed in the Eastern District of New York

or the defendant himself was present here.  It is sufficient

to satisfy the venue requirement if an act in furtherance of

the crime occurred within the Eastern District of New York.

If you find the government has failed to prove it is

more likely than not that an act in furtherance of the crime

occurred within the Eastern District of New York, then you

must acquit.

Again, I caution you, the preponderance of the

evidence standard applies only to venue.  The government must

JURY CHARGE                                                    4856

prove each of these elements of conspiracy to commit wire

fraud in count one beyond a reasonable doubt.

Count two, conspiracy to commit securities fraud.

Now, count two charges the defendant with conspiracy to commit

securities fraud.  In or about and between January 2013 and

December 2018, both dates being approximate and inclusive,

within the Eastern District of New York and elsewhere, the

Defendant Jean Boustani, together with others, did knowingly

and willfully conspire to use and employ one or more

manipulative and deceptive devices and contrivances, contrary

to Rule 10B-5 of the Rules and Regulations of the United

States Securities and Exchange Commission, Title 17, Code of

the Federal Regulations, Section 240.10B-5, by, one, employing

one or more devices, schemes, and artifices to defraud; two,

making one or more untrue statements of material fact and

omitting to state material facts necessary in order to make

statements made, in light of the circumstances under which

they were made, not misleading; and, three, engaging in one

more acts, practices, and courses of business which would and

did operate as a fraud and deceit upon investors and potential

investors in the EMATUM securities, in connection with the

purchase and sale of investments in the EMATUM securities,

directly and indirectly, by use of means and instrumentalities

of interstate commerce and mails, contrary to Title 15, United

States Code, Section 78J(B) and 78FF.

JURY CHARGE                                          4857

Let me address conspiracy to commit securities fraud. I have already instructed you on conspiracy generally. There is an additional instructions I will provide that relate to conspiracy to commit securities fraud allegations, as set forth in count two.

To prove the crime of securities fraud conspiracy, the government must prove four elements beyond a reasonable doubt: First, two or more persons enter into an agreement to commit securities fraud, a crime I will define for you shortly; secondly, the defendant knowingly and willfully became a member of the conspiracy; third, one of the members of the conspiracy committed at least one of the overt acts charged in the superseding indictment; and, fourth, at least one overt act was in furtherance of some object or purpose of the conspiracy, as charged in the superseding indictment.

You may recall that conspiracy to commit wire fraud charged in count one does not require an overt act. Conspiracy to commit securities fraud, by contrast, requires an overt act. The overt act elements, of which I will instruct you, only apply to count two, charging securities fraud conspiracy.

The government need not prove the defendant actually committed securities fraud, the unlawful acts charged as the objects of the conspiracy in count two. However, you must find beyond a reasonable doubt that the defendant

JURY CHARGE                          4858

conspired with one more individuals to commit securities fraud.

I will now discuss the four elements the government must prove beyond a reasonable doubt to prove the charge of conspiracy to commit securities fraud.

The first element is the existence of the agreement. The first element the government must prove beyond a reasonable doubt for count two is that two or more persons entered into the charged agreement to commit securities fraud. I previously explained to you what it means to enter into an agreement for purposes of a conspiracy.

The second element is membership in the conspiracy. The second element the government must prove beyond a reasonable doubt for count two is that the defendant knowingly and willfully became a member of the conspiracy charged. I previously explained to you what it means to knowingly and willfully become a member of a conspiracy.

The third element addresses overt acts. The third element the government must prove beyond a reasonable doubt for count two is that at least one of the overt acts charged in the superseding indictment was knowingly committed by at least one of the conspirators at or about the time or place alleged in the superseding indictment alleges the following overt acts.

Overt acts in furtherance of the conspiracy and to

JURY CHARGE                                    4859

effect its object, within the Eastern District of New York and

elsewhere, the Defendant Jean Boustani, together with others,

to commit or cause to be committed, among others, the

following:

A, on or about June 26 of 2013 Privinvest sent

approximately $1 million from the Proindicus loan proceeds to

a bank account that Andrew Pearse held in Abu Dhabi Commercial

Bank, which paid him cash through a correspondent bank in the

United States and the Eastern District of New York.

B, on or about July 5 of 2013, Pearse sent Boustani

a PowerPoint presentation regarding the project that would

become EMATUM, which stated the project would be funded

through the international bond market.

C, on or about July 21 of 2013, Detelina Subeva

wrote an e-mail to Boustani, Pearse, and Antonio do Rosario

stating, quote, We should also keep a cushion for Proindicus

of $17 million so we don't need to go back to the Minister of

Finance, and they are on our side.

D, on or about July 25 of 2013, Privinvest sent

approximately $1 million from the Proindicus loan proceeds to

a bank account that Pearse held at Abu Dhabi Commercial Bank,

which payment passed through a correspondent bank account in

the United States and the Eastern District of New York.

E, on or about September 1, 2013, Privinvest sent

approximately $1 million from the Proindicus loan proceeds to

JURY CHARGE                                    4860

a bank account that Pearse held in Abu Dhabi Commercial Bank, which payment passed through a correspondent bank account in the United States and the Eastern District of New York.

F, on or about October 11, 2013, VTB Bank sent $350 million dollars in EMATUM loan proceeds, less its fee of more than $37 million, to Credit Suisse's bank account at Bank of New York Mellon, which payment passed through the Eastern District of New York.

G, on or about October 11, 2013, Credit Suisse sent approximately $312 million in EMATUM loan proceeds from Bank of New York Mellon to Privinvest, which payment passed through the Eastern District of New York.

H, on or about October 23, 2013, a Privinvest entity with a bank account in the UAE sent approximately $800,000 to Singh's bank account in Abu Dhabi Commercial Bank, which passed through a correspondent bank account in the United States of America and through the Eastern District of New York.

I, on or about November 24, 2013, do Rosario sent Boustani an invoice for $400,000 for a, quote-unquote, real estate project purchase in Mozambique project, to be paid to the UAE -- bank to the UAE-based bank account of a third party.

J, on or about November 26, 2013, Privinvest wired $400,000 from its UAE bank to a bank in New York City, to the

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                                        4861

UAE-based bank account specified in the invoice referenced in subparagraph I above, which payment passed through the Eastern District of New York.

K, on or about March 31, 2014, do Rosario sent Boustani an invoice for $1 million from the UAE bank, third-party entity, for construction work in the Mozambican Exclusive Economic Zone, the EEZ.

L, on or about April 2nd, 2014, Privinvest wired $1 million from its UAE-based bank through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph K above.

M, on or about April 8, 2014, do Rosario sent Boustani an invoice for $1.75 million for a real estate project purchase in Mozambique.

N, on or about April 9, 2014, Privinvest wired $1 million from its UAE bank through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph M above.

O, on or about May 28, 2014, Privinvest wired $976,000 to its UAE-based bank account through a bank in New York City and through the Eastern District of New York to the UAE-based bank account specified in the invoice referenced in subparagraph M above.

*MICHELE NARDONE, CSR -- Official Court Reporter*

P, on or about April 8, 2014, Boustani sent an e-mail to Najib Allam detailing bribes and kickbacks Privinvest paid or intended to be paid in connection with the Proindicus and EMATUM projects.

Q, or on about February 19, 2016, an employee of Credit Suisse e-mailed Surjan Singh two valuation reports regarding the value of the 27 boats sold to EMATUM by Privinvest. Those reports indicated the boats were valued at approximately $265 million to $395 million less than the EMATUM loan.

R, on or about March 4, 2016, Pearse forwarded to Boustani an e-mail and PowerPoint presentation regarding the exchange. The e-mail described briefing Mozambican officials from the Ministry of Finance regarding potential default in the EMATUM loan and related EMATUM securities in connection with a March 11, 2016 loan interest payment. The e-mail also described briefing Mozambique's Minister of Finance on the road show scheduled to promote the exchange. The presentation set out a proposed road show travel time table, including investor meetings in London and New York.

S, on or about March 5, 2016, Boustani replied to Pearse's March 24, 2016 e-mail, stating, Please let's keep do Rosario updated because the option of a default is a position that the president must be aware or take.

T, on or about March 14, 2016, Pearse sent an e-mail

JURY CHARGE                    4863

to Subeva and Boustani regarding potential downgrading of Mozambique's credit rating, stating it's a tactic to get the terms improved for U.S. investors.

U, on or March 14, 2016 do Rosario and other co-conspirators flew from London, England to JFK International Airport, in Queens, New York, Eastern District of New York, to attend meetings with investors regarding the exchange of the EMATUM loan participation notes for Eurobonds.

V, on or about March 15, 2016, during a meeting in New York City, do Rosario, together with others, provided false and misleading information to investors regarding Mozambique's economic prospects, debt level, and its ability and intention to meet its EMATUM debt obligations to induce them to exchange EMATUM loan participation notes for Eurobonds.

To establish the third element, the government need not prove all of the overt acts alleged in the superseding indictment. Similarly, you do -- you need not find the defendant himself committed the overt act. It is sufficient for the government to show one of the conspirators knowingly committed an overt act in furtherance of the conspiracy, since, in the eyes of the law, such an act becomes the act of all the members of the conspiracy.

You are further instructed that the overt act need not have been committed at precisely the time alleged in the

*MICHELE NARDONE, CSR -- Official Court Reporter*

JURY CHARGE                                                     4864

superseding indictment.  It is sufficient, if you are convinced beyond a reasonable doubt, that it occurred at or about the time and place stated.  Finally, you must find either the agreement was formed or an overt act was committed in the Eastern District of New York.

The fourth element, in furtherance of some objective.  The fourth and final element the government must prove beyond a reasonable doubt is that the overt act or acts were committed for the purpose of carrying out the unlawful agreement.

In order for the government to satisfy this element, it must prove beyond a reasonable doubt that at least one overt act was knowingly and willfully done by at least one conspirator, in furtherance of some object or purpose of the conspiracy, as charged in the superseding indictment.

In this regard, you should bear in mind the overt act, standing alone, may be an innocent, lawful act. Frequently, however, an apparently innocent act shields its harmless character if it is a step in carrying out, promoting, aiding, or assisting the conspiratorial scheme.

(Continued on the next page.)

*MICHELE NARDONE, CSR -- Official Court Reporter*

THE COURT:  (Cont'g.)  Therefore, you are instructed the overt act does not have to be an act which, in and of itself, is criminal or constitutes an objectives conspiracy.

Securities Fraud: Definition and Elements.

How are you doing?  Okay?

Keep rolling?  Anybody want a break?  No?  Okay.

I will now define securities fraud, which is alleged to be the object of the conspiracy charged in Count Two of the superseding indictment.  The relevant statute is Section 10(B) of the Securities Exchange Act of 1934.  That law provides in relevant part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange.

B.  To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered.  Any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Securities and Exchange Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10B-5, as promulgated by the Securities and Exchange Commission reads as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange

A.   To employ any device, scheme, or artifice to defraud

B.   To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

C.   To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

To prove the substantive crime of securities fraud, the government must establish each of the following three elements beyond a reasonable doubt.

First:  Fraudulent act.

The first element the government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of a security, the defendant did any one or more of the following three unlawful acts:

1.   Employed a device, scheme or artifice to defraud;

2.   Made an untrue statement of a material fact, or

JURY CHARGE                                    4867

omitted to state a material fact that made what was said, under the circumstances, misleading; or

3.   Engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

In this case, the charged conspiracy to commit securities fraud is related to the domestic purchase or sale of the EMATUM loan participation notes and eurobonds which those notes were exchanged for, both of which are securities, and of which I will refer to as the "EMATUM securities."

It is not necessary for the government to establish all three types of unlawful conduct in connection with the sale or purchase of the EMATUM securities.  Any one will be sufficient to satisfy this element, if you so find the defendant committed it, you must be unanimous as to which type of unlawful conduct you find to have been proven.

I will now explain some of these terms.

Device, scheme or artifice to defraud:  A device, scheme or artifice to defraud is a plan for the accomplishment of a fraud.  Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others.  The law the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.

The fraudulent or deceitful conduct alleged need not relate to the investment value of the EMATUM securities.

JURY CHARGE                                          4868

In connection with: The phrase "in connection with" aspect of this element is satisfied if you find there was some nexus or relationship between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be in connection with the purchase or sale of securities if you find the alleged fraudulent conduct touched upon a securities transaction. You need not find the defendant actually participated in any securities transactions if the defendant was engaged in fraudulent conduct that was in connection with a purchase or sale.

Next, a domestic purchase or sale of a security: A securities transaction is domestic when a purchaser commits himself or herself to purchase a security while physically present within the United States, or when a seller commits himself or herself to sell a security while physically present in the United States.

It is no defense to an overall scheme to defraud when the defendant was not involved in the scheme from its inception or played only a minor role with no contact with the investors and purchasers of the securities in question; nor is it necessary for you to find the defendant was an actual seller or offeror of the securities. It is sufficient if the defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of securities. By the same token, the government need not prove the defendant personally

made the misrepresentation or omitted the material fact that made what was said here under the circumstances misleading. It is sufficient if the government establishes the defendant caused the statement to be made or the fact to be omitted. With regard to the alleged misrepresentations, you must determine whether the statement was true or false when it was made.

If you find the government has established beyond a reasonable doubt that a statement was false, you must next determine whether the fact misstated was material under the circumstances. A material fact is one that would have been significant to a reasonable investor's investment decision.

In order for you to find a misrepresentation was material, the government must prove beyond a reasonable doubt there was a substantial likelihood the misstated fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available. To alter significantly the total mix of information available, means to affect meaningfully a reasonable investor's consideration about whether to buy or to sell and at what price. However, to be material, a misstatement need not determine any particular outcome.

This is not to say that the government must prove the misrepresentation would have deceived a person of ordinary intelligence. Once you find that there was a material

JURY CHARGE                                              4870

misrepresentation, it does not matter whether the intended

victims were gullible buyers or sophisticated investors,

because the securities laws protects the gullible and

unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful

conduct was successful or not, nor whether the defendant

profited or received any benefits as a result of the alleged

scheme.  Success is not an element of the crime charged.

However, if you find the defendant did profit from the alleged

scheme, you may consider that in relation to the third element

of intent, which I will discuss in a moment.

The second element – knowledge, intent, and

willfulness.

The second element the government must prove beyond

a reasonable doubt is that the defendant participated in the

scheme to defraud knowingly, willfully, and with intent to

defraud.

As I explained before, to act knowingly means to act

voluntarily and deliberately, rather than mistakenly or

inadvertently.

To act willfully means to act knowingly and

purposely, with an intent to do something the law forbids;

that is to say, with bad purpose either to disobey or to

disregard the law.

Intent to defraud in the context of the securities

JURY CHARGE                                          4871

laws means to act knowingly and with the intent to deceive.

The question of whether a person acted knowingly, willfully and with intent to defraud is a question of fact for you the jury to determine, like any other question of fact, and this question involves one's state of mind.

Direct proof of knowledge and fraudulent intent is almost never available. It would be a rare case where it could be shown a person wrote or stated that as of a given time in the past, he committed an act with fraudulent intent. Such direct proof is not required.

The ultimate facts of knowledge and criminal intent, though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts and all the surrounding circumstances disclosed by the evidence and the rational for logical inferences that you may draw and may be drawn therefrom.

Since an essential element of the crime charged is intent to defraud, it follows that good faith on the part of a defendant is a complete defense to a charge of securities fraud. A defendant, however, has no burden to establish a defense of good faith. The burden is on the government to prove fraudulent intent and consequent lack of good faith beyond a reasonable doubt.

Under the anti-fraud statutes, even false

JURY CHARGE                                    4872

representations or statements do not amount to a fraud, unless done with fraudulent intent; however misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith.  An honest belief in the truth of the representations made by a defendant is a good defense, however inaccurate the statements may have turned out to be.

In consideration and in considering whether or not a defendant acted in good faith, you are instructed that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require a finding by you that he acted in good faith.  No amount of honest belief on the part of a defendant that the scheme will, for example, ultimately make a profit for the investors, will excuse fraudulent actions or false representations by the defendant to obtain money.

As a practical matter, then, in order to sustain the charges against the defendant, the government must establish beyond a reasonable doubt the defendant knew his conduct as a participant in the scheme was intended, calculated, and designed to deceive and nevertheless, he associated himself with the alleged fraudulent scheme.

The government may prove the defendant acted knowingly in either of two ways.  First, it is sufficient, of course, if the evidence satisfies you beyond a reasonable doubt the defendant was actually aware that he was making or

causing a false statement to be made.  Alternatively, the defendant's knowledge may be established by proof the defendant was aware of a high probability that the statement was false, unless, despite this high probability, the facts show the defendant actually believed the statement to be true.

Thus, you may find the defendant knew the statement was false if you conclude beyond a reasonable doubt that he made it with deliberate disregard of whether it was true or false and with a conscious purpose to avoid learning the truth.  If you find beyond a reasonable doubt the defendant acted with deliberate disregard for the truth, the knowledge required would be satisfied unless the defendant actually believed the statement to be true.  This guilty knowledge, however, cannot be established by demonstrating merely negligence or foolishness on the part of the defendant.

The third element – instrumentality of interstate commerce.

The third and final element the government must prove beyond a reasonable doubt is that the defendant knowingly used, or caused to be used, the mails or any means or instrumentalities of transportation or communication in interstate commerce in furtherance of the scheme to defraud.

It is not necessary that a defendant be directly or personally involved in any mailing, wire, or use of an instrumentality of interstate commerce.  If the defendant was

an active participant in the scheme and took steps or engaged in conduct which he knew or reasonably could foresee would naturally and probably result in the use of interstate means of communication, then you may find he caused the mails or other instrumentalities of interstate commerce to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use reasonably can be foreseen, even though not actually intended, then he causes such means to be used.

It is not necessary that the items sent through the interstate commerce, interstate means of communication contain the fraudulent material, or anything criminal or objectionable. The interstate means of communication may be entirely innocent.

The use of interstate communications need not be central to the execution of the scheme, and may even be incidental to it. All that is required is that the use of the interstate communications bear some relation to the object of the scheme or fraudulent conduct. In fact, the actual offer or sale need not be accomplished by the use of interstate communications, so long as a defendant is still engaged in actions that are a part of the fraudulent scheme.

I remind you Count Two does not allege, and the government need not prove, that a securities fraud was

JURY CHARGE                                          4875

committed for you to find the defendant guilty of this count.

Rather, Count Two charges the defendant with conspiring to

commit securities fraud.

Let me address the point of venue.

I have explained to you the elements the government

must prove beyond a reasonable doubt as to Count Two.  The

government also must prove venue.  As I explained to you

earlier, the government must prove venue by a preponderance of

the evidence.

To establish venue for securities fraud conspiracy

as charged in Count Two, the government must prove it is more

likely than not that an overt act in furtherance of the

conspiracy was committed in the Eastern District of New York.

The overt act does not have to be an overt act that is charged

in the superseding indictment in furtherance of the

conspiracy.  In this regard, the government need not prove the

defendant, or any alleged coconspirator, was even physically

present here.  It is sufficient to satisfy the venue

requirement if an overt act in furtherance of a conspiracy

occurred within the Eastern District of New York.  This

includes not just acts by the defendant or his coconspirators,

but also acts that the coconspirators caused others to take

that materially furthered the ends of the conspiracy.

Therefore, if you find it is more likely than not

that an overt act in furtherance of the conspiracy took place

JURY CHARGE                                         4876

in the Eastern District of New York, the government has satisfied its burden of proof as to venue as to Count Two.

Again, I caution you the preponderance of the evidence standard applies only to venue. The government must prove each of the elements of Count Two beyond a reasonable doubt.

Count Four: Money laundering conspiracy

Count Four charges the defendant with conspiracy to commit money laundering:

In or about and between January 2013 and December 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant Jean Boustani, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds to one or more places outside the United States from one or more places inside the United States, and to one or more places inside the United States from one or more places outside the United States with the intent to promote the carrying on of one or more specified unlawful activities, to wit: a violation of the Foreign Corrupt Practices Act, the FCPA, Title 15, United States Code, Sections 78DD-1, 78M(B)(2)(B), 78M(B)(5) and 78FF(A);

(II) Offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law, as defined in Title 18, United States Code,

JURY CHARGE                                        4877

Section 1956(C)(7)(B)(IV);

(III)  Wire fraud, in violation of Title 18, United States Code, Section 1343; and

(IV)  Fraud in the sale of securities, in violation of Title 15, United States Code, Sections 78J(B) and 78FF collectively the specified unlawful activities contrary to Title 18, United States Code, Section 1956(A)(2)(A); and

B.  Knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of one or more specified unlawful activities, to wit: the specified unlawful activities, contrary to Title 18, United States Code, Section 1956(A)(2)(B)(I).

A.  Conspiracy to commit money laundering

I have already explained the law of conspiracy to you.  Those instructions apply equally to Count Four.  Thus, in order to prove the crime of money laundering conspiracy as charged in Count Four, the government must establish the following elements of the crime beyond a reasonable doubt:

First, two or more persons entered into an agreement to launder money.

Second, the defendant knowingly and willfully became

JURY CHARGE                                    4878

a member of the conspiracy.

Like the conspiracy charged in Count One, no overt act is required to prove the conspiracy charged in Count Four.

B.  Object of the money laundering conspiracy

Count Four charges a conspiracy with two objects;

First, to transport, to transmit, or to transfer monetary instruments or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, with the intent to promote the carrying on of one or more of the following specified unlawful activities:

1.  A violation of the Foreign Corrupt Practices Act;

2.  Offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law;

3.  Wire fraud; and

4.  Securities fraud.

Second, to transport, to transmit or to transfer monetary instruments or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, knowing the monetary instruments or funds involved in the transportation, transmission, or transfer represent proceeds of some form of unlawful activity and knowing the transportation is designed, in whole or in part,

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY CHARGE                                                    4879

to conceal or disguise the nature location, source, ownership

or control of the proceeds of the specified unlawful

activities.

The government does not need to prove both objects

of the conspiracy in order for you to find the defendant

guilty of Count Four. The government need only prove one

object beyond a reasonable doubt, so long as you are unanimous

as to which object has been proved.

Object one, promotion.

The first object of the money laundering conspiracy

charged in Count Four is to promote the carrying on of one or

more of the specified unlawful activities. Some of the terms

I will use require some definition as follows:

Monetary instrument: A monetary instrument

includes, among other things, coins, currency of the United

States or any other country, personal checks, travelers

checks, cashier's checks, bank checks, money orders, or

investment securities or negotiable instruments in bearer form

or otherwise in such a form that title thereto passes on

delivery.

Funds: The term funds refers to money or negotiable

paper that can be converted into currency.

Specified unlawful activity: A specified unlawful

activity is any one of a variety of offenses defined by the

statute. In this case, the government has alleged the

JURY CHARGE                                                4880

specified unlawful activities are:

          1.  A violation of the FCPA;

          2.  Offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law;

          3.  Wire fraud; and

          4.  Securities fraud.

       I will explain each of these offenses, the specified unlawful activities in a few moments.  I instruct you now that, as a matter of law, those offenses each falls within the definitions of specified unlawful activity.  However, it is for you the jury to determine whether the funds were, in fact, the proceeds of one or more of the specified unlawful activities.

       The relevant statute, Section 1956 of Title 18, United States Code, deals with participation in international money laundering.  Specifically, Section 1956(A)(2)(A) provides:

       Whoever, transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity shall be guilty of a crime.

       In order to prove the crime of unlawful

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY CHARGE                    4881

transportation of funds or monetary instruments with the

intent to promote the carrying on of specified unlawful

activity in violation of Section 1956(A)(2)(A), the government

must establish beyond a reasonable doubt each of the following

elements:

First, the defendant transported, transmitted, or

transferred, or attempted to transport, transmit, or transfer

a monetary instrument or funds from a place in the United

States to or through a place outside the United States or to a

place in the United States from or through a place outside the

United States.

Second, the defendant did so with the intent to

promote the carrying on of one or more of the specified

unlawful activities, here a violation of the FCPA; offenses

against a foreign nation involving the bribery of a public

official, in violation of Mozambican law; wire fraud; and

securities fraud.  To act intentionally means to act

deliberately and purposefully, not by mistake or accident,

with the purpose of promoting, facilitating, or assisting the

carrying on of the specified unlawful activities.

Next, object two: concealment.

The second object of the money laundering conspiracy

charged in Count Four is to transport, to transmit, or to

transfer a monetary instrument or funds from a place in the

United States to or through a place outside the United States

JURY CHARGE                                        4882

or to a place in the United States from or through a place

outside the United States knowing the monetary instrument or

funds involved represented the proceeds of some form of

unlawful activity and knowing such transportation was designed

in whole or in part to conceal or disguise the nature, the

location, the source, the ownership or the control of the

proceeds of the specified unlawful activity.

Section 1956(A)(2)(B)(I) states:

Whoever transports, transmits, or transfers, or

attempts to transport, transmit, or transfer a monetary

instrument or funds from a place in the United States to or

through a place outside the United States or to a place in the

United States from or through a place outside the United

States knowing that the monetary instrument or funds involved

in the transportation, transmission, or transfer represents

the proceeds of some form of unlawful activity and knowing

that such transportation is designed in whole or in part to

conceal or disguise the nature, the location, the source, the

ownership, or the control of the proceeds of the specified

unlawful activity shall be guilty of a crime.

In order to prove the crime of knowing

transportation of unlawful funds or monetary instruments in

violation of Section 1956(A)(2)(B), the government must

establish beyond a reasonable doubt each of the following

elements:

JURY CHARGE                                    4883

First, the defendant transported, transmitted, or transferred, or attempted to transport, transmit, transfer a monetary instrument or funds from a place in the U.S. to or through a place outside the U.S. or to a place in the U.S. from or through a place outside the U.S.

Second, the defendant did so with the knowledge the monetary instrument or funds involved were the proceeds of some form of unlawful activity.  This element refers a requirement that the defendant knew the property involved represented the proceeds from some form, though not necessarily which form, of activity that constitutes an offense under United State's federal or foreign law.  The term proceeds means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

Third, the defendant did so with the knowledge the transportation was designed to conceal or to disguise the nature, location, source, ownership or control of the proceeds of one or more of the specified unlawful activities; namely, a violation of the FCPA; offenses against a foreign nation involving the bribery of a public official, in violation of Mozambican law; wire fraud; and securities fraud, and the defendant knew this was the purpose of the transportation.

Specified unlawful activities:

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY CHARGE                                    4884

As I explained before, Count Four charges a money laundering conspiracy in connection with one or more of the specified unlawful activities, namely:

1.  Violations of the anti-bribery provisions and/or the internal controls provisions of the FCPA;

2.  Offenses against a foreign nation involving the bribery of a public official, in violation of various Mozambican laws;

3.  Wire fraud; and

4.  Securities fraud.

As I discussed earlier, you need not find that the defendant acted to conceal or disguise the proceeds of or promote all these specified unlawful activities; you need only find that the defendant acted to conceal or disguise the proceeds of or promote one of these specified unlawful activities.

1.  Violation of the FCPA.

The first specified unlawful activity charged in Count Four is a violation of the FCPA.  I will now explain two separate sets of FCPA provisions, the anti-bribery provisions and the internal controls provisions.  A violation of either provision is a violation of a specified unlawful activity.

Violation of the FCPA's anti-bribery provisions, 15 U.S.C. 78DD-1.

For an individual to be found guilty of a violation

JURY CHARGE                                                4885

of the anti-bribery provisions of the FCPA, the government

must prove the following seven elements beyond a reasonable

doubt:

          First, the individual was an officer, director,

employee, or agent of an issuer, or a stockholder thereof

acting on behalf of such an issuer;

          Second, the individual acted corruptly and

willfully;

          Third, the individual made use of or caused another

to make use of the mails or any means or instrumentality of

interstate commerce, such as email, in furtherance of the

offense;

          Fourth, the individual offered, paid, promised to

pay, or authorized the payment of money or gift or anything of

value;

          Fifth, the offer, the promise to pay, or

authorization of the payment of money or a gift or anything of

value was either:

          A.   To a foreign official, or

          B.   To any person or entity while the individual

knew that all or a portion of the payment would be offered,

given, or promised, directly or indirectly, to a foreign

official;

          Sixth, the payment was intended for any one of three

purposes relevant to this action:

JURY CHARGE                              4886

A.   To influence any act or decision of a foreign public official in his official capacity;

B.   To induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official; or

C.   To secure any improper advantage; and

Seventh, the payment was to assist the issuer in obtaining or retaining business for or with, or directing business to, any person or company.

First element, the issuer

The first element the government must prove beyond a reasonable doubt is that the individual was an officer, director, employee, or agent of an issuer, or a stockholder of an issuer who was acting on behalf of that issuer.

An issuer is defined to include any entity which has a class of securities registered pursuant to Section 78L of Title 15 of the United States Code or which is required to file reports under section 78O(D) of Title 15.  An entity that has common stock registered with the SEC pursuant to Section 12(B) of the Securities Exchange Act of 1934 or American depository shares trade on the U.S. Stock Exchange, such as the New York Stock Exchange, is an issuer under the FCPA. Likewise, an entity that files periodic reports, including form 20-F with the SEC pursuant to Section 13 or 15(D) of the Exchange Act and related rules thereunder is an issuer under

JURY CHARGE                              4887

the FCPA.

The words officer, director, and employee have their ordinary meaning.  An agent is a person who by express or implicit agreement with another person or entity, called the principal, undertakes to represent, or act on behalf of, the principal in performing some service for the principal.  Joint participation in a partnership or joint venture, whether formal or informal, suffices to make each partner or joint venturer an agent of the others.

An agent is acting within the scope of the agent's authority if the agent is engaged in the performance of duties that were expressly or implicitly assigned to the agent by the principal.

Proof of agency need not be in the form of a formal agreement between agent and principal; rather, it may be inferred circumstantially and from the words and actions of the parties involved.

The second element:  Corruptly and willfully

The second element the government must prove beyond a reasonable doubt is that the individual acted corruptly and willfully.

A person acts corruptly if he or she acts voluntarily and intentionally, with a bad purpose or evil motive of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful method or means.  The

term corruptly in the Foreign Corrupt Practices Act means the offer, payment, or promise was intended to induce or influence the foreign official to misuse his or her official position.

As I have already instructed you regarding the term willfully that instruction applies here.

The third element:  Interstate commerce

The third element the government must prove beyond a reasonable doubt is that the individual, or someone acting at his or her direction or with his or her authorization, made use of the mails or any means or instrumentality of interstate commerce in furtherance of the offense.

The term interstate commerce means trade, commerce, transportation, or communication among the several states, or between any foreign country and any state or between any state and any place outside thereof.  This term includes the interstate use of a telephone, email, service provider, or other interstate means of commerce, or any other interstate instrumentality, such as a fax machine, car, or plane.  I instruct you that sending wire transfers to a bank in the United States constitutes the use of a means or instrumentality of interstate commerce.

Fourth element:  Promise or authorization to pay

The fourth element the government must prove beyond a reasonable doubt is that the individual offered, paid, promised to pay, or authorized the payment of money or gift or

anything of value.  A thing of value can take any form, whether cash, check, wire transfer, gift, donation, contribution, or anything else.

It is not necessary that the bribe, or offer or promise of a bribe, was intended to be made directly by the individual to the foreign official.  A person who engages in bribery of a foreign official indirectly through any other person or entity is liable under the FCPA, just as if the person had engaged in bribery directly.  Thus, if the person authorizes another to pay or promise a bribe, that authorization alone is sufficient for you to find this element has been proven.

Further, it is not necessary that the payment actually take place or that the gift actually be given.  Instead, it is the offer, promise, or authorization of the bribe that completes the crime.  Thus, this element is satisfied if the person offered, promised, or authorized an unlawful payment or gift, even if the payment was not actually made or the gift was not actually given.

The fifth element:  Payment to a foreign official

The fifth element the government must prove beyond a reasonable doubt is that the offer, payment, promise to pay, or authorization of the payment of money or anything of value was either to a foreign official, or to any other person or entity, while the individual knew that all or a portion of the

JURY CHARGE                                            4890

payment or gift would be offered, given, or promised, directly or indirectly, to a foreign official.

The term foreign official means any officer or employee of a foreign government or any department, agency, or instrumentality thereof, or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality.  As a matter of law, the government of the Republic of Mozambique qualifies as a foreign government.

With respect to the directors and employees of Proindicus, EMATUM, or MAM, in order for you to find them to be foreign officials, you must find Proindicus, EMATUM or MAM was a government instrumentality.  An instrumentality of a foreign government is an entity controlled by the government of a foreign country that performs a function the controlling government treats as its own.  State-owned or state-controlled companies that provide services to the public may meet this definition.

To decide if Proindicus, EMATUM, and/or MAM is an instrumentality of the government of Mozambique, you may consider the following factors as they existed during the relevant time period:

A.  Whether the government of Mozambique had a majority interest in Proindicus, EMATUM, and/or MAM;

B.  The circumstances surrounding Proindicus,

JURY CHARGE                                   4891

EMATUM, and/or MAM's creation;

C.   Whether Proindicus, EMATUM, and/or MAM provided services to the citizens and inhabitants of Mozambique;

D.   The degree to which the government of Mozambique effectuated certain national policies or priorities through Proindicus, EMATUM, and/or MAM;

E.   Whether Proindicus, EMATUM, and/or MAM's key officers or directors were government officials or were appointed by government officials;

F.   Whether the government had the power to fire key officers or directors for any of these entities;

G.   Whether Proindicus, EMATUM, and/or MAM had a monopoly over the functions it exists to carry out;

H.   The degree to which Proindicus, EMATUM, and/or MAM was subject to government controls and oversight, including with regard to fiscal matters and conduct of public officials;

I.   Proindicus, EMATUM, and/or MAM's obligations and privileges under the law of Mozambique;

J.   The characterization of Proindicus, EMATUM, and/or MAM and their directors and employees by the government of Mozambique;

K.   Whether Proindicus, EMATUM, and/or MAM were widely perceived and understood to be performing official or government functions; and

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

JURY CHARGE                                    4892

L.   The length of time these indicia have existed.

These factors are not exclusive, and no single factor will determine whether Proindicus, EMATUM, and/or MAM was an instrumentality of Mozambique.  In addition, you do not need to find all the factors listed above weigh in favor of Proindicus, EMATUM, and/or MAM being an instrumentality in order to find Proindicus, EMATUM, and/or MAM was an instrumentality.

The individual's offer, payment, promise to pay, or authorization of payment to a recipient who is not a foreign official is sufficient only if the individual acted while knowing all or some of the payment would be offered, given, or promised, directly or indirectly, to a foreign official.

(Continued on next page.)

THE COURT:  For purposes of the Federal Corrupt Practices Act, a persons state of mind is knowing with respect to conduct, a circumstance, or a result, A, if such person is aware that such person is engaging in such conduct, that such circumstance exists, or that such result is substantially certain to occur; or such person has a firm belief that such circumstance exists or that such result is substantially certain to occur.

For purposes of the FCPA, a person is deemed to have knowledge of a circumstance if the evidence shows he or she was aware of a high probability of the existence of such circumstance, unless he or she actually believes that such circumstance does not exist.

Sixth element.  Purpose of the payment or offer. The sixth element the government has to prove beyond a reasonable doubt is that the payment or offer was intended for one of three purposes relevant to this action.  To influence any act or decision of a foreign official in his official capacity.  To induce such a foreign official to do or omit to do any act in violation of the lawful duty of such foreign official.  Or, C, to secure any improper advantage.

The government need not prove the offer to pay, payment, promise to pay, or authorization of payment was for all of these purposes.  If the government proves the offer to pay, payment, promise to pay, or authorization of payment was

JURY CHARGE                                4894

for any one, or more than one, of these purposes, this element

has been met.  However, one of these purposes must have been

the reason for the offer, payment, gift, or promise.

Seventh element.  Obtaining or retaining business.

The seventh element the government must prove beyond a

reasonable doubt is that the payment was made to assist the

issuer, referenced in connection with the first element, in

obtaining or retaining business for or with, or directing

business to, any person or company.  It is not necessary for

the government to prove any person or company actually

obtained or retained any business whatsoever as a result of an

unlawful offer, payment, gift, promise, only that the

individual intended to assist in obtaining or retaining

business for or with any person or company.  Moreover, this

element is not limited to obtaining or to renewing contracts

or other business.  It also includes the execution or

performance of contracts, or the carrying out of existing

business.

Solicitation of bribe.  Not a defense.  It does not

matter who suggested a corrupt offer, payment, promise, or

gift be made.  The FCPA prohibits any corrupt offer, payment,

promise, or gift, if made for one the purposes I described,

regardless of who first suggested it.  It is not a defense if

the offer, promise, payment, or gift was first suggested or

requested by someone other than the individual, or demanded on

JURY CHARGE                    4895

the part of a foreign official as a price for continuing to do business or other benefit, or that the business may have been harmed if the payment wasn't made.  That the recipient may have first suggested the offer to pay, payment, promise to pay, or authorization of payment does not excuse an individuals decision to make a corrupt payment, nor does it alter the corrupt purpose for which the offer to pay, payment, promise to pay, or authorization of payment was made.

Violations of the FCPA's internal controls provisions, 15 USC 78m, in order to prove an individual guilty of this offense, the government must prove the following two elements beyond a reasonable doubt.

First, the individual circumvented a system of internal accounting controls of an issuer.  And, second, the individual acted knowingly and willfully.

The first element.  Internal controls, accounting controls.  The first element the government must prove beyond a reasonable doubt is that the individual circumvented a system of internal accounting controls of an issuer.  Every issuer, which I have defined already for you in relation to the previous alleged violation of the FCPA, is required by the law to devise and maintain a system of internal accounting controls sufficient to provide a reasonable assurance that, among other things, transactions of the issuer are executed in accordance with managements general or specific authorization.

JURY CHARGE                    4896

A person circumvents such a system by evading these controls.

Second element.  Knowingly and willfully.  The second element the government must prove beyond a reasonable doubt is that the individual acted knowingly and willfully.  I have previously instructed you regarding these terms and the same instructions apply here.

Next, bribery of a foreign official in violation of the laws of Mozambique.

MR. BINI:  Your Honor?

THE COURT:  Yes.

MR. BINI:  May we briefly approach at sidebar.

THE COURT:  You may.

(Sidebar conference.)

(Continued on the next page.)

SIDEBAR CONFERENCE                              4897

(WHEREUPON, the following proceedings were had at sidebar, out of the presence of the open courtroom, to wit:)

THE COURT:  I am listening.

MR. BINI:  Your Honor, with respect to the Mozambican law instruction, there was a letter of the parties that went in regarding removing the prior Mozambican law regime.  And so while you removed the older piece of law, I think on pages 123 and 124, there's a reference to the older law.  And so we wanted to ask to have that reference removed from the jury instructions, just to make it easier.

I apologize for not raising it earlier.  We were just reading as it came along.

THE COURT:  Can you fix it?

THE LAW CLERK:  Yes.  I will do that right now.

THE COURT:  Any objection?

MR. JACKSON:  Your Honor, we have no objection.  Given that change, and just given how much of the FCPA instruction has been given, we would just also ask for the Court to give a very brief instruction at the very end just to remind the jury that the defendant is not charged with violating the FCPA, but, rather, that it is an SUA.

THE COURT:  Write it out.

MR. JACKSON:  Thank you.

THE COURT:  Do your thing.

MR. BINI:  Thank you, Your Honor.

SIDEBAR CONFERENCE                                      4898

(Short pause.)

THE COURT:  Do you have agreed upon language for what you want, and what you want, or no?

MR. JACKSON:  We agree with the government's change, Your Honor.

THE COURT:  Do they agree with your change?

MR. BINI:  I would -- I think that it is clear from the instructions, Your Honor, that the SUAs are related just to the money laundering count.  So I don't think it is necessary for you to say Mr. Boustani's not charged with violating the FCPA.

The government wouldn't object if you wanted to repeat the SUAs just relate --

THE COURT:  Why don't you two give me the language you agree on, and if you are not going to agree, then I will make a ruling.  Try to agree on language that can go in so we can get this done.

MR. BINI:  Okay.  Yes, Your Honor.

(Short pause.)

THE COURT:  Do you have the language agreed upon, or no?

MR. JACKSON:  No, Your Honor.

THE COURT:  All right.  Then I am going to overrule your objection, and I am going to go with the language you have agreed on.  Have you got the language they agreed on?

SIDEBAR CONFERENCE                                    4899

Give that to me.

             And your record is reserved.

             MR. BINI:   Thank you, Judge.

             MR. JACKSON:   Thank you.

             MR. SCHACHTER:   Thank you, Judge.

             (Sidebar conference ends.)

             (Continued on the next page.)

JURY CHARGE                                    4900

(Open court; jury present.)

THE COURT:  Back on the record.

Madam Court Reporter, what's the last thing you have before the break?

(WHEREUPON, the record was read by the reporter, as requested.)

THE COURT:  Okay.  You now know what all those breaks were about during the last six weeks that I spared you from.

All right.  As I was saying, we are almost done.

Bribery of foreign officials in violation of the laws of Mozambique.

As noted above, the second specified unlawful activity charged in count four is an offense against a foreign nation involving the bribery of a public official, in violation of the laws of the republic of Mozambique.  The laws of Mozambique prohibit bribery and corruption involving public officials.  A violation of any one of the laws detailed below is a violation of a specified unlawful activity.

Article 7 of Law 6/2004.  Article 7 of Law 6/2004 prohibited the solicitation of bribes or other advantages by public officials.  In order for an individual to be found to be in violation of Article 7 of Law 6/2004, the following three elements must be proven.  First, at the time of the offense, the violator was either a public official or

employee, or any person who brought about, contributed to, or profited from the violation by a public official or employee.

Second, the violator himself or herself or through an intermediary, with his or her consent and approval, requested or received money, or the promise of money, or any monetary benefit that is not due them.

Third, the purpose of the request for money, the promise of money, or other benefit was for the public official or employee to perform or fail to perform an act in violation of the duties of his or her office.

Article 321 of the 1886 penal code. Article 321 of the 1886 penal code prohibited someone from giving a bribe to a public official in return for an act or omission that violated his or her duties. For an individual to be found in violation of Article 321 of the 1886 penal code, the following two elements must be proven. First, an individual gave, offered, or promised a kickback or gift to a public employee. Second, the purpose of giving, offering or promising the kickback or gift was for the public employee to perform or fail to perform an act that violated the duties of his or her office.

Public officials and employees. The terms public official and public employee, as they are used in the Mozambican laws about which I have just advised you, include the president of the Republic of Mozambique, any officer or

employee of the government of Mozambique, and any director or employee of a government agency or publicly owned company. These terms also include any minister, including the minister of finance, and any vice-minister, including the vice-minister of finance, unless the public official or employee is the violator, in which case Law 7/98 applies to all conduct during the relevant time period indicated in the superseding indictment.

I will explain Law 7/98 in a moment. However, if it is another individual who is bribing a minister or vice-minister, then the laws I have just explained apply.

Article 8 of Law 7/98. Article 8 of Law 7/98 prohibits individuals holding specifically identified positions in the government of Mozambique, including ministers and vice-ministers, from giving, soliciting, or receiving bribes or other benefits. Where individuals holding these specific positions, like the minister or vice-minister of finance, are the violators, then Law 7/98 would apply instead of those I have previously described.

To find a minister or vice-minister violated Law 8 of 7/98, the following three elements must be proven. First, at the time of the offense, the violator was either a minister or vice-minister. Second, the minister or vice-minister either received a kickback or gift, personally or through an intermediary, or gave, offered or promised a kickback or gift

to another public employee.  Third, the kickback or gift, or offer or promise of a kickback or gift was for one of the following purposes.  In the case of the minister or vice-minister receiving the kickback or gift, it was in return for the minister or vice-minister either performing an act that violated the duties of his or her office or failing to perform an act that was consistent with the duties of his or her office.  Or, two, in the case of the minister or vice-minister giving, offering or promising a kickback or gift to another public employee, it was in return for that public employee either performing an act that violated the duties of his or her office or failing to perform an act that was consistent with the duties of his or her office.

Article 40 of Law 16/2012.  Article 40 of Law 16/2012 states, public employees and officials have, among other duties, a duty not to use their office or position for their own unjust enrichment by receiving money or other advantages from anyone who has an interest in an act or omission attributable to the public employees job attributes.  This provision applies to all public employees or officials I have described, including the president of the republic, ministers, vice-ministers, any officer or employee of the government of Mozambique, and any director or employee of a government agency or publicly-owned company.

Wire fraud.  The third specified unlawful activity

JURY CHARGE                                    4904

charged in Count 4 is wire fraud.  The elements of which I have previously explained.

Securities fraud.  The fourth specified unlawful activity charged in Count 4 is securities fraud.  The elements of which I also explained earlier.

Again, I remind you that Count4 does not allege, and the government need not prove, money laundering was actually committed in order for you to find the defendant guilty of this count.  Rather, Count 4 charges the defendant with conspiring to commit money laundering.

Venue.  I have explained to you the elements the government must prove beyond a reasonable doubt as to Count 4. For Count 4, the government must also prove venue, which I have previously explained must be established by a preponderance of the evidence.  To establish venue for money laundering conspiracy in Count 4, the government must prove it is more likely than not that an act in furtherance of the conspiracy occurred, at least in part, in the Eastern District of New York.

Again, I instruct you the government need not prove the crime itself was committed in the Eastern District of New York or the defendant himself was present here.  It is sufficient to say the venue requirement if an act in furtherance of the crime occurred within the Eastern District of New York.  If you find the government has failed to prove

it is more likely than not that an act in furtherance of the crime occurred within the Eastern District of New York, then you must acquit.

Again, I caution you, the preponderance of the evidence standard applies only to venue.  The government must prove each of the elements of conspiracy to commit money laundering in Count 4 beyond a reasonable doubt.

And now, finally, Amen, the general rules regarding deliberations.  This brings me to the final part of these instructions, some general rules regarding your deliberations.

You are about to go into the jury room to begin your deliberations.  If you want any of the testimony provided to you, you may request that.  Please remember it is not always easy to locate what you might want, so please be as specific as you possibly can if you make that request, requesting exhibits or portions of the testimony.  I will send them back to you in the jury room as quickly as possible.  So make a focused request, if you've got it, we will get it back to you promptly.  I will be here.  I have no other life.  I am here for you, okay?

Your requests for exhibits or testimony, in fact, any communication with the Court should be made and must be made to me in writing, signed by your jury foreperson.  Please print, sign the name, but please print the request, and then hand it to one of the court security officers who will be

JURY CHARGE                                    4906

stationed right outside of your jury room.

I will respond to any questions or requests you have as promptly as possible.  In any event, do not tell me, the court security officer, or any of the staff, court staff or anyone else, how the jury stands on any issue until you've reached your unanimous verdict.

For the government to prevail, it must prove all the essential elements beyond a reasonable doubt, as I have explained throughout these instructions.  If the government succeeds, your verdict should be guilty.  If the government fails, your verdict should be not guilty.  To report a verdict, it must be unanimous.

Your function, as you know, is to weigh the evidence in this case and to determine whether or not the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence as so presented in this trial.  Each juror is entitled to his or her opinion.  Each of you, as jurors, should, however, exchange views with your fellow jurors.  That is the very purpose of jury deliberation, to discuss and to consider the evidence, and to listen respectfully to the arguments of your fellow jurors, to present your individual views, to consult with one another, and to reach an agreement based solely and wholly on the evidence, if you can do so without doing violence to your own individual judgment.

Each of you must decide this case for yourself after

consideration and with consideration of the views of your fellow jurors of the evidence in this case.  You should not hesitate to change your opinion, which, after discussion with your fellow jurors, appears erroneous to you.  However, if after carefully considering all the evidence and the arguments of your fellow jurors you entertain a conscientious view that differs from that of the others, you are not to yield your conviction simply because you are outnumbered.

Your final vote must reflect your conscientious conviction as to how the issues should be decided.  Your verdict, whether guilty or not guilty, must be unanimous. Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  You should, and I am sure you will, treat each other with respect.

When you retire to the jury room, before you begin your deliberations, you should select someone to be the foreperson of the jury.  The foreperson will be responsible for signing all communications to the Court and for handing them to the court security officer who will be seated directly outside the door to your jury room as you begin your deliberations and throughout your deliberations.

When you begin your deliberations, do not talk to me or to anyone else except to one another about this case.  You may not use any electronic device or social media during your

deliberations. You may only use them after the Court has publicly announced your verdict and after you, the members of the jury, have been discharged with the thanks of the Court.

Remember in your deliberations that the dispute between the United States of America and Mr. Boustani is for them no passing matter, as it has been for you no passing matter this six weeks. It is no passing matter for any of us. They and the Court rely upon you to give full and conscientious deliberation and consideration to the issues and evidence before you. By so doing, you carry out to the fullest and the best of your oath as jurors to try well and to try truthfully and honestly the issues of this case and to render a true verdict. I and the parties to this case and their counsel are confident you will do so.

One final point. Before you begin your deliberations, after you select your jury foreperson, if you decide you need to review any particular evidence, whether documents or testimony, I suggest you send me that note, signed by the jury foreperson, as all your notes must be, addressed to me, through the court security officer stationed outside your door, listing the evidence you want me to send into the jury room for your review. The sooner you give me the list, the sooner I can review the request with counsel, compile the evidence, and get it back to you. So if you want to take ten minutes when you go back there and figure out what

JURY CHARGE                                           4909

it is you all want to see, and get it back to us, you can do that.

Your lunch, which this time is being provided by the federal government, is there in the jury room, okay. So your lunch was scheduled to be delivered at 12:30, and, guess what, it is just 12:30, okay.

If you'd like to send out a request to adjourn at 5:00 p.m., this is our adjourn date, and come back on December 2, as I told you, you can do that. If you decide you are close enough and you want to stay a little past 5:00, you can do that, too. You are the jury. You decide. 5:00 is our agreed upon end time, and so that's -- you decide, you haven't resolved it by 5:00, we will return here, enjoy the Thanksgiving week, return here Monday morning at 9:30 a.m. on December 2.

In terms of request for information, I will review each of those requests with all counsel of record, the defendant present here as well. We'll gather the evidence for you, we will get it back to you as soon as possible. I am not suggesting that you will need any additional documents sent in to you. That's up to you. Anything you request, we will send back to you that's a matter of record, but I have to review any record with the lawyers.

I am going to send you back with one copy of the jury instructions. The little sidebar we had was, you know,

lawyers, a little joke, that camel is a horse drafted by a committee of lawyers. Even though we have gone over this considerably before, there's last minute suggested changes, so I made those, and in another ten minutes or 15 minutes, we will get you one copy of these instructions that I have just read to you, and that will hopefully be happening.

I am also sending in to you, as I said, and they will go in right now, the stipulations that were received in evidence, most of which were related to those bank documents.

I am also sending in with you a sheet that says, "we have reached a verdict." That's to be signed when you reach the verdict, signed by the jury foreperson. And then the actual verdict sheet, which the foreperson will bring in with the jury to announce in open court. So we break it down, because in the past sometimes what has happened is the verdict sheet has come out ahead of the jury, and it is not supposed to be the way it works.

So when you reach your decision, you will have a sheet clearly labeled, it says, "we reached a verdict," signed by the jury foreperson. You give that to the court security officer. He'll bring that to me, I will inform the lawyers of that, and then you will come out with the jury foreperson, and the signed verdict sheet that reflects the verdict, once you have reached a unanimous verdict, okay? So that's sort of how the mechanics work.

Now, I am going to ask the court security officer to escort jurors number 1 through 12 into the main jury room and jurors 13 through 15 into the adjacent jury room, which is right next door.  You will all get your lunch, but I am going to ask for the split, okay.

Will you do that now, Mr. Jackson, swear the court security officer, and we will begin that.  Okay.

(WHEREUPON, the court security officer was duly sworn.)

THE COURT:  Thank you.

All right.  Ladies and gentlemen of the jury, the case is now yours.  Thank you for your patience.

We have the folder, both of the stipulations?

THE COURTROOM DEPUTY:  Yes.

THE COURT:  Those are the stipulations.

THE LAW CLERK:  And the revised jury charge as well.

THE COURT:  You sure?

THE LAW CLERK:  Yes.

THE COURT:  Okay.  And you have the revised jury charge as well.

So thank you.  Jurors Nos. 1 to 12, you will go into the main jury room.  Jurors 13, 14, and 15, you will get your lunch, and you will be guided to the adjacent jury room.  Thank you.

(WHEREUPON, at 12:37 p.m., the jury exited the

*Annette M. Montalvo, CSR, RDR, CRR*
*Official Court Reporter*

PROCEEDINGS                                      4912

courtroom to begin deliberations.)

THE COURT:  You may be seated, ladies and gentlemen.

The jury has left the courtroom, the defendant is still present.

Do we have any procedural issues to discuss in the absence of the jury and in the presence of the defendant and all counsel of record?

MR. BINI:  Not for the government.

MR. JACKSON:  No, Your Honor.  Thank you.

THE COURT:  All right.  We have your individual cell phone numbers.  So as notes come out, you will be called back in, if you go away, because, obviously, I consult with counsel before responding to any notes, no matter how on the surface seemingly plain vanilla.  Of course, with you guys nothing is plain vanilla.  So that's how we will proceed.

MR. JACKSON:  Excuse me, Your Honor.

THE COURT:  Yes.

MR. JACKSON:  On --

THE COURT:  See what I mean?

MR. JACKSON:  I know, Judge.  Right on cue.

THE COURT:  It's okay.

MR. JACKSON:  With regard to the cell phones, we have been in a room that the court was gracious enough to give us.  There is very limited cell phone reception.  It comes in and out.  So I would just request if the Court could, if

possible, send us an e-mail as well just to make sure we don't miss it.

THE COURT:  What's e-mail?  I told you I was low tech.

Yes.  We will do that.  We will contact you by e-mail and/or text and/or whatever the things my youthful law clerks, who are the masters and mistresses of the universe, are on.  As you know, I would still be doing this with flip charts.

Is there a note already, Mr. Jackson?

THE COURTROOM DEPUTY:  Oh, definitely not, no.

THE COURT:  Is there anything else we need to address before letting the lawyers disappear into the ether, but close by for quick lunches or --

MR. JACKSON:  No.  We just wanted to thank the Court, as well as our colleagues across the bar for all their collegiality, and the Court's graciousness and patience throughout the course of the trial.

THE COURT:  Well, I am sure the government feels the same way.  It is always good to see professionals at the highest level in important cases.  And I commend you for your professional and very focused and honorable representation of your respective clients.  And I think the fact that the jury literally didn't even want to take a break during the sonorous reading of the jury charge shows you how locked in and devoted

PROCEEDINGS                                    4914

they are.  And it also shows you the credible grace of the jurors and the potential genius of the judge not letting you guys continuing your summations over to today.  You adjusted so well yesterday with the shortened time frame that the Court gave you, because otherwise we'd still be on round one of summations.  So there you go.

MR. BINI:  Your Honor, thank you.  The government certainly does thank the Court and defense counsel, and certainly we are certainly very appreciative of how accommodating the Court has been in a case that has been litigated certainly very fiercely.

THE COURT:  And well, by both side.  I want the record to reflect that.  I think the government of the United States was very well represented, and that, Mr. Boustani, you were very well represented and continue to be very well represented by both sides, by distinguished counsel.  And as I've said repeatedly, I am very glad that I now have this position on the bench and I don't have to compete for business and other cases with lawyers as skilled as you guys are.

So, for the moment, at least, we are awaiting notes to come out from the jury, but I would suggest you get your lunch, and just -- we have your cell numbers and we know where you live in cyberspace, and my law clerks now how to use it. So there you go.

MR. BINI:  Thank you, Judge.

PROCEEDINGS                          4915

MR. SCHACHTER:  Thank you.

MR. JACKSON:  Thank you.

THE COURT:  Thank you.

(WHEREUPON, a recess was had at 12:41 p.m.)

(Continued on the next page.)

*Annette M. Montalvo, CSR, RDR, CRR*
*Official Court Reporter*

THE COURT:  Let's take the appearances of counsel who are present.

I note the defendant is not present, but we'll start with the government.  Just give your name, sir, for the record.

MR. BINI:  Sure.  Mark Bini and Hiral Mehta for the United States.

THE COURT:  Thank you.  For the defendant.

MR. DiSANTO:  Phil DiSanto on behalf of Mr. Boustani.

(Court Exhibit 15, was received in evidence.)

THE COURT:  Okay, I note that the defendant is not present.  But let me tell you we have a note that we have marked as Court Exhibit 15.  It's the first jury note.  I've provided copies to both sides.  Thank you very much.

The jury requests the following items in what has been marked as Court Exhibit Number 15.

I'll read them out loud as best I can read the writing, which is pretty accessible.

1.  Is procurement contracts for Proindicus, EMATUM and MAM, including change orders addenda and upsizes.

2.  Loan agreements for Proindicus, EMATUM and MAM, including change orders addenda and upsizes.

3.  Copies of subvention fee contract.

4.  Minister of finance guarantees.

PROCEEDINGS                    4917

        5.  Offering circulars.

        6.  Boat valuations from Renaissance and White.

        7.  Transcripts regarding creation of Palomar from Surjan Singh, S-I-N-G-H, Andrew Pearse and Jean Boustani.

        8.  Slide shows related to Palomar creation and organizational structure.

        9.  Plea agreements for Andrew Pearse and Surjan Singh.

        10.  Surjan Singh's FCA testimony.

        11.  Transcript of Surjan Singh's phone call.

        12.  Naji Allam's spreadsheet.

        13.  List of all witnesses and what company they represent.

        I've just read out loud -- counsel, I see you have other counsel joining us -- the first jury request which has been marked as Court Exhibit Number 15 requesting certain documents.

        Let's do this seriatim, now that you've got it in front of you, and we'll take it one by one with respect to Court Exhibit 15.

        What is the government's view with respect to whether or not we should provide what is requested in item 1 of Court 15, the procurement contracts for Proindicus, EMATUM and MAM, including change orders, addenda, and upsizes?

        Government?

PROCEEDINGS                          4918

MR. BINI:  The government believes that's fine.

THE COURT:  Defense counsel?

MR. JACKSON:  Yes, Your Honor.

THE COURT:  Any objection to that going into the jury?  They're all in evidence.

MR. BINI:  No, Your Honor.

THE COURT:  Number 2, loan agreements for Proindicus, EMATUM and MAM, including change orders, addenda and upsizes.

Government, any objections to 2?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  3.  Copies of subvention fee contract.

Government, any objection?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection, Your Honor.

THE COURT:  4.  Minister of finance guarantees.

Government, any objection?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  5.  Officering circulars.

Government?

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                        4919

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  6.  Boat valuations from Renaissance and White.

Government?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  7.  Transcript regarding creation of Palomar from Surjan Singh, Andrew Pearse and Jean Boustani.

Any objection from the government?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  All right, now, with respect to transcripts, you folks are going to have to pull the transcripts out.

I would suggest that we're not going to do this electronically to the jury, you're going to have to have hard copy of whatever those transcripts pages are.  You'll have to agree -- counsel will have to agree on the pages that are going in.

Obviously, you exclude any sidebars or any testimony that was ordered stricken by the Court with respect to the

PROCEEDINGS                                    4920

transcript request.

Bottom line is, you'll put your heads together and you'll either agree on what goes on, or if you have a disagreement, you will let me know what the disagreement is, and I will rule on competing positions.

8.  Slide shows related to Palomar creation and organizational structure.

Any objection from the government?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  All right.  So they'll go in.

Again, you will pull together what those items are.

9.  Plea agreements for Pearse and Singh.

Any objection from the government?

MR. BINI:  No objection.

THE COURT:  Defense?

MR. JACKSON:  No objection, Your Honor.

THE COURT:  10.  All right, Singh FCA testimony.

Any objection from the government?

MR. BINI:  No objection, Your Honor.

THE COURT:  Defense?

MR. JACKSON:  No objection.

THE COURT:  I take it that means Singh's FCA testimony in this case, not his testimony in some foreign FCA

enterprise that we don't have copies of.

Is that what your understanding is that they're seeking the testimony of Mr. Singh in this case about the FCA, or do you think he's talking about something else?

MR. JACKSON:  Your Honor, there was a portion of his FCA testimony that was admitted in evidence, and we believe that's what they're referring to, his testimony in England.

THE COURT:  So that portion of it, but not everything, not the portions that weren't before the Court?

MR. JACKSON:  Exactly, Your Honor.

THE COURT:  All right.  So I take it you folks can hopefully agree on what that refers to, and I will send that in if there's agreement.

MR. BINI:  Yes, Your Honor.

THE COURT:  If there's any disagreement, you'll tell me what it is and I'll rule.

Next, transcript of Surjan Singh's phone call.

MR. BINI:  Your Honor, there's not an agreed transcript of the phone call, as far as I'm aware.

THE COURT:  Why is there not?  Let me hear what the defense's view of item 11, transcript of Surjan Singh's phone call.

What is your position, Mr. Bini, and then I'll hear the defense's position?

MR. BINI:  Your Honor, the government has no problem

PROCEEDINGS                                          4922

with sending back a version.  The last version we saw still had a lot of errors, so we wouldn't want to send something back with any errors.

THE COURT:  I don't know what you mean by "errors".

MR. BINI:  In the transcript itself.  It was not -- the transcript prepared by defense counsel was not an accurate transcription of the call, it had the wrong speakers and some words were missing.

THE COURT:  Are we talking about -- well, let's back up.

Whatever the quote/unquote errors were, that's what this jury saw, correct?

MR. BINI:  No, they -- they heard the phone call.  There was a portion of the transcript shown, and then I think Your Honor instructed the parties to reach an agreed to transcript, so...

THE COURT:  Back up.  Is there an agreed upon portion of the phone calls in terms of testimony?  Is there a portion that's agreed to?

MR. BINI:  There is a portion that's agreed to.

THE COURT:  Okay, let deal with that.

Do you agree, Mr. Jackson, that there's a portion of the phone calls that's agreed to?

MR. JACKSON:  Yes, Your Honor.

THE COURT:  All right.  Let's send them that.  And

then if we get a note back that says, Your Honor, you're

dumber than I thought, we want more than what you sent back,

then we can address the issue.

But what they've asked for is the transcript of the

phone call, so let's at least send them what is agreed upon.

That's my ruling. So you're stuck with that. And

then if we get another note, then we'll have to deal with it.

Next item, 12, is Mr. Allam's spreadsheet.

Any objection to that from the government?

MR. BINI: No objection. We have it in both hard

copy and electronically.

THE COURT: Everything's got to go back in hard

copy.

MR. BINI: Yes, Your Honor.

THE COURT: We're not linked up to do it

electronically, I don't believe, and even if we were, I won't

do it because it doesn't give you a solid enough record for my

friends on the 17th Floor when it comes backs in response to

jury notes.

So, Mr. Jackson, Mr. Schachter, any objection to 12?

MR. JACKSON: No, Your Honor.

THE COURT: All right.

13, the list of all witnesses and what company they

represent.

What do you understand that to be a request for,

Mr. Bini?

MR. BINI:  I'm not sure, Your Honor.  I don't know if that means sort of a witness list, I'm not --

THE COURT:  All right.  Mr. Jackson, Mr. Schachter, what is your take on what question 13 is?

MR. JACKSON:  I think they're requesting, Your Honor, that we list out on one column the name of every witness that testified, and then the column next to it what company they were associated with.

THE COURT:  What's your response to that take on what 13 is requesting, Mr. Bini?

MR. BINI:  That may be it.  But I guess we can't generate work product to send them, unfortunately.

THE COURT:  Well, do we have -- we wouldn't be generating work product, what we would do, if you have the shared understanding, we can go back to the transcripts and give them the actual testimonial transcript where each witness states his or her name and what company they represent.  So we can do it that way.

We're not going to create a document for the obvious reasons, but if you agree that what they want effectively is witnesses alpha through zeta in the case, what we'll do is we'll just give them, you know, Joe Apple works for Apple; Joe Baker works for Baker; Joe Charlie works for Charlie, and we'll just have the initial statement of the person's name and

their entity from the transcript as they give their pedigree when they're sworn in.

Is that acceptable to the government?

MR. BINI:  Yes, Your Honor.

THE COURT:  Is that acceptable to you?

MR. JACKSON:  Yes, Your Honor.

THE COURT:  Okay, guys, you got to pull all this stuff together.  Let me know when it's done.  I'm going back it my chambers.  Thanks.

MR. BINI:  Yes, Your Honor.  I would just note -- I think actually most of this we can pull very quickly.

THE COURT:  I'm right down the hall, however, quickly it is when you get it all together, pull together everything you can.  I don't like sending in piecemeal if we can avoid sending in piecemeal.

They were kind enough to give us a mondo list, but if you can only get back 80 percent of it quickly, you know, the perfect is the enemy of the good, so, we'll give them back the 80 percent, and we'll have a cover note, 15A, an order that says:  Here's everything we found right away, and the rest is coming as soon as it's available.  And I'm prepared to draft that order as a cover note.

I don't want to, however, send them back 80 percent without telling them it's 80 percent.

MR. BINI:  The government agrees with that approach.

PROCEEDINGS                                          4926

THE COURT:  Is that acceptable to you, Mr. Jackson, just saying we attached everything that we can pull in short order, everything else we're working on and we will get it to you ASAP.

MR. JACKSON:  We think we can work with the government to try to get all of these things.  The Court's first suggestion it makes sense to get it back to them all in one group, so we will work to try to get it back.

THE COURT:  I'll tell you what, it's about 20 minutes to 2.  I'll come back at 2:00, unless you call into chambers before then, and at 2:00 we'll send back what we have with the appropriate cover order.

Is that acceptable to both sides?

MR. BINI:  Yes, Your Honor.

MR. JACKSON:  Yes, Your Honor.

THE COURT:  Okay, we'll do it that way.

See you in 20.

(A recess was taken at 1:40 p.m.)

(Pause.)

THE LAW CLERK:  All rise.

THE COURT:  Thank you.  Can we have the appearances.

Have you managed to pull together a set of the documents, in whole or in part, that were requested, counsel?

You can be seated everyone.

MR. BINI:  Yes, Your Honor.  We haven't had a chance

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

to confer, but I can read out, given both pulling documents, I can read out -- the government is ready on 1 and 2 and we're continuing to work on the -- I think we may have 3 as well, if I can read out the exhibits that the government believes should go back --

THE COURT:  Well, tell me --

MR. BINI:  Oh, should I show them to defense?

THE COURT:  Show them to defense counsel and see if there's agreement, and to the extent that we've got materials that are ready to go in, my approach is to give them Court Exhibit 15A, an order for me that says:  In response to the jury's note marked as Court Exhibit 15, the Court advises we have attached documents that were requested.  To the extent any of the requested documents are not yet attached, the Court advises it will attach them.

Is that an acceptable, if you will, stop gap measure to send in what you've got now while you continue to work on pulling materials?

MR. JACKSON:  Yes, Your Honor, we just need to confirm, just verify with the government, that note is perfectly acceptable to us.

THE COURT:  All right, so why don't you give to my law clerk the documents that you've agreed should go back.  We will send back this, Court 15A, as a cover, and then to the extent we have additional documents in the next short period

PROCEEDINGS                              4928

of time, we will give those to the jury through the court security officer.

So just give my law clerk what's ready to go in now, and he or she will give it to the court security officer who will take it into the jury room.

(Court Exhibit 15A, was received in evidence.)

MR. SCHACHTER:  The government and I need a moment to confer.

THE COURT:  Sure.  You can have a moment.

MR. SCHACHTER:  Thank you.

(Pause.)

MR. BINI:  Your Honor, we have a number that we have agreed on and would ask to send back that the parties have agreed to thus far, just because it's already 2:30.

THE COURT:  Yes, let's do that, and keep working. Let's just send them back with a cover note.  We don't have to specify what you want to at this point what's going in.

MR. BINI:  We just put -- we tried to put tabs with the numbers corresponding to the requests on top of the related documents.

THE COURT:  All right.

If you've agreed to the submission, we'll just send it in to the jury room with the CSO with the order cover that you've seen, and you'll keep working on other documents and we'll send them in as they are ready.

Fair enough?

MR. BINI:  Yes, thank you, Your Honor.

THE COURT:  Okay.

Give them to my law clerk and he'll give them to the CSO.

MR. BINI:  Okay.

THE COURT:  Are we all set?

MR. JACKSON:  Not yet, Your Honor.

THE COURT:  Are we half there?

MR. JACKSON:  We're close.

(Pause.)

THE COURT:  I think it might be appropriate to send in what you have agreed on with that cover note, so I'm going to take command of the decision and say -- Michael, Take in with the note what you've got in your hand, take it in now, and keep working guys, okay?

MR. BINI:  Thank you, Your Honor.

THE COURT:  Just whatever you've got agreed.

Michael, take it to the CSO, and we'll take it in to the jury.

THE LAW CLERK:  Thank you, Judge.

(Pause.)

(A recess was taken at 2:36 p.m.)

THE COURT:  Do you have more?

MR. JACKSON:  We have a dispute.

PROCEEDINGS                                    4930

THE COURT:  Well, do you have any more that you don't have a dispute about?  If the answer is "no," fine, give me what you don't have a dispute on, and then I'll hear the dispute.  And if you've done everything that you don't have a dispute on, then I'll hear the dispute.

MR. BINI:  We'd like to hand up --

THE COURT:  Whoa.  Whoa.  Whoa.

What have you -- is there anything else that you have?  Is there anything else that is responsive to the jurors' request in Exhibit 15 that you have agreed on that we can send back to the jury now?  Yes or no?

Government?

MR. BINI:  2808A, Najib's spreadsheet, which we agreed to send back --

MR. JACKSON:  No.

THE COURT:  We do not have an agreement on that?

MR. JACKSON:  No, Your Honor.

THE COURT:  All right.  Tell me why you think we should send that back, Mr. Bini, and then I'll hear from defense counsel.

MR. BINI:  It is a hard copy printout of Najib Allam's spreadsheet.

THE COURT:  All right, let me see it.  Hand it up to Mr. Jackson, the other Mr. Jackson.  Thank you.

Thank you.

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    4931

And this is in evidence?

MR. BINI:  Yes, Your Honor.

THE COURT:  In its entirety?

MR. SCHACHTER:  Your Honor, the electronic copy is in evidence --

THE COURT:  No, no, no, is this document that is marked -- don't give me electronic versus hard copy.  I told you we're doing this all hard copy for my friends on the 17th Floor.

Is Government Exhibit 2808-A in its entirety in evidence?

Yes or no, Mr. Bini?

MR. BINI:  Yes, Your Honor.

THE COURT:  Yes or no, Mr. Jackson?  Yes or no?

MR. SCHACHTER:  Not that version, Your Honor.

THE COURT:  What do you mean "not that version"?  Is this document that has been marked as GX2808-A in evidence; yes or no?

Don't tell me about electronic versus hard copy.  Is this document in evidence; yes or no?

MR. SCHACHTER:  No.

THE COURT:  Okay, what is in evidence, Mr. Schachter?

MR. SCHACHTER:  The government offered an electronic version of Exhibit 2808A.

PROCEEDINGS                          4932

THE COURT:  How does 2808A electronic differ in substance from GX2808A in hard copy?

MR. SCHACHTER:  That is what we're still trying to just confirm.  It may be fine.

THE COURT:  You know what, I'm sending it in.  The jury is getting annoyed, according to the CSO because they're waiting.  So I'm overruling the objection.

If this document 2808A is in evidence in its entirety, unless you tell me it's not, Mr. Schachter, it's going in.

MR. SCHACHTER:  We just don't know, Your Honor.

THE COURT:  Okay.  Well, I'm overruling your objection.  It goes in.

Give it to the CSO so he can give it to them.  And your exception is noted for appellate purposes.

Anything else?  So we can send it in to the jury, who has been patiently waiting now for a couple of hours to get documents that I would have thought were plain vanilla.

MR. JACKSON:  Your Honor, we believe we identified all the slide slows in part 8 to Palomar organizational structure.  We think we have all of them ready.  The government objects to two of them.

THE COURT:  All right, tell me about the two you object to.  What do you object to?

MR. BINI:  Can I see that?

PROCEEDINGS                                          4933

THE COURT:  First of all, you have a bunch that are not objected to?

MR. BINI:  Yes, Your Honor.

THE COURT:  All right, give those to my law clerk, who will give them to the court security officer, who will give them to the jury.

Give what's me agreed to to give to the law clerk to give to the CSO.  You've got a real jury back there who is waiting.

Now, what is not agreed to?  What is objected to?  I will look at it, I will rule on it.

Mr. Bini, what is it -- you have your objection?

Is that it, Mr. Bini?

MR. BINI:  Yes, Your Honor.

THE COURT:  Is this document in evidence, Mr. Bini?

MR. BINI:  These two documents that I objected to are in evidence.

THE COURT:  All right, stop right there.

What's your objection?

MR. BINI:  They don't go to the creation or the -- the creation of Palomar or its organizational chart.

THE COURT:  What's your response, Mr. Jackson, Mr. Schachter?

MR. SCHACHTER:  They directly go to it, Your Honor.

THE COURT:  Okay, good, they're in evidence.

PROCEEDINGS                    4934

Your objection, Mr. Bini, is overruled.  Give them to the jury.

Next.  What else you got?

MR. SCHACHTER:  Your Honor, Defense Exhibit 1949 in evidence is responsive to the jury's request number 2 for all of the loan agreements, including addenda.  And this is the loan commitment letter.

THE COURT:  It's in evidence.

What's your objection, Mr. Bini, to a document that's in evidence?

MR. BINI:  It's a loan commitment letter, it's not a loan agreement.

THE COURT:  Okay, overruled.  It goes in.

What else you got?

Let's give it to Michael.  Thank you, Michael.  Give it to the CSO.

MR. BINI:  Your Honor, we're working on 11 and 13, we're trying to get the answers and confirm with defense counsel on this.

THE COURT:  Jury's waiting.

MR. JACKSON:  Your Honor, we have the partial transcript that the jury saw during the course of the trial for 11.

We think that should be --

THE COURT:  Is it in evidence?

PROCEEDINGS                              4935

MR. JACKSON:  Yes, Your Honor.

THE COURT:  Any objection to something in evidence going in to the jury that the defense believes is responsive?

MR. BINI:  Your Honor, at the time that it was received, Your Honor put on the record that the parties would confer and that there would be a complete transcript and that's what will be in evidence.

THE COURT:  Do we have a complete transcript?

MR. BINI:  We don't.

THE COURT:  Well, I'm going to give them what we have.  The objection is overruled.  Give it to them.

Okay.  What else we got going to the CSO, going in to the jury?

They gave us six weeks, we can give them some response in some respect.

What else do we have?

What else do we have?  Again, we're talking about documents that are in evidence that they've requested.

I'm hearing a lot of silence.  What else do we have?

MR. BINI:  We're working on 13, and 7.

That's it.

THE COURT:  Agreed or not agreed?

MR. BINI:  We're still working on it because --

THE COURT:  I don't know what that means.  What document are we talking about, 13?

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

PROCEEDINGS                                    4936

MR. BINI:  13 is the list of all witnesses.  We're just checking it.

THE COURT:  Well, check it fast.

How about you, Mr. Jackson, Mr. Schachter?

MR. JACKSON:  We haven't seen their's yet.  We've given them our list.

THE COURT:  All right.  Well, any objection to their list?

MS. NIELSEN:  We're reviewing it right now, Your Honor.

THE COURT:  Review it faster.

MS. NIELSEN:  Yes, Your Honor.

MR. JACKSON:  Your Honor, we have the transcripts regarding the creation of Palomar of Surjan Singh and Andrew Pearse.  We're working on Jean Boustani.

THE COURT:  Does the government agree?

MS. NIELSEN:  We haven't seen it yet, Your Honor.

THE COURT:  You've seen it now.  It's in evidence. Come on.

It's quarter of 3.  You heard the jury's ticktock.

MR. BINI:  Your Honor, we now have a full transcript of the Surjan Singh phone calls and we'd ask to send that back as well.

THE COURT:  Any objection to the full transcript of the Surjan Singh phone call?  Counsel?  Hello?  Defense

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                           4937

counsel, any objection to the full transcript of the Surjan

Singh phone call, which is in evidence?  Any objection?

MR. JACKSON:  Your Honor, the only -- I have no

objection to the copy as printed.  There are handwritten

notations that the government has just handed me, I've have an

objection to handwritten notations.

THE COURT:  Do you have handwritten notations?

We're not going to add handwritten notations what goes to the

jury.

Do you have a clean version to go to the jury,

and/or we can do a little cut and paste to take out the

handwritten notations.  Do we have a clean copy?  If not, I'll

ask my law clerk to make copies without the handwritten

notations, which are not in evidence, and we'll give it to the

CSO to send it to the jury, if you don't have clean copies.

Going once, going twice.  No clean copies.  All

right, give it to my law clerk, and they will take out any

handwritten notes.

MR. BINI:  Thank you, Your Honor.

THE COURT:  You're welcome.

What else you've got?

MR. JACKSON:  Your Honor, we would suggest, with

regards to the transcript, we should send in what we have and

the government can add whatever else --

MR. MEHTA:  I think we're close on that, if I can

PROCEEDINGS                    4938

just give you the numbers.

THE COURT:  All right, I'll give you five minutes.
Let's go.  The jury's waiting.

(Pause.)

THE COURT:  Is that ready?  Yes?

MS. NIELSEN:  Your Honor, do you want us to put it on the record?

THE COURT:  No, no, do your thing.  It's more important to get the documents to them then putting something on the record.

MS. NIELSEN:  Understood, Your Honor.

THE COURT:  All right.

(Pause.)

THE COURT:  Yes.

MR. JACKSON:  I respectfully submit the Court gave the government five more minutes.  I think we should send in the portions of the transcript that we've identified.  The government can add whatever they deem appropriate after that.

THE COURT:  Okay, give me what, you've identified.

MR. MEHTA:  Your Honor, I haven't reviewed it, Your Honor.  Mr. Schachter and I are very close.

THE COURT:  Is this all testimony that the jury has heard?

MR. JACKSON:  Yes, Your Honor.

MR. MEHTA:  Yes, Your Honor.

PROCEEDINGS                    4939

THE COURT:  In it goes.  And you can do whatever they want that they've heard.  They're entitled to all the evidence that they've seen and heard that's been admitted.  So let's get it to them.

MR. MEHTA:  All right.

THE COURT:  They're the ones who said they wanted to leave at 5.  It's not the Court, okay?  It's two hours, ladies and gentlemen.  If they want to extend that time, they can do it, but they made it pretty clear.

Okay, give it to my law clerks so they can give it to the CSO.

Is everything there, Mr. Jackson?  Your handwritten notes and if there's testimony, if it doesn't have sidebars, it's everything you've got in your hand that to want us to send in to the jury that you believe is responsive, something that the jury heard in the course of this trial?

MR. JACKSON:  Yes, Your Honor.

THE COURT:  Give it to my law clerk who will give to the CSO.  Add to it whatever you want.  Now.

(Pause.)

THE COURT:  Counsel, what are we waiting on now to go in to be responsive to the jury's request?

MR. MEHTA:  We have additional transcript pages to send back from the government.

THE COURT:  Is there anything other than the

LINDA D. DANELCZYK, RPR, CSR, CCR
Official Court Reporter

PROCEEDINGS                          4940

additional transcript pages?

MR. MEHTA:  No, Your Honor.

THE COURT:  All right, well keep working on it because the jury -- the jury's waiting.

MR. BINI:  Yes, Your Honor.

THE COURT:  How we doing?

MR. MEHTA:  Just --

THE COURT:  How much longer before we can give it to the jury?

MR. MEHTA:  Five minutes, Your Honor.

(Pause.)

THE COURT:  How we doing?

MR. MEHTA:  We've got it.

THE COURT:  Okay, give it to my lawyer clerks and we'll take it to the CSO.  All set?

MR. BINI:  Yes, Your Honor.

THE COURT:  Okay, give it to my law clerk, he'll take it in to the CSO, and the CSO will take it in to the jury.

Does that everything that the jury's asked for?

MR. MEHTA:  Just two things, Your Honor, and then we're done.

THE COURT:  Are we good?

MR. MEHTA:  So this is 5 and --

THE COURT:  Is the one he objected to?  Is this

something that's in evidence and the jury heard?

MR. MEHTA:  Yes, Your Honor.

THE COURT:  Overruled.  In it goes.

So now we completed, as far as we know, all the requests, right?

MS. NIELSEN:  Yes, Your Honor.

MR. SCHACHTER:  Yes, Your Honor.

THE COURT:  We need to mark an exhibit.

THE COURTROOM DEPUTY:  Number 16.  Got it.

(Court Exhibit 16, was received in evidence.)

THE COURT:  Back on the record, please.

We have received what I've marked as Court Exhibit Number 16, give copies to you momentarily, signed by the jury foreperson and reads as follows:

Can you offer the jury a definition of acquit in relation to venue?  Is that different than not guilty.  Signed by the jury foreperson.

Here are your copies.  I'll hear first from the government and then from defense counsel what is your recommendation?

MR. JACKSON:  You said first defense counsel, Your Honor?

THE COURT:  From the government.

MR. BINI:  Acquit in relation to venue, not guilty, I think, Your Honor, should instruct them that it is the same

thing as not guilty, however, the standard for venue is preponderance of the evidence.

MR. JACKSON:  Your Honor, we disagree.  We think that the answer should be a simple "no" to the jury from the Court that says acquit means the same thing as not guilty in relation to venue.

THE COURT:  What's the government's response to that?

MR. BINI:  Your Honor, the government thinks that you should also advise them that it is a preponderance standard.

THE COURT:  What is the defense response to that?

MR. JACKSON:  The jury hasn't asked for that, Your Honor.  You already instructed them all the standards that apply to all of the charges.  You gave them detailed instructions.  They asked a very specific question and we believe that the Court should provide them with that specific answer.

THE COURT:  What is the government's response to that?

MR. BINI:  Your Honor, the government thinks that Your Honor should give an instruction consistent with the jury instructions on venue, which appear on pages 61 and 92 and 129.

THE COURT:  And in your response to that?

MR. JACKSON:  Your Honor, we believe that it would be unfairly coercive of the jury to provide them information beyond a very limited simple question that they've asked an answer to.  We think the Court is well equipped to just write a note that responds to this specific question.

THE COURT:  All right, I think what the Court will do is in response to the question:  Can you offer the jury a definition of acquit in relation to venue, is that different than not guilty?

The Court will respectfully refer the jury to the venue discussion at pages 61 through 62, 81 -- what's the second set which you suggested, Mr. Bini?

I can't quite hear you.

MR. BINI:  92 to 93.

THE COURT:  Hang on a minute.  92 through 93, and what was the third?

MR. BINI:  129 through 130.

THE COURT:  129 through 130.

All right, so I'm going to create a document that is going to be an order of the Court, 16A, that says, and I'll have my law clerk type this up, and it will essentially say: The Court respectfully refers the jury to pages 61 through 62. The second one, again, was what?

MR. BINI:  92 to 93, Your Honor.

THE COURT:  92 through 93.  And?

*LINDA D. DANELCZYK, RPR, CSR, CCR*
*Official Court Reporter*

MR. BINI: 129.

THE COURT: 129 through 130 of the previously submitted to you jury instructions.

It's been my experience that, yes, the jury has the jury instructions before them; yes, they read them word by word and line by line, but as they sit there with one copy of the document, very often they are -- they're in need of some guidance to the particular portions of the jury instructions.

So would you please type that up right away and bring that to me?

And your exception is noted.

MR. JACKSON: No, Your Honor, it's not an exception, I just have one question.

THE COURT: Go ahead, do it.

MR. JACKSON: Your Honor, the word "acquit" is just not defined on those pages. We have no exception to these pages being provided, we just ask the Court just define the word for the jurors.

THE COURT: I'm not interested in assuring that I'm going to have a problem with the Circuit. I may have a problem with the Circuit, but if I start defining terms that are not in the jury instructions at this point, I'm definitely going to have a problem, unless you folks tell me that you are amenable to a new definition of the word acquit being submitted to the jury.

Does the government agree to that?

MR. BINI:  We think just the instructions as they are should go back, Your Honor.

THE COURT:  All right, my practice in the past has been, when I've gotten a jury note along these lines, is to respectfully refer them to the jury charge that has been so carefully and thoughtfully litigated line by line and gone over line by line with the parties.  And unless someone can convince me to deviate from that in this case, I'm not going to do it.

But your exception is noted.  We'll be likely invited to recite the statute.

MR. JACKSON:  Thank you, Judge.

THE COURT:  All right.  We'll have that language added in a minute.

All right, this is the Exhibit 16A that I'm prepared to order:

William F. Kuntz, II, United States District Court Judge, Exhibit 16A.  In response to the jury's note marked as Court Exhibit 16, which states, quote, can you offer the jury a definition of acquit in relation to venue, is that different than not guilty.

The Court will respectfully refer the jury to pages 61 through 62, 92 through 93, and 129 through 130 of the previously submitted jury instructions, and I will take that

out the will, I'm going to modify this a little bit to make it read:  The Court respectfully refers -- okay, so would you make that change, please?

THE LAW CLERK:  Yes, Judge.

THE COURT:  -- refers the jury to pages 62 -- 61 through 62, 92 through 93 and 129 through 130 of the previously submitted jury instructions.

So your exceptions to that on all sides, if have any, are noted and preserved for the record.

THE COURT:  Just again, to read it, I'll sign it Court Exhibit 16A reads:  In response to the jury's note marked as Court Exhibit 16, which states, quote, can you offer the jury a definition of acquit in relation to venue, is that different than not guilty, the Court respectfully refers the jury to pages 61-62, 92-93, and 129-130 of the previously submitted jury instructions.  So ordered.

I'm signing this and providing old school backslash copies to the parties, and the original will go into the jury room.  Okay?  Take that to the court security office and make copies for the parties.

(Court Exhibit 16A, was received in evidence.)

(Pause.)

(Court Exhibit 17, was received in evidence.)

THE COURT:  I've received the following note.  It's been marked as Court 17, we'll make copies.  I'll read it to

PROCEEDINGS                         4947

you and ask for guidance from counsel.

We the jury would like to request another day for deliberations, unfortunately, we are unable to come to a conclusion at this moment.  We propose to end today at 5 p.m. and resume Monday morning at 9:30 a.m., paren, the week following thanksgiving, close paren, period.  Thank you in advance for your consideration.  Signed by the foreperson. David Howard.

Suggested response?

MR. BINI:  No objection, Your Honor.

THE COURT:  Response?

MR. JACKSON:  Your Honor, we agree with the government that we would suggest the Court can tell the CSO that they could be released without being brought back to the courtroom.

THE COURT:  Yes, that's how I intend do it, assuming there's no objection to that.

MR. BINI:  No objection, Your Honor.

THE COURT:  All right.  Tell the CSO that the jury is free to go and we'll see them 9:30 a.m. -- on December 2nd, 9:30 a.m., as we previously said.

I'll make copies of this, and do an order that says what we just ordered.  Okay?  Thank you.

(Court Exhibit 17A, was received in evidence.)

THE COURT:  I'm now going to read out loud a copy of

court order 17A, which I just signed and I will provide copies to you counsel.

William F. Kuntz, II, United States District Court Judge, in response to the jury's note marked as Court 17, the Court advises the jurors may leave for the day, and all jurors shall return on Monday, December 2, 2019, at 9:30 a.m. to continue their deliberations.  So ordered.

And just to be clear, we're talking about the original 12 returning to the jury room, and the three who are jurors denominated 13, 14, 15 will return also to await service in the alternate jury room.  So all 15 jurors are called to come back.

I'm going to ask you, ladies and gentlemen, just to wait a bit because I understand the CSOs are having their colleagues come up to escort the jurors downstairs and out of the building.

So if you would just be good enough to wait rather than rush to the exits, I would appreciate it, until the CSO give me that notice.

So, Mr. Jackson, here's the original and copies for counsel.

All right, is there anything else while we're waiting for the all clear from the CSOs that we need to talk about today before adjourning for a relaxing Thanksgiving week, everyone?

PROCEEDINGS                          4949

MR. BINI:  No, Your Honor.

MR. JACKSON:  No, Judge.

THE COURT:  Everyone, don't forget when you do leave, have a relaxing Thanksgiving week everyone.  One of the few truly national holidays.

MR. BINI:  Thank you, Judge.

MR. JACKSON:  Thank you.

THE COURT:  Give it about ten minutes hopefully less, and then I will let you folks go.

MR. BINI:  Thank you, Your Honor.

THE COURT:  All right, ladies and gentlemen, thank you for your patience.  Have a good Thanksgiving.  See you on Monday, December 2nd.

The jury will report directly to the jury room to continue with their deliberations.

*    *    *    *    *

(Proceedings adjourned at 5:15 a.m. to resume on December 2, 2019 at 9:30 a.m.)

4950

                        I N D E X

WITNESS                                    PAGE


JURY CHARGE                                4814


                    E X H I B I T S

COURT                    PAGE
15                       4916
15A                      4928
16                       4941
16A                      4946
17                       4946
17A                      4947

JUROR: [1]  4845/15
MR. BINI: [79]
MR. DiSANTO: [3]  4812/7
4812/10 4916/9
MR. JACKSON: [58]  4811/17
4812/18 4897/16 4897/23
4898/4 4898/22 4899/4 4912/9
4912/16 4912/18 4912/20
4912/22 4913/15 4915/2
4918/3 4918/13 4918/18
4918/23 4919/3 4919/9
4919/15 4920/11 4920/18
4920/23 4921/5 4921/10
4922/24 4923/21 4924/6
4925/6 4926/5 4926/15
4927/19 4929/8 4929/10
4929/25 4930/15 4930/17
4932/19 4934/21 4935/1
4936/5 4936/13 4937/3
4937/22 4938/15 4938/24
4939/17 4941/21 4942/3
4942/13 4943/1 4944/12
4944/15 4945/13 4947/12
4949/2 4949/7
MR. MCLEOD: [1]  4812/11
MR. MEHTA: [12]  4937/25
4938/20 4938/25 4939/5
4939/23 4940/2 4940/7
4940/10 4940/13 4940/21
4940/24 4941/2
MR. SCHACHTER: [14]  4811/21
4899/5 4915/1 4928/7 4928/10
4931/4 4931/15 4931/21
4931/24 4932/3 4932/11
4933/24 4934/4 4941/7
MS. DONNELLY: [1]  4812/3
MS. NIELSEN: [6]  4936/9
4936/12 4936/17 4938/6
4938/11 4941/6
THE COURT: [183]
THE COURTROOM DEPUTY: [4]
4811/3 4911/14 4913/11
4941/9
THE DEFENDANT: [1]  4812/1
THE LAW CLERK: [6]  4897/14
4911/16 4911/18 4926/20
4929/21 4946/4

$

$1 [6]  4859/6 4859/20
4859/25 4861/5 4861/9
4861/17
$1 million [6]  4859/6
4859/20 4859/25 4861/5
4861/9 4861/17
$1.75 [1]  4861/14
$1.75 million [1]  4861/14
$17 [1]  4859/17
$17 million [1]  4859/17
$265 [1]  4862/9
$265 million [1]  4862/9
$312 [1]  4860/10
$312 million [1]  4860/10
$350 [1]  4860/5
$350 million [1]  4860/5
$37 [1]  4860/6

$37 million [1]  4860/6
$395 [1]  4862/9
$395 million [1]  4862/9
$400,000 [2]  4860/20 4860/25
$800,000 [1]  4860/14
$976,000 [1]  4861/22

–

------------------------------
-x [2]  4810/2 4810/7
-against [1]  4810/5

1

10 [3]  4865/9 4917/9 4920/19
10019-6099 [1]  4810/17
10B-5 [2]  4856/11 4865/24
11 [7]  4860/4 4860/9 4862/16
4917/10 4921/21 4934/17
4934/23
11201 [1]  4810/13
12 [7]  4886/20 4911/2
4911/21 4917/11 4923/8
4923/20 4948/9
123 [1]  4897/8
124 [1]  4897/8
129 [7]  4942/24 4943/17
4943/18 4944/1 4944/2
4945/24 4946/6
129-130 [1]  4946/15
12:30 [2]  4909/5 4909/6
12:37 [1]  4911/25
12:41 [1]  4915/4
13 [12]  4886/24 4911/3
4911/22 4917/12 4923/23
4924/5 4924/11 4934/17
4935/20 4935/25 4936/1
4948/10
130 [6]  4943/17 4943/18
4944/2 4945/24 4946/6
4946/15
1343 [3]  4846/17 4847/15
4877/3
1349 [1]  4846/19
14 [4]  4862/25 4863/4
4911/22 4948/10
15 [22]  4856/24 4863/9
4876/21 4877/5 4884/23
4886/17 4886/18 4886/24
4895/10 4910/4 4911/3
4911/22 4916/11 4916/14
4916/17 4917/16 4917/20
4917/23 4927/12 4930/10
4948/10 4948/11
15A [4]  4925/19 4927/11
4927/24 4928/6
16 [5]  4941/9 4941/10
4941/13 4945/20 4946/12
16/2012 [2]  4903/14 4903/15
16A [5]  4943/20 4945/16
4945/19 4946/11 4946/21
17 [4]  4856/12 4946/23
4946/25 4948/4
17A [2]  4947/24 4948/1
17th Floor [2]  4923/18
4931/9
18 [8]  4846/16 4846/19
4847/15 4876/25 4877/2
4877/7 4877/16 4880/14

18-CR-681 [2]  4810/2 4811/5
1886 [3]  4901/11 4901/12
4901/15
19 [1]  4862/5
1934 [2]  4865/10 4886/20
1949 [1]  4934/4
1956 [8]  4877/1 4877/7
4877/16 4880/14 4880/16
4881/3 4882/8 4882/23
1:40 [1]  4926/18

2

20 [2]  4926/9 4926/17
20-F [1]  4886/24
2004 [3]  4900/20 4900/20
4900/23
2011 [1]  4846/4
2012 [2]  4903/14 4903/15
2013 [12]  4856/5 4859/5
4859/10 4859/14 4859/19
4859/24 4860/4 4860/9
4860/13 4860/19 4860/24
4876/10
2014 [6]  4861/4 4861/8
4861/13 4861/16 4861/21
4862/1
2016 [8]  4862/5 4862/11
4862/16 4862/21 4862/22
4862/25 4863/4 4863/9
2018 [3]  4846/4 4856/6
4876/11
2019 [3]  4810/5 4948/6
4949/18
21 [1]  4859/14
22 [1]  4810/5
23 [1]  4860/13
2330 [1]  4810/23
24 [2]  4860/19 4862/22
240.10B-5 [1]  4856/13
25 [1]  4859/19
26 [2]  4859/5 4860/24
27 [1]  4862/7
271 [1]  4810/12
28 [1]  4861/21
2808A [4]  4930/13 4931/25
4932/1 4932/8
2:00 [2]  4926/10 4926/11
2:30 [1]  4928/14
2:36 [1]  4929/23
2nd [3]  4861/8 4947/20
4949/13

3

31 [1]  4861/4
321 [3]  4901/11 4901/11
4901/15

4

40 [2]  4903/14 4903/14

5

5 p.m [1]  4947/4
5:00 [4]  4909/8 4909/10
4909/11 4909/13
5:15 [1]  4949/17
5K [6]  4835/18 4835/19
4835/22 4835/24 4836/1
4836/7

## 6

**6/2004 [3]**   4900/20 4900/20 4900/23
**6099 [1]**   4810/17
**61 [5]**   4942/23 4943/11 4943/22 4945/24 4946/5
**62 [6]**   4943/11 4943/22 4945/24 4946/5 4946/6 4946/15
**681 [2]**   4810/2 4811/5

## 7

**7/98 [6]**   4902/6 4902/9 4902/12 4902/12 4902/18 4902/21
**718-613-2330 [1]**   4810/23
**787 [1]**   4810/17
**78DD-1 [1]**   4884/24
**78FF [3]**   4856/25 4876/22 4877/5
**78J [2]**   4856/25 4877/5
**78L [1]**   4886/16
**78M [3]**   4876/22 4876/22 4895/10
**78O [1]**   4886/18

## 8

**80 percent [4]**   4925/17 4925/19 4925/23 4925/24
**81 [1]**   4943/11

## 9

**92 [7]**   4942/23 4943/14 4943/15 4943/24 4943/25 4945/24 4946/6
**92-93 [1]**   4946/15
**93 [7]**   4943/14 4943/15 4943/24 4943/25 4945/24 4946/6 4946/15
**98 [6]**   4902/6 4902/9 4902/12 4902/12 4902/18 4902/21
**9:30 [3]**   4810/5 4909/14 4949/18
**9:30 a.m [4]**   4947/5 4947/20 4947/21 4948/6

## A

**a.m [8]**   4810/5 4909/14 4947/5 4947/20 4947/21 4948/6 4949/17 4949/18
**ability [1]**   4863/12
**able [1]**   4835/5
**absence [2]**   4832/15 4912/6
**absurd [1]**   4824/10
**Abu [4]**   4859/7 4859/21 4860/1 4860/15
**Abu Dhabi [4]**   4859/7 4859/21 4860/1 4860/15
**accept [5]**   4815/13 4831/18 4834/23 4835/10 4838/20
**acceptable [6]**   4925/3 4925/5 4926/1 4926/13 4927/16 4927/21
**accessible [1]**   4916/19
**accident [3]**   4839/17 4839/24 4881/18
**accommodating [1]**   4914/10

**accomplish [3]**   4840/15 4841/24 4842/12
**accomplished [3]**   4841/20 4849/19 4874/21
**accomplishing [1]**   4887/24
**accomplishment [3]**   4845/6 4848/17 4867/19
**accordance [1]**   4895/25
**according [1]**   4932/6
**account [16]**   4835/25 4859/7 4859/21 4859/22 4860/1 4860/2 4860/6 4860/14 4860/15 4860/16 4860/22 4861/1 4861/11 4861/19 4861/22 4861/24
**accounting [4]**   4895/14 4895/16 4895/19 4895/22
**accuracy [1]**   4831/3
**accurate [1]**   4922/6
**accused [1]**   4853/23
**acquiescence [1]**   4844/22
**acquit [10]**   4855/23 4905/3 4941/15 4941/24 4942/5 4943/8 4944/15 4944/24 4945/21 4946/13
**act [70]**   4821/18 4839/25 4840/1 4841/24 4842/12 4850/24 4851/9 4852/19 4854/4 4855/8 4855/18 4855/21 4857/14 4857/17 4857/19 4857/19 4863/19 4863/21 4863/22 4863/22 4863/24 4864/4 4864/8 4864/13 4864/17 4864/17 4864/18 4865/2 4865/2 4865/10 4866/11 4866/18 4867/3 4870/18 4870/18 4870/21 4870/21 4871/1 4871/9 4874/6 4875/12 4875/14 4875/14 4875/19 4875/25 4876/21 4878/3 4878/13 4881/17 4881/17 4886/1 4886/4 4886/20 4886/25 4887/5 4888/1 4893/2 4893/18 4893/20 4901/9 4901/13 4901/20 4903/5 4903/7 4903/11 4903/12 4903/18 4904/17 4904/23 4905/1
**acted [16]**   4839/17 4851/2 4852/8 4852/13 4871/2 4872/8 4872/11 4872/22 4873/11 4884/12 4884/14 4885/7 4887/20 4892/11 4895/15 4896/4
**acting [5]**   4885/6 4886/14 4887/10 4888/8 4890/5
**action [3]**   4848/19 4885/25 4893/17
**actions [6]**   4842/6 4842/9 4852/16 4872/14 4874/23 4887/16
**active [1]**   4874/1
**activities [18]**   4843/24 4876/20 4877/6 4877/14 4877/15 4878/11 4879/3 4879/12 4880/1 4880/8 4880/13 4881/14 4881/20

4883/20 4883/25 4884/3 4884/13 4884/16
**activity [23]**   4833/7 4841/1 4877/10 4878/24 4879/23 4879/24 4880/10 4880/24 4881/3 4882/4 4882/7 4882/16 4882/20 4883/8 4883/11 4883/15 4883/16 4884/18 4884/22 4900/14 4900/19 4903/25 4904/4
**acts [27]**   4835/20 4839/15 4839/15 4839/21 4839/21 4839/22 4843/17 4844/9 4844/24 4846/23 4851/14 4856/19 4857/12 4857/23 4858/18 4858/20 4858/24 4858/25 4863/17 4864/8 4866/22 4867/23 4871/14 4875/21 4875/22 4887/22 4887/22
**actual [5]**   4840/17 4868/21 4874/20 4910/13 4924/17
**add [4]**   4937/8 4937/24 4938/18 4939/19
**added [1]**   4945/15
**addenda [5]**   4916/21 4916/23 4917/24 4918/8 4934/6
**addition [2]**   4850/5 4892/4
**additional [6]**   4845/19 4857/3 4909/20 4927/25 4939/23 4940/1
**address [29]**   4812/16 4816/8 4818/22 4819/14 4820/4 4820/24 4822/13 4823/1 4823/13 4823/19 4825/21 4827/17 4828/7 4828/15 4829/15 4831/13 4832/6 4832/22 4838/8 4838/23 4839/12 4839/25 4840/9 4847/11 4854/18 4857/1 4875/4 4913/13 4923/3
**addressed [1]**   4908/20
**addresses [3]**   4850/17 4853/2 4858/18
**adjacent [2]**   4911/3 4911/23
**adjourn [2]**   4909/7 4909/8
**adjourned [1]**   4949/17
**adjourning [1]**   4948/24
**adjusted [1]**   4914/3
**admissibility [2]**   4819/6 4819/10
**admissible [1]**   4819/1
**admitted [5]**   4825/15 4829/16 4829/18 4921/6 4939/3
**advance [1]**   4947/7
**advantage [4]**   4848/24 4867/21 4886/6 4893/21
**advantages [2]**   4900/21 4903/18
**advise [1]**   4942/10
**advised [2]**   4845/9 4901/24
**advises [3]**   4927/12 4927/15 4948/5
**affect [3]**   4832/15 4839/10 4869/19
**afforded [1]**   4818/18
**age [2]**   4817/25 4819/21
**agency [5]**   4887/14 4890/4

**A**

**agency... [3]**  4890/7 4902/2
 4903/24
**agent [11]**  4810/21 4810/21
 4811/10 4885/5 4886/13
 4887/3 4887/9 4887/10
 4887/11 4887/12 4887/15
**agent's [1]**  4887/10
**agree [14]**  4898/4 4898/6
 4898/15 4898/15 4898/16
 4919/22 4919/22 4920/3
 4921/12 4922/22 4924/21
 4936/16 4945/1 4947/12
**agreed [28]**  4825/2 4828/19
 4834/15 4834/16 4898/2
 4898/20 4898/25 4898/25
 4909/12 4921/18 4922/15
 4922/17 4922/19 4922/20
 4922/23 4923/5 4927/23
 4928/13 4928/14 4928/22
 4929/13 4929/18 4930/10
 4930/14 4933/7 4933/10
 4935/22 4935/22
**agreement [29]**  4828/18
 4834/13 4834/17 4834/23
 4835/3 4840/14 4841/7 4841/9
 4841/12 4841/16 4842/1
 4842/9 4843/12 4843/15
 4845/11 4857/8 4858/6 4858/9
 4858/11 4864/4 4864/10
 4877/23 4887/4 4887/15
 4906/22 4921/13 4927/9
 4930/16 4934/12
**agreements [6]**  4832/23
 4916/22 4917/7 4918/7
 4920/14 4934/6
**agrees [1]**  4925/25
**ahead [2]**  4910/16 4944/14
**aided [1]**  4810/25
**aiding [2]**  4845/5 4864/20
**aims [1]**  4843/14
**Airport [1]**  4863/6
**Allam [1]**  4862/2
**Allam's [3]**  4917/11 4923/8
 4930/22
**allegations [1]**  4857/4
**allege [3]**  4854/13 4874/24
 4904/6
**alleged [26]**  4828/12 4841/15
 4841/17 4843/18 4847/13
 4848/3 4849/4 4850/8 4852/25
 4853/22 4854/9 4858/23
 4863/17 4863/25 4865/7
 4867/22 4867/24 4868/6
 4869/5 4870/5 4870/7 4870/9
 4872/21 4875/17 4879/25
 4895/21
**allegedly [1]**  4868/3
**alleges [1]**  4858/23
**allow [2]**  4819/24 4823/9
**allows [1]**  4833/9
**almost [5]**  4821/14 4848/16
 4851/7 4871/7 4900/10
**alone [9]**  4815/22 4816/10
 4820/10 4825/19 4834/25
 4840/24 4849/16 4864/17
 4889/11

**alpha [1]**  4874/22
**alter [2]**  4869/18 4895/7
**altered [1]**  4869/17
**alternate [1]**  4948/11
**Alternatively [1]**  4873/1
**ambit [1]**  4844/14
**Amen [1]**  4905/8
**amenable [1]**  4944/24
**AMERICA [5]**  4810/3 4814/19
 4818/17 4860/17 4908/5
**American [1]**  4886/20
**amount [4]**  4851/22 4852/13
 4872/1 4872/12
**Andrew [5]**  4859/7 4917/4
 4917/7 4919/11 4936/14
**ANGELA [2]**  4810/21 4811/11
**announce [1]**  4910/14
**announced [1]**  4908/2
**annoyed [1]**  4932/6
**answer [6]**  4816/24 4816/25
 4930/2 4942/4 4942/18 4943/4
**answered [1]**  4824/7
**answers [3]**  4817/2 4824/1
 4934/18
**anti [5]**  4871/25 4884/4
 4884/20 4884/23 4885/1
**anti-bribery [4]**  4884/4
 4884/20 4884/23 4885/1
**anti-fraud [1]**  4871/25
**Antonio [1]**  4859/15
**apologize [1]**  4897/11
**appear [5]**  4829/2 4830/13
 4830/15 4832/9 4942/23
**appearance [2]**  4830/17
 4849/18
**appearances [4]**  4810/10
 4811/7 4916/1 4926/21
**appellate [1]**  4932/15
**Apple [2]**  4924/23 4924/23
**applicable [1]**  4818/5
**applies [8]**  4840/10 4850/4
 4855/25 4876/4 4888/5 4902/6
 4903/20 4905/5
**apply [10]**  4814/16 4815/14
 4847/10 4850/24 4857/20
 4877/19 4896/6 4902/11
 4902/18 4942/15
**appointed [1]**  4891/9
**appreciate [1]**  4948/18
**appreciative [1]**  4914/9
**apprised [1]**  4843/23
**approach [3]**  4896/11 4925/25
 4927/10
**appropriate [6]**  4836/3
 4840/23 4865/22 4926/12
 4929/12 4938/18
**approval [1]**  4901/4
**approximate [3]**  4846/5
 4856/6 4876/11
**April [4]**  4861/8 4861/13
 4861/16 4862/1
**April 2nd [1]**  4861/8
**April 8 [2]**  4861/13 4862/1
**April 9 [1]**  4861/16
**argues [1]**  4833/5
**arguments [7]**  4814/20
 4815/11 4816/19 4825/6
 4833/20 4906/21 4907/5

**arise [1]**  4828/25
**arrangement [1]**  4849/16
**arrive [1]**  4820/16
**Article [10]**  4900/20 4900/20
 4900/23 4901/11 4901/11
 4901/15 4902/12 4902/12
 4903/14 4903/14
**artifice [13]**  4846/8 4846/13
 4847/17 4847/23 4848/1
 4848/5 4848/11 4848/13
 4848/17 4866/5 4866/23
 4867/18 4867/19
**artifices [1]**  4856/14
**ASAP [1]**  4926/4
**aspect [1]**  4868/2
**assembled [1]**  4844/19
**assessing [3]**  4824/23 4825/3
 4838/7
**assigned [1]**  4887/12
**assist [5]**  4836/12 4853/17
 4886/7 4894/6 4894/13
**assistance [1]**  4835/21
**Assistant [2]**  4810/15
 4810/22
**assisted [1]**  4845/9
**assisting [2]**  4864/20
 4881/19
**associated [3]**  4852/25
 4872/20 4924/9
**association [1]**  4844/15
**assume [2]**  4826/10 4826/18
**assumed [1]**  4824/14
**assumes [1]**  4824/4
**assuming [1]**  4947/16
**assurance [1]**  4895/23
**assuring [1]**  4944/19
**attach [1]**  4927/15
**attached [3]**  4926/2 4927/13
 4927/14
**attack [1]**  4838/16
**attempted [2]**  4881/7 4883/2
**attempts [2]**  4880/19 4882/10
**attend [1]**  4863/7
**attention [5]**  4814/5 4814/13
 4814/14 4814/14 4834/20
**attitude [1]**  4818/9
**attributable [1]**  4903/19
**attributes [1]**  4903/19
**authorities [1]**  4829/6
**authority [1]**  4887/11
**authorization [12]**  4885/17
 4888/9 4888/22 4889/11
 4889/15 4889/23 4892/10
 4893/23 4893/25 4895/5
 4895/8 4895/25
**authorized [4]**  4854/2
 4885/14 4888/25 4889/17
**authorizes [1]**  4889/10
**automatically [1]**  4844/16
**available [7]**  4828/23 4832/7
 4851/7 4869/17 4869/18
 4871/7 4925/21
**Avenue [1]**  4810/17
**avoid [4]**  4821/24 4829/19
 4873/9 4925/15
**await [1]**  4948/10
**awaiting [1]**  4914/20
**aware [7]**  4840/5 4862/24

**A**

aware... [5]   4872/25 4873/3
 4893/4 4893/11 4921/19
awareness [1]   4843/13

**B**

backs [1]   4923/18
backslash [1]   4946/17
bad [3]   4840/3 4870/23
 4887/23
Baker [2]   4924/24 4924/24
bank [37]   4823/20 4829/21
 4859/7 4859/8 4859/8 4859/21
 4859/21 4859/22 4860/1
 4860/1 4860/2 4860/4 4860/6
 4860/6 4860/10 4860/14
 4860/15 4860/15 4860/16
 4860/22 4860/22 4860/25
 4860/25 4861/1 4861/5 4861/9
 4861/9 4861/11 4861/17
 4861/17 4861/19 4861/22
 4861/22 4861/24 4879/17
 4888/19 4910/9
banks [3]   4853/12 4853/12
 4853/13
bar [2]   4818/21 4913/16
base [2]   4816/4 4816/5
based [16]   4819/15 4820/2
 4821/15 4829/11 4837/1
 4851/13 4860/22 4861/1
 4861/9 4861/11 4861/18
 4861/22 4861/24 4871/13
 4906/23 4907/13
basic [1]   4843/14
basis [5]   4820/12 4823/8
 4827/1 4834/24 4906/15
bear [5]   4816/23 4835/2
 4852/7 4864/16 4874/19
bearer [1]   4879/18
bearing [2]   4830/17 4844/5
bears [1]   4828/24
became [6]   4841/8 4842/16
 4847/7 4857/11 4858/15
 4877/25
becomes [2]   4845/10 4863/22
beginning [1]   4825/22
behalf [10]   4811/17 4811/22
 4812/4 4812/8 4812/12 4885/6
 4886/14 4887/5 4890/6 4916/9
behavior [2]   4830/17 4833/8
belief [9]   4852/1 4852/10
 4852/10 4852/13 4872/4
 4872/9 4872/9 4872/12 4893/6
below [1]   4900/18
bench [1]   4914/18
benefit [4]   4833/25 4895/2
 4901/6 4901/8
benefits [2]   4870/7 4902/16
best [3]   4834/4 4908/11
 4916/18
beyond [77]
bias [5]   4817/22 4818/8
 4820/15 4830/23 4831/9
biased [1]   4831/10
big [3]   4812/24 4824/6
 4824/9
BINI [14]   4810/13 4811/9

 4916/6 4924/3 4924/1
 4924/11 4930/19 4931/12
 4933/12 4933/13 4933/15
 4934/1 4934/9 4943/12
bit [2]   4946/1 4948/14
Boat [2]   4917/2 4919/4
boats [2]   4862/7 4862/8
bond [1]   4859/13
Bottom [1]   4920/2
BOUSTANI [31]   4810/6 4811/6
 4811/18 4811/22 4811/25
 4812/4 4812/8 4812/12
 4814/19 4827/10 4838/25
 4839/4 4846/7 4856/8 4859/2
 4859/10 4859/15 4860/20
 4861/5 4861/14 4862/1
 4862/12 4862/21 4863/1
 4876/13 4908/5 4914/14
 4916/10 4917/4 4919/11
 4936/15
Boustani's [1]   4898/10
break [5]   4845/14 4865/6
 4900/4 4910/14 4913/24
breaks [1]   4900/8
bribe [6]   4889/4 4889/5
 4889/10 4889/16 4894/19
 4901/12
bribery [16]   4876/24 4878/15
 4880/4 4881/15 4883/22
 4884/4 4884/7 4884/20
 4884/23 4885/1 4889/7 4889/9
 4896/7 4900/11 4900/15
 4900/17
bribes [3]   4862/2 4900/21
 4902/16
bribing [1]   4902/10
brief [1]   4897/19
briefing [2]   4862/13 4862/17
briefly [1]   4896/11
brings [1]   4905/9
Bronx [1]   4855/14
Brooklyn [3]   4810/4 4810/13
 4855/11
brought [4]   4818/16 4825/15
 4901/1 4947/14
building [1]   4948/16
bunch [1]   4933/1
burden [17]   4819/18 4819/22
 4820/21 4820/24 4821/2
 4821/4 4821/7 4822/20
 4828/24 4832/2 4832/18
 4832/19 4852/4 4852/4
 4871/21 4871/22 4876/2
business [18]   4842/25 4854/5
 4856/19 4866/12 4867/4
 4874/8 4886/8 4886/9 4894/4
 4894/8 4894/9 4894/11
 4894/14 4894/16 4894/18
 4895/2 4895/2 4914/18
buy [1]   4869/20
buyers [1]   4870/2

**C**

cabin [1]   4826/22
Cadman [1]   4810/12
calculated [3]   4848/21
 4852/24 4872/19
camel [1]   4910/1

candid [1]   4830/14
candor [2]   4831/3 4831/3
cannot [5]   4822/15 4823/9
 4826/15 4826/15 4873/14
capacity [3]   4886/2 4890/6
 4893/19
caprice [1]   4821/23
car [1]   4888/18
careful [1]   4814/14
carefully [5]   4814/9 4821/16
 4830/6 4907/5 4945/7
carelessness [1]   4839/17
carriage [1]   4830/17
carried [3]   4849/5 4851/25
 4872/3
carry [2]   4891/13 4908/10
carrying [12]   4832/25
 4853/18 4864/9 4864/19
 4876/19 4878/10 4879/11
 4880/23 4881/2 4881/13
 4881/20 4894/17
case [57]   4811/5 4814/3
 4814/4 4814/16 4814/17
 4814/22 4815/1 4815/4
 4815/10 4816/2 4817/9
 4817/19 4818/5 4818/11
 4818/24 4820/3 4820/7 4821/7
 4822/15 4822/23 4823/6
 4823/15 4829/12 4830/25
 4832/17 4833/14 4834/12
 4835/4 4836/16 4836/24
 4838/5 4838/19 4839/13
 4839/19 4842/4 4850/16
 4851/7 4851/19 4867/6 4871/7
 4879/25 4902/6 4903/3 4903/8
 4906/14 4906/25 4907/2
 4907/13 4907/24 4908/12
 4908/13 4911/12 4914/10
 4920/25 4921/3 4924/22
 4945/9
cases [3]   4842/6 4913/21
 4914/19
CASEY [2]   4810/18 4812/4
cash [2]   4859/8 4889/2
cashier's [1]   4879/17
caused [8]   4848/7 4852/16
 4853/25 4869/4 4873/20
 4874/4 4875/22 4885/9
causes [3]   4847/19 4854/7
 4874/9
causing [5]   4849/8 4851/1
 4852/20 4853/1 4873/1
caution [8]   4831/11 4833/16
 4835/8 4844/15 4844/22
 4855/24 4876/3 4905/4
CCR [1]   4810/23
cell [4]   4912/10 4912/22
 4912/24 4914/22
central [2]   4820/7 4874/17
certain [13]   4817/12 4824/4
 4824/22 4827/20 4827/21
 4828/9 4828/9 4828/17
 4828/18 4891/5 4893/6 4893/8
 4917/16
certainly [5]   4817/14 4914/8
 4914/9 4914/9 4914/11
certification [1]   4823/19
chambers [2]   4925/9 4926/11

**C**

chance [1]   4926/25
change [9]   4897/17 4898/4
 4898/6 4907/3 4916/21
 4916/23 4917/24 4918/8
 4946/3
changes [1]   4910/3
character [3]   4821/21 4845/8
 4864/19
characterization [1]   4891/20
characterized [1]   4842/3
charge [14]   4812/16 4820/13
 4821/10 4821/12 4822/6
 4822/7 4822/11 4822/12
 4858/4 4871/20 4911/16
 4911/20 4913/25 4945/6
charged [38]   4818/14 4819/25
 4820/12 4827/10 4828/14
 4833/1 4839/11 4841/13
 4842/12 4842/17 4843/8
 4846/23 4847/13 4857/13
 4857/15 4857/17 4857/23
 4858/9 4858/15 4858/20
 4864/15 4865/8 4867/6 4870/8
 4871/18 4875/11 4875/14
 4877/21 4878/2 4878/3
 4879/11 4881/23 4884/18
 4897/20 4898/10 4900/14
 4904/1 4904/4
charges [26]   4820/25 4821/3
 4827/16 4828/8 4832/19
 4834/15 4834/16 4838/23
 4838/24 4839/1 4839/3 4839/6
 4839/13 4845/18 4845/19
 4846/1 4846/2 4854/16 4856/4
 4872/17 4875/2 4876/8 4878/5
 4884/1 4904/9 4942/15
charging [2]   4827/13 4857/20
Charlie [2]   4924/24 4924/24
chart [1]   4933/21
charts [4]   4829/17 4829/17
 4829/20 4913/9
check [2]   4889/2 4936/3
checking [1]   4936/2
checks [4]   4879/16 4879/17
 4879/17 4879/17
Circuit [2]   4944/20 4944/21
circulars [2]   4917/1 4918/24
circumstance [7]   4851/12
 4893/3 4893/5 4893/7 4893/10
 4893/12 4893/13
circumstances [14]   4827/23
 4830/7 4839/19 4842/4
 4849/17 4850/16 4851/15
 4856/17 4866/9 4867/2 4869/2
 4869/11 4871/15 4890/25
circumstantial [9]   4825/23
 4826/7 4826/9 4826/25 4827/5
 4827/5 4851/17 4855/3
 4871/12
circumstantially [1]   4887/16
circumvented [2]   4895/13
 4895/18
circumvents [1]   4896/1
citizens [1]   4891/3
City [5]   4860/25 4861/10
 4861/17 4861/23 4863/10

claims [1]   4815/4
clarification [1]   4817/13
class [1]   4886/16
clean [5]   4821/9 4937/10
 4937/12 4937/15 4937/16
clear [7]   4814/6 4820/14
 4830/2 4898/7 4939/9 4948/8
 4948/23
clearly [1]   4910/19
clerk [10]   4927/23 4928/3
 4929/4 4933/4 4933/7 4937/13
 4937/17 4939/18 4940/17
 4943/21
clerks [4]   4913/7 4914/23
 4939/10 4940/14
client [1]   4819/6
clients [1]   4913/23
close [10]   4814/4 4814/13
 4824/11 4831/12 4909/10
 4913/14 4929/10 4937/25
 4938/21 4947/6
closing [2]   4814/20 4816/19
co [5]   4827/22 4827/25
 4832/22 4843/18 4863/5
co-conspirator [1]   4827/25
co-conspirators [3]   4827/22
 4843/18 4863/5
co-defendants' [1]   4832/22
coconspirator [1]   4875/17
coconspirators [2]   4875/21
 4875/22
code [16]   4846/17 4846/19
 4847/15 4856/12 4856/25
 4876/21 4876/25 4877/3
 4877/5 4877/7 4877/16
 4880/15 4886/17 4901/11
 4901/12 4901/15
coercive [1]   4943/2
coins [1]   4879/15
colleagues [2]   4913/16
 4948/15
collective [1]   4840/25
collectively [1]   4877/6
collegiality [1]   4913/17
color [2]   4831/9 4834/8
colored [1]   4838/18
column [2]   4924/7 4924/8
combination [2]   4826/17
 4840/14
comfort [1]   4845/13
coming [1]   4925/21
command [1]   4929/14
commend [1]   4913/21
commerce [17]   4846/15
 4847/21 4856/24 4865/14
 4866/3 4873/17 4873/22
 4873/25 4874/5 4874/12
 4885/11 4888/6 4888/11
 4888/12 4888/12 4888/17
 4888/21
Commercial [4]   4859/7
 4859/21 4860/1 4860/15
Commission [3]   4856/12
 4865/21 4865/25
commit [31]   4839/4 4839/5
 4839/5 4840/20 4845/25
 4846/3 4846/21 4847/1 4847/2
 4847/3 4847/5 4852/9 4854/16

4856/1 4856/3 4856/4 4857/1
4857/4 4857/9 4857/16
4857/18 4858/1 4858/5 4858/9
4859/3 4867/6 4875/3 4876/9
4877/17 4904/10 4905/6
commitment [2]   4934/7
4934/11
commits [2]   4868/12 4868/14
committed [24]   4828/9
4828/11 4828/14 4840/22
4846/23 4847/3 4851/9
4854/14 4855/16 4857/12
4857/23 4858/21 4859/3
4863/19 4863/21 4863/25
4864/4 4864/9 4867/15 4871/9
4875/1 4875/13 4904/8
4904/21
committee [1]   4910/2
common [6]   4827/1 4831/23
4842/11 4844/20 4845/20
4886/19
communication [13]   4846/15
4847/21 4853/5 4853/6
4853/11 4853/21 4873/21
4874/4 4874/7 4874/12
4874/14 4888/13 4905/22
communications [6]   4853/20
4854/9 4874/16 4874/19
4874/22 4907/19
community [1]   4818/13
companies [1]   4890/17
company [10]   4886/9 4894/9
4894/10 4894/14 4902/2
4903/24 4917/12 4923/23
4924/9 4924/18
compete [1]   4914/18
competing [1]   4920/5
compile [1]   4908/24
complete [5]   4818/9 4852/2
4871/20 4935/6 4935/8
completed [1]   4941/4
completes [1]   4889/16
component [1]   4854/12
computer [1]   4810/25
computer-aided [1]   4810/25
conceal [7]   4877/12 4879/1
4882/5 4882/18 4883/18
4884/12 4884/14
concealment [2]   4849/12
4881/21
concept [1]   4839/14
concern [5]   4818/13 4823/3
4829/10 4829/11 4849/22
concerned [1]   4815/25
concerning [1]   4825/17
conclude [3]   4826/19 4827/7
4873/7
concluded [1]   4814/20
conclusion [1]   4947/4
conclusions [2]   4832/13
4836/19
condition [1]   4826/6
conduct [27]   4818/22 4839/18
4840/1 4840/5 4840/6 4841/2
4842/4 4844/19 4851/14
4852/23 4867/12 4867/16
4867/24 4868/3 4868/4 4868/6
4868/9 4868/23 4870/6

**C**

conduct... [8]   4871/14
4872/18 4874/2 4874/20
4891/16 4893/3 4893/4 4902/6
confer [3]   4927/1 4928/8
4935/6
conference [3]   4819/7
4896/13 4899/6
conferences [1]   4819/2
confident [1]   4908/14
confirm [3]   4927/20 4932/4
4934/18
conflicts [1]   4816/12
Congress [1]   4840/23
connection [14]   4843/21
4856/21 4862/3 4862/15
4865/16 4866/13 4866/20
4867/12 4868/1 4868/1 4868/5
4868/10 4884/2 4894/7
conscientious [3]   4907/6
4907/9 4908/9
conscious [2]   4839/23 4873/9
consent [1]   4901/4
consequent [2]   4852/5
4871/23
consider [24]   4815/23
4816/25 4817/2 4817/23
4819/17 4824/14 4825/25
4827/6 4828/3 4829/20
4830/23 4831/1 4831/8
4833/21 4836/23 4838/4
4839/7 4842/9 4842/22 4843/7
4845/23 4870/10 4890/21
4906/20
considerably [1]   4910/3
consideration [15]   4815/17
4818/18 4818/20 4822/4
4822/9 4823/9 4838/13 4852/7
4869/20 4872/7 4907/1 4907/1
4907/13 4908/9 4947/7
considerations [2]   4819/14
4833/18
considered [3]   4824/1
4824/17 4850/2
considering [3]   4842/21
4872/7 4907/5
consistency [2]   4831/5
4831/5
consistent [3]   4903/7
4903/13 4942/22
consists [1]   4855/10
conspiracy [107]
conspirator [4]   4827/25
4841/17 4843/11 4864/14
conspirator's [1]   4844/7
conspiratorial [1]   4864/20
conspirators [7]   4827/22
4843/18 4844/10 4844/11
4858/22 4863/5 4863/20
conspire [4]   4846/8 4846/21
4856/9 4876/14
conspired [3]   4846/25 4852/9
4858/1
conspiring [2]   4875/2
4904/10
constitute [3]   4825/13
4825/18 4849/13

constitutes [3]   4865/3
4883/11 4888/20
construction [1]   4861/6
consult [2]   4906/22 4912/12
Cont'g [1]   4865/1
contact [2]   4868/19 4913/5
contain [1]   4874/12
contained [1]   4824/15
contemplated [1]   4850/8
context [3]   4816/22 4842/6
4870/25
continue [5]   4845/17 4914/15
4927/17 4948/7 4949/15
Continued [6]   4837/6 4864/21
4892/14 4896/14 4899/7
4915/5
continuing [3]   4895/1 4914/3
4927/3
contract [2]   4916/24 4918/14
contracts [4]   4894/15
4894/17 4916/20 4917/23
contradicted [1]   4831/19
contrary [5]   4846/16 4856/10
4856/24 4877/6 4877/15
contrast [2]   4823/25 4857/18
contravention [1]   4865/20
contributed [1]   4901/1
contribution [1]   4889/3
contrivance [1]   4865/19
contrivances [1]   4856/10
control [5]   4877/13 4879/2
4882/6 4882/19 4883/19
controlled [2]   4890/14
4890/16
controlling [1]   4890/15
controls [11]   4825/11 4884/5
4884/21 4891/15 4895/9
4895/14 4895/16 4895/17
4895/19 4895/23 4896/1
converted [1]   4879/22
convey [1]   4849/17
convict [3]   4821/1 4822/3
4834/24
convicted [1]   4823/11
conviction [2]   4907/8
4907/10
convictions [1]   4833/12
convince [1]   4945/9
convinced [1]   4864/2
convinces [1]   4834/25
convincing [1]   4821/21
cooperate [1]   4841/23
cooperates [1]   4835/12
cooperating [10]   4833/2
4833/10 4833/14 4833/22
4834/11 4834/12 4835/20
4835/23 4835/25 4836/7
cooperation [2]   4834/20
4835/17
copies [16]   4823/18 4916/15
4916/24 4918/14 4921/1
4937/13 4937/15 4937/16
4941/13 4941/18 4946/18
4946/20 4946/25 4947/22
4948/1 4948/20
copy [15]   4909/24 4910/5
4919/21 4923/11 4923/13
4930/21 4931/4 4931/7 4931/8

4931/19 4932/2 4937/4
4937/12 4944/6 4947/25
core [1]   4854/12
correct [1]   4922/12
correspondent [4]   4859/8
4859/22 4860/2 4860/16
corresponding [1]   4928/19
corroboration [2]   4831/6
4831/6
corrupt [8]   4876/21 4878/12
4888/1 4893/1 4894/20
4894/21 4895/6 4895/7
corruption [1]   4900/17
corruptly [5]   4885/7 4887/18
4887/20 4887/22 4888/1
counsel [31]   4811/7 4814/10
4818/22 4819/1 4833/3
4838/16 4908/14 4908/23
4909/17 4912/7 4912/12
4914/8 4914/16 4916/1
4917/14 4917/15 4918/2
4919/22 4922/6 4926/23
4927/8 4930/20 4934/19
4936/25 4937/1 4939/21
4941/19 4941/21 4947/1
4948/2 4948/21
count [57]   4828/8 4839/6
4839/7 4840/11 4840/11
4840/12 4840/12 4840/12
4845/24 4845/25 4846/2
4846/24 4847/13 4854/13
4854/15 4854/16 4855/7
4856/2 4856/3 4856/4 4857/5
4857/17 4857/20 4857/24
4858/8 4858/14 4858/20
4865/8 4874/24 4875/1 4875/2
4875/6 4875/11 4876/2 4876/5
4876/7 4876/8 4877/19
4877/21 4878/2 4878/3 4878/5
4879/6 4879/11 4881/23
4884/1 4884/19 4898/9
4900/14 4904/1 4904/4 4904/9
4904/9 4904/12 4904/13
4904/16 4905/7
Count 4 [7]   4904/1 4904/4
4904/9 4904/12 4904/13
4904/16 4905/7
Count 4 [1]   4904/6
counties [3]   4855/10 4855/13
4855/13
country [6]   4853/9 4853/13
4853/15 4879/16 4888/14
4890/15
counts [4]   4830/12 4839/1
4840/10 4845/22
couple [2]   4817/2 4932/17
course [15]   4829/4 4832/9
4835/19 4836/9 4841/25
4848/18 4854/5 4866/11
4867/3 4872/24 4874/8
4912/14 4913/18 4934/22
4939/16
courses [1]   4856/19
Court 15A [1]   4927/24
Court's [2]   4913/17 4926/6
courthouse [3]   4810/3
4826/10 4826/11
courtroom [5]   4826/15 4897/2

**C**

**courtroom... [3]**   4912/1 4912/3 4947/15
**cover [7]**   4925/19 4925/22 4926/12 4927/24 4928/16 4928/23 4929/13
**CR [2]**   4810/2 4811/5
**create [2]**   4924/20 4943/19
**creation [8]**   4891/1 4917/3 4917/5 4919/10 4920/6 4933/20 4933/21 4936/14
**credence [2]**   4834/10 4836/6
**credibility [7]**   4816/11 4819/12 4824/24 4830/1 4833/19 4838/7 4838/16
**credible [4]**   4817/16 4831/6 4831/20 4914/1
**credit [4]**   4860/6 4860/9 4862/6 4863/2
**crime [29]**   4819/25 4829/7 4839/7 4840/15 4840/20 4840/21 4840/24 4841/4 4847/24 4851/19 4853/24 4855/16 4855/19 4855/21 4857/6 4857/9 4866/15 4870/8 4871/18 4877/20 4877/22 4880/24 4880/25 4882/20 4882/21 4889/16 4904/21 4904/24 4905/2
**crimes [5]**   4818/15 4820/12 4827/11 4832/25 4840/19
**criminal [19]**   4810/8 4811/5 4815/1 4818/12 4821/7 4822/15 4832/17 4833/7 4833/8 4835/20 4840/13 4841/1 4841/3 4844/18 4844/18 4851/11 4865/3 4871/11 4874/13
**cross [2]**   4822/24 4824/3
**cross-examination [2]**   4822/24 4824/3
**crucial [1]**   4820/7
**CSI [1]**   4829/8
**CSO [17]**   4928/23 4929/5 4929/19 4932/6 4932/14 4933/8 4934/16 4935/12 4937/15 4939/11 4939/19 4940/15 4940/18 4940/18 4947/13 4947/19 4948/18
**CSOs [2]**   4948/14 4948/23
**CSR [1]**   4810/23
**cue [1]**   4912/20
**currency [2]**   4879/15 4879/22
**cushion [1]**   4859/16
**cut [1]**   4937/11
**cyberspace [1]**   4914/23

**D**

**DANELCZYK [1]**   4810/23
**date [5]**   4828/9 4828/11 4828/12 4828/14 4909/8
**dates [5]**   4828/6 4828/10 4846/5 4856/6 4876/11
**David [1]**   4947/8
**deal [4]**   4833/2 4839/20 4922/21 4923/7
**deals [1]**   4880/15

**debt [2]**   4863/12 4863/13
**deceit [4]**   4849/3 4856/20 4866/12 4867/4
**deceitful [2]**   4849/11 4867/24
**deceive [7]**   4848/21 4849/10 4850/25 4852/20 4852/24 4871/1 4872/20
**deceived [1]**   4869/24
**December [9]**   4846/4 4856/6 4876/10 4909/9 4909/15 4947/20 4948/6 4949/13 4949/18
**December 2 [3]**   4909/9 4948/6 4949/18
**December 2018 [2]**   4846/4 4856/6
**December 2nd [2]**   4947/20 4949/13
**deception [3]**   4849/3 4849/15 4849/18
**deceptive [6]**   4849/18 4851/23 4856/10 4865/19 4867/23 4872/2
**decide [18]**   4814/4 4815/16 4816/13 4820/10 4825/19 4830/8 4831/20 4831/24 4833/16 4835/10 4836/13 4836/25 4890/19 4906/25 4908/17 4909/9 4909/11 4909/12
**decided [2]**   4819/4 4907/10
**deciding [4]**   4834/10 4836/6 4842/20 4852/8
**decision [15]**   4817/8 4819/18 4820/1 4821/22 4838/19 4839/23 4849/24 4850/3 4869/12 4886/1 4893/18 4895/6 4907/12 4910/18 4929/14
**decision-making [1]**   4820/1
**deem [1]**   4938/18
**deemed [3]**   4840/23 4843/2 4893/9
**deems [1]**   4836/2
**default [2]**   4862/14 4862/23
**defendant [154]**
**defendant's [18]**   4819/20 4820/17 4820/21 4821/3 4821/12 4822/5 4822/10 4822/13 4834/25 4839/22 4840/6 4843/16 4843/20 4844/5 4844/6 4845/21 4851/5 4873/2
**defendants [1]**   4827/21
**defendants' [1]**   4832/22
**defense [31]**   4838/15 4852/2 4852/4 4868/17 4871/20 4871/22 4872/5 4894/19 4894/23 4914/8 4918/2 4918/12 4918/17 4918/22 4919/2 4919/8 4919/14 4920/10 4920/17 4920/22 4922/6 4927/7 4927/8 4930/20 4934/4 4934/18 4935/3 4936/25 4941/19 4941/21 4942/12
**defense's [2]**   4921/21

**4921/24**
**define [6]**   4814/25 4821/14 4847/12 4857/9 4865/7 4944/17
**defined [5]**   4876/25 4879/24 4886/15 4895/20 4944/16
**defining [1]**   4944/21
**definitely [2]**   4913/11 4944/22
**definition [9]**   4847/11 4865/4 4879/13 4890/18 4941/15 4943/8 4944/24 4945/21 4946/13
**definitions [1]**   4880/10
**defraud [36]**   4846/9 4847/17 4848/1 4848/5 4848/6 4848/11 4848/13 4848/18 4849/2 4849/4 4850/7 4850/11 4850/14 4850/20 4850/21 4850/24 4851/3 4852/18 4852/23 4853/5 4853/18 4853/22 4854/9 4854/12 4856/14 4866/6 4866/24 4867/18 4867/19 4868/17 4870/16 4870/17 4870/25 4871/3 4871/19 4873/22
**degree [2]**   4891/4 4891/14
**deliberate [4]**   4815/24 4849/1 4873/8 4873/11
**deliberately [4]**   4814/5 4839/21 4870/19 4881/18
**deliberation [2]**   4906/19 4908/9
**deliberations [19]**   4815/7 4823/4 4823/12 4827/24 4833/22 4905/9 4905/10 4905/12 4907/17 4907/22 4907/22 4907/23 4908/1 4908/4 4908/16 4912/1 4947/3 4948/7 4949/15
**delivered [1]**   4909/5
**delivery [1]**   4879/20
**demanded [1]**   4894/25
**demeanor [2]**   4830/16 4838/6
**demonstrating [1]**   4873/14
**demonstrative [1]**   4825/2
**demonstratives [1]**   4825/1
**denied [1]**   4824/12
**denominated [1]**   4948/10
**department [2]**   4890/4 4890/7
**depository [1]**   4886/21
**deprive [1]**   4849/2
**depriving [1]**   4850/8
**derived [1]**   4883/13
**described [5]**   4862/13 4862/17 4894/22 4902/19 4903/21
**deserve [1]**   4836/25
**deserves [2]**   4835/11 4838/22
**deserving [1]**   4838/12
**design [1]**   4842/11
**designed [6]**   4872/20 4877/12 4878/25 4882/4 4882/17 4883/18
**despite [1]**   4873/4
**detail [2]**   4819/23 4841/18
**detailed [2]**   4900/18 4942/15
**detailing [1]**   4862/2

**D**

**details [1]**  4843/25
**Detelina [1]**  4859/14
**determination [2]**  4830/12
 4836/4
**determine [17]**  4815/14
 4816/11 4816/14 4816/16
 4823/7 4829/11 4830/10
 4835/13 4850/1 4851/4 4869/6
 4869/10 4869/22 4871/4
 4880/11 4892/3 4906/14
**determined [1]**  4816/14
**determining [5]**  4816/15
 4818/2 4830/21 4842/8 4843/7
**developed [1]**  4819/16
**deviate [1]**  4945/9
**device [7]**  4848/18 4865/19
 4866/5 4866/23 4867/18
 4867/18 4907/25
**devices [2]**  4856/10 4856/14
**devise [5]**  4846/8 4847/17
 4848/23 4867/21 4895/22
**devised [3]**  4847/16 4851/24
 4872/3
**devoted [1]**  4913/25
**Dhabi [4]**  4859/7 4859/21
 4860/1 4860/15
**differ [1]**  4932/1
**different [11]**  4815/20
 4830/4 4835/4 4839/6 4844/10
 4853/12 4853/14 4941/16
 4943/8 4945/21 4946/14
**differs [2]**  4825/10 4907/7
**DiNARDO [2]**  4810/20 4811/10
**direct [16]**  4824/13 4825/23
 4826/1 4826/1 4826/4 4826/16
 4827/4 4827/6 4842/2 4850/15
 4851/6 4851/10 4851/18
 4855/3 4871/6 4871/10
**directed [2]**  4816/25 4817/1
**directing [2]**  4886/8 4894/8
**direction [1]**  4888/9
**directly [14]**  4853/19
 4856/23 4865/12 4866/1
 4873/23 4883/14 4885/22
 4889/5 4889/9 4890/1 4892/13
 4907/20 4933/24 4949/14
**director [5]**  4885/4 4886/13
 4887/2 4902/1 4903/23
**directors [4]**  4890/10 4891/8
 4891/11 4891/21
**disagree [1]**  4942/3
**disagreement [3]**  4920/4
 4920/4 4921/15
**DiSANTO [4]**  4810/19 4812/8
 4812/9 4916/9
**disappear [1]**  4913/13
**discharged [2]**  4814/11
 4908/3
**disclosed [2]**  4851/15
 4871/15
**discretion [2]**  4828/2 4836/1
**discuss [5]**  4819/23 4858/3
 4870/11 4906/19 4912/5
**discussed [2]**  4844/20
 4884/11
**discussion [2]**  4907/3

**discussions [1]**  4907/14
**disguise [7]**  4877/13 4879/1
 4882/5 4882/18 4883/18
 4884/12 4884/14
**dismiss [1]**  4834/15
**disobey [3]**  4840/3 4842/1
 4870/23
**dispute [7]**  4908/4 4929/25
 4930/2 4930/3 4930/4 4930/5
 4930/5
**disputed [2]**  4826/8 4836/13
**disregard [8]**  4816/25 4837/4
 4840/3 4842/1 4849/1 4870/24
 4873/8 4873/11
**distinct [2]**  4840/17 4844/9
**distinction [1]**  4827/4
**distinguished [1]**  4914/16
**DISTRICT [33]**  4810/1 4810/1
 4810/9 4810/12 4846/6 4855/9
 4855/16 4855/19 4855/22
 4856/7 4859/1 4859/9 4859/23
 4860/3 4860/8 4860/12
 4860/17 4861/3 4861/10
 4861/18 4861/23 4863/6
 4864/5 4875/13 4875/20
 4876/1 4876/12 4904/18
 4904/21 4904/24 4905/2
 4945/18 4948/3
**do Rosario [6]**  4859/15
 4860/19 4861/4 4861/13
 4862/23 4863/4
**Docket [1]**  4811/5
**document [11]**  4827/13
 4924/20 4931/6 4931/17
 4931/20 4932/8 4933/15
 4934/9 4935/25 4943/19
 4944/7
**documents [17]**  4829/22
 4908/18 4909/20 4910/9
 4917/17 4926/23 4927/1
 4927/13 4927/14 4927/23
 4927/25 4928/20 4928/24
 4932/18 4933/16 4935/18
 4938/9
**dollars [1]**  4860/5
**domestic [3]**  4867/7 4868/11
 4868/12
**donation [1]**  4889/2
**done [8]**  4851/23 4864/13
 4872/2 4898/17 4900/10
 4925/8 4930/4 4940/22
**DONNELLY [3]**  4810/18 4812/4
 4812/5
**door [3]**  4907/21 4908/21
 4911/4
**doubt [84]**
**down [3]**  4824/20 4910/14
 4925/12
**downgrading [1]**  4863/1
**downstairs [1]**  4948/15
**draft [1]**  4925/22
**drafted [1]**  4910/1
**draw [7]**  4816/12 4816/13
 4817/11 4827/18 4832/12
 4844/13 4871/16
**drawing [1]**  4831/22
**drawn [3]**  4843/19 4851/16

 4871/16
**dripping [1]**  4826/13
**due [2]**  4840/6 4901/6
**duly [1]**  4911/8
**dumber [1]**  4923/2
**duration [1]**  4844/8
**duties [10]**  4814/25 4887/11
 4901/10 4901/14 4901/20
 4903/6 4903/7 4903/11
 4903/13 4903/16
**duty [20]**  4814/3 4814/11
 4815/12 4815/13 4815/15
 4816/3 4816/5 4817/21 4818/7
 4818/9 4818/23 4819/1 4821/7
 4821/25 4823/4 4831/8
 4832/18 4886/4 4893/20
 4903/16

**E**

**e-mail [11]**  4854/3 4859/15
 4862/2 4862/12 4862/13
 4862/16 4862/22 4862/25
 4913/1 4913/3 4913/6
**e-mailed [1]**  4862/6
**e-mails [1]**  4853/14
**easier [1]**  4897/10
**East [1]**  4810/12
**EASTERN [29]**  4810/1 4810/12
 4846/5 4855/9 4855/16
 4855/19 4855/22 4856/7
 4859/1 4859/9 4859/23 4860/3
 4860/7 4860/12 4860/17
 4861/2 4861/10 4861/18
 4861/23 4863/6 4864/5
 4875/13 4875/20 4876/1
 4876/12 4904/18 4904/21
 4904/24 4905/2
**easy [1]**  4905/14
**economic [2]**  4861/7 4863/12
**edgy [1]**  4830/14
**education [2]**  4836/15 4837/1
**EEZ [1]**  4861/7
**effect [3]**  4819/11 4819/13
 4859/1
**effectively [1]**  4924/21
**effectuated [1]**  4891/5
**efforts [1]**  4867/21
**either [16]**  4827/6 4841/22
 4851/19 4864/4 4870/23
 4872/23 4884/21 4885/18
 4887/24 4889/24 4900/25
 4902/22 4902/24 4903/5
 4903/11 4920/3
**electronic [6]**  4907/25
 4931/4 4931/7 4931/19
 4931/24 4932/1
**electronically [3]**  4919/20
 4923/11 4923/16
**element [60]**  4821/3 4841/9
 4841/10 4841/14 4842/13
 4842/14 4845/19 4848/10
 4848/11 4848/16 4850/17
 4850/18 4853/2 4853/3
 4853/24 4854/11 4858/6
 4858/7 4858/12 4858/13
 4858/18 4858/19 4863/16
 4864/6 4864/7 4864/11
 4866/19 4867/14 4868/2

**E**

**element... [31]**   4870/8 4870/10 4870/12 4870/14 4871/18 4873/16 4873/18 4883/8 4886/10 4886/11 4887/18 4887/19 4888/6 4888/7 4888/22 4888/23 4889/11 4889/16 4889/20 4889/21 4893/14 4893/15 4894/1 4894/4 4894/5 4894/7 4894/15 4895/16 4895/17 4896/2 4896/3
**elements [30]**   4815/4 4841/5 4845/20 4847/4 4847/8 4847/11 4847/25 4851/19 4854/20 4856/1 4857/7 4857/19 4858/3 4865/4 4866/17 4875/5 4876/5 4877/22 4881/5 4882/25 4885/2 4895/12 4900/24 4901/16 4902/21 4904/1 4904/4 4904/11 4905/6 4906/8
**ELLEN [1]**   4810/18
**elsewhere [4]**   4846/6 4856/7 4859/2 4876/12
**email [3]**   4810/24 4885/11 4888/16
**EMATUM [38]**   4846/10 4856/21 4856/22 4859/12 4860/5 4860/10 4862/4 4862/7 4862/10 4862/15 4862/15 4863/8 4863/13 4863/14 4867/8 4867/10 4867/13 4867/25 4890/11 4890/12 4890/19 4890/24 4891/1 4891/2 4891/6 4891/7 4891/12 4891/14 4891/18 4891/20 4891/23 4892/3 4892/6 4892/7 4916/20 4916/22 4917/23 4918/8
**embraces [2]**   4848/22 4867/20
**employ [3]**   4856/9 4865/16 4866/5
**employed [2]**   4838/10 4866/23
**employee [19]**   4862/5 4885/5 4886/13 4887/2 4890/4 4901/1 4901/2 4901/9 4901/17 4901/19 4901/23 4902/1 4902/2 4902/5 4903/1 4903/10 4903/11 4903/22 4903/23
**employees [6]**   4890/10 4891/21 4901/22 4903/15 4903/19 4903/20
**employing [1]**   4856/13
**enemy [1]**   4925/18
**enforcement [8]**   4818/12 4829/6 4829/10 4838/8 4838/9 4838/11 4838/17 4838/21
**engage [1]**   4866/11
**engaged [7]**   4845/9 4867/3 4868/9 4874/1 4874/22 4887/11 4889/9
**engages [1]**   4889/6
**engaging [2]**   4856/18 4893/4
**England [2]**   4863/5 4921/7
**enjoy [1]**   4909/13
**enrichment [1]**   4903/17

**enter [6]**   4874/3 4823/4 4823/12 4834/22 4857/8 4858/10
**entered [7]**   4826/14 4835/3 4841/6 4841/12 4841/15 4858/9 4877/23
**entering [1]**   4834/13
**enterprise [1]**   4921/1
**enters [1]**   4812/22
**entertain [1]**   4907/6
**entertained [1]**   4849/13
**entire [1]**   4832/2
**entirely [1]**   4874/15
**entirety [3]**   4931/3 4931/10 4932/9
**entities [1]**   4891/11
**entitled [4]**   4818/19 4819/21 4906/17 4939/2
**entitles [1]**   4818/17
**entity [11]**   4860/13 4861/6 4885/20 4886/15 4886/18 4886/23 4887/4 4889/8 4889/25 4890/14 4925/1
**equal [2]**   4832/11 4844/12
**equally [4]**   4818/13 4819/24 4832/7 4877/19
**equals [1]**   4818/21
**equipped [1]**   4943/4
**erroneous [1]**   4907/4
**errors [4]**   4922/2 4922/3 4922/4 4922/11
**escort [2]**   4911/2 4948/15
**ESQ [3]**   4810/18 4810/18 4810/19
**essential [4]**   4843/5 4851/19 4871/18 4906/8
**essentially [1]**   4943/21
**establish [19]**   4841/11 4842/15 4844/21 4850/7 4852/4 4853/24 4854/23 4854/25 4855/6 4863/16 4866/16 4867/11 4871/21 4872/17 4875/10 4877/21 4881/4 4882/24 4904/15
**established [12]**   4827/2 4828/20 4842/2 4843/17 4850/15 4851/12 4851/20 4869/8 4871/12 4873/2 4873/14 4904/14
**establishes [2]**   4833/12 4869/3
**estate [2]**   4860/21 4861/14
**ether [1]**   4913/13
**eurobonds [3]**   4863/8 4863/15 4867/8
**evading [1]**   4896/1
**evasive [1]**   4830/14
**event [2]**   4823/23 4906/3
**everyday [1]**   4830/21
**evidence [150]**
**evident [1]**   4814/12
**evil [1]**   4887/23
**Exactly [1]**   4921/10
**examination [2]**   4822/24 4824/3
**examine [2]**   4835/8 4838/7
**examining [1]**   4831/23
**example [8]**   4824/5 4824/10

4825/1 4825/5 4826/9 4852/14 4853/7 4872/13
**except [1]**   4907/24
**exception [6]**   4836/19 4932/15 4944/11 4944/12 4944/16 4945/11
**exceptions [1]**   4946/8
**exchange [17]**   4834/16 4856/12 4862/13 4862/18 4863/7 4863/14 4865/10 4865/15 4865/18 4865/21 4865/25 4866/4 4886/20 4886/21 4886/22 4886/25 4906/18
**exchanged [1]**   4867/9
**exclude [1]**   4919/24
**excluded [1]**   4824/16
**exclusive [5]**   4816/9 4817/4 4817/21 4861/7 4892/2
**exclusively [4]**   4820/2 4823/5 4832/3 4855/4
**excuse [5]**   4821/24 4852/15 4872/14 4895/5 4912/16
**executed [1]**   4895/24
**executing [2]**   4846/13 4847/23
**execution [4]**   4848/7 4853/21 4874/17 4894/16
**exhibit [25]**   4825/2 4826/4 4916/11 4916/14 4916/17 4917/16 4917/20 4927/11 4927/12 4928/6 4930/10 4931/10 4931/25 4934/4 4941/8 4941/10 4941/12 4945/16 4945/19 4945/20 4946/11 4946/12 4946/21 4946/23 4947/24
**Exhibit 15 [4]**   4916/14 4917/20 4927/12 4930/10
**Exhibit 15A [1]**   4927/11
**Exhibit 16 [2]**   4945/20 4946/12
**Exhibit 16A [2]**   4945/19 4946/11
**Exhibit 1949 [1]**   4934/4
**Exhibit 2808-A [1]**   4931/10
**exhibits [9]**   4823/16 4825/13 4825/14 4825/20 4829/5 4829/16 4905/16 4905/21 4927/4
**exist [1]**   4893/13
**existed [9]**   4841/6 4842/9 4842/11 4842/18 4847/6 4852/11 4872/9 4890/21 4892/1
**existence [9]**   4826/5 4827/2 4841/9 4841/25 4842/4 4845/20 4848/10 4858/6 4893/11
**existing [1]**   4894/17
**exists [4]**   4836/20 4891/13 4893/5 4893/7
**exited [1]**   4911/25
**exits [1]**   4948/18
**expectation [1]**   4822/17
**expected [1]**   4849/22
**expedite [1]**   4817/14
**experience [6]**   4827/1

## E

**experience... [5]**    4831/23
 4836/14 4837/2 4838/4 4944/4
**experienced [1]**    4870/4
**expert [5]**    4836/8 4836/10
 4836/20 4837/1 4838/2
**explain [4]**    4867/17 4880/7
 4884/19 4902/9
**explained [15]**    4847/9
 4854/20 4858/10 4858/16
 4870/18 4875/5 4875/7
 4877/18 4884/1 4902/11
 4904/2 4904/5 4904/11
 4904/14 4906/9
**explanatory [1]**    4848/16
**explicit [1]**    4822/17
**express [2]**    4841/16 4887/3
**expression [1]**    4849/12
**expressly [3]**    4817/17
 4819/10 4887/12
**extend [1]**    4939/8
**extent [5]**    4844/4 4844/8
 4927/9 4927/13 4927/25
**eyes [1]**    4863/22

## F

**face [1]**    4830/4
**facilitating [1]**    4881/19
**facility [2]**    4865/14 4866/3
**facsimiles [1]**    4853/14
**fact [46]**    4816/22 4817/11
 4818/16 4820/11 4824/14
 4826/5 4826/8 4826/17
 4826/19 4827/2 4827/3
 4827/20 4828/19 4829/12
 4831/14 4836/13 4838/10
 4842/21 4844/13 4844/19
 4844/24 4849/21 4849/21
 4849/25 4850/6 4851/3 4851/4
 4854/23 4854/25 4855/1
 4856/15 4866/7 4866/8
 4866/25 4867/1 4869/1 4869/4
 4869/10 4869/11 4869/15
 4871/3 4871/4 4874/20
 4880/11 4905/21 4913/23
**factor [3]**    4824/19 4843/6
 4892/3
**factors [4]**    4838/6 4890/21
 4892/2 4892/5
**facts [33]**    4815/14 4816/10
 4816/13 4816/17 4817/5
 4817/6 4817/20 4817/22
 4818/2 4818/7 4823/17 4824/4
 4824/11 4825/10 4825/12
 4826/8 4826/17 4828/15
 4828/17 4828/19 4828/21
 4831/16 4831/21 4836/16
 4839/18 4843/21 4849/12
 4850/5 4850/16 4851/11
 4856/16 4871/11 4873/4
**factual [2]**    4814/4 4830/3
**fail [2]**    4901/9 4901/20
**failed [2]**    4855/20 4904/25
**failing [2]**    4903/6 4903/12
**fails [1]**    4906/11
**fair [4]**    4818/6 4822/4
 4822/8 4929/1

**fairly [1]**    4808/3
**fairness [1]**    4818/9
**faith [11]**    4851/25 4852/4
 4852/6 4852/8 4852/13
 4871/19 4871/22 4871/23
 4872/4 4872/8 4872/12
**faithfully [1]**    4814/11
**falls [1]**    4880/9
**false [23]**    4846/12 4847/18
 4848/2 4848/14 4848/19
 4848/25 4849/5 4849/6
 4849/13 4849/20 4849/25
 4850/6 4851/21 4852/16
 4863/11 4869/6 4869/9
 4871/25 4872/15 4873/1
 4873/4 4873/7 4873/9
**falsely [3]**    4834/3 4835/7
 4849/9
**far [3]**    4921/19 4928/14
 4941/4
**FARR [1]**    4810/16
**fast [1]**    4936/3
**faster [1]**    4936/11
**FATIMA [2]**    4810/21 4811/10
**favor [3]**    4818/4 4831/16
 4892/5
**favorable [3]**    4827/18 4834/2
 4835/6
**fax [1]**    4888/18
**FCA [6]**    4917/9 4920/19
 4920/24 4920/25 4921/3
 4921/6
**FCPA [18]**    4876/21 4880/2
 4881/14 4883/21 4884/5
 4884/17 4884/19 4884/20
 4885/1 4886/22 4887/1 4889/8
 4893/9 4894/21 4895/21
 4897/17 4897/21 4898/11
**FCPA's [2]**    4884/23 4895/9
**fear [2]**    4818/4 4820/14
**February [1]**    4862/5
**February 19 [1]**    4862/5
**federal [8]**    4833/11 4838/11
 4840/16 4840/18 4856/13
 4883/12 4893/1 4909/4
**fee [3]**    4860/5 4916/24
 4918/14
**feelings [3]**    4817/23 4819/19
 4819/25
**fellow [6]**    4906/18 4906/21
 4907/2 4907/4 4907/6 4907/14
**felt [1]**    4826/3
**few [4]**    4826/13 4833/21
 4880/8 4949/5
**fewer [1]**    4832/1
**field [1]**    4836/11
**fiercely [1]**    4914/11
**fifth [3]**    4885/16 4889/20
 4889/21
**figure [1]**    4908/25
**file [1]**    4886/18
**files [1]**    4886/23
**final [11]**    4814/3 4815/6
 4815/11 4818/9 4836/3 4853/3
 4864/7 4873/18 4905/9 4907/9
 4908/15
**finally [3]**    4825/17 4864/3
 4905/8

**finance [8]**    4859/18 4862/14
 4862/17 4902/4 4902/5
 4902/18 4916/25 4918/19
**financial [3]**    4843/4 4851/1
 4852/21
**fine [3]**    4918/1 4930/2
 4932/4
**fire [1]**    4891/10
**firm [1]**    4893/6
**first [43]**    4814/24 4841/5
 4841/9 4841/10 4843/11
 4846/1 4847/5 4847/8 4847/25
 4848/10 4848/11 4848/16
 4857/8 4858/6 4858/7 4866/18
 4866/19 4872/23 4877/23
 4878/6 4879/10 4881/6 4883/1
 4884/18 4885/4 4886/10
 4886/11 4894/7 4894/23
 4894/24 4895/4 4895/13
 4895/16 4895/17 4900/24
 4901/16 4902/21 4916/14
 4917/15 4926/7 4933/1
 4941/18 4941/21
**fiscal [1]**    4891/16
**five [3]**    4938/2 4938/16
 4940/10
**fix [1]**    4897/13
**flew [1]**    4863/5
**flip [1]**    4913/8
**Floor [2]**    4923/18 4931/9
**focused [2]**    4905/18 4913/22
**folder [1]**    4911/13
**folks [4]**    4919/17 4921/11
 4944/23 4949/9
**follow [4]**    4815/21 4824/24
 4854/5 4874/7
**followed [1]**    4814/13
**following [21]**    4837/6 4847/4
 4858/23 4859/4 4866/16
 4866/22 4877/22 4878/11
 4881/4 4882/24 4885/2
 4890/21 4895/11 4897/1
 4900/23 4901/15 4902/21
 4903/3 4916/16 4946/24
 4947/6
**follows [6]**    4846/3 4847/16
 4865/25 4871/19 4879/13
 4941/14
**foolishness [1]**    4873/15
**foot [2]**    4824/6 4824/9
**footprints [2]**    4826/20
 4826/23
**forbids [3]**    4840/2 4840/5
 4870/22
**foreign [43]**    4846/15 4847/21
 4853/8 4853/13 4853/15
 4876/20 4876/23 4878/12
 4878/14 4880/3 4881/15
 4883/12 4883/21 4884/6
 4885/19 4885/22 4886/1
 4886/3 4886/4 4888/1 4888/3
 4888/14 4889/6 4889/7
 4889/20 4889/24 4890/2
 4890/3 4890/4 4890/9 4890/12
 4890/14 4890/15 4892/10
 4892/13 4893/18 4893/19
 4893/20 4895/1 4896/7
 4900/11 4900/14 4920/25

## F

**foreperson [12]**   4905/23 4907/18 4907/18 4908/16 4908/19 4910/12 4910/13 4910/20 4910/22 4941/14 4941/17 4947/7
**foresee [1]**   4874/2
**foreseeable [1]**   4853/21
**foreseen [2]**   4854/6 4874/9
**forget [1]**   4949/3
**forgot [1]**   4840/11
**form [16]**   4826/4 4829/17 4836/16 4877/10 4878/24 4879/18 4879/19 4882/3 4882/16 4883/8 4883/10 4883/11 4883/14 4886/24 4887/14 4889/1
**formal [3]**   4841/16 4887/8 4887/14
**formally [1]**   4838/24
**formed [1]**   4864/4
**forth [3]**   4825/15 4835/20 4857/5
**forthright [1]**   4830/14
**forwarded [1]**   4862/11
**four [16]**   4840/10 4840/12 4857/7 4858/3 4876/7 4876/8 4877/19 4877/21 4878/3 4878/5 4879/6 4879/11 4881/23 4884/1 4884/19 4900/14
**fourth [7]**   4857/13 4864/6 4864/7 4885/13 4888/22 4888/23 4904/3
**frame [1]**   4914/4
**frank [2]**   4810/19 4830/14
**fraud [69]**   4839/4 4839/5 4845/25 4846/1 4846/3 4846/18 4846/21 4846/23 4847/1 4847/2 4847/3 4847/6 4847/11 4847/12 4847/14 4847/25 4848/22 4851/21 4851/22 4852/10 4852/19 4854/14 4854/17 4855/6 4856/2 4856/3 4856/5 4856/20 4857/2 4857/4 4857/6 4857/9 4857/16 4857/18 4857/21 4857/23 4858/2 4858/5 4858/9 4865/4 4865/7 4866/12 4866/15 4867/4 4867/7 4867/20 4867/20 4871/21 4871/25 4872/1 4874/25 4875/3 4875/10 4877/2 4877/4 4878/16 4878/17 4880/5 4880/6 4881/16 4881/17 4883/23 4883/23 4884/9 4884/10 4903/25 4904/1 4904/3 4904/4
**fraudulent [36]**   4846/12 4847/18 4848/2 4848/5 4848/14 4848/20 4849/9 4849/14 4849/20 4850/4 4850/6 4851/6 4851/9 4851/23 4851/24 4852/5 4852/15 4852/25 4853/16 4866/18 4867/24 4868/3 4868/4 4868/6 4868/9 4868/23 4871/6 4871/9 4871/23 4872/1 4872/3 4872/14 4872/21 4874/13 4874/20 4874/23
**free [1]**   4947/20
**freedom [1]**   4835/5
**Frequently [1]**   4864/18
**friendly [1]**   4844/17
**friends [2]**   4923/18 4931/8
**front [1]**   4917/19
**full [5]**   4849/17 4908/8 4936/21 4936/24 4937/1
**fullest [1]**   4908/11
**fully [1]**   4843/25
**function [5]**   4814/8 4816/16 4823/6 4890/15 4906/13
**functions [2]**   4891/13 4891/25
**funded [1]**   4859/12
**funds [19]**   4853/12 4876/15 4877/8 4878/7 4878/19 4878/22 4879/21 4879/21 4880/11 4880/20 4881/1 4881/8 4881/24 4882/3 4882/11 4882/14 4882/22 4883/3 4883/7
**furnished [1]**   4827/13
**furtherance [19]**   4853/5 4855/8 4855/18 4855/21 4857/14 4858/25 4863/21 4864/6 4864/14 4873/22 4875/12 4875/15 4875/19 4875/25 4885/11 4888/11 4904/17 4904/24 4905/1
**furthered [1]**   4875/23
**furthering [2]**   4842/25 4845/10
**Furthermore [2]**   4816/20 4844/3

## G

**gain [3]**   4834/5 4848/24 4850/13
**GALLAGHER [1]**   4810/16
**gap [1]**   4927/16
**gather [1]**   4909/18
**gender [1]**   4817/25
**general [8]**   4814/24 4815/8 4833/18 4848/22 4867/20 4895/25 4905/8 4905/10
**generally [1]**   4857/2
**generate [1]**   4924/13
**generating [1]**   4924/15
**genius [1]**   4914/2
**gentlemen [10]**   4811/15 4812/23 4814/1 4814/2 4817/20 4911/11 4912/2 4939/8 4948/13 4949/11
**gift [21]**   4885/14 4885/17 4888/25 4889/2 4889/14 4889/18 4889/19 4890/1 4894/3 4894/12 4894/21 4894/22 4894/24 4901/17 4901/19 4902/24 4902/25 4903/1 4903/2 4903/4 4903/9
**given [18]**   4823/18 4824/25 4825/2 4825/19 4833/18 4837/2 4851/9 4871/8 4885/22 4889/14 4889/19 4890/1

**glad [1]**   4914/17
**gmail.com [1]**   4810/24
**govern [1]**   4814/25
**government [185]**
**government's [4]**   4898/4 4917/21 4942/7 4942/19
**governs [1]**   4814/22
**grace [1]**   4914/1
**gracious [1]**   4912/23
**graciousness [1]**   4913/17
**grand [1]**   4828/3
**great [3]**   4833/1 4833/16 4835/9
**greater [4]**   4818/18 4838/13 4841/1 4855/2
**gross [1]**   4883/15
**grounds [1]**   4838/17
**group [1]**   4926/8
**guarantee [1]**   4835/22
**guarantees [2]**   4916/25 4918/19
**guess [2]**   4909/5 4924/12
**guidance [2]**   4944/8 4947/1
**guided [2]**   4820/6 4911/23
**guilt [11]**   4820/9 4820/18 4820/21 4821/3 4821/12 4822/1 4822/6 4822/10 4833/12 4834/25 4844/6
**guilty [38]**   4820/11 4820/19 4820/23 4820/25 4822/7 4822/11 4822/20 4823/7 4829/13 4834/13 4834/17 4839/8 4839/8 4839/9 4839/9 4840/19 4847/23 4854/15 4873/13 4875/1 4879/6 4880/24 4882/20 4884/25 4895/10 4904/8 4906/10 4906/11 4906/15 4907/11 4907/11 4941/16 4941/24 4942/1 4942/5 4943/9 4945/22 4946/14
**gullible [2]**   4870/2 4870/3
**guys [5]**   4912/14 4914/3 4914/19 4925/7 4929/16
**GX2808 [1]**   4931/17
**GX2808-A [1]**   4931/17
**GX2808A [1]**   4932/2

## H

**half [4]**   4849/5 4849/11 4850/4 4929/9
**half-truth [1]**   4849/5
**half-truths [2]**   4849/11 4850/4
**hall [1]**   4925/12
**hand [7]**   4820/20 4822/8 4905/25 4929/15 4930/6 4930/23 4939/14
**handed [1]**   4937/5
**handing [1]**   4907/19
**handwritten [8]**   4937/4 4937/6 4937/7 4937/8 4937/12 4937/13 4937/18 4939/12
**Hang [1]**   4943/15
**HAQUE [2]**   4810/21 4811/11
**hard [8]**   4919/20 4923/10

## H

**hard... [6]**   4923/12 4930/21
4931/7 4931/8 4931/19 4932/2
**harmed [1]**   4895/3
**harmless [1]**   4864/19
**heads [1]**   4920/2
**heard [17]**   4815/10 4825/20
4826/4 4832/8 4832/24
4835/18 4836/9 4838/9 4840/8
4855/10 4922/13 4936/20
4938/23 4939/2 4939/3
4939/16 4941/1
**held [3]**   4859/7 4859/21
4860/1
**Hello [1]**   4936/25
**herself [3]**   4868/13 4868/15
4901/3
**hesitate [5]**   4820/18 4820/22
4821/18 4821/22 4907/3
**hiding [1]**   4830/15
**high [3]**   4873/3 4873/4
4893/11
**highest [1]**   4913/21
**himself [9]**   4844/18 4852/25
4855/17 4863/19 4868/13
4868/15 4872/20 4901/3
4904/22
**HIRAL [3]**   4810/14 4811/9
4916/6
**holding [2]**   4902/13 4902/16
**holidays [1]**   4949/5
**honest [4]**   4852/1 4852/13
4872/4 4872/12
**honestly [2]**   4849/13 4908/12
**honor [104]**
**honorable [3]**   4810/9 4811/3
4913/22
**hoped [1]**   4834/2
**hopefully [3]**   4910/6 4921/12
4949/8
**hopes [1]**   4834/5
**horse [1]**   4910/1
**hostility [1]**   4830/23
**hours [2]**   4932/17 4939/7
**house [3]**   4824/7 4824/9
4826/22
**Howard [1]**   4947/8
**human [1]**   4848/23

## I

**identification [1]**   4825/14
**identified [4]**   4902/13
4932/19 4938/17 4938/19
**identities [1]**   4843/22
**ignorance [1]**   4839/16
**II [5]**   4810/9 4811/4 4876/23
4945/18 4948/3
**III [1]**   4877/2
**illegal [1]**   4845/10
**immaterial [1]**   4849/19
**impartial [2]**   4822/4 4822/8
**impartiality [1]**   4818/10
**impartially [1]**   4818/3
**impeached [1]**   4831/19
**implicate [1]**   4839/13
**implicit [2]**   4822/17 4887/4
**implicitly [1]**   4887/12

**importance [3]**   4821/18
4830/9 4830/21
**important [8]**   4818/11
4818/14 4821/22 4830/22
4843/15 4850/2 4913/21
4938/9
**impose [2]**   4832/17 4836/2
**imposed [2]**   4823/10 4836/4
**imposes [1]**   4821/6
**imposing [2]**   4823/5 4835/25
**impress [1]**   4830/13
**improper [7]**   4817/23 4817/25
4819/14 4819/17 4819/24
4886/6 4893/21
**improved [1]**   4863/3
**inaccurate [2]**   4852/2 4872/6
**inadvertence [1]**   4840/7
**inadvertently [1]**   4870/20
**inception [1]**   4868/19
**incidental [1]**   4874/18
**include [3]**   4886/15 4901/24
4902/3
**includes [5]**   4853/11 4875/21
4879/15 4888/15 4894/16
**including [13]**   4862/19
4883/15 4886/23 4891/16
4902/3 4902/4 4902/14
4903/21 4916/21 4916/23
4917/24 4918/8 4934/6
**inclusive [3]**   4846/5 4856/6
4876/11
**inconvenience [1]**   4829/19
**incorporated [1]**   4824/3
**increases [1]**   4841/2
**indeed [3]**   4833/10 4840/19
4851/7
**independent [2]**   4840/16
4843/17
**indicate [3]**   4817/5 4817/6
4819/11
**indicated [3]**   4819/9 4862/8
4902/7
**indication [1]**   4817/8
**indicia [1]**   4892/1
**indicted [3]**   4827/22 4827/23
4828/1
**indictment [31]**   4821/1
4827/9 4827/11 4827/12
4827/12 4827/14 4827/15
4827/21 4828/8 4828/12
4833/1 4838/25 4839/1 4839/3
4841/13 4842/18 4843/9
4845/23 4846/2 4848/3 4848/9
4857/13 4857/15 4858/21
4858/23 4863/18 4864/1
4864/15 4865/9 4875/15
4902/8
**indirectly [8]**   4856/23
4865/13 4866/2 4883/14
4885/22 4889/7 4890/2
4892/13
**individual [30]**   4818/20
4841/2 4848/24 4884/25
4885/4 4885/7 4885/9 4885/13
4885/20 4886/12 4887/20
4888/8 4888/24 4889/6
4889/25 4892/11 4894/13
4894/25 4895/10 4895/13

4895/15 4895/18 4896/4
4900/22 4901/14 4901/16
4902/10 4906/21 4906/24
4912/10
**individual's [1]**   4892/9
**individuals [7]**   4836/10
4847/1 4858/1 4867/21 4895/6
4902/13 4902/16
**induce [4]**   4863/13 4886/3
4888/2 4893/19
**infer [4]**   4826/21 4826/24
4826/25 4842/3
**inference [4]**   4817/11
4827/18 4832/12 4844/1
**inferences [4]**   4816/13
4843/19 4851/16 4871/16
**inferred [2]**   4843/20 4887/16
**influence [5]**   4823/4 4823/11
4886/1 4888/2 4893/17
**inform [1]**   4910/21
**informal [1]**   4887/8
**information [5]**   4863/11
4869/17 4869/18 4909/16
4943/2
**informed [1]**   4843/25
**informs [1]**   4830/19
**ingenuity [1]**   4848/23
**inhabitants [1]**   4891/3
**initial [1]**   4924/25
**innocence [1]**   4819/22
**innocent [7]**   4821/6 4821/10
4822/19 4822/22 4864/17
4864/18 4874/15
**inside [2]**   4876/16 4876/17
**instead [2]**   4889/15 4902/18
**instruct [15]**   4814/15
4814/21 4814/24 4815/3
4815/12 4829/1 4832/10
4835/22 4840/9 4846/1
4857/20 4880/8 4888/19
4904/20 4941/25
**instructed [13]**   4838/6
4843/4 4850/22 4851/18
4852/9 4857/2 4863/24 4865/1
4872/8 4888/4 4896/5 4922/15
4942/14
**instruction [7]**   4815/22
4824/21 4888/5 4897/5
4897/18 4897/19 4942/22
**instructions [31]**   4814/23
4815/13 4815/21 4815/21
4815/23 4816/21 4824/25
4825/22 4832/16 4845/17
4847/10 4850/23 4857/3
4877/19 4896/6 4897/10
4898/8 4905/10 4906/9
4909/25 4910/5 4942/16
4942/23 4944/3 4944/5 4944/8
4944/22 4945/2 4945/25
4946/7 4946/16
**instrument [10]**   4879/14
4879/14 4880/20 4881/8
4881/24 4882/2 4882/11
4882/14 4883/3 4883/7
**instrumentalities [3]**
4856/23 4873/21 4874/5
**instrumentality [16]**   4865/13
4866/2 4873/16 4873/25

**I**

**instrumentality... [12]** 4885/10 4888/10 4888/18 4888/21 4890/5 4890/7 4890/13 4890/13 4890/20 4892/4 4892/6 4892/8

**instruments [8]** 4876/15 4877/8 4878/7 4878/19 4878/22 4879/18 4881/1 4882/22

**intelligence [2]** 4831/4 4869/25

**intend [1]** 4947/16

**intended [14]** 4817/13 4817/14 4825/8 4850/13 4854/7 4862/3 4870/1 4872/19 4874/9 4885/24 4888/2 4889/5 4893/16 4894/13

**intending [1]** 4847/16

**intent [35]** 4839/14 4840/2 4845/5 4848/6 4850/18 4850/21 4850/24 4850/25 4851/3 4851/6 4851/10 4851/11 4851/23 4852/5 4852/18 4852/20 4852/22 4870/11 4870/12 4870/16 4870/22 4870/25 4871/1 4871/3 4871/6 4871/9 4871/11 4871/19 4871/23 4872/2 4876/19 4878/10 4880/23 4881/2 4881/12

**intention [3]** 4842/24 4849/10 4863/13

**intentionally [8]** 4839/16 4839/20 4839/21 4845/8 4846/8 4876/14 4881/17 4887/23

**interest [12]** 4830/25 4831/9 4834/3 4835/3 4838/5 4838/18 4843/4 4843/6 4862/16 4865/22 4890/24 4903/18

**interested [2]** 4814/12 4944/19

**interests [1]** 4844/20

**interfere [2]** 4820/1 4820/15

**intermediary [2]** 4901/4 4902/25

**internal [7]** 4884/5 4884/21 4895/9 4895/14 4895/16 4895/19 4895/22

**international [5]** 4848/8 4853/4 4859/13 4863/5 4880/15

**interstate [27]** 4846/15 4847/21 4848/8 4853/4 4856/24 4865/14 4866/3 4873/16 4873/22 4873/25 4874/3 4874/5 4874/7 4874/12 4874/12 4874/14 4874/16 4874/19 4874/21 4885/11 4888/6 4888/10 4888/12 4888/16 4888/17 4888/17 4888/21

**introduced [1]** 4831/15

**invade [1]** 4816/15

**investigative [1]** 4829/6

**investment [3]** 4867/25

4869/12 4872/13

**investments [1]** 4856/22

**investor [4]** 4850/2 4862/20 4869/16 4870/4

**investor's [2]** 4869/12 4869/19

**investors [12]** 4846/9 4846/9 4852/15 4856/20 4856/21 4863/3 4863/7 4863/11 4865/23 4868/20 4870/2 4872/14

**invited [1]** 4945/12

**invoice [7]** 4860/20 4861/1 4861/5 4861/11 4861/14 4861/19 4861/24

**involved [14]** 4832/25 4842/5 4853/20 4854/9 4868/18 4868/24 4873/24 4877/9 4878/23 4882/3 4882/14 4883/7 4883/9 4887/17

**involves [2]** 4851/5 4871/5

**involving [8]** 4876/23 4878/14 4880/3 4881/15 4883/22 4884/6 4900/15 4900/17

**Island [1]** 4855/11

**issue [11]** 4819/14 4820/4 4823/1 4825/23 4828/15 4829/3 4836/16 4839/12 4844/5 4906/5 4923/3

**issuer [15]** 4885/5 4885/6 4886/7 4886/10 4886/13 4886/14 4886/14 4886/15 4886/22 4886/25 4894/7 4895/14 4895/19 4895/20 4895/24

**issues [8]** 4812/15 4814/4 4816/15 4830/3 4907/10 4908/9 4908/12 4912/5

**item [3]** 4917/22 4921/21 4923/8

**item 1 [1]** 4917/22

**items [3]** 4874/11 4916/16 4920/13

**itself [9]** 4827/14 4827/15 4827/16 4833/11 4853/16 4855/16 4865/3 4904/21 4922/5

**IV [2]** 4877/1 4877/4

**J**

**JACKSON [15]** 4810/19 4811/17 4911/6 4913/10 4922/22 4923/20 4924/4 4926/1 4930/24 4930/24 4931/14 4933/22 4936/4 4939/12 4948/20

**January [3]** 4846/4 4856/5 4876/10

**January 2011 [1]** 4846/4

**January 2013 [1]** 4856/5

**JEAN [10]** 4810/6 4814/19 4827/10 4846/6 4856/8 4859/2 4876/12 4917/4 4919/11 4936/15

**Jersey [1]** 4853/7

**JFK [1]** 4863/5

**job [1]** 4903/19

**Joe [3]** 4924/23 4924/23 4924/24

**join [1]** 4840/14

**joined [4]** 4842/22 4843/11 4843/13 4844/3

**joining [1]** 4917/15

**joint [3]** 4887/6 4887/7 4887/8

**joke [1]** 4910/1

**judge [15]** 4810/9 4835/15 4835/18 4899/3 4899/5 4912/20 4914/2 4914/25 4929/21 4945/13 4945/19 4946/4 4948/4 4949/2 4949/6

**judges [4]** 4816/10 4817/4 4817/21 4819/12

**judgment [4]** 4816/10 4818/3 4832/15 4906/24

**judgments [1]** 4830/5

**judicially [1]** 4823/17

**July [3]** 4859/10 4859/14 4859/19

**July 21 [1]** 4859/14

**July 25 [1]** 4859/19

**July 5 [1]** 4859/10

**June [1]** 4859/5

**June 26 [1]** 4859/5

**juries [1]** 4830/22

**juror [1]** 4906/16

**jurors [23]** 4814/3 4816/16 4820/5 4823/9 4906/17 4906/18 4906/21 4907/2 4907/4 4907/6 4907/14 4908/11 4911/2 4911/3 4911/21 4911/22 4914/2 4944/18 4948/5 4948/5 4948/10 4948/11 4948/15

**jurors' [1]** 4930/10

**jury [125]**

**jury's [11]** 4927/12 4934/5 4934/20 4936/20 4938/3 4939/22 4940/4 4940/20 4945/19 4946/11 4948/4

**justice [1]** 4818/21

**justifies [1]** 4853/24

**justify [1]** 4844/1

**K**

**KATHERINE [2]** 4810/15 4811/10

**keep [11]** 4824/19 4845/14 4845/15 4845/16 4859/16 4862/22 4865/6 4928/15 4928/24 4929/16 4940/3

**key [3]** 4843/12 4891/7 4891/10

**kickback [8]** 4901/17 4901/19 4902/24 4902/25 4903/1 4903/2 4903/4 4903/9

**kickbacks [1]** 4862/2

**killed [1]** 4829/23

**kinds [2]** 4845/18 4867/23

**Kings [1]** 4855/10

**knowing [12]** 4845/11 4877/8 4877/11 4878/22 4878/25 4882/2 4882/4 4882/14 4882/16 4882/21 4892/12 4893/2

## K

**knowingly [34]**    4839/15
4839/15 4839/18 4841/8
4842/16 4842/22 4843/11
4846/7 4847/6 4848/4 4850/20
4850/23 4850/25 4851/2
4852/19 4856/8 4857/10
4858/14 4858/16 4858/21
4863/20 4864/13 4870/16
4870/18 4870/21 4871/1
4871/2 4872/23 4873/20
4876/13 4877/25 4895/15
4896/2 4896/4
**knowledge [26]**    4829/2 4833/8
4836/12 4836/14 4839/14
4840/1 4842/23 4843/20
4844/1 4844/22 4844/24
4845/4 4848/5 4851/6 4851/11
4854/4 4870/12 4871/6
4871/11 4873/2 4873/11
4873/13 4874/6 4883/6
4883/17 4893/10
**known [5]**    4835/18 4843/22
4849/7 4855/10 4855/11
**knows [1]**    4826/2
**KUNTZ [4]**    4810/9 4811/4
4945/18 4948/3

## L

**labeled [1]**    4910/19
**lack [9]**    4819/16 4820/3
4828/25 4831/3 4831/5 4831/6
4832/11 4852/6 4871/23
**ladies [10]**    4811/15 4812/23
4813/2 4814/2 4817/20
4911/11 4912/2 4939/7
4948/13 4949/11
**lagged [1]**    4814/12
**language [7]**    4898/2 4898/14
4898/16 4898/20 4898/24
4898/25 4945/14
**launder [1]**    4877/24
**laundering [15]**    4839/6
4876/7 4876/9 4877/17
4877/20 4878/4 4879/10
4880/16 4881/22 4884/2
4898/9 4904/7 4904/10
4904/16 4905/7
**law [86]**
**lawful [4]**    4864/17 4886/4
4887/25 4893/20
**laws [12]**    4818/12 4840/18
4870/3 4871/1 4884/8 4896/8
4900/12 4900/16 4900/16
4900/18 4901/24 4902/11
**lawyer [4]**    4823/25 4824/2
4824/6 4940/14
**lawyer's [1]**    4824/15
**lawyers [10]**    4815/11 4816/18
4825/6 4825/7 4909/23 4910/1
4910/2 4910/21 4913/13
4914/19
**lawyers' [1]**    4825/11
**learning [1]**    4873/9
**least [13]**    4843/14 4845/4
4845/20 4855/9 4857/12
4857/13 4858/20 4858/22

4864/12 4864/18 4904/18
4914/20 4923/5
**leave [3]**    4939/7 4948/5
4949/4
**left [1]**    4912/3
**legal [3]**    4815/4 4815/18
4815/19
**legitimate [1]**    4838/15
**length [1]**    4892/1
**less [7]**    4818/19 4827/6
4838/12 4851/17 4860/5
4862/9 4949/9
**lesser [1]**    4838/13
**letter [8]**    4835/18 4835/19
4835/22 4835/25 4836/1
4897/5 4934/7 4934/11
**letting [2]**    4913/13 4914/2
**level [3]**    4835/17 4863/12
4913/21
**liability [1]**    4844/7
**liable [1]**    4889/8
**lie [1]**    4834/6
**lies [1]**    4830/10
**life [3]**    4821/19 4829/9
4905/19
**light [2]**    4856/17 4866/9
**lighter [1]**    4835/6
**likelihood [2]**    4841/3
4869/15
**likely [8]**    4855/1 4855/7
4855/21 4875/12 4875/24
4904/17 4905/1 4945/11
**Likewise [1]**    4886/23
**LILLIAN [2]**    4810/20 4811/10
**limited [4]**    4824/23 4894/15
4912/24 4943/3
**limiting [1]**    4824/24
**LINDA [1]**    4810/23
**LindaDan226 [1]**    4810/24
**line [7]**    4920/2 4944/6
4944/6 4945/7 4945/7 4945/8
4945/8
**lines [1]**    4945/5
**linked [1]**    4923/15
**list [9]**    4908/23 4917/12
4923/23 4924/3 4924/7
4925/16 4936/1 4936/6 4936/8
**listed [1]**    4892/5
**listen [2]**    4814/9 4906/20
**listening [1]**    4897/3
**listing [1]**    4908/21
**literally [1]**    4913/24
**litigated [2]**    4914/11 4945/7
**litigation [1]**    4818/19
**LLP [1]**    4810/16
**loan [17]**    4859/6 4859/20
4859/25 4860/5 4860/10
4862/10 4862/15 4862/16
4863/8 4863/14 4867/8
4916/22 4918/7 4934/6 4934/7
4934/11 4934/12
**locate [1]**    4905/14
**location [5]**    4877/13 4879/1
4882/6 4882/18 4883/19
**locked [1]**    4913/25
**logical [3]**    4826/18 4851/16
4871/16
**logically [1]**    4826/24

**London [3]**    4853/9 4862/20
4863/5
**lose [2]**    4852/12 4872/10
**loss [5]**    4850/14 4851/1
4852/21 4852/21 4853/1
**loud [3]**    4916/18 4917/14
4947/25
**louder [1]**    4842/6
**low [1]**    4913/3
**lower [1]**    4835/23
**lunch [5]**    4909/3 4909/5
4911/4 4911/23 4914/22
**lunches [1]**    4913/14
**lying [1]**    4833/25

## M

**M-E-N-S [1]**    4839/13
**machine [1]**    4888/18
**Madam [1]**    4900/3
**mail [11]**    4854/3 4859/15
4862/2 4862/12 4862/13
4862/16 4862/22 4862/25
4913/1 4913/3 4913/6
**mailed [1]**    4862/6
**mailing [1]**    4873/24
**mails [8]**    4853/14 4856/24
4865/14 4866/3 4873/20
4874/4 4885/10 4888/10
**main [2]**    4911/2 4911/22
**maintain [1]**    4895/22
**major [2]**    4844/10 4844/11
**majority [1]**    4890/24
**MAM [18]**    4846/10 4890/11
4890/12 4890/19 4890/24
4891/2 4891/6 4891/12
4891/15 4891/21 4891/23
4892/3 4892/6 4892/7 4916/21
4916/22 4917/24 4918/8
**MAM's [3]**    4891/1 4891/7
4891/18
**managed [1]**    4926/22
**managements [1]**    4895/25
**manifestations [2]**    4851/13
4871/13
**manipulative [3]**    4856/10
4865/19 4867/23
**manner [3]**    4821/18 4830/17
4849/18
**March [8]**    4861/4 4862/11
4862/16 4862/21 4862/22
4862/25 4863/4 4863/9
**March 11 [1]**    4862/16
**March 14 [2]**    4862/25 4863/4
**March 15 [1]**    4863/9
**March 24 [1]**    4862/22
**March 31 [1]**    4861/4
**March 4 [1]**    4862/11
**March 5 [1]**    4862/21
**MARGARET [2]**    4810/14 4811/9
**mark [4]**    4810/13 4811/9
4916/6 4941/8
**marked [12]**    4825/14 4916/14
4916/17 4917/16 4927/12
4931/7 4931/17 4941/12
4945/19 4946/12 4946/25
4948/4
**market [1]**    4859/13
**masters [1]**    4913/7

## M

**material [18]**  4849/12
4849/21 4849/21 4850/5
4850/6 4856/15 4856/16
4866/7 4866/8 4866/25 4867/1
4869/1 4869/10 4869/11
4869/14 4869/21 4869/25
4874/13
**materially [2]**  4846/11
4875/23
**materials [3]**  4825/15 4927/9
4927/18
**matter [18]**  4818/13 4828/1
4829/3 4830/8 4832/10
4849/21 4852/22 4870/1
4870/5 4872/16 4880/9 4890/7
4894/20 4908/6 4908/7 4908/7
4909/22 4912/13
**matters [4]**  4815/18 4817/14
4830/21 4891/16
**maximum [1]**  4836/3
**McLEOD [3]**  4810/22 4812/12
4812/13
**mean [8]**  4817/5 4817/6
4831/16 4838/11 4854/1
4912/19 4922/4 4931/16
**meaning [2]**  4850/22 4887/3
**meaningfully [1]**  4869/19
**means [44]**  4839/25 4841/19
4846/11 4846/14 4847/18
4847/20 4848/13 4848/19
4848/23 4849/24 4850/24
4852/19 4854/25 4855/2
4856/23 4858/10 4858/16
4865/13 4866/2 4867/21
4869/19 4870/18 4870/21
4871/1 4873/20 4874/3 4874/7
4874/10 4874/12 4874/14
4881/17 4883/13 4885/10
4887/25 4888/1 4888/10
4888/12 4888/17 4888/20
4890/3 4920/24 4924/3
4935/24 4942/5
**measure [1]**  4927/16
**measured [1]**  4844/7
**mechanical [1]**  4810/25
**mechanics [1]**  4910/25
**media [1]**  4907/25
**meet [2]**  4863/13 4890/17
**meeting [1]**  4863/9
**meetings [2]**  4862/20 4863/7
**MEHTA [3]**  4810/14 4811/9
4916/6
**Mellon [2]**  4860/7 4860/11
**member [14]**  4841/8 4842/16
4842/21 4843/8 4843/21
4843/23 4844/8 4844/17
4845/1 4847/7 4857/11
4858/15 4858/17 4878/1
**members [8]**  4816/9 4838/23
4841/15 4842/19 4844/16
4857/11 4863/23 4908/2
**membership [3]**  4842/13
4844/21 4858/12
**memory [1]**  4831/3
**mens [1]**  4839/13
**mention [1]**  4835/19

**mentioned [2]**  4829/4
**mere [3]**  4844/15 4844/18
4844/22
**merely [4]**  4827/15 4844/25
4849/2 4873/14
**met [3]**  4820/21 4841/15
4894/2
**method [1]**  4887/25
**methodically [1]**  4814/6
**MICHAEL [6]**  4810/18 4811/22
4929/14 4929/19 4934/15
4934/15
**might [4]**  4819/25 4850/2
4905/14 4929/12
**million [13]**  4859/6 4859/17
4859/20 4859/25 4860/5
4860/6 4860/10 4861/5 4861/9
4861/14 4861/17 4862/9
4862/9
**mind [7]**  4816/23 4835/2
4851/5 4852/7 4864/16 4871/5
4893/2
**minister [24]**  4859/17
4862/17 4902/3 4902/3 4902/4
4902/4 4902/10 4902/11
4902/17 4902/17 4902/20
4902/20 4902/22 4902/23
4902/23 4902/23 4903/3
4903/4 4903/5 4903/5 4903/8
4903/9 4916/25 4918/19
**ministers [4]**  4902/14
4902/15 4903/22 4903/22
**Ministry [1]**  4862/14
**minor [2]**  4844/12 4868/19
**minute [4]**  4845/13 4910/3
4943/15 4945/15
**minutes [9]**  4826/13 4908/25
4910/4 4910/4 4926/10 4938/2
4938/16 4940/10 4949/8
**misleading [7]**  4851/23
4856/18 4863/11 4866/10
4867/2 4869/2 4872/2
**misrepresentation [4]**  4869/1
4869/13 4869/24 4870/1
**misrepresentations [1]**
4869/5
**missing [1]**  4922/8
**misstated [2]**  4869/10
4869/15
**misstatement [1]**  4869/21
**mistake [4]**  4839/17 4839/24
4840/7 4881/18
**mistakenly [1]**  4870/19
**mistresses [1]**  4913/7
**misuse [1]**  4888/3
**mix [2]**  4869/17 4869/18
**modify [1]**  4946/1
**MOESER [2]**  4810/14 4811/9
**moment [7]**  4819/24 4870/11
4902/9 4914/20 4928/7 4928/9
4947/4
**momentarily [1]**  4941/13
**moments [1]**  4880/8
**Monday [4]**  4909/14 4947/5
4948/6 4949/13
**mondo [1]**  4925/16
**monetary [18]**  4876/15 4877/8
4878/7 4878/19 4878/22

4879/14 4879/14 4880/19
4881/1 4881/8 4881/24 4882/2
4882/10 4882/14 4882/22
4883/3 4883/7 4901/6
**money [39]**  4839/5 4846/10
4847/18 4848/1 4848/13
4848/19 4849/2 4850/8
4852/12 4852/17 4854/2
4872/11 4872/15 4876/7
4876/9 4877/17 4877/20
4877/24 4878/4 4879/10
4879/17 4879/21 4880/16
4881/22 4884/1 4885/14
4885/17 4888/25 4889/23
4898/9 4901/5 4901/5 4901/7
4901/8 4903/17 4904/7
4904/10 4904/15 4905/6
**monopoly [1]**  4891/13
**Moreover [3]**  4843/24 4844/24
4894/14
**morning [17]**  4811/12 4811/13
4811/19 4811/20 4811/21
4811/23 4811/25 4812/3
4812/5 4812/7 4812/10
4812/11 4812/13 4812/23
4826/11 4909/14 4947/5
**most [4]**  4831/24 4854/8
4910/9 4925/11
**motivated [1]**  4834/5
**motivation [2]**  4834/6 4834/8
**motive [2]**  4835/7 4887/24
**moves [1]**  4830/19
**Mozambican [11]**  4861/6
4862/13 4876/24 4878/15
4880/4 4881/16 4883/23
4884/8 4897/5 4897/6 4901/24
**Mozambique [18]**  4860/21
4861/15 4890/8 4890/20
4890/23 4891/3 4891/4
4891/19 4891/22 4892/4
4896/8 4900/12 4900/16
4900/17 4901/25 4902/1
4902/14 4903/23
**Mozambique's [3]**  4862/17
4863/2 4863/12
**Mr. Allam's [1]**  4923/8
**Mr. Bini [11]**  4921/23 4924/1
4924/11 4930/19 4931/12
4933/12 4933/13 4933/15
4934/1 4934/9 4943/12
**Mr. Boustani [5]**  4811/18
4838/25 4839/4 4914/14
4916/10
**Mr. Boustani's [1]**  4898/10
**Mr. Jackson [12]**  4911/6
4922/22 4923/20 4924/4
4926/1 4930/24 4930/24
4931/14 4933/22 4936/4
4939/12 4948/20
**Mr. Jean [2]**  4814/19 4827/10
**Mr. Schachter [7]**  4923/20
4924/4 4931/23 4932/9
4933/23 4936/4 4938/21
**Mr. Singh [1]**  4921/3
**must [111]**
**mutual [1]**  4841/22

## N

**Najib [2]**   4862/2 4930/21
**Najib's [1]**   4930/13
**name [6]**   4818/16 4905/24 4916/4 4924/7 4924/18 4924/25
**named [3]**   4827/20 4827/22 4827/25
**namely [3]**   4841/6 4883/20 4884/3
**names [2]**   4832/8 4844/20
**Nassau [1]**   4855/12
**nation [7]**   4876/23 4878/14 4880/3 4881/15 4883/21 4884/6 4900/15
**national [7]**   4817/24 4819/20 4865/15 4865/17 4866/4 4891/5 4949/5
**naturally [1]**   4874/3
**nature [9]**   4819/25 4833/15 4842/2 4848/6 4877/13 4879/1 4882/5 4882/18 4883/19
**near [2]**   4826/22 4828/11
**necessarily [4]**   4831/16 4838/12 4844/20 4883/11
**necessary [15]**   4828/13 4850/12 4853/19 4854/8 4856/16 4865/21 4866/8 4867/11 4868/21 4873/23 4874/11 4889/4 4889/13 4894/9 4898/10
**need [43]**   4828/23 4841/14 4841/16 4843/22 4843/23 4843/24 4844/3 4846/22 4849/15 4850/14 4853/16 4854/14 4855/15 4857/22 4859/17 4863/16 4863/18 4863/24 4867/24 4868/7 4868/25 4869/21 4874/16 4874/21 4874/25 4875/16 4879/4 4879/6 4884/11 4884/13 4887/14 4892/5 4893/22 4904/7 4904/20 4908/17 4909/20 4913/12 4927/19 4928/7 4941/8 4944/7 4948/23
**negligence [2]**   4840/7 4873/15
**negotiable [2]**   4879/18 4879/21
**never [9]**   4814/12 4816/23 4821/4 4821/6 4822/16 4822/16 4822/18 4851/7 4871/7
**nevertheless [1]**   4872/20
**New York [26]**   4846/6 4853/7 4853/9 4855/9 4855/13 4855/16 4855/19 4855/22 4856/7 4859/1 4859/9 4859/23 4860/3 4860/7 4860/8 4860/11 4860/12 4860/18 4861/3 4861/10 4861/18 4861/23 4862/20 4863/6 4863/6 4864/5
**next [16]**   4842/18 4864/21 4868/11 4869/9 4881/21 4892/14 4896/7 4896/14 4899/7 4911/4 4915/5 4921/17

4923/8 4924/2 4927/25 4934/3
**nexus [1]**   4868/3
**nice [3]**   4811/25 4812/24 4826/12
**NIELSEN [2]**   4810/15 4811/10
**nonetheless [1]**   4852/24
**nonexistence [1]**   4827/2
**Nos [1]**   4911/21
**notations [6]**   4937/5 4937/6 4937/7 4937/8 4937/12 4937/14
**note [24]**   4835/12 4843/15 4908/18 4913/10 4916/3 4916/12 4916/13 4916/14 4923/1 4923/7 4925/10 4925/19 4925/22 4927/12 4927/20 4928/16 4929/13 4929/15 4943/5 4945/5 4945/19 4946/11 4946/24 4948/4
**noted [5]**   4900/13 4932/15 4944/11 4945/11 4946/9
**notes [11]**   4863/8 4863/14 4867/8 4867/9 4908/19 4912/11 4912/13 4914/20 4923/19 4937/18 4939/13
**nothing [1]**   4912/14
**notice [1]**   4948/19
**noticed [1]**   4823/17
**November [3]**   4810/5 4860/19 4860/24
**November 24 [1]**   4860/19
**November 26 [1]**   4860/24
**number [9]**   4831/13 4911/2 4916/17 4917/16 4918/7 4928/12 4934/5 4941/9 4941/13
**Number 15 [2]**   4916/17 4917/16
**Number 16 [1]**   4941/13
**numbers [4]**   4912/11 4914/22 4928/19 4938/1

## O

**oath [4]**   4818/3 4820/5 4823/9 4908/11
**object [21]**   4818/24 4840/21 4841/18 4841/19 4847/13 4848/18 4857/14 4859/1 4864/14 4865/8 4874/19 4878/4 4879/7 4879/8 4879/9 4879/10 4881/21 4881/22 4898/12 4932/24 4932/24
**objected [5]**   4819/6 4933/2 4933/10 4933/16 4940/25
**objection [48]**   4897/15 4897/16 4898/24 4918/4 4918/11 4918/13 4918/15 4918/16 4918/18 4918/20 4918/21 4918/23 4919/1 4919/3 4919/7 4919/9 4919/12 4919/13 4919/15 4920/8 4920/9 4920/11 4920/15 4920/16 4920/18 4920/20 4920/21 4920/23 4923/9 4923/10 4923/20 4932/7 4932/13 4933/12 4933/19 4934/1 4934/9 4935/2 4935/11

4936/7 4936/24 4937/1 4937/2 4937/4 4937/6 4947/10 4947/17 4947/18
**objectionable [1]**   4874/14
**objections [2]**   4816/19 4918/10
**objective [2]**   4839/23 4864/7
**objectives [5]**   4842/25 4844/4 4844/25 4845/5 4865/3
**objects [5]**   4846/23 4857/24 4878/5 4879/4 4932/22
**obligation [1]**   4832/4
**obligations [2]**   4863/13 4891/18
**observe [1]**   4814/9
**obtain [5]**   4835/5 4848/1 4848/13 4848/19 4872/15
**obtained [2]**   4883/13 4894/11
**obtaining [6]**   4847/17 4886/8 4894/4 4894/8 4894/13 4894/15
**obvious [2]**   4814/10 4924/20
**obviously [2]**   4912/12 4919/24
**occasion [1]**   4817/12
**occur [2]**   4893/6 4893/8
**occurred [8]**   4855/8 4855/19 4855/22 4864/2 4875/20 4904/18 4904/24 4905/2
**October [3]**   4860/4 4860/9 4860/13
**October 11 [2]**   4860/4 4860/9
**October 23 [1]**   4860/13
**offense [15]**   4828/11 4828/13 4839/9 4839/10 4840/16 4840/20 4841/11 4842/15 4883/12 4885/12 4888/11 4895/11 4900/14 4900/25 4902/22
**offenses [9]**   4876/23 4878/14 4879/24 4880/3 4880/7 4880/9 4881/14 4883/21 4884/6
**offer [24]**   4832/5 4874/20 4885/16 4888/2 4889/4 4889/15 4889/22 4892/9 4893/14 4893/16 4893/22 4893/24 4894/3 4894/12 4894/20 4894/21 4894/24 4895/4 4895/7 4903/2 4941/15 4943/7 4945/20 4946/12
**offered [9]**   4885/13 4885/21 4888/24 4889/17 4890/1 4892/12 4901/17 4902/25 4931/24
**offering [4]**   4831/17 4901/18 4903/9 4917/1
**offeror [1]**   4868/22
**offers [1]**   4818/24
**office [10]**   4810/11 4828/2 4901/10 4901/21 4903/6 4903/8 4903/12 4903/13 4903/16 4946/19
**officer [16]**   4885/4 4886/12 4887/2 4890/3 4901/25 4903/22 4906/4 4907/20 4908/20 4910/21 4911/1 4911/7 4911/8 4928/2 4928/4 4933/5

**O**

**Officering [1]**   4918/24
**officers [3]**   4891/8 4891/11
 4905/25
**official [38]**   4838/11
 4876/24 4878/15 4880/4
 4881/16 4883/22 4884/7
 4885/19 4885/23 4886/2
 4886/2 4886/3 4886/5 4888/3
 4888/3 4889/6 4889/7 4889/20
 4889/24 4890/2 4890/3 4890/5
 4891/24 4892/11 4892/13
 4893/18 4893/18 4893/19
 4893/21 4895/1 4896/7
 4900/15 4900/25 4901/2
 4901/8 4901/13 4901/23
 4902/5
**officials [12]**   4838/10
 4862/13 4890/12 4891/8
 4891/9 4891/17 4900/11
 4900/18 4900/22 4901/22
 4903/15 4903/20
**often [5]**   4826/10 4828/6
 4830/18 4842/6 4944/7
**old [1]**   4946/17
**older [2]**   4897/7 4897/8
**omission [2]**   4901/13 4903/19
**omit [3]**   4866/8 4886/3
 4893/19
**omitted [3]**   4867/1 4869/1
 4869/4
**omitting [1]**   4856/16
**one's [2]**   4840/1 4871/5
**open [6]**   4811/1 4811/2
 4838/1 4897/2 4900/1 4910/14
**opening [2]**   4816/18 4825/8
**operate [3]**   4856/20 4866/12
 4867/4
**operated [1]**   4867/4
**operates [1]**   4866/12
**opinion [9]**   4816/1 4817/5
 4817/18 4819/11 4836/17
 4836/22 4849/12 4906/17
 4907/3
**opinions [9]**   4817/15 4836/19
 4836/21 4836/23 4836/25
 4836/25 4837/3 4837/3 4837/4
**opportunity [3]**   4831/1
 4832/11 4832/11
**option [1]**   4862/23
**order [30]**   4841/13 4843/1
 4844/1 4847/2 4848/1 4850/6
 4856/16 4864/11 4866/8
 4869/13 4872/16 4877/20
 4879/5 4880/25 4882/21
 4890/11 4892/7 4895/10
 4900/22 4904/8 4925/19
 4925/22 4926/3 4926/12
 4927/11 4928/23 4943/20
 4945/17 4947/22 4948/1
**ordered [4]**   4919/25 4946/16
 4947/23 4948/7
**orders [5]**   4879/17 4916/21
 4916/23 4917/24 4918/8
**ordinarily [1]**   4836/18
**ordinary [6]**   4835/4 4838/14
 4854/5 4869/24 4874/8 4887/3

**organizational [4]**   4917/6
 4920/7 4932/20 4933/21
**origin [2]**   4817/24 4819/20
**original [3]**   4946/18 4948/9
 4948/20
**originated [1]**   4850/11
**otherwise [2]**   4879/19 4914/5
**ought [1]**   4816/3
**outcome [7]**   4830/25 4838/5
 4838/19 4843/3 4843/5
 4869/22 4907/13
**outnumbered [1]**   4907/8
**outside [21]**   4826/15 4876/15
 4876/18 4878/8 4878/9
 4878/20 4878/21 4880/21
 4880/22 4881/9 4881/10
 4881/25 4882/2 4882/12
 4882/13 4883/4 4883/5
 4888/15 4906/1 4907/21
 4908/21
**outward [2]**   4851/13 4871/13
**outweighed [1]**   4837/3
**overall [1]**   4868/17
**overrule [1]**   4898/23
**overruled [4]**   4934/1 4934/13
 4935/11 4941/3
**overruling [2]**   4932/7
 4932/12
**oversight [1]**   4891/15
**overt [24]**   4857/12 4857/14
 4857/17 4857/19 4857/19
 4858/18 4858/20 4858/24
 4858/25 4863/17 4863/19
 4863/21 4863/24 4864/4
 4864/8 4864/13 4864/16
 4865/2 4875/12 4875/14
 4875/14 4875/19 4875/25
 4878/2
**own [9]**   4816/17 4826/3
 4831/23 4835/5 4843/17
 4890/16 4903/17 4906/24
 4907/12
**owned [3]**   4890/16 4902/2
 4903/24
**ownership [5]**   4877/13 4879/1
 4882/6 4882/19 4883/19

**P**

**p.m [6]**   4909/8 4911/25
 4915/4 4926/18 4929/23
 4947/4
**pages [13]**   4897/8 4919/21
 4919/22 4939/23 4940/1
 4942/23 4943/11 4943/22
 4944/16 4944/17 4945/24
 4946/5 4946/15
**pages 61 [4]**   4942/23 4943/11
 4943/22 4945/24
**pages 61-62 [1]**   4946/15
**pages 62 [1]**   4946/5
**paid [6]**   4859/8 4860/21
 4862/3 4862/3 4885/13
 4888/24
**painted [1]**   4830/4
**Palomar [7]**   4917/3 4917/5
 4919/11 4920/6 4932/20
 4933/21 4936/14
**paper [1]**   4879/22

**PARALEGAL [1]**   4810/20
**paren [2]**   4947/5 4947/6
**part [23]**   4817/15 4827/24
 4833/7 4837/5 4842/11 4844/2
 4846/20 4852/14 4855/9
 4865/11 4871/19 4872/12
 4873/15 4874/23 4877/12
 4878/25 4882/5 4882/17
 4895/1 4904/18 4905/9
 4926/23 4932/20
**partial [1]**   4934/21
**participant [5]**   4843/2
 4845/11 4852/23 4872/19
 4874/1
**participants [1]**   4842/10
**participate [1]**   4842/23
**participated [6]**   4845/4
 4848/4 4850/20 4868/8
 4868/23 4870/15
**participating [1]**   4853/23
**participation [11]**   4843/16
 4844/5 4844/8 4844/23
 4845/21 4850/17 4863/8
 4863/14 4867/8 4880/15
 4887/7
**particular [9]**   4829/6
 4833/16 4836/11 4836/14
 4841/3 4849/25 4869/22
 4908/17 4944/8
**parties [17]**   4814/10 4815/11
 4818/20 4823/17 4825/2
 4828/18 4830/4 4842/5
 4887/17 4897/5 4908/13
 4922/15 4928/13 4935/5
 4945/8 4946/18 4946/20
**partner [1]**   4887/8
**partnership [2]**   4840/13
 4887/7
**parts [1]**   4814/23
**party [9]**   4817/22 4818/8
 4818/18 4830/24 4831/14
 4831/24 4832/10 4860/23
 4861/6
**party's [1]**   4817/24
**pass [3]**   4816/10 4853/6
 4853/8
**passed [6]**   4859/22 4860/2
 4860/7 4860/11 4860/16
 4861/2
**passes [1]**   4879/19
**passing [3]**   4908/6 4908/6
 4908/7
**past [5]**   4851/9 4871/9
 4909/10 4910/15 4945/4
**paste [1]**   4937/11
**patience [3]**   4911/12 4913/17
 4949/12
**patiently [1]**   4932/17
**pause [12]**   4812/21 4898/1
 4898/19 4926/19 4928/11
 4929/11 4929/22 4938/4
 4938/13 4939/20 4940/11
 4946/22
**pay [17]**   4814/4 4846/10
 4885/14 4885/16 4888/22
 4888/25 4889/10 4889/22
 4892/9 4893/22 4893/23
 4893/25 4893/25 4895/4

**P**

**pay... [3]**   4895/5 4895/7
4895/8
**paying [1]**   4852/16
**payment [41]**   4859/22 4860/2
4860/7 4860/11 4861/2
4862/16 4885/14 4885/17
4885/21 4885/24 4886/7
4888/2 4888/25 4889/13
4889/18 4889/18 4889/20
4889/22 4889/23 4890/1
4892/9 4892/10 4892/12
4893/14 4893/16 4893/23
4893/23 4893/25 4893/25
4894/3 4894/6 4894/12
4894/20 4894/21 4894/24
4895/3 4895/4 4895/5 4895/6
4895/7 4895/8
**Pearse [12]**   4859/7 4859/10
4859/15 4859/21 4860/1
4862/11 4862/25 4917/4
4917/7 4919/11 4920/14
4936/15
**Pearse's [1]**   4862/22
**pedigree [1]**   4925/1
**penal [3]**   4901/11 4901/12
4901/15
**perceived [1]**   4891/24
**percent [4]**   4925/17 4925/19
4925/23 4925/24
**perfect [1]**   4925/18
**perfectly [1]**   4927/21
**perform [11]**   4817/21 4818/7
4818/8 4844/9 4844/10 4901/9
4901/9 4901/19 4901/20
4903/7 4903/12
**performance [3]**   4821/25
4887/11 4894/17
**performing [4]**   4887/6
4891/24 4903/5 4903/11
**performs [1]**   4890/15
**period [4]**   4890/22 4902/7
4927/25 4947/6
**periodic [1]**   4886/23
**permit [1]**   4836/18
**permitted [3]**   4831/9 4833/5
4834/22
**person [41]**   4821/16 4821/17
4821/21 4826/14 4827/25
4839/15 4839/21 4844/17
4846/20 4849/8 4849/23
4850/2 4851/2 4851/8 4865/12
4866/1 4866/13 4869/24
4871/2 4871/8 4885/20 4886/9
4887/3 4887/4 4887/22 4889/6
4889/8 4889/9 4889/9 4889/17
4889/24 4890/5 4893/3 4893/4
4893/6 4893/9 4894/9 4894/10
4894/14 4896/1 4901/1
**person's [3]**   4851/13 4871/13
4924/25
**personal [7]**   4817/23 4819/19
4821/19 4831/23 4834/5
4838/18 4879/16
**personally [5]**   4850/11
4853/20 4868/25 4873/24
4902/24

**persons [15]**   4819/21 4827/17
4827/20 4827/22 4827/23
4829/2 4832/8 4840/14 4841/6
4841/12 4842/11 4857/8
4858/8 4877/23 4893/2
**persuaded [1]**   4831/25
**persuasiveness [1]**   4855/4
**Phil [2]**   4812/8 4916/9
**PHILIP [1]**   4810/19
**phone [14]**   4810/23 4912/11
4912/24 4917/10 4921/17
4921/19 4921/21 4922/13
4922/18 4922/23 4923/5
4936/22 4936/25 4937/2
**phones [1]**   4912/22
**phrase [2]**   4828/6 4868/1
**physically [3]**   4868/13
4868/15 4875/17
**pictures [3]**   4830/4 4846/16
4847/22
**piece [1]**   4897/7
**piecemeal [2]**   4925/14
4925/15
**place [33]**   4858/22 4864/3
4875/25 4878/7 4878/8 4878/9
4878/9 4878/19 4878/20
4878/21 4878/21 4880/20
4880/21 4880/21 4880/22
4881/8 4881/9 4881/10
4881/10 4881/24 4881/25
4882/1 4882/1 4882/11
4882/12 4882/12 4882/13
4883/3 4883/4 4883/4 4883/5
4888/15 4889/14
**places [4]**   4876/15 4876/16
4876/17 4876/18
**plain [3]**   4912/14 4912/15
4932/18
**Plaintiff [1]**   4810/4
**plan [8]**   4843/12 4844/23
4848/17 4848/18 4849/2
4851/24 4867/19 4872/3
**plane [1]**   4888/18
**planning [1]**   4832/25
**play [4]**   4827/23 4844/10
4844/11 4844/11
**played [1]**   4868/19
**Plaza [1]**   4810/12
**plea [3]**   4832/22 4917/7
4920/14
**plead [1]**   4834/17
**pled [2]**   4820/25 4834/13
**point [6]**   4815/12 4826/21
4875/4 4908/15 4928/17
4944/22
**policies [1]**   4891/5
**portion [10]**   4846/18 4885/21
4889/25 4921/5 4921/8
4922/14 4922/18 4922/19
4922/20 4922/22
**portions [4]**   4905/16 4921/9
4938/17 4944/8
**poses [1]**   4841/1
**position [6]**   4862/24 4888/3
4903/16 4914/18 4921/23
4921/24
**positions [3]**   4902/14
4902/17 4920/5

**possible [6]**   4822/1 4823/2
4905/17 4906/3 4909/19
4913/1
**possibly [1]**   4905/15
**potential [5]**   4846/9 4856/20
4862/14 4863/1 4914/2
**power [1]**   4891/10
**PowerPoint [2]**   4859/11
4862/12
**practical [2]**   4852/22
4872/16
**practice [3]**   4866/11 4867/3
4945/4
**practices [5]**   4856/19
4876/21 4878/12 4888/1
4893/2
**precise [1]**   4841/18
**precisely [2]**   4828/14
4863/25
**prejudice [5]**   4817/22 4818/4
4818/8 4819/5 4820/15
**preliminary [1]**   4825/22
**premised [1]**   4849/15
**prepared [3]**   4922/6 4925/21
4945/16
**preponderance [11]**   4854/22
4854/23 4854/25 4855/2
4855/24 4875/8 4876/3
4904/15 4905/4 4942/2
4942/10
**prescribe [1]**   4865/21
**presence [2]**   4897/2 4912/6
**present [15]**   4810/20 4811/2
4826/5 4855/17 4868/14
4868/15 4875/18 4900/1
4904/22 4906/21 4909/18
4912/4 4916/2 4916/3 4916/13
**presentation [3]**   4859/11
4862/12 4862/18
**presented [3]**   4814/18
4829/12 4906/16
**preserved [1]**   4946/9
**preside [1]**   4815/15
**president [3]**   4862/24
4901/25 4903/21
**presiding [1]**   4811/4
**presumed [2]**   4821/10 4822/19
**presumes [1]**   4821/5
**presumption [1]**   4819/21
**pretenses [5]**   4846/12
4847/18 4848/2 4848/14
4848/20
**pretty [2]**   4916/19 4939/9
**prevail [1]**   4906/7
**previous [1]**   4895/21
**previously [13]**   4847/9
4851/18 4858/10 4858/16
4896/5 4902/19 4904/2
4904/14 4944/2 4945/25
4946/7 4946/15 4947/21
**price [2]**   4869/21 4895/1
**prime [1]**   4818/13
**principal [5]**   4887/5 4887/6
4887/6 4887/13 4887/15
**principle [3]**   4814/8 4815/20
4850/4
**print [2]**   4905/24 4905/24
**printed [1]**   4937/4

18

**P**

**printout [1]**  4930/21
**priorities [1]**  4891/5
**privileges [1]**  4891/19
**Privinvest [11]**  4859/5
 4859/19 4859/24 4860/11
 4860/13 4860/24 4861/8
 4861/16 4861/21 4862/3
 4862/8
**probability [4]**  4831/4
 4873/3 4873/4 4893/11
**problem [4]**  4921/25 4944/20
 4944/21 4944/23
**procedural [2]**  4812/15
 4912/5
**proceed [1]**  4912/15
**proceedings [3]**  4810/25
 4897/1 4949/17
**proceeds [20]**  4859/6 4859/20
 4859/25 4860/5 4860/10
 4877/10 4877/14 4878/24
 4879/2 4880/12 4882/3 4882/7
 4882/16 4882/19 4883/7
 4883/10 4883/13 4883/19
 4884/12 4884/15
**process [1]**  4820/1
**procurement [2]**  4916/20
 4917/23
**produced [3]**  4810/25 4828/23
 4829/5
**producing [2]**  4821/8 4832/18
**product [4]**  4839/23 4839/24
 4924/13 4924/15
**professional [2]**  4838/18
 4913/22
**professionals [1]**  4913/20
**profit [3]**  4852/15 4870/9
 4872/14
**profited [2]**  4870/7 4901/2
**programs [1]**  4846/12
**prohibit [1]**  4900/17
**prohibited [2]**  4900/21
 4901/12
**prohibits [3]**  4867/23
 4894/21 4902/13
**Proindicus [26]**  4846/10
 4859/6 4859/16 4859/20
 4859/25 4862/4 4890/11
 4890/12 4890/19 4890/24
 4890/25 4891/2 4891/6 4891/7
 4891/12 4891/14 4891/18
 4891/20 4891/23 4892/3
 4892/6 4892/7 4916/20
 4916/22 4917/23 4918/8
**project [5]**  4859/11 4859/12
 4860/21 4860/21 4861/15
**projects [1]**  4862/4
**promise [20]**  4885/16 4888/2
 4888/22 4889/5 4889/10
 4889/15 4889/22 4892/9
 4893/23 4893/25 4894/3
 4894/12 4894/20 4894/22
 4894/24 4895/4 4895/8 4901/5
 4901/8 4903/2
**promised [9]**  4834/19 4885/13
 4885/22 4888/25 4889/17
 4890/1 4892/13 4901/17

4902/25 4903/9
**promises [4]**  4847/19 4848/3
 4848/15 4848/20
**promising [2]**  4901/18 4903/9
**promote [9]**  4862/18 4876/19
 4878/10 4879/11 4880/23
 4881/2 4881/13 4884/13
 4884/15
**promoting [2]**  4864/19
 4881/19
**promotion [1]**  4879/9
**promptly [2]**  4905/19 4906/3
**promptness [1]**  4812/25
**promulgated [1]**  4865/24
**proof [25]**  4819/19 4819/22
 4820/24 4821/2 4821/4 4821/7
 4821/20 4821/21 4822/2
 4826/8 4828/24 4832/3 4832/5
 4832/19 4842/2 4842/11
 4843/4 4845/18 4851/6
 4851/10 4871/6 4871/10
 4873/2 4876/2 4887/14
**proper [1]**  4907/13
**properly [3]**  4818/25 4825/25
 4843/7
**property [12]**  4846/11
 4847/18 4848/2 4848/13
 4848/19 4849/3 4850/9 4851/1
 4852/17 4852/21 4883/9
 4883/13
**propose [1]**  4947/4
**proposed [1]**  4862/19
**prosecute [2]**  4829/7 4834/16
**prosecution [3]**  4818/16
 4821/2 4835/7
**prospects [1]**  4863/12
**protection [1]**  4865/22
**protects [1]**  4870/3
**prove [89]**
**proved [2]**  4843/21 4879/8
**proven [12]**  4817/9 4820/9
 4820/11 4821/12 4826/5
 4829/13 4839/18 4867/16
 4889/12 4900/24 4901/16
 4902/21
**proves [1]**  4893/24
**provide [7]**  4857/3 4890/17
 4895/23 4917/22 4942/17
 4943/2 4948/1
**provided [7]**  4835/21 4863/10
 4891/2 4905/12 4909/3
 4916/15 4944/17
**provider [1]**  4888/16
**provides [4]**  4846/19 4847/16
 4865/10 4880/17
**providing [1]**  4946/17
**province [1]**  4816/16
**proving [3]**  4820/21 4824/13
 4850/5
**provision [2]**  4884/22
 4903/20
**provisions [8]**  4884/4 4884/5
 4884/20 4884/20 4884/21
 4884/23 4885/1 4895/10
**proximate [1]**  4828/7
**prudent [1]**  4849/23
**public [31]**  4811/15 4841/1
 4865/22 4876/24 4878/15

4880/4 4881/15 4883/22
 4884/7 4886/2 4890/17
 4891/16 4900/15 4900/17
 4900/22 4900/25 4901/2
 4901/8 4901/13 4901/17
 4901/19 4901/22 4901/22
 4901/23 4902/5 4903/1
 4903/10 4903/10 4903/15
 4903/19 4903/20
**publicly [3]**  4902/2 4903/24
 4908/2
**publicly-owned [1]**  4903/24
**pull [7]**  4919/17 4920/13
 4925/7 4925/11 4925/13
 4926/2 4926/22
**pulling [2]**  4927/1 4927/18
**punishment [3]**  4823/1 4823/2
 4823/10
**purchase [14]**  4856/22
 4860/21 4861/15 4865/17
 4866/13 4866/20 4867/7
 4867/13 4868/4 4868/5
 4868/10 4868/11 4868/13
 4868/24
**purchaser [2]**  4867/5 4868/12
**purchasers [1]**  4868/20
**purpose [27]**  4824/23 4824/23
 4840/3 4840/15 4841/18
 4841/19 4842/12 4842/24
 4845/9 4846/13 4847/22
 4851/1 4852/20 4853/1
 4857/14 4864/9 4864/14
 4870/23 4873/9 4881/19
 4883/24 4887/23 4893/14
 4895/7 4901/7 4901/18
 4906/19
**purposefully [2]**  4839/22
 4881/18
**purposely [1]**  4870/22
**purposes [15]**  4843/14
 4844/25 4845/4 4852/19
 4858/11 4885/25 4893/1
 4893/9 4893/17 4893/24
 4894/1 4894/2 4894/22 4903/3
 4932/15
**pursuant [3]**  4886/16 4886/19
 4886/24
**put [6]**  4816/23 4920/2
 4928/18 4928/18 4935/5
 4938/6
**putting [1]**  4938/9

**Q**

**qualifications [1]**  4838/4
**qualifies [1]**  4890/8
**quality [2]**  4825/18 4855/4
**quantity [1]**  4855/5
**quarter [1]**  4936/20
**Queens [2]**  4855/11 4863/6
**questions [7]**  4816/20
 4817/12 4817/13 4819/4
 4823/25 4824/2 4906/2
**quick [1]**  4913/14
**quickly [4]**  4905/17 4925/11
 4925/13 4925/17
**quite [2]**  4838/15 4943/13
**quote [5]**  4859/16 4860/20
 4922/11 4945/20 4946/12

**Q**

quote-unquote [1]   4860/20
quote/unquote [1]   4922/11

**R**

R-E-A [1]   4839/13
race [2]   4817/24 4819/20
radio [1]   4847/20
rained [1]   4826/19
raining [1]   4826/16
raised [1]   4830/3
raising [1]   4897/11
RANDALL [2]   4810/19 4811/17
rare [2]   4851/7 4871/7
rather [8]   4839/23 4854/15
 4870/19 4875/2 4887/15
 4897/21 4904/9 4948/17
rating [1]   4863/2
rational [2]   4851/16 4871/15
RAY [2]   4810/22 4812/12
rea [1]   4839/13
reach [7]   4818/6 4825/9
 4832/13 4906/22 4910/11
 4910/18 4922/15
reached [4]   4906/6 4910/11
 4910/19 4910/24
reaching [3]   4819/17 4825/25
 4828/4
read [13]   4900/5 4910/6
 4916/18 4916/18 4917/14
 4927/1 4927/2 4927/4 4944/5
 4946/2 4946/10 4946/25
 4947/25
reading [2]   4897/12 4913/25
reads [3]   4865/25 4941/14
 4946/11
ready [6]   4927/2 4927/10
 4928/3 4928/25 4932/21
 4938/5
real [5]   4829/8 4842/5
 4860/20 4861/14 4933/8
realize [1]   4835/5
realized [1]   4850/13
reason [7]   4820/18 4820/23
 4821/5 4821/15 4827/1
 4827/14 4894/3
reasonable [93]
reasonableness [1]   4831/4
reasonably [7]   4828/11
 4848/20 4849/22 4853/21
 4854/6 4874/2 4874/8
reasons [4]   4833/9 4836/22
 4837/2 4924/21
receipts [1]   4883/15
receive [2]   4834/2 4835/6
received [17]   4823/16
 4824/22 4825/13 4836/23
 4870/7 4901/5 4902/24 4910/8
 4916/11 4928/6 4935/5
 4941/10 4941/12 4946/21
 4946/23 4946/24 4947/24
receiving [3]   4902/15 4903/4
 4903/17
reception [1]   4912/24
recess [3]   4915/4 4926/18
 4929/23
recipient [2]   4892/10 4895/3

recite [1]   4905/12
recollection [4]   4816/17
 4825/10 4825/11 4825/16
recommendation [2]   4835/15
 4941/20
record [18]   4811/8 4817/1
 4824/13 4899/2 4900/2 4900/5
 4909/17 4909/22 4909/23
 4912/7 4914/13 4916/5
 4923/17 4935/5 4938/7
 4938/10 4941/11 4946/9
recorded [1]   4810/25
records [2]   4823/20 4829/19
reduced [1]   4829/22
refer [6]   4827/12 4850/23
 4867/10 4943/10 4945/6
 4945/23
reference [2]   4897/8 4897/9
referenced [5]   4861/1
 4861/11 4861/19 4861/24
 4894/7
referred [2]   4836/10 4839/12
referring [1]   4921/7
refers [9]   4840/18 4855/3
 4879/21 4883/8 4921/12
 4943/22 4946/2 4946/5
 4946/14
reflect [2]   4907/9 4914/13
reflects [1]   4910/23
refresh [1]   4825/16
regard [10]   4828/19 4842/8
 4843/1 4853/23 4855/15
 4864/16 4869/5 4875/16
 4891/16 4912/22
regarding [18]   4814/24
 4815/6 4847/14 4859/11
 4862/7 4862/12 4862/14
 4863/1 4863/7 4863/11 4888/4
 4896/5 4897/6 4905/8 4905/10
 4917/3 4919/10 4936/14
regardless [2]   4816/1
 4894/23
regards [1]   4937/23
regime [1]   4897/7
registered [4]   4865/17
 4865/18 4886/16 4886/19
regulations [3]   4856/11
 4856/13 4865/20
reiterate [1]   4852/18
relate [4]   4849/20 4857/3
 4867/25 4898/13
related [9]   4850/6 4862/15
 4867/7 4886/25 4898/8 4910/9
 4917/5 4920/6 4928/20
relation [9]   4870/10 4874/19
 4895/20 4941/16 4941/24
 4942/6 4943/8 4945/21
 4946/13
relationship [1]   4868/3
relaxing [2]   4948/24 4949/4
released [1]   4947/14
relevant [11]   4815/16
 4846/18 4846/20 4847/14
 4865/9 4865/11 4880/14
 4885/25 4890/22 4893/17
 4902/7
religion [2]   4817/24 4819/20
rely [3]   4816/17 4821/22

4908/8
relying [1]   4849/23
remains [2]   4822/21 4832/20
remember [4]   4832/16 4845/23
 4905/13 4908/4
remind [4]   4854/13 4874/24
 4897/20 4904/6
reminded [1]   4818/2
removed [2]   4897/7 4897/9
removing [1]   4897/6
Renaissance [2]   4917/2
 4919/4
render [6]   4817/15 4817/18
 4818/3 4820/23 4839/2
 4908/13
rendering [1]   4824/17
renewing [1]   4894/15
repeat [4]   4820/1 4833/19
 4833/20 4898/13
repeatedly [1]   4914/17
replied [1]   4862/21
report [2]   4906/11 4949/14
reporter [3]   4810/23 4900/3
 4900/5
reports [4]   4862/6 4862/8
 4886/18 4886/23
represent [5]   4878/24 4887/5
 4917/13 4923/24 4924/18
representation [6]   4849/6
 4849/8 4849/20 4849/23
 4853/17 4913/22
representations [14]   4846/12
 4847/19 4848/2 4848/14
 4848/20 4848/25 4849/5
 4849/14 4851/22 4852/1
 4852/16 4872/1 4872/5
 4872/15
represented [6]   4877/10
 4882/3 4883/10 4914/14
 4914/15 4914/16
represents [1]   4882/15
republic [4]   4890/8 4900/16
 4901/25 4903/21
request [18]   4819/2 4901/7
 4905/13 4905/15 4905/18
 4905/24 4908/23 4909/7
 4909/16 4909/21 4912/25
 4917/15 4920/1 4923/25
 4930/10 4934/5 4939/22
 4947/2
requested [8]   4894/25 4900/6
 4901/5 4917/22 4926/23
 4927/13 4927/14 4935/18
requesting [4]   4905/15
 4917/16 4924/6 4924/11
requests [6]   4905/21 4906/2
 4909/17 4916/16 4928/19
 4941/5
require [9]   4822/1 4829/1
 4829/3 4829/5 4845/18
 4852/12 4857/17 4872/11
 4879/13
required [14]   4822/15 4833/8
 4835/24 4840/4 4845/2 4845/3
 4850/10 4851/10 4871/10
 4873/12 4874/18 4878/3
 4886/17 4895/21
requirement [5]   4822/16

**R**

**requirement... [4]**    4855/18
 4875/19 4883/9 4904/23
**requires [2]**    4844/13 4857/18
**reserved [1]**    4899/2
**resolve [2]**    4816/12 4830/3
**resolved [1]**    4909/13
**resorted [1]**    4848/24
**respect [15]**    4814/21 4815/3
 4815/12 4822/6 4822/10
 4828/4 4890/10 4893/2 4897/4
 4907/15 4917/19 4917/21
 4919/16 4919/25 4935/15
**respectfully [8]**    4906/20
 4938/15 4943/10 4943/22
 4945/6 4945/23 4946/2
 4946/14
**respective [1]**    4913/23
**respects [1]**    4838/3
**respond [1]**    4906/2
**responding [1]**    4912/13
**responds [1]**    4943/5
**response [15]**    4923/18
 4924/10 4927/11 4933/22
 4935/15 4942/7 4942/12
 4942/19 4942/25 4943/7
 4945/19 4946/11 4947/9
 4947/11 4948/4
**responsibility [1]**    4814/21
**responsible [1]**    4907/18
**responsive [5]**    4930/9 4934/5
 4935/3 4939/15 4939/22
**rest [1]**    4925/21
**rests [2]**    4823/5 4836/4
**result [8]**    4870/7 4874/3
 4887/24 4887/25 4893/3
 4893/5 4893/7 4894/11
**resume [2]**    4947/5 4949/17
**retained [2]**    4883/14 4894/11
**retaining [4]**    4886/8 4894/4
 4894/8 4894/13
**retire [2]**    4815/24 4907/16
**return [8]**    4839/7 4901/13
 4903/4 4903/10 4909/13
 4909/14 4948/6 4948/10
**returning [1]**    4948/9
**review [8]**    4815/1 4820/8
 4908/17 4908/22 4908/23
 4909/16 4909/22 4936/11
**reviewed [1]**    4938/20
**reviewing [3]**    4829/18
 4838/19 4936/9
**revised [2]**    4911/16 4911/19
**rhinoceros [1]**    4824/19
**Richmond [1]**    4855/11
**rise [2]**    4811/3 4926/20
**risk [1]**    4820/16
**road [2]**    4862/18 4862/19
**role [4]**    4815/9 4816/8
 4844/12 4868/19
**roles [3]**    4844/11 4844/11
 4844/12
**rolling [1]**    4865/6
**room [23]**    4815/24 4823/21
 4823/24 4825/4 4828/22
 4905/11 4905/17 4906/1
 4907/16 4907/21 4908/22

4909/4 4911/2 4911/3 4911/22
4911/23 4912/23 4928/5
4928/23 4946/19 4948/9
4948/11 4949/14
**Rosario [7]**    4859/15 4860/19
 4861/4 4861/13 4862/23
 4863/4 4863/10
**round [1]**    4914/5
**RPR [1]**    4810/23
**rule [7]**    4816/1 4836/20
 4856/11 4865/24 4920/5
 4921/16 4933/11
**ruled [1]**    4825/1
**rules [9]**    4814/25 4815/6
 4815/8 4836/18 4856/11
 4865/20 4886/25 4905/8
 4905/10
**ruling [4]**    4819/8 4819/9
 4898/16 4923/6
**rulings [2]**    4817/7 4819/2
**rush [1]**    4948/18

**S**

**S-I-N-G-H [1]**    4917/4
**safety [1]**    4841/1
**sale [13]**    4856/22 4865/17
 4866/13 4866/21 4867/7
 4867/13 4868/4 4868/5
 4868/10 4868/11 4868/24
 4874/21 4877/4
**satisfied [9]**    4821/11 4822/9
 4835/17 4842/17 4854/11
 4868/2 4873/12 4876/2
 4889/17
**satisfies [1]**    4872/24
**satisfy [5]**    4841/14 4855/18
 4864/11 4867/14 4875/18
**save [1]**    4829/18
**saved [1]**    4823/20
**saw [3]**    4922/1 4922/12
 4934/22
**SCHACHTER [9]**    4810/18
 4811/22 4923/20 4924/4
 4931/23 4932/9 4933/23
 4936/4 4938/21
**scheduled [2]**    4862/18 4909/5
**scheme [51]**    4841/18 4841/19
 4843/5 4844/12 4846/8
 4846/13 4847/17 4847/23
 4848/1 4848/5 4848/7 4848/10
 4848/12 4848/17 4848/18
 4849/2 4849/4 4850/7 4850/8
 4850/11 4850/13 4850/14
 4850/18 4850/20 4852/14
 4852/24 4852/25 4853/5
 4853/18 4853/22 4854/9
 4854/12 4864/20 4866/5
 4866/23 4867/18 4867/19
 4868/17 4868/18 4868/23
 4870/8 4870/10 4870/16
 4872/13 4872/19 4872/21
 4873/22 4874/1 4874/17
 4874/20 4874/23
**schemes [1]**    4856/14
**school [1]**    4946/17
**scientific [1]**    4836/11
**scope [2]**    4843/25 4887/10
**scrutinize [1]**    4830/6

**scrutinized [1]**    4833/15
**scrutinizing [1]**    4835/9
**scrutiny [1]**    4831/12
**searching [1]**    4831/12
**seated [12]**    4811/14 4811/16
 4811/20 4811/24 4812/2
 4812/6 4812/14 4813/1 4814/1
 4907/20 4912/2 4926/24
**SEC [2]**    4886/19 4886/24
**second [28]**    4842/13 4842/14
 4847/6 4847/8 4848/3 4850/17
 4850/18 4858/12 4858/13
 4870/12 4870/14 4877/25
 4878/18 4881/12 4881/22
 4883/6 4885/7 4887/18
 4887/19 4895/14 4896/2
 4896/3 4900/13 4901/3
 4901/18 4902/23 4943/12
 4943/23
**secondly [3]**    4815/3 4841/7
 4857/10
**secrecy [1]**    4842/3
**section [20]**    4846/17 4846/19
 4847/14 4847/15 4856/13
 4856/25 4865/9 4877/1 4877/3
 4877/7 4877/16 4880/14
 4880/16 4881/3 4882/8
 4882/23 4886/16 4886/18
 4886/19 4886/24
**Section 1956 [1]**    4877/1
**Sections [2]**    4876/22 4877/5
**Sections 78DD-1 [1]**    4876/22
**secure [2]**    4886/6 4893/21
**securities [57]**    4839/5
 4846/10 4856/3 4856/5
 4856/12 4856/21 4856/22
 4857/1 4857/4 4857/6 4857/9
 4857/18 4857/20 4857/23
 4858/1 4858/5 4858/9 4862/15
 4865/4 4865/7 4865/10
 4865/15 4865/18 4865/20
 4865/24 4866/4 4866/15
 4867/7 4867/9 4867/10
 4867/13 4867/25 4868/4
 4868/5 4868/7 4868/8 4868/12
 4868/20 4868/22 4868/24
 4870/3 4870/25 4871/20
 4874/25 4875/3 4875/10
 4877/4 4878/17 4879/18
 4880/6 4881/17 4883/23
 4884/10 4886/16 4886/20
 4904/3 4904/4
**security [19]**    4865/17
 4865/18 4866/14 4866/21
 4868/11 4868/13 4868/15
 4905/25 4906/4 4907/20
 4908/20 4910/20 4911/1
 4911/7 4911/8 4928/2 4928/4
 4933/5 4946/19
**seeking [1]**    4921/3
**seemingly [1]**    4912/14
**select [2]**    4907/17 4908/16
**self [1]**    4848/16
**self-explanatory [1]**    4848/16
**sell [2]**    4868/15 4869/20
**seller [3]**    4867/5 4868/14
 4868/22
**sending [7]**    4888/19 4910/7

**S**

**sending... [5]** 4910/10 4922/1 4925/14 4925/15 4932/5
**sense [6]** 4823/3 4823/12 4827/1 4831/23 4842/5 4926/7
**senses [1]** 4826/3
**sent [17]** 4825/4 4854/10 4859/5 4859/10 4859/19 4859/24 4860/4 4860/9 4860/14 4860/19 4861/4 4861/13 4862/1 4862/25 4874/11 4909/20 4923/2
**sentence [7]** 4823/5 4835/6 4835/13 4835/23 4835/25 4836/2 4836/4
**sentencing [5]** 4834/20 4834/21 4835/15 4835/18 4835/24
**separate [5]** 4839/8 4840/17 4840/24 4844/9 4884/20
**separately [2]** 4839/7 4845/24
**September [1]** 4859/24
**September 1 [1]** 4859/24
**seriatim [1]** 4917/18
**serious [1]** 4818/15
**served [1]** 4834/4
**service [3]** 4887/6 4888/16 4948/11
**services [2]** 4890/17 4891/3
**set [6]** 4857/4 4862/19 4926/22 4929/7 4940/15 4943/12
**sets [2]** 4835/20 4884/20
**seven [1]** 4885/2
**seventh [4]** 4810/17 4886/7 4894/4 4894/5
**several [2]** 4832/8 4888/13
**sex [1]** 4819/21
**shall [7]** 4846/20 4847/23 4865/12 4866/1 4880/24 4882/20 4948/6
**shared [1]** 4924/16
**shares [1]** 4886/21
**sheet [5]** 4910/10 4910/13 4910/16 4910/19 4910/23
**shields [1]** 4864/18
**shifts [1]** 4821/4
**shining [1]** 4826/11
**short [5]** 4831/10 4898/1 4898/19 4926/2 4927/25
**shortened [1]** 4914/4
**shortly [1]** 4857/10
**shown [5]** 4830/24 4850/15 4851/8 4871/8 4922/14
**side [6]** 4818/23 4818/24 4831/17 4832/2 4859/18 4914/12
**sidebar [6]** 4819/3 4896/11 4896/13 4897/2 4899/6 4909/25
**sidebars [2]** 4919/24 4939/13
**sides [6]** 4830/5 4833/20 4914/16 4916/15 4926/13 4946/8
**sign [2]** 4905/24 4946/10

**signals [2]** 4846/16 4847/22
**signed [10]** 4905/23 4908/19 4910/11 4910/12 4910/19 4910/23 4941/13 4941/16 4947/7 4948/1
**significant [1]** 4869/12
**significantly [2]** 4869/17 4869/18
**signing [2]** 4907/19 4946/17
**signs [2]** 4846/16 4847/22
**silence [1]** 4935/19
**similarity [1]** 4844/18
**Similarly [3]** 4826/20 4841/16 4863/18
**simple [5]** 4821/5 4826/9 4827/14 4942/4 4943/3
**simply [3]** 4824/15 4848/17 4907/8
**Singh [11]** 4862/6 4917/4 4917/8 4919/11 4920/14 4920/19 4921/3 4936/14 4936/22 4936/25 4937/2
**Singh's [6]** 4860/15 4917/9 4917/10 4920/24 4921/17 4921/21
**single [3]** 4815/22 4844/13 4892/2
**sit [1]** 4944/6
**sitting [1]** 4826/12
**six [3]** 4900/8 4908/7 4935/14
**sixth [3]** 4885/24 4893/14 4893/15
**skill [1]** 4836/14
**skilled [1]** 4914/19
**slate [1]** 4821/10
**slide [3]** 4917/5 4920/6 4932/20
**slows [1]** 4932/20
**smiles [1]** 4812/24
**snow [2]** 4826/20 4826/24
**snowed [2]** 4826/21 4826/24
**snowing [1]** 4826/23
**so-called [1]** 4833/2
**social [1]** 4907/25
**sold [1]** 4862/7
**sole [4]** 4816/9 4817/4 4819/12 4828/1
**solely [11]** 4816/4 4818/5 4819/15 4820/6 4820/12 4821/2 4822/21 4823/8 4832/3 4906/15 4906/23
**solemn [1]** 4818/3
**solicitation [2]** 4894/19 4900/21
**soliciting [1]** 4902/15
**solid [1]** 4923/17
**sonorous [1]** 4913/24
**soon [2]** 4909/19 4925/21
**sooner [2]** 4908/22 4908/23
**sophisticated [1]** 4870/2
**sort [2]** 4910/24 4924/3
**sound [1]** 4837/3
**sounds [2]** 4846/16 4847/22
**source [5]** 4877/13 4879/1 4882/6 4882/18 4883/19
**spared [1]** 4900/8
**speakers [1]** 4922/7

**SPECIAL [3]** 4810/21 4810/21 4811/10
**specialized [1]** 4836/12
**specific [12]** 4840/18 4842/24 4845/22 4848/6 4850/25 4852/20 4895/25 4902/17 4905/14 4942/16 4942/17 4943/5
**specifically [5]** 4827/11 4839/3 4854/1 4880/16 4902/13
**specified [35]** 4848/8 4861/1 4861/11 4861/19 4861/24 4876/19 4877/6 4877/14 4877/15 4878/11 4879/2 4879/12 4879/23 4879/23 4880/1 4880/7 4880/10 4880/12 4880/23 4881/2 4881/13 4881/20 4882/7 4882/19 4883/20 4883/25 4884/3 4884/13 4884/15 4884/18 4884/22 4900/13 4900/19 4903/25 4904/3
**specify [1]** 4928/17
**speculation [1]** 4821/24
**spellings [1]** 4811/14
**split [1]** 4911/5
**spoken [2]** 4841/22 4849/15
**spreadsheet [4]** 4917/11 4923/8 4930/13 4930/22
**squarely [1]** 4821/2
**staff [2]** 4906/4 4906/4
**stake [1]** 4843/3
**stand [3]** 4818/21 4822/18 4830/12
**standard [5]** 4855/25 4876/4 4905/5 4942/1 4942/11
**standards [1]** 4942/14
**standing [2]** 4840/24 4864/17
**stands [1]** 4906/5
**start [3]** 4814/7 4916/3 4944/21
**starts [1]** 4821/9
**state [15]** 4811/7 4815/20 4816/1 4836/21 4836/21 4851/5 4856/16 4866/8 4867/1 4871/5 4888/14 4888/14 4890/16 4890/16 4893/2
**State's [1]** 4883/12
**state-controlled [1]** 4890/16
**State-owned [1]** 4890/16
**statement [22]** 4824/4 4824/5 4824/12 4827/15 4849/6 4849/9 4849/24 4849/25 4850/1 4850/5 4852/3 4866/7 4866/25 4869/4 4869/6 4869/9 4873/1 4873/3 4873/5 4873/6 4873/13 4924/25
**statements [14]** 4816/19 4825/8 4825/11 4825/17 4842/9 4843/18 4849/6 4849/11 4851/22 4856/15 4856/17 4866/9 4872/1 4872/6
**Staten [1]** 4855/11
**states [80]**
**stating [4]** 4815/22 4859/16 4862/22 4863/2
**stationed [2]** 4906/1 4908/20

**S**

**statute [9]**   4846/19 4847/14
 4849/14 4851/21 4852/19
 4865/9 4879/25 4880/14
 4945/12
**statutes [1]**   4871/25
**statutory [1]**   4836/3
**stay [1]**   4909/10
**stenography [1]**   4810/25
**step [1]**   4864/19
**steps [1]**   4874/1
**STEVEN [1]**   4810/18
**stipulated [4]**   4828/15
 4828/17 4828/21 4829/24
**stipulation [1]**   4828/18
**stipulations [6]**   4823/17
 4823/18 4823/22 4910/8
 4911/13 4911/15
**stock [3]**   4886/19 4886/21
 4886/22
**stockholder [2]**   4885/5
 4886/13
**stop [2]**   4927/16 4933/18
**straightforward [1]**   4826/9
**stricken [3]**   4817/1 4824/16
 4919/25
**structure [3]**   4917/6 4920/7
 4932/21
**stuck [1]**   4923/6
**stuff [1]**   4925/8
**SUA [1]**   4897/21
**SUAs [2]**   4898/8 4898/13
**Subeva [2]**   4859/14 4863/1
**subject [5]**   4820/13 4822/24
 4831/12 4833/22 4891/15
**subjective [2]**   4851/12
 4871/12
**submission [1]**   4928/22
**submit [1]**   4938/15
**submitted [5]**   4944/3 4944/25
 4945/25 4946/7 4946/16
**subparagraph [4]**   4861/2
 4861/12 4861/20 4861/25
**substance [1]**   4932/2
**substantial [2]**   4835/21
 4869/15
**substantially [2]**   4893/5
 4893/7
**substantive [3]**   4840/18
 4840/21 4866/15
**subvention [2]**   4916/24
 4918/14
**succeeds [1]**   4906/10
**success [2]**   4841/3 4870/8
**successful [2]**   4840/25
 4870/6
**suffered [1]**   4850/14
**suffice [1]**   4853/10
**suffices [1]**   4887/8
**sufficient [17]**   4822/2
 4837/1 4844/13 4844/23
 4853/23 4855/17 4863/19
 4864/1 4867/14 4868/22
 4869/3 4872/23 4875/18
 4889/11 4892/11 4895/23
 4904/23
**Suffolk [1]**   4855/12

**suggest [6]**   4907/14 4908/18
 4914/21 4919/19 4937/22
 4947/13
**suggested [7]**   4894/20
 4894/23 4894/24 4895/4
 4910/3 4943/12 4947/9
**suggesting [1]**   4909/20
**suggestion [1]**   4926/7
**suggestions [1]**   4848/25
**Suisse [2]**   4860/9 4862/6
**Suisse's [1]**   4860/6
**sum [4]**   4834/9 4836/5 4838/2
 4845/7
**summaries [5]**   4829/17
 4829/18 4829/20 4829/22
 4829/25
**summary [1]**   4829/15
**summations [4]**   4825/8 4833/3
 4914/3 4914/6
**sun [1]**   4826/11
**superseding [29]**   4821/1
 4827/11 4827/12 4827/14
 4827/15 4827/21 4828/8
 4828/12 4833/1 4838/25
 4838/25 4839/3 4841/13
 4842/18 4843/8 4845/23
 4846/2 4848/3 4848/9 4857/13
 4857/15 4858/21 4858/23
 4863/17 4864/1 4864/15
 4865/9 4875/15 4902/7
**support [1]**   4837/2
**suppose [1]**   4824/6
**supposed [1]**   4910/16
**suppression [1]**   4848/25
**surface [1]**   4912/13
**Surjan [12]**   4862/6 4917/4
 4917/7 4917/9 4917/10
 4919/11 4921/17 4921/21
 4936/14 4936/22 4936/25
 4937/1
**surrounding [6]**   4839/19
 4851/15 4855/12 4855/13
 4871/14 4890/25
**suspicion [1]**   4821/24
**sustain [1]**   4872/16
**sustained [1]**   4819/18
**swayed [2]**   4818/1 4820/5
**swear [1]**   4911/6
**swindle [1]**   4849/3
**sworn [5]**   4816/3 4816/5
 4823/15 4911/9 4925/2
**sympathy [6]**   4818/1 4818/4
 4820/4 4820/6 4820/15
 4820/22
**system [4]**   4895/13 4895/19
 4895/22 4896/1

**T**

**table [1]**   4862/19
**tabs [1]**   4928/18
**tactic [1]**   4863/2
**Tassone [1]**   4811/11
**tech [1]**   4913/4
**technical [2]**   4810/22
 4836/11
**techniques [2]**   4829/7
 4829/10
**telephone [4]**   4853/7 4853/9

 4853/13 4888/16
**television [1]**   4847/20
**ten [4]**   4845/13 4908/25
 4910/4 4949/8
**ten-minute [1]**   4845/13
**tends [1]**   4826/7
**term [9]**   4848/22 4867/20
 4879/21 4883/12 4888/1
 4888/4 4888/12 4888/15
 4890/3
**terms [9]**   4863/3 4867/17
 4879/12 4896/5 4901/22
 4902/3 4909/16 4922/18
 4944/21
**testified [7]**   4814/9 4830/7
 4831/2 4832/14 4832/24
 4834/12 4924/8
**testifies [1]**   4826/2
**testify [13]**   4822/13 4822/14
 4822/16 4822/18 4822/23
 4822/24 4830/11 4832/10
 4834/14 4834/17 4835/7
 4836/15 4836/19
**testifying [3]**   4830/18
 4834/3 4834/4
**testimonial [1]**   4924/17
**testimony [51]**   4814/8
 4814/13 4815/16 4816/12
 4818/24 4823/15 4824/16
 4824/22 4825/3 4825/20
 4830/6 4830/9 4831/5 4831/7
 4831/10 4831/11 4831/18
 4833/10 4833/11 4833/12
 4833/15 4833/17 4834/1
 4834/8 4834/23 4834/25
 4835/6 4835/8 4835/9 4836/8
 4836/10 4838/9 4838/12
 4838/17 4838/20 4838/21
 4905/12 4905/16 4905/21
 4908/18 4917/9 4919/24
 4920/19 4920/25 4920/25
 4921/3 4921/6 4921/7 4922/18
 4938/22 4939/13
**tests [1]**   4830/20
**text [1]**   4913/6
**thanksgiving [5]**   4909/14
 4947/6 4948/24 4949/4
 4949/12
**their's [1]**   4936/5
**themselves [2]**   4821/15
 4833/7
**thereby [1]**   4845/10
**therefore [7]**   4821/20 4828/3
 4832/12 4835/7 4843/12
 4865/1 4875/24
**therefrom [1]**   4871/17
**thereof [3]**   4885/5 4888/15
 4890/5
**thereto [1]**   4879/19
**thereunder [1]**   4886/25
**they've [5]**   4923/4 4935/18
 4939/2 4939/3 4943/3
**thinking [1]**   4820/15
**thinks [2]**   4942/9 4942/21
**third [21]**   4815/6 4848/6
 4853/2 4853/3 4857/11
 4858/18 4858/18 4860/22
 4861/6 4863/16 4870/10

**T**

**third... [10]**   4873/16
4873/18 4883/17 4885/9
4888/6 4888/7 4901/7 4903/1
4903/25 4943/16
**third-party [1]**   4861/6
**thoughtfully [1]**   4945/7
**threat [1]**   4841/1
**three [12]**   4814/23 4839/1
4840/11 4856/18 4866/16
4866/22 4867/12 4885/24
4893/17 4900/24 4902/21
4948/9
**throughout [4]**   4819/16
4906/9 4907/22 4913/18
**ticktock [1]**   4936/20
**TISSONE [1]**   4810/21
**title [15]**   4846/16 4846/19
4847/15 4856/12 4856/24
4876/21 4876/25 4877/2
4877/5 4877/7 4877/16
4879/19 4880/14 4886/17
4886/18
**Title 18 [4]**   4846/16 4846/19
4847/15 4877/16
**today [3]**   4914/3 4947/4
4948/24
**together [15]**   4840/15
4841/15 4842/12 4844/19
4846/7 4856/8 4859/2 4863/10
4876/13 4920/2 4920/13
4925/8 4925/13 4925/13
4926/22
**token [3]**   4818/19 4831/18
4868/25
**tons [1]**   4829/21
**top [1]**   4928/19
**total [2]**   4869/17 4869/18
**touched [3]**   4825/21 4826/3
4868/6
**towards [1]**   4827/19
**trade [2]**   4886/21 4888/12
**training [1]**   4836/15
**transaction [2]**   4868/7
4868/12
**transactions [2]**   4868/8
4895/24
**transcripts [6]**   4917/3
4919/17 4919/18 4919/21
4924/16 4936/13
**transfer [14]**   4853/11
4876/14 4877/9 4877/12
4878/6 4878/18 4878/23
4880/19 4881/7 4881/24
4882/10 4882/15 4883/2
4889/2
**transferred [2]**   4881/7
4883/2
**transfers [3]**   4880/18 4882/9
4888/19
**transmission [4]**   4877/9
4877/11 4878/23 4882/15
**transmit [9]**   4846/14 4876/14
4878/6 4878/18 4880/19
4881/7 4881/23 4882/10
4883/2
**transmits [3]**   4847/19

**transmitted [4]**   4846/14
4847/20 4881/6 4883/1
**transport [8]**   4876/14 4878/6
4878/18 4880/19 4881/7
4881/23 4882/10 4883/2
**transportation [13]**   4873/21
4877/9 4877/11 4878/23
4878/25 4881/1 4882/4
4882/15 4882/17 4882/22
4883/18 4883/24 4888/13
**transported [2]**   4881/6
4883/1
**transports [2]**   4880/18
4882/9
**travel [1]**   4862/19
**travelers [1]**   4879/16
**treat [1]**   4907/15
**treatment [1]**   4834/2
**treats [1]**   4890/16
**trial [21]**   4810/8 4811/5
4814/7 4814/15 4815/15
4817/7 4819/16 4824/6
4825/22 4827/19 4828/4
4829/3 4829/4 4832/9 4834/18
4835/19 4836/9 4906/16
4913/18 4934/22 4939/16
**trick [1]**   4849/3
**true [15]**   4820/16 4824/4
4824/5 4824/14 4824/15
4828/19 4828/20 4831/21
4855/1 4855/1 4869/6 4873/5
4873/8 4873/13 4908/13
**truly [1]**   4949/5
**truth [12]**   4824/12 4830/8
4830/10 4833/25 4834/7
4849/1 4849/1 4849/5 4852/1
4872/4 4873/10 4873/11
**truthfully [2]**   4834/4
4908/12
**truthfulness [1]**   4830/20
**truths [2]**   4849/11 4850/4
**turn [3]**   4834/23 4845/22
4852/3
**turned [1]**   4872/6
**TV [1]**   4829/8
**twice [1]**   4937/16
**two [44]**   4825/24 4840/10
4840/12 4840/14 4841/5
4841/6 4841/12 4841/23
4845/20 4853/6 4853/14
4856/3 4856/4 4856/14 4857/5
4857/8 4857/20 4857/24
4858/8 4858/8 4858/14
4858/20 4862/6 4865/8
4872/23 4874/24 4875/2
4875/6 4875/11 4876/2 4876/5
4877/23 4878/5 4881/21
4884/19 4895/11 4898/14
4901/16 4903/8 4932/22
4932/23 4933/16 4939/7
4940/21
**type [4]**   4825/25 4867/15
4943/21 4944/9
**types [2]**   4825/24 4867/12
**typically [1]**   4835/14

**U**

**U.S [6]**   4863/3 4883/3 4883/4
4883/4 4883/5 4886/21
**U.S.C [1]**   4884/24
**UAE [12]**   4860/14 4860/22
4860/22 4860/25 4861/1
4861/5 4861/9 4861/11
4861/17 4861/18 4861/22
4861/24
**UAE-based [7]**   4860/22 4861/1
4861/9 4861/11 4861/18
4861/22 4861/24
**ultimate [2]**   4851/11 4871/11
**ultimately [4]**   4852/11
4852/15 4872/10 4872/13
**umbrella [2]**   4826/13 4826/14
**unable [1]**   4947/3
**unanimous [6]**   4867/15 4879/7
4906/6 4906/12 4907/11
4910/24
**uncalled [2]**   4832/6 4832/7
**uncharged [1]**   4827/17
**uncover [1]**   4829/7
**understood [2]**   4891/24
4938/11
**undertakes [1]**   4887/5
**undertaking [1]**   4845/10
**unfairly [1]**   4943/2
**unfavorable [1]**   4827/19
**unfortunately [2]**   4924/13
4947/3
**UNITED [72]**
**universe [1]**   4913/7
**unjust [1]**   4903/17
**unlawful [66]**   4840/1 4840/15
4841/7 4841/12 4841/24
4842/12 4842/24 4843/12
4843/15 4844/4 4844/23
4845/6 4845/8 4845/11
4846/20 4846/23 4857/23
4864/9 4865/12 4866/1
4866/22 4867/12 4867/16
4870/5 4876/20 4877/6
4877/10 4877/14 4877/15
4878/11 4878/24 4879/2
4879/12 4879/23 4879/23
4880/1 4880/8 4880/10
4880/12 4880/24 4880/25
4881/2 4881/14 4881/20
4882/4 4882/7 4882/16
4882/20 4882/22 4883/8
4883/15 4883/20 4883/25
4884/3 4884/13 4884/15
4884/18 4884/22 4887/24
4887/25 4889/18 4894/12
4900/13 4900/19 4903/25
4904/3
**unless [12]**   4819/10 4821/10
4851/22 4872/1 4873/4
4873/12 4893/12 4902/5
4926/10 4932/9 4944/23
4945/8
**unlike [1]**   4854/19
**unpleasant [1]**   4821/25
**unquote [2]**   4860/20 4922/11
**unsophisticated [1]**   4870/4
**unspoken [1]**   4841/23

**U**

**untrue [5]**  4849/7 4849/7 4856/15 4866/7 4866/25
**updated [1]**  4862/23
**upsizes [4]**  4916/21 4916/23 4917/24 4918/9
**USA [1]**  4811/5
**USC [1]**  4895/10

**V**

**valuation [1]**  4862/6
**valuations [2]**  4917/2 4919/4
**value [9]**  4827/6 4851/17 4862/7 4867/25 4885/15 4885/18 4889/1 4889/1 4889/23
**valued [1]**  4862/8
**vanilla [3]**  4912/14 4912/15 4932/18
**variety [1]**  4879/24
**various [3]**  4830/3 4848/23 4884/7
**venture [3]**  4841/3 4843/3 4887/7
**venturer [1]**  4887/9
**venue [28]**  4854/18 4854/19 4854/21 4854/24 4855/6 4855/18 4855/25 4875/4 4875/7 4875/8 4875/10 4875/18 4876/2 4876/4 4904/11 4904/13 4904/15 4904/23 4905/5 4941/16 4941/24 4942/1 4942/6 4942/23 4943/8 4943/11 4945/21 4946/13
**verdict [34]**  4816/4 4816/6 4817/6 4817/15 4817/18 4818/6 4819/15 4820/2 4820/17 4820/19 4820/23 4823/11 4824/18 4825/9 4825/25 4828/4 4839/2 4839/8 4839/10 4906/6 4906/10 4906/11 4906/12 4907/11 4908/2 4908/13 4910/11 4910/12 4910/13 4910/15 4910/19 4910/23 4910/23 4910/24
**verify [1]**  4927/20
**version [6]**  4922/1 4922/1 4931/15 4931/16 4931/25 4937/10
**versus [2]**  4931/7 4931/19
**vice [12]**  4902/4 4902/4 4902/11 4902/15 4902/17 4902/20 4902/23 4902/23 4903/4 4903/5 4903/9 4903/22
**vice-minister [10]**  4902/4 4902/4 4902/11 4902/17 4902/20 4902/23 4902/23 4903/4 4903/5 4903/9
**vice-ministers [2]**  4902/15 4903/22
**victim [1]**  4850/14
**victims [1]**  4870/2
**view [5]**  4816/6 4831/11 4907/6 4917/21 4921/21
**viewed [2]**  4833/16 4869/16

**views [5]**  4816/4 4817/8 4906/18 4906/22 4907/1
**violate [2]**  4816/3 4840/16
**violated [6]**  4867/22 4901/14 4901/20 4902/20 4903/6 4903/11
**violating [2]**  4897/21 4898/11
**violation [35]**  4816/5 4840/17 4876/20 4876/24 4877/2 4877/4 4878/12 4878/15 4880/2 4880/4 4881/3 4881/14 4881/16 4882/23 4883/21 4883/22 4884/7 4884/17 4884/19 4884/21 4884/22 4884/23 4884/25 4886/4 4893/20 4895/21 4896/7 4900/11 4900/16 4900/18 4900/19 4900/23 4901/2 4901/9 4901/15
**Violations [2]**  4884/4 4895/9
**violator [4]**  4900/25 4901/3 4902/6 4902/22
**violators [1]**  4902/18
**violence [1]**  4906/24
**virtue [1]**  4826/2
**voluminous [1]**  4829/19
**voluntarily [4]**  4839/16 4842/16 4870/19 4887/23
**vote [1]**  4907/9
**VTB [1]**  4860/4

**W**

**WADE [1]**  4810/19
**wait [2]**  4948/14 4948/17
**waiting [8]**  4932/7 4932/17 4933/9 4934/20 4938/3 4939/21 4940/4 4948/23
**walked [1]**  4826/12
**warranted [1]**  4827/8
**watched [1]**  4830/11
**waters [2]**  4855/12 4855/13
**ways [1]**  4872/23
**week [4]**  4909/14 4947/5 4948/25 4949/4
**weeks [3]**  4900/8 4908/7 4935/14
**weigh [4]**  4823/6 4835/8 4892/5 4906/13
**weighing [1]**  4821/16
**weight [13]**  4816/14 4819/11 4819/13 4825/19 4827/7 4831/11 4834/10 4835/10 4836/6 4836/24 4838/13 4838/22 4855/2
**welcome [1]**  4937/20
**welfare [1]**  4841/2
**wet [2]**  4826/13 4826/14
**WFK [1]**  4810/2
**whatsoever [1]**  4894/11
**whim [1]**  4821/23
**White [4]**  4824/7 4824/9 4917/2 4919/5
**Whoa [3]**  4930/7 4930/7 4930/7
**whole [7]**  4815/23 4837/4 4877/12 4878/25 4882/5 4882/17 4926/23

**wholly [1]**  4906/23
**widely [1]**  4891/24
**willful [1]**  4840/6
**willfully [26]**  4839/25 4839/25 4841/8 4842/16 4842/22 4847/7 4848/4 4850/20 4850/23 4851/3 4856/9 4857/10 4858/15 4858/17 4864/13 4870/16 4870/21 4871/3 4877/25 4885/8 4887/18 4887/21 4888/5 4895/15 4896/2 4896/4
**willfulness [2]**  4839/14 4870/13
**WILLIAM [4]**  4810/9 4811/4 4945/18 4948/3
**willing [2]**  4845/11 4845/21
**WILLKIE [1]**  4810/16
**wire [44]**  4839/4 4845/25 4846/1 4846/3 4846/14 4846/18 4846/21 4846/23 4847/1 4847/2 4847/3 4847/6 4847/11 4847/12 4847/14 4847/20 4847/25 4851/21 4852/10 4852/19 4853/5 4853/6 4853/11 4853/11 4853/20 4854/2 4854/8 4854/11 4854/14 4854/16 4855/6 4856/1 4857/16 4873/24 4877/2 4878/16 4880/5 4881/16 4883/23 4884/9 4888/19 4889/2 4903/25 4904/1
**wire-use [1]**  4854/11
**wired [4]**  4860/24 4861/8 4861/16 4861/21
**wires [8]**  4848/8 4853/2 4853/16 4853/25 4854/5 4854/6 4854/7 4854/11
**wisdom [1]**  4816/1
**wit [3]**  4876/20 4877/15 4897/2
**witness [45]**  4814/9 4816/2 4816/23 4822/25 4824/5 4824/12 4826/2 4826/21 4826/23 4830/1 4830/6 4830/7 4830/11 4830/11 4830/12 4830/13 4830/15 4830/24 4830/25 4831/1 4831/8 4831/19 4831/20 4832/5 4833/10 4833/14 4834/5 4834/24 4835/2 4835/4 4835/21 4835/23 4836/1 4836/7 4836/14 4837/1 4838/2 4838/3 4838/9 4838/10 4838/14 4924/3 4924/8 4924/17 4950/2
**witness's [6]**  4824/1 4824/24 4825/16 4826/3 4830/9 4831/11
**witnesses [41]**  4816/11 4817/12 4817/16 4817/17 4819/13 4821/8 4823/16 4825/7 4829/2 4829/23 4831/10 4831/13 4831/15 4831/17 4831/21 4831/25 4832/1 4832/1 4832/6 4832/7 4832/12 4832/14 4832/18

**W**

**witnesses... [18]**  4832/24 4833/2 4833/6 4833/23 4833/24 4834/11 4834/12 4834/15 4835/4 4836/19 4836/21 4838/7 4838/17 4838/21 4917/12 4923/23 4924/22 4936/1
**witnesses' [4]**  4834/17 4834/19 4835/20 4836/23
**word [5]**  4944/5 4944/6 4944/15 4944/18 4944/24
**words [11]**  4821/9 4821/14 4841/17 4842/7 4849/16 4849/16 4851/14 4871/14 4887/2 4887/16 4922/8
**works [4]**  4910/17 4924/23 4924/24 4924/24
**write [3]**  4835/17 4897/22 4943/4
**writing [3]**  4841/17 4905/23 4916/19
**writings [2]**  4846/15 4847/22
**written [2]**  4836/2 4849/16
**wrote [3]**  4851/8 4859/15 4871/8

**Y**

**yesterday [1]**  4914/4
**yield [1]**  4907/7
**YORK [46]**  4810/1 4810/4 4810/12 4810/13 4810/17 4810/17 4846/6 4853/7 4853/9 4855/9 4855/13 4855/16 4855/19 4855/22 4856/7 4859/1 4859/9 4859/23 4860/3 4860/7 4860/8 4860/11 4860/12 4860/18 4860/25 4861/3 4861/9 4861/10 4861/17 4861/18 4861/23 4861/23 4862/20 4863/6 4863/6 4863/10 4864/5 4875/13 4875/20 4876/1 4876/12 4886/22 4904/19 4904/22 4904/25 4905/2
**Your Honor [11]**  4896/9 4897/4 4897/16 4897/25 4898/5 4898/8 4898/18 4898/22 4912/9 4912/16 4914/7
**yourself [1]**  4906/25
**yourselves [3]**  4820/8 4833/24 4842/19
**youthful [1]**  4913/6

**Z**

**zeta [1]**  4924/22
**Zone [1]**  4861/7