```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :
              v.                             :    MEMORANDUM & ORDER
                                             :    18-CR-681-8 (WFK)
DETELINA SUBEVA,                             :
                                             :
                    Defendant.               :
-----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 20, 2019, Detelina Subeva ("Defendant") pleaded guilty to Count Four of a four-count Indictment, charging her with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). The Court now sentences her and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served.

## BACKGROUND

On December 20, 2018, a grand jury returned a four-count Indictment charging Defendant and several co-defendants with: (1) Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349; (2) Conspiracy to Commit Securities Fraud in violation of 18 U.S.C. § 371; (3) Conspiracy to Violate the Foreign Corrupt Practices Act Anti-Bribery and Internal Controls Provisions in violation of 18 U.S.C. § 371; and (4) Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h).

The charges stem from a period during which Defendant worked as a Vice President in the Global Financing Group ("GFG") at Credit Suisse Securities (Europe) Ltd. ("CSSEL") in London, United Kingdom. Gov't Sentencing Mem. ("Gov't Mem.") at 1, ECF No. 438. Defendant reported to Surjan Singh, a managing director and co-defendant in this case, who in turn reported to Andrew Pearse, also a managing director and co-defendant in this case. *Id.* at 1-2.

In February 2013, Credit Suisse was considering whether to loan approximately $372 million to a Mozambique state-owned entity, ProIndicus. *Id.* Mozambique had created ProIndicus to establish a maritime coastal surveillance system and sought the loan to pay a contractor, Privinvest, to create the new system. *Id.* Defendant was a member of the deal team tasked with conducting due diligence and evaluating the merits of the proposed ProIndicus loan. *Id.* In February 2013, Pearse traveled to Maputo, Mozambique to conduct due diligence by meeting with officers and directors of ProIndicus. *Id.* During that trip, Pearse met alone with Jean Boustani, the lead salesman for Privinvest on the ProIndicus project. *Id.* Boustani offered Pearse a kickback—in return for reducing the subvention fee on the ProIndicus loan, Privinvest would pay Mr. Pearse 50 percent of the reduction in the fee. *Id.* Privinvest was to pay the subvention fee to Credit Suisse to subsidize the interest payments on the loan terms. *Id.* After Boustani made the offer, Pearse told Defendant about it; however, he did not tell Defendant whether he had agreed to the offer. *Id.*

Shortly thereafter, Credit Suisse approved the ProIndicus loan with Pearse having successfully lowered the subvention fee by $11 million. *Id.* In exchange for lowering the fee, Privinvest paid Pearse a kickback of $5.5 million. *Id.* After receiving the first $1 million of this kickback, Pearse told Defendant he had accepted Boustani's offer. *Id.* Def. Sentencing Mem. ("Def. Mem.") at 4, ECF No. 443. Without informing Defendant in advance, Pearse then deposited approximately $200,000.00 from the kickback into Defendant's bank account. Gov't Mem. at 2. Defendant kept the money despite knowing the funds were the proceeds of fraud. *Id.* According to the Government, Defendant was not involved in the underlying agreement between Pearse and Boustani, and only learned that Pearse had accepted kickback after he had done so. *Id.*

2

Defendant also worked on two other Mozambique financing projects but was unaware of any kickbacks paid to anyone for those deals. *Id.* For example, Privinvest and Mr. Pearse paid Surjan Singh kickbacks for a project involving Empresa Moçambicana de Atum, S.A., a company owned, controlled, and overseen by Mozambique, but Defendant did not know about this kickback at the time and only learned of the kickback years later when Mr. Pearse asked her to write a letter to Mr. Singh requesting that he repay the "loans" to the contractor. *Id.* Defendant was also unaware that Privinvest had also paid a banker at VTB Bank a kickback for a project involving Mozambique Asset Management, another Mozambique-owned company. *Id.*

On May 20, 2019, Defendant pleaded guilty to Count Four of the Indictment. Pursuant to paragraphs 6 through 12 of the agreement, Defendant consented to the entry of a forfeiture money judgment, which the Court entered on August 9, 2022 in the amount of $200,000.00.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

3

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, No. 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

i. <u>History and Characteristics of the Defendant</u>

Defendant was born on August 28, 1981 in Pleven, Bulgaria. Presentence Investigation Report ("PSR") ¶ 68, ECF No. 408. She is the younger of two children born to Vanyo Sabev and Vasya Subeva, who currently reside with Defendant in the United Kingdom. *Id.* Defendant is close with her parents, who are both aware of the instant offense and remain supportive of her. *Id.* Defendant's father is a former engineer and the owner of a housewares stores; her mother is a former teacher and electrical engineer. *Id.* Defendant's sister, Eleonora Subeva, resides in Bulgaria and is married with two children. *Id.* ¶ 69. Defendant's sister is aware of the instant offense and remains supportive of Defendant. *Id.*

Defendant was raised in lower-middle class economic conditions and reported an uneventful childhood, free from drug, alcohol, and physical abuse. *Id.* ¶ 70. Defendant reported being raised in a nurturing home environment, but when the Soviet Union collapsed, basic living supplies, including food and other household essentials were strictly rationed due to short supply.

4

*Id.* Defendant experienced cramped living conditions, living as she did with her parents, sister, and grandparents in a two-bedroom home. *Id.* During this period, Defendant devoted most of her time toward her education. *Id.* In 1998, Defendant received a one-year scholarship to Mercersburg Academy, a college preparatory school in Pennsylvania. *Id.*

After completing high school in the United States, Defendant returned to Bulgaria. *Id.* ¶ 71. In 2000, at age 19, Defendant received a scholarship to attend Princeton University. *Id.* Following her graduation from Princeton, she relocated to Manhattan, New York, where she secured a position at Credit Suisse. *Id.* In December 2007, Defendant married Laurent Quelin. *Id.* According to Defendant, the marriage was annulled in early 2008. *Id.* However, the couple reconciled after their annulment and remarried on March 3, 2010, in Manhattan, where they remained before relocating to the United Kingdom in April 2010. *Id.*

Defendant has two children with Mr. Quelin, both of whom reside with the couple in London. *Id.* ¶ 72. Mr. Quelin, a former banker, was laid off from employment in late 2020 as a result of the COVID-19 pandemic. *Id.* He now receives income in the gross amount of approximately $10,000 per month. *Id.* According to Defendant, the international publicity that resulted from the instant offense has put a renewed strain on their marriage; they have since endured two additional periods of separation. *Id.* Defendant indicated that since her May 2019 arrest, she has been unemployed, and her husband has been managing the financial burden of paying for the children's expenses and household bills. *Id.*

Defendant is a citizen of Bulgaria and has submitted an application for permanent legal residency in the United Kingdom. *Id.* ¶ 74. Defendant was temporarily admitted to the United States for purposes of the instant prosecution on September 30, 2019, and her temporary visa status expired on October 31, 2019. *Id.* Defendant and her husband co-own and reside—with

5

their children and Defendant's parents—at the case address in London. *Id.* The home is a three-story town home with five bedrooms and four bathrooms. *Id.*

    ii.   <u>Physical Condition</u>

Defendant reported no serious or chronic medical conditions. *Id.* ¶ 77.

    iii.   <u>Mental and Emotional Health and Substance Abuse</u>

According to Defendant, the publicity of this case and its effect on her marriage have been emotionally difficult, and she has developed insomnia and lost nearly ten pounds as a result. *Id.* ¶ 78. Defendant advised she is open to seeking professional counseling but cannot afford the cost as mental health care is considered a nonessential medical service in the United Kingdom and thus is not covered by universal health insurance. *Id.* Defendant denied having a history of suicidal ideation and claims she never encountered emotional or mental health problems prior to this case. *Id.*

Defendant smoked marijuana on one occasion at 20 years of age but has not used illicit substances since. *Id.* ¶ 79. Defendant consumes an occasional glass of wine but has never had problems related to alcohol consumption. *Id.*

    iv.   <u>Educational, Vocational and Special Skills</u>

Defendant graduated from Princeton University in 2004, at age 22, with a major in economics. *Id.* ¶ 80. Defendant completed her secondary school education in Bulgaria and reportedly graduated as the class valedictorian. *Id.* As noted above, between 1998 and 1999, the defendant received a one-year scholarship to Mercersburg Academy. *Id.* Defendant is fluent in English and Bulgarian. *Id.* ¶ 81.

    v.   <u>Employment Record</u>

From 2004 to 2013, Defendant was employed at Credit Suisse in both Manhattan and London. *Id.* ¶ 85. She began her tenure as an analyst and later an associate in the Investment Banking-Technology, Media & Telecom Group Division. *Id.* In 2010, she relocated to London where she worked as an associate in the Emerging Markets Financing Group, and she was promoted to a Vice President position in the Global Financing Group in August 2010. *Id.*

From 2013 to November 2018, Defendant worked as a finance consultant at Logistics International, a transnational shipping firm based in the United Arab Emirates. *Id.* ¶ 84. At this time, Defendant was affiliated with a company known as Palomar, which is connected to the illicit loan scheme comprising the instant offense. *Id.*

Since November 2018, Defendant has been unemployed and is a full-time caretaker for her children. *Id.* ¶ 83.

According to Probation, Defendant has failed to establish she is unable to pay a fine. *Id.* ¶ 92.

### vi. Criminal History

Defendant was charged and convicted of shoplifting in 2004 at the age of 22, for which she received a $384.00 fine. *Id.* ¶ 62.

### vii. Nature and Circumstances of the Offense

As noted, the instant offense involves a loan to a Mozambique state-owned entity, ProIndicus, which was established to create a maritime coastal surveillance system. Privinvest was the contractor that was selected to create the new system. Defendant was a member of the deal team that conducted due diligence for the proposed loan.

In February 2013, Andrew Pearse, a managing director at Credit Suisse, met with Jean Boustani, the lead salesman for Privinvest on the ProIndicus project. Boustani offered Pearse a

7

kickback in exchange for reducing the fees associated with the loan. Pearse accepted, and without informing Defendant in advance, deposited approximately $200,000.00 from the kickback into Defendant's bank account. Defendant kept the money despite knowing the funds were the proceeds of fraud. Defendant was not involved in the underlying agreement between Pearse and Boustani, and only learned that Pearse had accepted kickback after he had done so.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved a conspiracy to launder money from a fraudulent loan scheme involving one of the world's poorest nations. The sentence punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, promote respect for the law, and to deter others from similar conduct.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). Defendant faces a maximum term of imprisonment of 20 years and a maximum supervised release term of three years. 18 U.S.C. §§ 1956(a)(2)(B)(i), 3583(b)(2). A term of not less than one nor more than five years of probation may be imposed,

because the offense is a Class C felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds that extraordinary circumstances exist making such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2).

In addition, the maximum fine is $500,000.00, *see* 18 U.S.C. § 1956(a)(2)(B)(i), and a special assessment of $100.00 is mandatory, 18 U.S.C. § 3013. Finally, Defendant consented to a forfeiture money judgment, which the Court entered in the amount of $200,000.00 on August 9, 2022. *See* ECF No. 445.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" U.S.S.G. § 3553(a)(4)(A).

The applicable Guideline for Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h) is U.S.S.G. § 2S1.1.

The base offense level for Defendant's conduct is 8 pursuant to U.S.S.G. § 2S1.1(a)(2). Because the instant offense involved $5,500,000.00 in illegally obtained loans, 18 levels are added per U.S.S.G. § 2B1.1(b)(1)(J). Because Defendant was convicted under 18 U.S.C. § 1956, 2 levels are added per U.S.S.G. § 2S1.1(b)(1)(B). Because Defendant was a minor participant in the instant offense, the offense level is decreased by 3 levels per U.S.S.G. § 3B1.2(b). A 3-point reduction under this subsection applies because Defendant was not involved in the underlying fraudulent conduct and her money laundering conduct was limited to accepting the $200,000.00 sent to her. Because Defendant has clearly demonstrated acceptance of responsibility for the

offense, the offense level is decreased by 2 levels per U.S.S.G. § 3E1.1(a). Finally, Because the Government has made a motion stating it was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level per U.S.S.G. § 3E1.1(b). The adjusted offense level is therefore 22.

All parties agree the applicable criminal history category is I.

For an offense level of 22 and a criminal history category of I, the Guidelines suggest a term of incarceration of 41 to 51 months and a fine of between $15,000.00 and $500,000.00. U.S.S.G. § 5E1.2(c)(3).

The Guidelines further suggest a term of supervised release of 1 to 3 years. 18 U.S.C. § 3583(b)(2).

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). In this case, the Court recognizes the Government has requested a downward departure from the Guidelines.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to address "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution is not applicable to this case. *See* 18 U.S.C. § 3663.

## CONCLUSION

Finally, Defendant called her British criminal colleague in crime Mr. Bond; he did, after all, drive an Aston Martin. She had the right film but the wrong character: he was not Bond, he was, as Shirley Bassey warned, none other than Goldfinger. "Goldfinger / He's the man, the man with the Midas touch / A spider's touch / Such a cold finger / Beckons you to enter his web of sin / But don't go in / Golden words he will pour in your ear / But his lies can't disguise what you fear / For a golden girl knows when he's kissed her / It's the kiss of death from Mister Goldfinger / Pretty girl beware of this heart of gold / This heart is cold / He loves only gold / Only gold."

A sentence of time served is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court also imposes a special assessment of $100.00.

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

SO ORDERED.

/s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 11, 2022
Brooklyn, New York