

SAMIDH GUHA
212-399-8350 PHONE
sguha@guhapllc.com EMAIL

June 2, 2023

**VIA ECF**

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** ***United States v. Boustani*****, Case No. 18-cr-681**
**Permission to File a Motion to Dismiss and/or Request for Conference**

Dear Judge Garaufis:

We represent Naji Allam, who is a defendant in the above-captioned matter. We have served as counsel to Mr. Allam since the unsealing, on or about March 6, 2019, of the criminal indictment naming him as a defendant. We write pursuant to Rule VI.A of Your Honor's Individual Rules to request permission to move to dismiss the indictment because the Government's delay of Mr. Allam's trial has violated his right to a speedy trial under the Sixth Amendment. We have conferred with the government to advise them of this submission.

Mr. Allam serves as the Chief Financial Officer for the Privinvest Group, a Lebanese-headquartered shipbuilding company. He has resided in Lebanon for the entirety of his life. Mr. Allam has quite literally never stepped foot in the United States, including with respect to any of the conduct alleged in the indictment. Mr. Allam was shocked to learn of the securities fraud charges against him when the government first made the charges public in March 2019 and trumpeted the allegations with an accompanying press release.

Relevant to our proposed motion on his behalf, the Government has taken no steps to extradite Mr. Allam of which we are aware in the nearly four and a half years since the unsealing of the indictment. The lengthy delay—for which Mr. Allam bears no responsibility—and the prejudice and burdens Mr. Allam has suffered over the past four years constitutes a violation of the Sixth Amendment to United States Constitution.[1]

---

[1] We understand that Mr. Allam's co-defendant Manual Chang may also seek permission to move to dismiss the indictment on speedy trial grounds. Although Mr. Allam's circumstances differ in certain aspects from those of Mr. Chang, we submit that minimal—or in Mr. Allam's case, complete absence—of government effort to prosecute this matter against Mr. Chang and Mr. Allam are similar for purposes of the speedy trial analysis.

**Factual Background**

Mr. Allam was born in Lebanon and the nation has been his primary residence throughout his life. He has been employed by the Privinvest Group throughout the pendency of these allegations and at all times has been based in Beirut.

In December 2018, Mr. Allam was indicted under seal, along with an array of other individuals dispersed across the globe. The impetus for the unsealing of the full indictment was the arrest of five defendants, including Mr. Boustani, in January 2019.

Mr. Boustani was incarcerated pre-arrest, despite his presumption of innocence, for approximately eleven months. The trial of Mr. Boustani was held in October and November of 2019 and the government was provided with a full and fair opportunity to present evidence to support its allegations. The evidence showed—and it was not contested—that Mr. Boustani was closely involved in the introduction, negotiation and execution of the Mozambique maritime contracts at the heart of the charged conduct. The government presented several witnesses, including cooperating witnesses. Mr. Boustani testified as to the events and allegations and the government cross-examined Mr. Boustani extensively. No witness implicated Mr. Allam in any of the alleged conduct or transactions.

On December 2, 2019, the jury acquitted Mr. Boustani on all counts in the indictment. Mr. Boustani was released from his lengthy incarceration and returned home to Lebanon.

The indictment also charged Mr. Allam with conspiracy to commit wire fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering. None of the allegations involving Mr. Allam occurred in the United States.

At the time the indictment was unsealed, Mr. Allam was living at home in Lebanon. He almost immediately retained us as independent counsel and we advised the government promptly as to our engagement. Mr. Allam has never been to the United States and had no intentions to do so at the time that the indictment was issued, let alone unsealed. Since the unsealing, Mr. Allam has continued to live openly in Lebanon and has not travelled outside of the country on the advice of counsel. While we have proactively reached out to the government on numerous occasions stretching over the years to determine its intentions, we are not aware of any efforts by the Government, at any time since the indictment, to secure his extradition.

Since Mr. Boustani's arrest, we have continued proactively to contact the government on behalf of Mr. Allam. We emphasized the dearth of evidence implicating Mr. Allam based on the trial and ultimate acquittal of Mr. Boustani. We also highlighted the increasing danger to Mr. Allam of being forced to remain in Lebanon during its severe financial and political crisis in recent years, as described in more detail below, and the resulting hardship. The government declined to provide any information or assistance and we are not aware of any efforts to extradite or otherwise prosecute its allegations against Mr. Allam. In particular, we contacted the government after a notorious explosion created havoc in Lebanon to request permission for Mr. Allam to relocate due to safety concerns, but were rebuffed.

At no time has the government indicated that it has taken any formal steps to advance their prosecution of Mr. Allam since the unsealing of the indictment.

**The Government's Delay in Bringing Mr. Allam to Trial Violates the Sixth Amendment**

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To determine whether a delay between indictment and trial constitutes a constitutional speedy trial violation, the Supreme Court has identified four factors that district courts must balance: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972); *United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019). "The first factor—the length of delay—is a threshold inquiry." *United States v. Cabral*, 979 F.3d 150, 157 (2d Cir. 2020). In other words, "[a] long delay between indictment and trial is presumptively prejudicial to the defendant and triggers an inquiry into the other three *Barker* factors." *United States v. Blanco*, 861 F.2d 773, 777 (2d Cir. 1988). "Once the delay is determined to be sufficient to trigger the Barker inquiry, the length of delay is then considered 'as one factor among several' in conducting the requisite balancing." *Cabral*, 979 F.3d at 157 (quoting *Doggett*, 505 U.S. at 652)). Each of the four *Barker* factors weighs in favor of dismissing the indictment here.

***The length of the delay.*** As a threshold matter, a delay of more than one year is presumptively prejudicial and sufficient to trigger an inquiry in the other *Barker* factors. *See, e.g.*, *Doggett v. United States*, U.S. 647, 652 n.1 (1992); *Black*, 918 F.3d at 255. Mr. Allam was indicted in December 2018—more than four years ago—and is no closer to trial than on the day he was indicted. The Second Circuit has held that a similarly lengthy delay of four and a half years "is unquestionably substantial, and while it may not be conclusive of the constitutional issue, it must weigh heavily in support of appellants' claim that their rights have been violated." *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979). Given that the Government has made no effort of which Mr. Allam is aware to bring his case to trial or made any progress whatsoever in its case against him, it is virtually certain that, if Mr. Allam is ever tried, the delay between indictment and trial will greatly exceed five years, which the Supreme Court has described as "extraordinary." *Barker*, 407 U.S. at 533. Accordingly, the length of delay weighs in favor of dismissal.

***The reason for the delay.*** The second factor requires the Court to determine whether the defendant or the Government is more to blame for the delay. The Government has a "constitutional duty to make a diligent good faith effort" to bring the defendant to trial without unnecessary delay. *United States v. Diacolios*, 837 F.2d 79, 82 (2d Cir. 1988) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)). Thus, "even where the delay is caused by the Government's mere negligence, this factor must still weigh against the Government." *United States v. Leaver*, 358 F. Supp. 2d 255, 265 (S.D.N.Y. 2004). The Government's "duty does not end because an accused is outside the United States; in such a case, the Government has a duty to seek extradition, unless such an effort would be futile." *Id.* at 265.

Here, Mr. Allam bears no responsibility for the delay. As far as Mr. Allam and his counsel are aware, the Government has made no effort whatsoever to secure his extradition, either formally

or informally. And indeed, the Government appears to have lost all interest in Mr. Allam since its defeat in the 2019 trial of Mr. Allam's co-defendant Jean Boustani. Even if the Government had at some point made any active efforts to progress its case against Mr. Allam, the Government seems to have now "chose[n] to cease all active efforts and wait passively for chance to deliver [Mr. Allam] into its hands." *Id.* at 271. "But *Doggett* makes it clear that when the Government chooses to proceed in this manner, it is the Government and not the defendant that must bear the risks associated with delay." *Id.* at 271-72.

The Government cannot credibly contend otherwise. Mr. Allam is not purposefully avoiding apprehension and is not a "fugitive" under any definition of the term. As the Second Circuit recently explained, a "traditional fugitive is a person who, having committed a crime, flees from the jurisdiction of the court where a crime was committed or departs from his usual place of abode and conceals himself within the district." *United States v. Bescond*, 24 F.4th 759, 771 (2d Cir. 2021) (quotation and alterations omitted). Mr. Allam is not a fugitive, either under this definition or intuitively based on these facts. He did not "flee" the United States—he was never in the United States to begin with, either at the time he was indicted or in connection with any of the conduct alleged in the indictment. Nor has he "concealed" himself—at all times since his indictment he has been living openly at home in his native Lebanon.

Nor is Mr. Allam a "constructive-flight fugitive, that is, "a person who allegedly committed crimes while in the United States but who was outside the country—for whatever reason—when she learned that her arrest was sought and who then refused to return to the United States in order to avoid prosecution." *Id.* at 772 (quotation and citations omitted). Mr. Allam, just like the defendant in *Bescond*, "was not in the United States while allegedly committing the charged conduct." *Id.* "Nor is [he] refusing to return to the United States to avoid prosecution; [he] simply remains at home, as [his] home country permits [him] to do." *Id.*

Accordingly, there are no grounds to hold Mr. Allam responsible for the delay, and so this factor too weighs in favor of dismissal.

***Mr. Allam's assertion of his speedy trial rights.*** Through this letter, Mr. Allam places the Government on constructive and actual notice of his speedy trial rights. He does so as an extension of prior conversations, in person and otherwise, in which his counsel advised the government of the lengthy delay and hardship to Mr. Allam. As noted above, it is unclear that the government has made any efforts have been made to secure his presence in court. As such, Mr. Allam is not waiting until the eve of trial to assert his speedy trial rights. *See United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990). Accordingly, this factor too falls to Mr. Allam's favor.

***The prejudice to Mr. Allam.*** The Supreme Court has explained that actual prejudice can consist of, among other things, "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532). "Affirmative proof of impairment of the defense is not required in order to find a Sixth Amendment violation." *United States v. Tigano*, 880 F.3d 602, 618 (2d Cir. 2018). "Prejudice is presumed where there is a prolonged and unjustifiable delay in prosecution, and over time the presumption of evidentiary prejudice grows." *Leaver*, 358 F. Supp. 2d at 272 (quotations and alterations

omitted). Thus, "[t]he longer the period of unjustifiable delay, the less necessary it is for a defendant to show actual prejudice." *United States v. Palmer*, 2021 WL 3932027, at *13 (S.D.N.Y. Sept. 1, 2021).

Although Mr. Allam is not incarcerated, the other two interests are plainly implicated here and weigh in favor of dismissal. For the last four-plus years, Mr. Allam has experienced significant anxiety and concern as a result of the indictment. He is unable to travel outside of Lebanon for fear of arrest, and the situation in Lebanon has been deteriorating. Lebanon has been grappling with a severe economic collapse since late 2019, marked by a dramatic decline in the value of the Lebanese pound. The nation's precarious situation has been further exacerbated by the ongoing refugee crisis, as Lebanon hosts the highest number of refugees per capita globally. The Spring 2021 Lebanon Economic Monitor highlighted the severity of this crisis, ranking it among the worst economic downturns worldwide since the mid-19th century.

The August 4, 2020, Beirut port explosion from the detonation of 2,750 metric tons of improperly stored ammonium nitrate caused significant damage to the country's infrastructure and resources. This disaster damaged the Beirut area's plumbing systems and further strained Lebanon's water, sanitation, and food systems, which were already under immense pressure. Furthermore, the explosion revealed the pervasive corruption within the Lebanese government, as no accountability has been established for the incident.

Amid these deteriorating conditions, tensions between Lebanon and Israel have heightened security concerns in the region. On April 6, 2023, a total of 34 rockets were launched from Lebanon into Israel, marking the largest such attack since the 2006 war between Israel and Hezbollah. In response, the Israeli Air Force retaliated on April 7, 2023, by striking targets in Tyre, situated just an hour from Beirut. This exchange of attacks has intensified the potential for renewed conflict between the two countries which significantly increases the vulnerability of civilians, including Mr. Allam, who are caught amidst these hostilities. The unstable security situation in Lebanon adds to the existing challenges faced by Mr. Allam, as they navigate the ongoing economic, humanitarian, and political crises.

In addition, the lengthy and continued delay has created the very real possibility that Mr. Allam's defense will be impaired. The most recent allegations in the indictment occurred in 2016, and the charges against Mr. Allam are based, in large part, on events that occurred nearly ten years ago. Indeed, the most recent allegations concerning Mr. Allam occurred in 2014. More than four years have now passed since the indictment was returned in 2018, and as time continues to pass without effort by the government, evidence to confirm Mr. Allam's innocence, like that of Mr. Boustani, will be compromised. Witness memories will fade. Critical documents and electronic evidence will become more difficult to locate and access, if not become wholly unavailable. All of this will come at Mr. Allam's expense and because of the government's election to charge Mr. Allam, publicize its allegations but neglect to pursue its prosecution. Under the law and these facts, dismissal is the appropriate remedy.

For all of these reasons, Mr. Allam respectfully requests that the Court grant him leave to move to dismiss the indictment on speedy trial grounds, either by scheduling a pre-motion

conference, or, in the alternative, entering an order setting a briefing schedule for a motion to dismiss the indictment.

Thank you for Your Honor's consideration of this request.

Respectfully submitted,

Samidh Guha
GUHA PLLC
1740 Broadway, 15th Floor
New York, New York 10019
Email: sguha@guhapllc.com
Telephone: (212) 399-8350
Facsimile: (212) 399-8331

*Attorney for Naji Allam*

cc: All parties via ECF