**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

SME:HDM/GN/PC/MC
F.# 2016R00695

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 26, 2024

By ECF and Email

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Manuel Chang
Criminal Docket No. 18-681 (NGG)

Dear Judge Garaufis:

The government respectfully moves to quash 21 trial subpoenas the defendant has served on DOJ employees. See Exhibit A (trial subpoenas). The Court should quash the subpoenas because the defendant: (1) has failed to comply with Touhy; (2) is seeking to improperly put the government on trial; and (3) has refused to identify the prior statements he intends to try to introduce through FBI agents.

I. Factual Background

In July 2024, the defendant served 21 trial subpoenas on the government seeking testimony from 20 FBI employees, including 14 Special Agents, and one senior employee of the Department of Justice's Office of International Affairs.[1] Four of the individuals live and work outside New York. The defendant also asked the government to identify the authors of approximately 76 sets of "raw notes" of witness interviews. The government agreed to identify the authors of the raw notes, but objected to the subpoenas for failing to comply with the governing Touhy regulations. (See Gov't Opp. to Chang Pretrial Ltr. (Dkt. 651) at 4-5, n.4 ("The defendant apparently thinks the following is a sufficient summary of the testimony . . . 'For Touhy purposes, the subject matter of their testimony will be the work that they have done on this case.' It is not.").) On July 10, 2024, the Court ordered the defendant to comply with the Touhy regulations, including "setting forth a summary of the testimony sought." (Dkt. 663, at 4 (citing 28 C.F.R. § 16.23(c))).

[1] At 10:25 A.M. today, defense counsel withdrew the subpoena for the senior DOJ employee.

Although the government has identified the authors of the raw notes for the defendant on a rolling basis,[2] the defendant proceeded to ignore the Court's order for two weeks by refusing to provide summaries of the desired testimony. Two days ago, on the afternoon of July 24, in the middle of the testimony of Surjan Singh, the defense produced two Touhy declarations related to three of their 21 subpoenas, which included 400 pages of FBI 302s, agent notes, and other documents. Exhibit B (Jamie Solano Touhy declaration for FBI Agent Farrell Binder); Exhibit C (Jamie Solano Touhy declaration for FBI Special Agents Angela Tassone and Fatima Haque). The declaration related to SA Binder, which is 111 pages, seeks:

> testimony of Special Agent Binder's work conducted during the course of the Prosecution, including email accounts the FBI obtained via search warrant, documents and information he [sic] reviewed in connection with the Prosecution, and interviews that Special Agent Binder conducted during the course of the Prosecution, inlcuding [sic] and statements made by the government's trial witnesses and hearsay declarants to Special Agent Binder. This includes statements that hearsay declarants made to Special Agent Binder that are inconsistent with the government's narrative of events in the trial. This also includes these agent's practice in taking contemporaneous notes and preparing reports.

The declaration for SAs Haque and Tassone, which is 289-pages, similarly seeks

> testimony of Special Agents Hauque's [sic throughout] and Tassone's work conducted during the course of the Prosecution, including email accounts the FBI obtained via search warrant, documents that the FBI obtained through Credit Suisse, Andrew Pearse, Surjan Singh, and VTB Capital, and interviews that Special Agents Hauque and Tassone conducted during the course of the Prosecution, and statements made by the government's trial witnesses to Special Agents Hauque and Tassone. This includes statements that Andrew Pearse made to the FBI that are inconsistent with his testimony at trial. This also includes Andrew Pearse's testimony that he did not make certain statements to the FBI that are reflected in the notes and reports of Special Agents Haque and Tassone (the testimony of which the government did not correct during the trial or stipulate that these agents' notes were accurate of what was heard at the time).

The next morning, on Thursday, the government asked defense counsel to provide any additional Touhy declarations by Friday, July 26, 2024, or the government would assume the defense had withdrawn the remaining 18 subpoenas. Defense counsel responded: "we are not withdrawing our other subpoenas" and did not state whether they would provide additional Touhy declarations.

---

[2] In total, the government identified the authors of 60 notes. For example, the government identified the authors of notes related to Andrew Pearse and Surjan Singh on July 11, 2024, and the authors of 42 sets of notes related to 28 other individuals on July 16, 2024. The government has expended substantial time and resources to do so, and to date has been unable to identify the authors of 16 sets of notes. All of those notes relate to interviews of witnesses neither party intends to call at trial. Identifying the authors of the remaining notes is therefore entirely unnecessary.

At the end of the trial day on July 25, 2024, the government raised concerns about the subpoenas to the Court, because the defendant had not provided Touhy declarations for most of the witnesses yet refused to withdraw any of the subpoenas. After the court adjourned, the government asked defense counsel whether the defendant would (1) agree to withdraw any of the subpoenas and (2) identify the two prior inconsistent statements defense counsel said the defendant wanted to introduce, which defense counsel had referenced in court. Defense counsel refused to do so, notwithstanding her prior representations to the Court that "we do not have any intent to call these agents" and "I'm happy to work with the Government to narrow it down; because I agree that it can be narrowed down." (Trial Transcript ("Tr."), at 1643-1644 (Solano).) Defense counsel instead told government counsel to review the transcripts of Andrew Pearse to identify the relevant statements (and presumably compare the transcripts to the hundreds of pages of records attached to the Touhy declarations to try to identify what defense counsel believes are two prior inconsistent statements defense counsel apparently has already identified).

Later that evening, defense counsel asked us to "immediately" identify which FBI agents were out of town and have conflicts, as well as provide a "summary" of the outstanding witnesses' testimony and indicated that they would be submitting a Touhy declaration for Special Agent Adediran, the case agent. See Exhibit D (correspondence between parties). Defense counsel followed up in the morning, asking several other questions about the government providing documents to Ms. Alpaugh, the FBI forensic accountant. Id. There is, of course, nothing improper about the government providing records to an FBI employee to review and summarize—this is done routinely in financial crimes cases. The government responded and provided the names of the FBI agents who are out of town and repeated its request for defense counsel to identify the two purported prior inconsistent statements defense counsel referenced in Court. See id. Defense counsel responded that the two prior inconsistent statements are "reflected in the transcript" and continued to refuse to identify the specific statements, withdrew the subpoena for the senior DOJ official and provided a declaration for the case agent, Mr. Adediran, approximately ninety minutes before the governments motion to quash is due. See id.

## II. Legal Standards

### A. Touhy Regulations

Under 5 U.S.C. Section 301, the head of every Executive Branch agency is authorized to prescribe regulations for the government of the department, the conduct of the employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property. See United States ex. rel. Touhy v. Ragen, 340 U.S. 462, 468 (1951). A federal agency is not required to comply with any request for testimony that fails to comport with the applicable agency regulations governing the production or disclosure of such information. See Touhy, 340 U.S. 462 (1951) (authorizing such regulations).

Subpart B of Part 16 of Title 28, Code of Federal Regulations, sometimes referred to as the Department's Touhy regulations, provides that "no present or former employee of the Department of Justice may testify or produce Departmental records in response to subpoenas in any state or federal proceeding without obtaining prior approval by an appropriate Department official."

The regulations are intended to provide a procedure for subpoenaing Department employees, so the government has an opportunity to protect certain types of information from unwarranted and unconsidered disclosure. The regulations require, among other things, that the party making a demand for oral testimony must provide the United States Attorney with an affidavit, or, if that is not feasible, with a statement setting forth a summary of the oral testimony sought by the demand and its relevance to the proceedings. See 28 C.F.R. § 16.23(c); see also United States v. Duncan, Case No. 18-Cr-289 (SHS), 2019 WL 2210663, at *3-4 (S.D.N.Y. May 22, 2019) (granting government's motion to preclude testimony of agent where Touhy letter identified three irrelevant areas of examination). The government uses the summary, in consultation with the originating component—here, the FBI—to determine whether to authorize the testimony. See 28 C.F.R. § 16.23; 16.24(a).

B. Rule 17 Subpoenas

Pursuant to Rule 17, a court may quash or modify a subpoena if compliance would be unreasonable or oppressive. Fed. R. Crim. P. 17(c). While Rule 17(c) applies by its terms only to subpoena duces tecum, courts may also quash subpoenas ad testificandum. See United States v. Zedner, 401 F.3d 36, 40 (2d Cir. 2005) (district court repeatedly quashed subpoenas issued to former high-level federal officials in bank fraud case). "Courts have repeatedly, when the interest of justice have so warranted, heard and granted (and denied) motions to quash subpoenas to compel testimony." United States v. Klubock, 639 F. Supp. 117, 123 (D. Mass. 1986), aff'd, 832 F.3d 664, 667 (1st Cir. 1987) (en banc).

District Courts have broad discretion to quash subpoenas for testimony. Courts may quash a subpoena for testimony when a witness has no personal knowledge of the underlying facts at issue, see United States v. Caming, 968 F.2d 232, 238 (2d Cir. 1992), when witness testimony would be inadmissible hearsay, see United States v. Harwood, 998 F.2d 91, 97 (2d Cir. 1993), and when the testimony is "collateral rather than material to the issues in the case," United States v. Scopo, 861 F.2d 339, 345 (2d Cir. 1988) ("In assessing the value of the proposed witnesses' testimony, we must bear in mind that the trial judge has wide discretion to exclude proffered evidence that is collateral, rather than material, to the issues in the case.").

III. The Court Should Quash the Subpoenas

A. The Court Should Quash the Subpoenas for Failing to Comply with Touhy

The Court should quash sixteen of the subpoenas for failing to comply with the Touhy regulations.[3] The Supreme Court's decision in Touhy is only one of many cases in which the federal courts have rejected attempts by litigants to force federal employees to provide testimony or documentary evidence where the employees had not been authorized to do so by their

[3] The sixteen subpoenas seek testimony from Andrew Harris, Christian Isolda, Darrin Kibel, Taylor LaGrange, Mike Nevitt, Jonathan Polonitza, Michael Preis, Shawn Russell, Charles Thumann, Jessica Volchko, David Williams, Cara Alpaugh, Vito Cannova, Steven Cava, Matt Chenevey, and Joel DeCapua.

agency. See, e.g., Houston Bus. J., Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1212 (D.C. Cir. 1996); Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991); United States Steel Corp. v. Mattingly, 663 F.2d 68 (10th Cir. 1980); Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973); Hotel Employees Hotel Assoc. Pension Fund v. Timperio, 622 F. Supp. 606, 607-08 (S.D. Fla. 1985); Smith v. C.R.C. Builders Co., 626 F. Supp. 12, 14-15 (D. Colo. 1983); Reynolds Metal Co. V. Crowther, 572 F. Supp. 288, 290-91 (D. Mass. 1982); Marcoux v. Mid-States Livestock, 66 F.R.D. 573, 579 (W.D. Mo. 1975). Touhy and its progeny dispose of this matter.

On July 10, 2024, the Court concluded that Touhy covered any "former or current Department of Justice employee" and ordered the defendant to provide the government with summaries of the testimony should the defense seek to elicit testimony from any FBI agent involved in this matter. (Dkt. 663, at 4). The defendant chose not to provide "any affidavit, or, . . . statement" summarizing what testimony he seeks for sixteen witnesses and would not confirm to government counsel whether it would do so. Because the defendant failed to provide statements summarizing the testimony sought in compliance with Touhy, the government cannot authorize the testimony of these witnesses. The Court should therefore quash these sixteen subpoenas.

B. The Defendant Cannot Call Witnesses to Put the Government on Trial

The Court should also quash all twenty-one subpoenas, including the subpoenas to Haque, Tassone, Adediran and Binder, because they improperly seek irrelevant and inadmissible evidence. "Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation." United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999). A defendant may not put the government on trial by arguing that there was something more the government could have done to investigate the case when the defendant has not made any connection between an allegedly poor investigation and any evidence introduced at trial. McVeigh, 153 F.3d at 1192. Evidence elicited to support a broad claim that the government's investigation of the case was sloppy or inadequate without this requisite connection is irrelevant and thus inadmissible under Rule 402 because the jury will be called upon to determine whether the Government's investigation was good or bad and not whether the defendant is guilty or not guilty. See United States v. Veal, 23 F.3d 985, 989 (6th Cir. 1994); United States v. Cordova, 157 F.3d 587, 594 (8th Cir. 1998) (upholding exclusion of "exhaustive exploration of things not done in the investigation" as "time-consuming and of little relevance" because "real issue at trial was whether the government's witnesses were truthful and whether their testimony was sufficient to convict").

It is well within a district court's discretion to preclude the defendant's counsel from questioning witnesses about investigative steps not taken. United States v. Zaccaria, 240 F.3d 75, 81 (1st Cir. 2001) ("In the absence of a particularized showing that the Government was not turning square corners, the district court acted well within its discretion in refusing to let defense counsel embark on a fishing expedition."). Any attempt by the defendant to shift the spotlight to efforts the government could have taken in the investigation inevitably diverts the jury's attention from the issues of the trial in violation of Rule 403. McVeigh, 153 F.3d at 1192.

In United States v. Robbins, 197 F.3d 829, 845 (7th Cir. 1999), the Seventh Circuit affirmed the trial judge's refusal to have the "trial become a trial of the investigation," holding that the district court properly excluded under Rule 403 a line of cross-examination by the defendant of a DEA agent where defendant intended to impugn the thoroughness of the investigation to demonstrate that people other than the defendant were responsible for the crime. The Court deemed the proffered cross-examination to be of "marginal relevance." Similarly, in United States v. Estell, 641 Fed App'x 552, 556 (7th Cir. 2016), the Court of Appeals upheld the District Court's ruling that prevented the defendant from arguing that the investigation was deficient, which the Court of Appeals held was a "tangential issue that could confuse the jury." Indeed, for these reasons, courts regularly instruct the jury that there is no legal requirement that law enforcement agents investigate crimes in a particular way or that the Government prove its case through any particular means. See Dkt. No. 236-2, United States v. Kurland, Case No. 20-cr-306 (NGG), at 61 (particular investigative techniques instruction).

Here, the Touhy declarations and defense counsel's statements to the Court yesterday make clear the defendant intends to call these witnesses to try to impugn the thoroughness of the government's investigation. Such testimony challenging the government's investigation is improper. As noted above, the Touhy declarations seek testimony of Special Agent Binder's "work conducted during the course of the Prosecution, including email accounts the FBI obtained via search warrants, documents and information he [sic] reviewed in connection with the Prosecution," and similarly Special Agents Haque's and Tassone's "work conducted during the course of the Prosecution, including email accounts the FBI obtained via search warrant, documents that the FBI obtained through Credit Suisse, Andrew Pearse, Surjan Singh, and VTB Capital, and interviews . . . conducted during the course of the Prosecution . . ." The defense also "expects to elicit from Special Agent Babatunde's [sic] testimony regarding his work on the Prosecution, including what records were sought in the course of the investigation, what records were not sought (and why), whether the FBI collected *any* emails involving Pearse and the phrase "Kung Fu" beyond the sole email admitted into evidence, who determined what would and would not be included in the government's summary charts (and why), and whether and why the government does not know the accountholder at Banco Mozambique [sic], notwithstanding that it collected records from various financial institutions, including Barclays Swiss."[4] See Exhibit E at 2 (Adediran Declaration). Defense counsel also represented to the Court, they were "trying to get at . . . if there are records that either the Government collected or the Government did not collect that we have the ability to elicit that in our case." (Tr. at 1643 (Solano).) These obvious attempts to put the government's investigation on trial should be rejected by the court. See Tr. at 1406 (The Court: "Please remember the Government is not on trial; there is no evidence that the Government is operating under any kind of improper motive."); see also Duncan, 2019 WL 2210663, at *3-4 (granting government's motion to preclude testimony of agent where Touhy letter identified three irrelevant areas of examination).

C. The Court Should Quash the Subpoenas Because the Defendant Refuses to Identify the Prior Inconsistent Statements He Wants to Introduce

[4] The government just received the declaration for Agent Babatunde Adediran at 10:25 A.M. this morning and thus, if the Court would like additional briefing on his declaration, we respectfully request additional time to provide such briefing.

The Court should also quash the subpoenas because the defendant refuses to identify the prior inconsistent statements he seeks to introduce through the FBI agents. As the Court noted yesterday, "[t]here has to be a focusing on the specifics of what the agent would be testifying to, or the subject matter he or she would be testifying to, that would be inconsistent with what the witness said, what Mr. Pearse said. I think that's key." (Tr. at 1645.) The defendant has refused to do any narrowing of the testimony sought. Indeed, defense counsel would not even identify the two statements they believe are admissible prior inconsistent statements by Mr. Pearse. The Court should therefore quash the subpoenas.[5]

Respectfully submitted,


MARGARET A. MOESER
Chief, Money Laundering
& Asset Recovery Section
Criminal Division
U.S. Department of Justice

By: /s/
Morgan J. Cohen
Trial Attorney
(202) 616-0116

GLENN S. LEON
Chief, Fraud Section
Criminal Division
U.S. Dept. of Justice

By: /s/
Peter Cooch
Trial Attorney
(202) 924-6259

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: /s/
Hiral Mehta
Genny Ngai
Assistant United States Attorneys
(718) 254-7000


cc: Clerk of Court (NGG) (by ECF)
Defense counsel (by ECF)

[5] The government reserves the right to move to preclude introduction of any statements on hearsay or other grounds. It does not do so here because the government does not know what prior statements by witnesses the defendant intends to introduce and cannot glean that from the hundreds of pages of 302s, notes, and other documents appended to their Touhy declarations.