1

```
 1

 2                       UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF NEW YORK
 3
     - - - - - - - - - - - - - - X
 4
     UNITED STATES OF AMERICA,      :    18-CR-681(WFK)
 5
                                         United States Courthouse
 6          -against-              :    Brooklyn, New York

 7   DETELINA SUBEVA,               :
                                         August 11, 2022
 8           Defendant.            :    12:00 o'clock p.m.

 9   - - - - - - - - - - - - - - X

10                    TRANSCRIPT OF SENTENCING
             BEFORE THE HONORABLE WILLIAM F. KUNTZ, II
11                  UNITED STATES DISTRICT JUDGE.

12   APPEARANCES:

13   For the Government:            BREON PEACE
                                    United States Attorney
14                                  BY: HIRAL D. MEHTA
                                    Assistant United States Attorney
15                                  271 Cadman Plaza East
                                    Brooklyn, New York
16
                                    DEPARTMENT OF JUSTICE
17                                  BY:  MARGARET MOESER
                                    1400 New York Avenue, 10th Floor
18                                  Washington, DC  20530

19
     For the Defendant:             ROPES & GRAY LLP
20                                  1211 Avenue of the Americas
                                    New York, New York  10036
21
                                    BY: MICHAEL G. McGOVERN, ESQ.
22                                      BRITTANY G. NORFLEET, ESQ.

23
     Court Reporter:                Charleane M. Heading
24                                  225 Cadman Plaza East
                                    Brooklyn, New York
25
     Proceedings recorded by mechanical stenography, transcript
```

2

1    produced by computer-aided transcription.

2              THE CLERK:  The United States District Court for the

3    Eastern District is now open for the transaction of all such

4    business which may come before it.  The Honorable William F.

5    Kuntz, II, presiding.

6              Criminal cause for a sentencing, 18-CR-681, USA

7    versus Detelina Subeva.

8              Counsel, please state your appearances for the

9    record starting with the government.

10             MR. MEHTA:  Good afternoon, Your Honor.  Hiral Mehta

11   the government.  I'm with my colleague, Trial Attorney Molly

12   Moeser, Department of Justice, Special Agent of the FBI

13   Fatinia Haque as well.

14             THE COURT:  Good afternoon.  Is your team all fully

15   vacc'd and boosted?

16             MR. MEHTA:  Yes, Your Honor.

17             THE COURT:  Then you may remove your masks.  It's

18   not a requirement but you may do so.  You may be seated.

19             MR. MEHTA:  Thank you, Your Honor.

20             MR. McGOVERN:  Good afternoon, Your Honor.  Michael

21   McGovern on behalf of Ms. Subeva.  My colleague Brittany

22   Norfleet is with me here at counsel table today as is

23   Ms. Detelina Subeva.

24             THE COURT:  Good afternoon.  Are you all fully

25   vacc'd and boosted?

3

1          MR. McGOVERN:  We are, Your Honor.

2          THE COURT:  You may remove your masks and be seated.

3    It's not a requirement but you may do so.

4          MR. McGOVERN:  Thank you.

5          THE COURT:  Members of the public, you may be seated

6    but you must keep your masks on consistent with our Eastern

7    District protocols.

8          Are there any other counsel who wish to note their

9    appearances for the record today?

10         Hearing none, we will proceed.

11         Good afternoon, Ms. Subeva.

12         THE DEFENDANT:  Good afternoon.

13         THE COURT:  I'm going to ask you to pull the

14   microphone close to you and make sure that it's on with that

15   oval light lit.  Okay?

16         Ms. Subeva, have you had an opportunity to review

17   carefully the presentence investigation report filed in your

18   case on December 16th of 2020?

19         THE DEFENDANT:  Yes, I have, Your Honor.

20         THE COURT:  Have you discussed that report with your

21   counsel?

22         THE DEFENDANT:  I have, Your Honor.

23         THE COURT:  Have you also read the following items

24   and discussed them with your counsel:  The first addendum to

25   the presentence investigation report filed on May 26th of

4

1  2022?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  The government's objections to the

4  presentence investigation report filed on July 12th of 2022?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Defense counsel's objections to the

7  presentence investigation report filed on July 13th of 2022,

8  have you seen that?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  The second addendum to the presentence

11  investigation report filed on July 19th of 2022, have you seen

12  that?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  The government's sentencing memorandum

15  filed on July 28th of 2022?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And defense counsel's sentencing

18  memorandum filed on August 5th of 2022 which also includes

19  letters of support from your family and your community.  Have

20  you seen that as well?

21          THE DEFENDANT:  I have, Your Honor.

22          THE COURT:  In addition to those materials, my files

23  also reflect copies of the following:  The indictment filed in

24  this case on December 19th of 2018; the agreement which

25  accompanied the May 20, 2019 change of plea hearing; and the

5

1   order of forfeiture which I entered on August 9th of 2022.

2          Are there any other documents either counsel would

3   like to call to the court's attention beginning with the

4   government?

5          MR. MEHTA:  No, Your Honor.

6          THE COURT:  Defense counsel?

7          MR. McGOVERN:  No, Your Honor.

8          THE COURT:  Ms. Subeva, do you feel prepared to go

9   forward with sentencing today?

10          THE DEFENDANT:  I do, Your Honor.

11          THE COURT:  Ms. Subeva, you have the right to

12   address this court before I impose sentence.  I will give you

13   the opportunity to do so in just a few minutes and you should

14   feel free to say anything you think appropriate at that time

15   before I finalize my judgment in your case.  Do you

16   understand?

17          THE DEFENDANT:  Thank you.

18          THE COURT:  Are you satisfied with your counsel's

19   representation?

20          THE DEFENDANT:  Very much, Your Honor.

21          THE COURT:  Do you feel you have received the

22   effective assistance of counsel?

23          THE DEFENDANT:  Yes, I have, Your Honor.

24          THE COURT:  If you do not believe you have received

25   the effective assistance of counsel, you may raise a claim of

6

1  ineffective assistance of counsel at an appropriate time and

2  in an appropriate forum.  Do you understand?

3          THE DEFENDANT:  I do, Your Honor.

4          THE COURT:  Now, the United States Code sets forth

5  the following sentencing parameters for conspiracy to commit

6  money laundering in violation of Title 18 of the United States

7  Code, Section 1956(h):  The statutory maximum imprisonment

8  term of 20 years; the statutory maximum term of supervised

9  release of three years; a term of probation of not less than

10 one nor more than five years; a maximum fine of $500,000; and

11 a mandatory special assessment of $100 per count which I am

12 required to impose in all cases.

13         This court must also consider the sentencing

14 parameters set by the United States Sentencing Guidelines.

15 Here, the applicable guideline for conspiracy to commit money

16 laundering in violation of Title 18, United States Code,

17 Section 1956(h) is USSG Section 2S1.1.

18         According to Probation, the base offense level is 6

19 pursuant to USSG Section 2S1.1(a)(1)(A) because defendant

20 committed the underlying offense or would be accountable for

21 the underlying offense under USSG Section 1B1.3(a)(1)(A) and

22 because the offense level for that offense can be determined.

23 Probation states that because the underlying conduct involved

24 fraud, USSG Section 2B1.1 is referenced to determine the

25 offense level which is 6 pursuant to USSG Section 2B1.1(a)(2).

7

1        Probation then calculates the offense level as

2   follows.  Because the instant offense involved $5,500,000 in

3   illegally obtained loans, 18 levels are added pursuant to USSG

4   Section 2B1.1(b)(1)(J).  Because the instant offense involved

5   ten or more victims, two levels are added pursuant to USSG

6   Section 2B1.1(b)(2)(A)(i).  Because a substantial part of the

7   fraudulent scheme was committed outside of the United States,

8   two levels are added pursuant to USSG Section 2B1.1

9   (b)(10)(B).

10        Because the offense substantially jeopardized the

11   financial security of the Mozambique government, an

12   organization that had 1,000 or more employees, four levels are

13   added pursuant to USSG Section 2B1.1(b)(17)(B)(ii)(II).

14   Because the offense involved a violation of securities laws,

15   and at the time of the offense, defendant was an officer,

16   director or employee of a publicly traded company, four levels

17   are added pursuant to USSG Section 2B1.1 (b)(19)(A)(i).

18   Because defendant was a minor participant in the instant

19   offense, the offense level is decreased by two levels pursuant

20   to USSG Section 3B1.2(b).

21        Because the defendant has clearly demonstrated her

22   acceptance of responsibility for the offense, the offense

23   level is decreased by two levels pursuant to USSG 3E1.1(a).

24   Because the government has made a motion stating it was

25   notified in a timely manner of the defendant's intent to enter

8

1 a plea of guilty, the offense level is decreased by one

2 additional level pursuant to USSG 3E1.1(b).

3          The adjusted offense level according to Probation is

4 therefore 31.

5          The government and defense counsel, however, on the

6 other hand, calculate the offense level differently.

7 According to the government and defense, the base offense

8 level for the defendant's conduct is 8, pursuant to USSG

9 Section 2S1.1(a)(2).  Because the instant offense level

10 involved $5.5 million in illegally obtained loans, 18 levels

11 are added pursuant to USSG Section 2B1.1(b)(1)(J).  Because

12 the defendant was convicted under Title 18 of the United

13 States Code, Section 1956, two levels are added pursuant to

14 USSG Section 2S1.1(b)(1)(B).

15          Because the defendant was a minor participant in the

16 instant offense, the offense level is decreased by three

17 levels pursuant to USSG Section 3B1.2(b).  The government and

18 defense counsel recommend a three point reduction under this

19 subsection because they argue the defendant was not involved

20 in the underlying fraudulent conduct and her money laundering

21 conduct was limited to the accepting of the $200,000 sent to

22 her.

23          Because the defendant has clearly demonstrated

24 acceptance of responsibility for the offense, the offense

25 level is decreased by two levels pursuant to USSG

9

1    Section 3E1.1(a).  And, finally, because the government has

2    made a motion stating it was notified in a timely manner of

3    the defendant's intention to enter a plea of guilty, the

4    offense level is decreased by one additional level pursuant to

5    USSG 3E1.1(b).

6            The adjusted offense level according to the

7    government and the defense is therefore 22.

8            Defendant has one prior conviction which results in

9    a criminal history score of I.  According to the sentencing

10   table in use, Chapter 5, part A, USSG Chapter 5, part A, a

11   criminal history score of one establishes a criminal history

12   category of I.

13           For an offense level of 31, with a criminal history

14   category of I, the sentencing guidelines suggest a term of

15   incarceration of 108 to 135 months and a fine of between

16   $30,000 and $500,000.  For an offense level of 22, and a

17   criminal history category of I, the sentencing guidelines

18   suggest a term of incarceration of 41 to 51 months and a fine

19   of between $15,000 and $500,000.  The guidelines further

20   suggest a term of supervised release of one to three years.

21           Pursuant to paragraphs 6 through 12 of the

22   agreement, the defendant also agreed to the entry of a

23   forfeiture money judgment which the court entered on

24   August 9th of 2022 in the amount of $200,000.

25           Probation recommends a sentence of eight years in

10

1  custody, a fine of $30,000, and a $100 special assessment.
2  The government requests the court downwardly depart from the
3  guidelines.  Defense recommends a sentence of time served if
4  the court agrees that the defendant's detention in the custody
5  of the FBI suffices for the imposition of a sentence of time
6  served.  Otherwise, defense counsel requests a sentence of
7  probation.
8          Counsel, beginning with the government, am I missing
9  anything pertinent to today's proceedings?
10          MR. MEHTA:  No, Your Honor.
11          THE COURT:  Defense counsel?
12          MR. McGOVERN:  No, Your Honor.
13          THE COURT:  Are there any objections either counsel
14  wishes to raise at this time beginning with the government?
15          MR. MEHTA:  No, Your Honor.
16          THE COURT:  Defense counsel?
17          MR. McGOVERN:  No, Your Honor.
18          THE COURT:  That being the case, I will now turn it
19  over to the defense.  Pull the microphone close to you and
20  keep your voice up.
21          MR. McGOVERN:  Your Honor, is it okay if I remain
22  seated?
23          THE COURT:  Absolutely.
24          MR. McGOVERN:  Thank you.
25          Your Honor, I will be brief.  I know the Court has

11

1  read our sentencing submission as well as the government's 5K

2  letter and I appreciate the Court's attention to those.  I do

3  want to add just some personal reflections that are not

4  captured in the papers.

5         THE COURT:  Proceed.

6         MR. McGOVERN:  I have been with Lina every step of

7  the way in this now four year ordeal.  I met with her shortly

8  after her arrest in the UK.  She was shaken to the core.  She

9  was back home with her two children, the youngest of whom was

10  still breastfeeding.  He was only 11 months old.  And yet,

11  Lina made it clear to me from the start that she wanted to

12  cooperate and she wanted to provide the government whatever

13  assistance she could.  She has done exactly that for the last

14  three and a half years and she'll continue to do so.

15         As the government has accurately and thankfully

16  recorded it for the government, I mean for the Court in the

17  5K, while her role in the charged conduct was minor, and

18  that's an assessment that the Probation Department as well

19  agrees with, her cooperation has been both exemplary and

20  invaluable.

21         She was the first defendant, as the Court knows, to

22  come forward to cooperate and she did that through me within

23  weeks of her arrest.  I was on the phone with the Eastern

24  District extending her willingness to cooperate.  She

25  immediately consented to a waiver of extradition and as

12

1   expeditiously as possible, after meeting in several proffer

2   sessions with the government, Lina came here to the United

3   States to appear before Your Honor and pleaded guilty pursuant

4   to the cooperation agreement, and she admitted in that plea

5   that she had failed to return $200,000 in illegal proceeds

6   that her supervisor, Andrew Pearse, had put into her bank

7   account without her advanced knowledge.

8          As we said in our submission to the Court, Lina's

9   failure to give that money back to Andrew Pearse after she

10  learned of the bank deposit is a decision that she will regret

11  for the rest of her life, but just as important, she has

12  devoted the last three and a half years to making amends for

13  that one mistake.

14         Her cooperation, as the government reports to the

15  Court, led directly to the convictions of both of her

16  supervisors at Credit Suisse, Surjan Singh and Andrew Pearse.

17  Her cooperation has led directly to the guilty plea and the

18  related resolutions by Credit Suisse with fines and other

19  penalties totaling $547 million.  Her cooperation has also led

20  to the resolution by the Russian bank VTB with the SEC for

21  another $6 million.

22         Her cooperation made her available after many prep

23  sessions with the government to be a trial witness against

24  Mr. Boustani.  Lina traveled here to New York and spent

25  several weeks in anticipation of being called as witness in

13

1    that trial.  Ultimately, as the Court knows, she was not

2    called but she was disclosed to the defense counsel as a

3    potential witness and she was ready, willing and able to

4    testify.

5           She is also ready, willing and able to testify and

6    committed to doing so in any future trials in connection with

7    this case including in connection with the anticipated

8    prosecution in this courthouse of Mr. Manuel Chang who, as we

9    understand it, is in the process of being extradited to the

10   United States.

11          As I said at the outset, Your Honor, I have been

12   with Lina every step of the way, whether it was in those

13   proffer sessions, those initial proffer sessions in London,

14   the witness preparation sessions here in New York and her

15   guilty plea before this court.

16          I have seen firsthand the brutal toll that this case

17   has taken on her.  I have witnessed up close the rapid

18   deterioration of her life.  She has lost the only career she

19   has ever known making her now dependent on others for

20   financial support.  She has lost her marriage and she has lost

21   her physical and her emotional health.  The Court has those

22   letters from her close friends.  Most of them in very stark

23   terms say that they have watched her, as have I, waste way

24   over the course of the last four years.

25          At this juncture, all that Lina has left is her two

14

1  children who depend on her for everything.  She is the light

2  of their lives and they are of hers.  The Court knows their

3  ages.  They are 4 and 12.

4          So, Your Honor, taking full account of Lina's

5  acceptance of responsibility, her minor role in the offense,

6  her demonstrated remorse, and her exemplary and invaluable

7  cooperation with the government in the prosecution of others

8  far more culpable than she, we respectfully ask this court to

9  impose a sentence of time served so that Lina can go home to

10  her two children and begin rebuilding a life for herself and

11  for them.

12          Thank you, Your Honor.

13          THE COURT:  Thank you, Counsel.

14          I will hear from the government, then from Probation

15  and then from the defendant if the defendant wishes to make a

16  statement at that time.

17          Mr. Mehta?

18          MR. MEHTA:  Yes, Your Honor.

19          THE COURT:  Thank you.

20          MR. MEHTA:  You know, Your Honor, there are

21  cooperators who come in after they've lost several motions,

22  lost hearings, motion to dismiss, motion to suppress, special

23  hearings, because they realize they've tried to fight and

24  they've lost.  And then there are cooperators who from the

25  very instant of their arrest make a concerted effort to accept

15

1    responsibility, to show remorse and actually cooperate from

2    the beginning.  And Ms. Subeva is in the latter category of

3    those cooperators and that is an important distinction,

4    Your Honor, that the Court should be aware of.

5           Ms. Subeva was arrested in September of 2019.

6    Within a matter of weeks, Mr. McGovern had reached out to our

7    office and indicated that his client wanted to cooperate fully

8    and substantially immediately and Ms. Subeva did that.  We met

9    with her in London several times and she accepted

10   responsibility, she showed genuine remorse and she provided

11   the government with invaluable assistance.  She was the first

12   person in the door.  The indictment charges several

13   individuals.  She was the first person who came forward.

14          It was her cooperation that led to Andrew Pearse's

15   guilty plea and conviction, to Surjan Singh's plea and

16   conviction and, ultimately, to the monumental corporate

17   resolution that Your Honor did last year, last October,

18   involving the U.S. Government and Credit Suisse, a

19   $547 million, plus $200 million loan forgiveness for

20   Mozambique, a global resolution that involved both the U.S.

21   Government as well as the Securities and Exchange Commission,

22   the UK Financial Conduct Authority, the Swiss Financial Market

23   Authority.

24          That was really only possible because of

25   Ms. Subeva's decision to come in as quickly as possible and

16

1  that led to essentially a snowball effect that allowed for all

2  of these convictions and resolutions and, of course, as

3  Your Honor is also aware that you oversaw recently the

4  restitution proceeding by Credit Suisse and providing

5  restitution for those who were investors in the amount of

6  securities.

7        So we contrast Ms. Subeva's exemplary cooperation

8  with then her role in the offense which all parties agree was

9  minor.  She was someone who reported to Surjan Singh, who then

10  reported to Andrew Pearse, and the fact is, as Your Honor is

11  aware from testimony at trial and from the proffer agreements

12  the government reviewed and carefully detailed in its

13  objection to the Probation Department's recommendation as well

14  as in our 5K, Ms. Subeva was not part of the underlying

15  fraudulent scheme.  She was not.  That's -- those are the

16  facts, Your Honor.  That's not in dispute.

17        She was in Maputo in Mozambique for due diligence

18  meetings and that is when Mr. Pearse, as he testified at trial

19  as he did in our proffer agreements and proffer statements,

20  told her that Mr. Boustani had offered him a kickback but he

21  didn't indicate to her whether he was going to accept.  He

22  just said this offer was made.  That's it.

23        It was only later, Your Honor, after he had already

24  accepted the money, gotten the money into his account, that he

25  informed Ms. Subeva that he had engaged in this fraud and it

17

1  was only after that that he had sent her $200,000 from those

2  proceeds without asking her in advance into her account.  That

3  was a mistake, Your Honor.  It was a crime.  It was money

4  laundering because she took that money and did not give it

5  back.

6          She's allocuted to that and she's been convicted of

7  that, but I think the Court should consider that conduct in

8  the context of both the broader scheme alleged and also her

9  cooperation which has been exceptional.

10          So given all those factors and facts, which, again,

11  are not disputed, the government respectfully requests the

12  Court depart downwardly from the guideline sentence here.  We

13  believe the guidelines are 41 to 51 months.  We've provided

14  case law in support of our arguments.  We have not heard

15  anything from Probation on that.  We have not had case law

16  from Probation distinguishing our cases that we cited.

17          The levels that they argue, for example, Probation

18  says it should be a four level enhancement for securities law

19  violation, that's just not true.  Probation themselves

20  concedes that Proindicus is the only entity for which

21  Ms. Subeva was involved.  Proindicus, as Your Honor is aware,

22  is a loan.  It's not a security.  If you look at Count Two of

23  the indictment, securities fraud conspiracy, it only alleges

24  it was EMATUM.  EMATUM is a security.  Proindicus is not.

25  Those four should not count.  That's just legally wrong,

18

1    factually wrong.

2            Jeopardizing the security of Mozambique government,

3    substantially jeopardizing, there's no evidence of that.

4    There's no evidence that one loan for $372 million jeopardized

5    Mozambique's security.  No reason on the record.  You heard,

6    Your Honor heard from individuals at trial that indicated that

7    it was only after all three loans had become public,

8    Proindicus upsizes, EMATUM and MAM, did the IMF decide to pull

9    out.

10           Again, the factual record is clear.  Again, nothing

11   from Probation on that.  No response.  Unclear where their

12   guidelines come from.  It's locally and factually just wrong.

13   So given the guidelines of 41 to 51 months which both parties

14   agree is the correct guideline sentence, the government simply

15   requests the Court downwardly depart from that guideline

16   sentence given the factors that we just discussed.

17           Thank you.

18           THE COURT:  Does the government support the defense

19   application for time served with Probation?

20           MR. MEHTA:  The government has no objection to that

21   application.

22           THE COURT:  I'll hear from Probation and then from

23   the defendant if she wishes to make a statement.

24           You can remain seated.  Just pull the microphone

25   closer to you.  Thank you.

19

1          THE PROBATION OFFICER:  Thank you, Your Honor.

2          Probation will rely on the addenda filed with

3   respect to this case and we have nothing further to add at

4   this time, however, I am happy to answer questions should the

5   Court have any inquiries in this regard.

6          THE COURT:  Thank you.

7          I will hear from the defendant if she wishes to make

8   a statement.  Ms. Subeva?

9          THE DEFENDANT:  Yes, please, Your Honor.  Thank you.

10          I would like to begin by thanking Your Honor for

11  giving me the opportunity to cooperate with the government

12  while continuing to care for my children over the last three

13  and a half years.

14          I hope that through my cooperation efforts, I have

15  demonstrated to you, Judge Kuntz, my full acceptance of

16  responsibility and my remorse for my mistakes.  I would also

17  like to assure the Court that my cooperation will continue

18  after today whenever I'm needed.

19          Second, I would like to thank the entire government

20  team including the agents for guiding me through this

21  difficult process.  I'm very grateful that the government has

22  provided the Court their assessment of how timely and helpful

23  my cooperation has been.

24          Finally, I would like to thank my family, especially

25  my two young children, for being my ray of sunshine through

1   these very dark periods of my life.  All I ask is that the

2   Court allow me to return home to my children who need their

3   mother very much.

4          Thank you, Your Honor.

5          THE COURT:  Thank you, Ms. Subeva.

6          The court has this to say.  Perfect justice in this

7   case would involve a power that neither I nor any judge nor

8   any human being for that matter has in his or her hands.  It

9   is challenging and humbling to sit here as the court and to

10  pass sentence on a fellow human being.

11         This case impacts your community.  This case impacts

12  your family.  Ultimately, of course, this case impacts you

13  because this case is ultimately about you, what you did that

14  brought us here today, a day of sadness and of tragedy.

15         The government and your counsel have fully

16  articulated the history of this case.  Your counsel dropped in

17  a footnote a comment that says a great deal about what this

18  case ultimately turns on and that is your business and

19  personal relationship with Mr. Pearse that had an outsized

20  impact on the case and an outsized impact on your personal

21  life as you have indicated.

22         In the course of the trial, there was a great deal

23  of testimony and proffers and other documents about how this

24  business fraud unfolded and all of its complexity.

25         I am going to submit a detailed memorandum of law

21

1    that goes over the elements that government and Probation and

2    defense counsel has touched on.  In many cases, I read that

3    into the record out loud.  I don't think that's necessary here

4    today in light of what we've discussed and in light of going

5    through the elements that the government, Probation and

6    defense counsel have commented on.  So I am going to cut to

7    the chase.

8            You called your British criminal colleague in crime

9    "Mr. Bond."  He did, after all, have and drive an

10   Aston Martin.  You had the right film, but the wrong

11   character.  He was not Mr. Bond.  He was Goldfinger.

12           As Anthony Newley wrote, and Shirley Bassey sang:

13   "Goldfinger.  He's the man, the man with the Midas touch, a

14   spider's touch, such a cold finger, beckons you to enter his

15   web of sin but don't go in.  Golden words he will pour in your

16   either but his lies can't disguise what you fear for a golden

17   girl knows when he's kissed her, it's the kiss of death from

18   Mr. Goldfinger.  Pretty girl beware of this heart of gold.

19   This heart is cold.  He loves only gold.  He loves gold."

20           That's what happened here.  You went to Mercersburg

21   college, school, secondary school, you went to Princeton, you

22   worked for Credit Suisse, and you did this not coming from a

23   silver spoon background but a working class background.  You

24   married a fellow professional, had children, and then you

25   played I believe the British phrase is "silly buggers" with

22

1    Goldfinger.

2          I am going to sentence you to time served with no

3    supervised release and I am going to do that because the

4    government has pointed out and your defense counsel has

5    pointed out your extraordinary cooperation in this case.

6          I understand Probation's position and I get it and I

7    also want to say this.  Mr. Boustani spent 11 months as a

8    guest of the United States Government, two appeals of my

9    finding he would be a flight risk, and a jury of his peers

10   acquitted him, and I never argue with juries, but I will say

11   this.  Mozambique is one of the poorest nations in the world

12   and to see the kind of behavior that you, Singh, Pearce and

13   Boustani engaged in where hundreds of millions of dollars were

14   taken out of Mozambique, as the government correctly says,

15   your direct piece of it, what you pled to was relatively small

16   in dollar amounts, but a $2 billion figure is the GDP of that

17   nation in some years and that's the magnitude of the fraud

18   that was involved here.

19         It was truly outrageous and as a corporate officer,

20   as a graduate of one of the finest institutions in this

21   country, I'm going to use an old fashioned word:  It was

22   wrong.  There's a difference between the good guy, Mr. Bond,

23   and the bad guy, Mr. Goldfinger, and if you go back and watch

24   that 1964 film, you will see that, in fact, it was about an

25   attempt by a very evil man to corrupt the capital markets of

23

1    the world, another cautionary tale, but I was 14 years old at

2    the time I saw the movie so it's a long time ago.

3              That's the sentence.  Time served.  No supervised

4    release.

5              Anything else?

6              Any motions we need to have with respect to any

7    other counts?

8              MR. MEHTA:  Yes, Your Honor.  We'll move to dismiss

9    the remaining counts in the superseding indictment.

10             THE COURT:  Any objection?

11             MR. McGOVERN:  No, Your Honor.

12             THE COURT:  Motions granted.

13             Anything else?

14             MR. MEHTA:  No, Your Honor, not from the government.

15             THE COURT:  Anything else from Probation?

16             THE PROBATION OFFICER:  Your Honor, will either a

17   fine or a special assessment be imposed in this case?

18             THE COURT:  No, just the $100 I'm required to

19   impose.  No fine.  I know you wanted the $30,000 or $80,000

20   but I'm not doing that.  I'm not happy that there wasn't full

21   financial disclosure.  Don't think I didn't notice that.

22             Anything else?

23             MR. McGOVERN:  No, Your Honor.

24             THE COURT:  Don't do it again.

25             THE DEFENDANT:  No.

24

1          THE COURT:  When I was in Catholic grammar school

2   growing up, a nun said, it's very important, to avoid -- and

3   this was their very 1950s Franciscan nun phrase:  -- to avoid

4   the near occasions of sin.

5          When you say that to a seven-year old growing up in

6   Harlem, it means one thing.  In the adult world, I think we

7   all know what it means.

8          We're adjourned.

9          MR. McGOVERN:  Thank you, Your Honor.

10          MR. MEHTA:  Thank you, Your Honor.

11          (Matter concluded.)

12

13

14

15

16

17                  *    *    *    *    *

18

19   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
20

21    /s/ Charleane M. Heading          August 16, 2022
    _____     _____
22      CHARLEANE M. HEADING                  DATE

23

24

25

CMH       OCR       RDR       FCRR