UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
UNITED STATES OF AMERICA,

           -against-

MANUEL CHANG,

                     Defendant.
───────────────────────────────

MEMORANDUM & ORDER

18-CR-681 (NGG) (CLP)

NICHOLAS G. GARAUFIS, United States District Judge.

On August 8, 2024, following a four-week trial, a jury found the Defendant Manuel Chang ("Chang" or "Defendant") guilty of conspiracy to commit wire fraud and conspiracy to commit money laundering. (*See* Jury Verdict (Dkt. 732).) On January 17, 2025, the court sentenced Defendant to 102 months' imprisonment and ordered him to forfeit $7 million in illicit payments he received as part of his criminal scheme. (*See* Min. Entry Dated Jan. 17, 2025; Sentencing Transcript ("Sent. Tr.") 63:17-64:18.) During Defendant's sentencing, the court reserved decision on restitution and directed the parties to submit supplemental briefing on that issue. (*See* Min. Entry Dated Jan. 17, 2025.) For the reasons set forth below, the Government's request that the court order restitution for Chang's offenses is GRANTED.

I.  BACKGROUND

The court assumes familiarity with the relevant facts and procedural history of this case. Nevertheless, the court briefly summarizes the procedural history and request for restitution.

Chang and his co-defendants orchestrated a scheme to fraudulently obtain over $2 billion in loans from international investors for three projects designed to develop the economy of the Republic of Mozambique. (*See* Chang Presentence Investigation Report ("PSR") (Dkt. 751) ¶ 5.) The investors made these loans out to three Mozambican state-owned entities specifically created for

1

the development projects: Proindicus borrowed $622 million from Credit Suisse and VTB Capital ("VTBC"), EMATUM borrowed $850 million from Credit Suisse and VTBC, and MAM borrowed $535 million from VTBC. (*Id.* ¶¶ 14-15.) Chang abused his position as Minister of Finance for Mozambique by approving sovereign guarantees for the three loans while simultaneously receiving millions in illicit kickback payments from the loan proceeds. (*See* Sent Tr. 58:23-59:14.) Chang was charged and convicted of wire fraud conspiracy in violation of 18 U.S.C. § 1343 and money laundering conspiracy in violation of 18 U.S.C. 1956(a)(2)(B)(i). (Third Superseding Indictment (S-3) (Dkt. 578); Jury Verdict.) At trial, the Government established that "Chang was paid upwards of $7 million in exchange for his involvement in" the criminal scheme. *United States v. Chang*, No. 18-CR-681 (NGG) (CLP), 2024 WL 4766371, at *4 (E.D.N.Y. Nov. 13, 2024) (denying Defendant's motions for acquittal and new trial).

Chang's co-defendants also received millions of dollars in illicit payments. Defendant Andrew Pearse, a former Credit Suisse banker, pleaded guilty to wire fraud conspiracy in violation of 18 U.S.C. § 1343, and admitted at Chang's trial that he received $45 million in illicit payments. (Indictment (Dkt. 1); Min. Entry Dated July 19, 2019 (pleading guilty to Count One of Indictment); *see* Trial Transcript ("Trial Tr.") 130:19-23.) Defendant Surjan Singh, a former Credit Suisse banker who reported to Pearse, pleaded guilty to money laundering conspiracy in violation of 18 U.S.C. 1956(a)(2)(B)(i), and admitted at Chang's trial that he "received just shy of $5.7 million [in kickbacks]." (Superseding Indictment (S-1) (Dkt. 137); Min. Entry Dated Sept. 6, 2019 (pleading guilty to Count Four of Superseding Indictment); Trial Tr. 1271:20-24.) Defendant Detelina Subeva, another Credit Suisse banker who also reported to Pearse, pleaded guilty to money laundering conspiracy in violation of 18 U.S.C.

2

1956(a)(2)(B)(i), and received approximately $2.2 million in illicit payments. (Indictment; Min. Entry Dated May 20, 2019 (Dkt. 77) (pleading guilty to Count Four of Indictment); Subeva Presentence Investigation Report (Dkt. 408) ¶ 38; Trial Tr. 158:12-16.)[1] The four remaining co-defendants were acquitted or never appeared.[2]

The Government requests that the court order Chang to pay restitution to investor-victim VTBC in the amount of $640,897,387.44. (*See* Gov't Br. (Dkt. 780); Gov't Reply ("Repl.") (Dkt. 797) at 9 (deferring to the court on the apportionment of restitution between Chang and his convicted co-defendants).) The Government attached two affidavits of loss to its opening restitution brief. (*See* VTBC Affidavit of Loss ("VTBC Aff.") (Dkt. 780-2); Stone Harbor Investment Partners Affidavit of Loss ("Stone Harbor Aff.") (Dkt. 780-3).) The Government claims that United Kingdom-based bank VTBC, one of the principal investors in the loans that are the subject of the criminal scheme at issue here, is entitled to $640,897,387.44 in restitution. (Gov't Br. at 2; VTBC Aff. at 1-3.) This amount is comprised of $62,700,000 in outstanding principal on the Proindicus loan, $435,000,000 in outstanding principal on the MAM loan, prejudgment interest in the amount of $288,697,387.44, and an offset for the

---

[1] Judge William F. Kuntz, II sentenced Subeva prior to his recusal on March 19, 2023 (Mar. 19, 2023 Order of Recusal.) Judge Kuntz did not order Subeva to pay restitution as part of her sentencing. (*See* Judgment as to Subeva (Dkt. 447).)

[2] A jury acquitted Defendant Jean Boustani of all charges on December 2, 2019. (*See* Boustani Jury Verdict (Dkt. 370).) The other three defendants in this matter, Najib Allam, Antonio Do Rosario, and Teofilo Nhangumele, have yet to appear and are presumed to reside in countries that do not have extradition treaties with the United States. (*See, e.g.*, Dec. 21, 2023 Mem. & Order Denying Mot. to Dismiss on Speedy Trial Grounds (Dkt. 523) at 6-7; *see also* Subeva Presentence Investigation Report ¶ 42 (noting that Defendants Allam, Do Rosario, and Nhangumele have yet to be apprehended).)

$150,000,000 that VTBC already received in civil litigation brought in the United Kingdom. (Gov't Br. at 2.) Stephen Rowland Browne, a Joint Administrator of VTBC, submitted the VTBC Affidavit.[3]

Stone Harbor Investment Partners ("Stone Harbor"), an investor in the market for EMATUM loan participation notes, submitted the second affidavit of loss. (*See* Stone Harbor Aff.; Gov't Br. at 2.) Stone Harbor later exchanged its EMATUM loan participation notes for Eurobonds. (Gov't Br. at 2.) Stone Harbor seeks a total of $40,614.71 in restitution, which is the amount Stone Harbor lost in its May 2016 Eurobond sales after Chang's failure to disclose his issuance of sovereign guarantees to the International Monetary Fund ("IMF") became public. (*See* Gov't Br. at 2; Stone Harbor Aff. at 7-8.) The Government asserts that Stone Harbor is not entitled to restitution because the profits that Stone Harbor made on earlier Eurobond sales exceeded the amount of Stone Harbor's losses on the May 2016 Eurobond sales. (Gov't Br. at 2-3.) Defendant opposes the Government's request that the court award restitution to VTBC, although it agrees with the Government that Stone Harbor's request for restitution should be denied. (*See generally* Def.'s Opp. ("Opp.") (Dkt. 787).)

---

[3] The United Kingdom placed VTBC into administration after its Russian-based parent company, VTB Bank, was sanctioned by the United States following Russia's invasion of Ukraine. (Gov't Br. at 2 n.1.) Stephen Rowland Browne and David Philip Soden of Teneo Financial Advisory Ltd. were appointed as Joint Administrators of VTBC. (*Id.*) While VTBC is not subject to United States sanctions, its parent company VTB Bank and other related entities are still subject to United States sanctions as of the date of this order. *See* Office of Foreign Assets Control, United States Department of the Treasury, *Sanctions List Search*, https://sanctionssearch.ofac.treas.gov/ [https://perma.cc/8Z57-4UCN] (identifying Russian entity "VTB BANK PUBLIC JOINT STOCK COMPANY" as subject to sanctions).

## II. LEGAL STANDARD

The Mandatory Victim Restitution Act of 1996 ("MVRA") provides that, upon the sentencing of a defendant for a certain subset of specific offenses, "the court *shall* order. . ., in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1) (emphasis added). The MVRA's mandatory restitution provision applies to, *inter alia*, "an offense against property" and any offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii) and (c)(1)(B). When ordering restitution under Section 3663A, "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); 18 U.S.C. § 3663A(d) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664."). When "more than 1 defendant has contributed to the loss of a victim," the MVRA empowers courts to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h). However, whether and how to apportion restitution is within the court's discretion. *See United States v. Kerekes*, No. 9-CR-137 (HB), 2012 WL 3526608, at *2 (S.D.N.Y. Aug. 15, 2012), *aff'd*, 531 F. App'x 182 (2d Cir. 2013).

In determining the appropriate restitution amount, the "use of victim loss affidavits . . . is widely accepted." *United States v. Romano*, No. 9-CR-170 (EK) (VMS), 2022 WL 2666914, at *6 (E.D.N.Y. July 11, 2022), *aff'd*, No. 15-992, 2022 WL 17097587 (2d Cir. Nov. 22, 2022).[4] And "[a] restitution award need only

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

5

to be a reasonable estimate of the victim's actual losses." *United States v. Donaghy*, 570 F. Supp. 2d 411, 423 (E.D.N.Y. 2008) (collecting cases), *aff'd sub nom. United States v. Battista*, 575 F.3d 226 (2d Cir. 2009). "The government bears the burden of proving the amount of loss sustained by the victim by a preponderance of the evidence." *Donaghy*, 570 F. Supp. 2d at 423 (citing *United States v. Reifler*, 446 F.3d 65, 122 (2d Cir. 2006)).

The MVRA, however, places limits on the court's power to order restitution. The MVRA defines "victim" as "a person *directly and proximately harmed* as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2) (emphasis added); *United States v. Pescatore*, 637 F.3d 128, 139 (2d Cir. 2011) (reasoning that the MVRA "does not authorize the court to order restitution to victims in excess of their losses"). Additionally, for offenses against property as described in Section 3663A(c)(1)(A)(ii), "if the court finds, from facts on the record" that the number of victims is "so large as to make restitution impracticable" or that "determining complex issues of fact . . . would complicate or prolong the sentencing process," the court "shall not apply" restitution under the MVRA. 18 U.S.C. § 3663A(c)(3).

## III. DISCUSSION

Restitution is fundamentally about making victims whole. *See United States v. Yalincak*, 30 F.4th 115, 132 (2d Cir. 2022) ("The goal of restitution is to make victims whole and to compensate them for the loss they suffered at the hands of defendants.") Thus, the court considers the restitution requests from the two entities claiming losses in turn.

### A. Stone Harbor

Stone Harbor seeks restitution of $40,614.71 for its losses in connection to investments it made on behalf of three pensions funds: the National Elevator Pension Fund ("NE"), Sichting Pensioenfonds Metaal en Techniek ("PMT"), and Sichting Pensioenfonds

van de Metalektro ("PME"). (Stone Harbor Aff. at 5-8; Gov't Br. at 2.) The Government alleges that Stone Harbor profited from its sale of EMATUM loan participation notes on behalf of these three funds, although it later exchanged the notes for Eurobonds, some of which were eventually sold at a loss. (Gov't Br. at 2; Stone Harbor Aff. at 6-8.) Stone Harbor has already received $305,225 in restitution from Credit Suisse for losses that Stone Harbor suffered with regard to investments on behalf of two other funds. (Stone Harbor Aff. at 5.) The Government asserts that Stone Harbor is not entitled to any further restitution because it "profited on earlier Eurobond sales that it had made on behalf PMT and PME prior to the IMF announcement, and those profits exceeded the amount of Stone Harbor's subsequent losses. Stone Harbor also profited on the Eurobond sales that it made on behalf of NE prior to the IMF announcement." (Gov't Br. at 2-3.) The Defendant agrees with the Government that Stone Harbor is not entitled to restitution because "restitution is not appropriately awarded to an entity who has actually *gained* money, as opposed to having lost money." (Opp. at 24 (citing *United States v. Boccagna*, 450 F.3d 107, 117 (2d Cir. 2006)) (emphasis in original).)

Restitution awards enable victims to recover for their losses, but the MVRA does not provide for restitution awards in excess of those losses. The court "cannot award the victim a windfall, i.e., more in restitution than he actually lost." *Boccagna*, 450 F.3d at 117. Because it appears that Stone Harbor actually *profited* from its investments in the EMATUM loan participation notes, the court declines to award Stone Harbor restitution. *See Reifler*, 446 F.3d at 122 ("Section 3664(e) provides that '[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.'") (quoting 18 U.S.C. § 3664(e)).

### B. VTBC

Chang asserts that restitution of *any amount* is not appropriate as to VTBC, offering several supporting arguments: (1) the significant complexities of the case make restitution inappropriate, (2) neither Stephen Rowland Browne nor Teneo Financial Advisory Ltd. ("Teneo") are "victims" under the MVRA, (3) VTBC is not a "victim" under the MVRA, (4) the court should consider Chang's lack of financial resources and decline to order restitution, and (5) the requested restitution award violates the Eighth Amendment. (*See* Opp. at 1-20.) Chang also asserts, in the alternative, that if the court were to find it appropriate to award VTBC restitution, the court should apportion restitution among Chang and his convicted co-defendants, and should not award prejudgment interest. (*Id.* at 21-23.) Aside from Chang's arguments regarding the apportionment of restitution and prejudgment interest, Chang's arguments are unpersuasive and unsupported by the MVRA and controlling precedent. The court addresses each argument in turn.

#### 1. Complexities

While this case does present significant complexities, these complexities do not rise to a level that would provide for the application of the MVRA's exception to the provision mandating restitution. The MVRA's mandatory restitution provision, Section 3663A, provides only two exceptions to the requirement that the court must order restitution for offenses covered by Section 3663A. *See* 18 U.S.C. § 3663A(c)(3). The court can decline to order restitution where: (A) the number of identifiable victims is so large that restitution is "impracticable" or (B) determining complex issues of fact related to causation or amount of losses would "complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed

by the burden on the sentencing process." *Id.* Defendant's argument focuses on the second exception, (*see* Opp. at 1-4), but this "complexities" exception does not apply.

At Chang's sentencing, the court applied Chang's individual gain of $7 million as the "loss" amount for Chang's offenses because the precise loss amount for the entire criminal scheme could not reasonably be determined. (*See* Sent. Tr. 10:5-16:2 (hearing argument from the parties and overruling Defendant's objection to using Chang's gain as the "loss" amount for calculation of Chang's offense level under the Sentencing Guidelines).) U.S.S.G. § 2B1.1(b)(1) (Note to Table (B) (permitting sentencing court to "use the gain that resulted from the offense as an alternative measure of loss" if the court determines that there is a loss, "but [the loss] reasonably cannot be determined"). However, just because the court determined that there were complexities in determining a precise *total loss* amount for purposes of Chang's Guidelines calculation does not mean that examining *VTBC's loss* for restitution purposes is too complex. *See United States v. Rainford*, 110 F.4th 455, 485 n.14 (2d Cir. 2024) ("[B]ecause a defendant's culpability will not always equal the victim's injury, an amount-of-loss calculation for purposes of sentencing does not always equal such a calculation for restitution."); *United States v. Niebuhr*, 456 F. App'x 36, 38 (2d Cir. 2012) ("While calculating the loss amount for Guidelines purposes and the victims' losses for restitution purposes are obviously closely related inquiries, they are not identical.")(summary order). VTBC's losses here—the outstanding principal on the Proindicus and MAM loans—are calculable and illustrated clearly in the VTBC Affidavit. (*See* VTBC Aff. at 3-4.)

Defendant also raises the fact that VTBC's parent company, VTB Bank, is currently under United States sanctions as another reason why the court should not order restitution. (*See* Opp. at 3.)

However, the court agrees with the Government that this argument conflates two distinct issues. (*See* Repl. at 2.) So long as VTBC is a "victim" under the MVRA, an issue which the court addresses *infra*, it is entitled to restitution. "[W]hether VTBC has a statutory right to restitution under the MVRA," and "whether, in light of U.S. sanctions, the Clerk of the Court can actually transfer to VTBC the money it may be awarded in restitution," are two different issues. (*Id.*) And the court need not resolve the latter issue to resolve the former. *See United States v. Gushlak*, 728 F.3d 184, 192 (2d Cir. 2013) (affirming this court's restitution order and rejecting defendant's complexities argument because "[S]ection 3663A(c)(3)(B) plainly does not require the district court to surrender whenever one or more complex issues of causation or loss calculation appear").

Defendant's other "complexities" arguments are also unavailing.[5] Accordingly, the court declines to reject VTBC's restitution request pursuant to Section 3663A(c)(3)(B).

### 2. Joint Administrators

Stephen Roland Browne of Teneo Financial Advisory Ltd., one of the two Joint Administrators of VTBC, is the signatory of the VTBC Affidavit. (*See* VTBC Aff. at 4.) While Defendant does not dispute Browne's status as an administrator of VTBC, Defendant

---

[5] The court rejects Defendant's argument that the VTBC Affidavit provides insufficient "proof" of VTBC's losses. (*See* Opp. at 3.) The court finds that the VTBC Affidavit, which delineates specific investments underlying VTBC's request and discusses a civil suit in the United Kingdom where VTBC recovered $150 million for some of its losses, (*see* VTBC Aff. at 3-4), presents a "reasonable estimate of [VTBC's] actual losses," *Donaghy*, 570 F. Supp. 2d at 423. Defendant's suggestion that the VTBC Affidavit is invalid because it was signed by Browne in London via electronic signature is unsupported and irrelevant. (*See* Opp. at 3.)

asserts that neither Browne nor Teneo can legally assert a criminal restitution claim on VTBC's behalf. (Opp. at 4-6.) The court disagrees.

Under Section 3663A, a "representative of the victim's estate, another family member, or another person appointed as suitable by the court, may assume the victim's rights under this section." 18 U.S.C § 3663A(a)(2). Several Circuits have reasoned that where a corporate victim is unable to bring a restitution claim itself, the victim's successor-in-interest can claim restitution *on the corporate victim's behalf*. *See United States v. Harvey*, 20 F.4th 71, 79 n.8 (1st Cir. 2021) (noting that a district court can "name[] a corporate victim's successor-in-interest as the restitution payee at the time the initial restitution order is imposed") (emphasis omitted); *United States v. Venson*, 481 F. App'x. 828, 832 (4th Cir. 2012) (concluding that "successor lenders are victims within the meaning of the MVRA"). At least one court in the Eastern District has also followed this rule in the context of an heir to and executor of a deceased victim's estate. *See Romano*, 2022 WL 2666914, at *14 n.22 (determining that restitution claimant's submission of "birth and death certificates as well as wills" were sufficient to prove "that they are the appropriate individuals to assume the right to restitution of the[] deceased victims").

As administrators of VTBC, Browne and Soden manage "[t]he affairs, business and property of [VTBC]." (*See* VTB Aff. at 4 (noting that Brown and Soden were appointed as Joint Administrators of VTBC on December 6, 2022).) The Second Circuit has noted that "[a]dministration, introduced by the Insolvency Act 1986, is the closest equivalent in British law to Chapter 11 relief." *In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1041 (2d Cir. 1996); *see also Zeidenberg v. Polly Peck Int'l PLC*, No. 91-CV-3246 (JFK), 1992 WL 178626, at *1 n.2 (S.D.N.Y. July 16, 1992) ("An administration order and an administrator are akin to a petition under Chapter 11 of the United

11

States Bankruptcy Code and a trustee who is appointed as the debtor's representative under 11 U.S.C. § 323(a)."). In submitting the VTBC Affidavit while "acting as [an] agent" for VTBC, Browne is not assuming the status of "victim" himself, but rather is acting as a representative for the company-victim under his administration. (*See* VTB Aff. at 4.) [6] Accordingly, Browne's restitution claim on VTBC's behalf is proper under the MVRA.

### 3. VTBC's status as "victim"

Defendant argues that VTBC is not a "victim" under the MVRA for two reasons: (1) VTBC was complicit in the fraudulent scheme at issue and (2) neither the Government nor VTBC have proven that VTBC's actual loss was proximately caused by Defendant's conduct. (Opp. at 6-20.) The court addresses each argument in turn.

First, VTBC was not complicit in Defendant's offenses. Defendant points to an October 19, 2021 order from the Securities and Exchange Commission ("SEC") instituting cease and desist proceedings against VTBC. (*See* SEC Cease-And-Desist Order ("SEC Order") (Dkt. 787-2).) In that order, the SEC levied civil sanctions against VTBC for its failure to disclose to investors that it was a creditor to Proindicus and MAM in the Eurobond exchange offering materials that it prepared for the EMATUM loan participation notes. (*See id.* ¶¶ 20-23.) However, VTBC's conflict of interest as to the March 2016 EMATUM Eurobond transactions

---

[6] Defendant's assertion that a representative can assert a restitution claim on behalf of a victim "only in certain circumstances involving a natural person" is unpersuasive. (Opp. at 5.) Because VTBC itself is a non-natural person, its restitution rights can only be asserted through a representative. *See Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 782 (2000) (noting that corporations are "presumptively *covered* by the [statutory definition of the] term 'person'") (emphasis in original); *see also Donaghy*, 570 F. Supp. 2d at 420 (concluding that the National Basketball Association was a victim under the MVRA).

does not make VTBC complicit in the wire fraud and money laundering scheme orchestrated by Chang and his co-defendants when they solicited Proindicus and MAM loans from VTBC years earlier.[7] By the time VTBC distributed the offering materials for the EMATUM Eurobond transactions in March 2016, Chang and his co-conspirators had already fraudulently induced VTBC to loan Proindicus and MAM approximately $1.2 billion. (*See* SEC Order ¶ 18; PSR ¶ 15.) Additionally, the SEC Order cannot be used as evidence of criminal culpability as to VTBC because, as the order itself makes clear, the Securities Act provisions at issue in the SEC Order "do[] not require scienter and may rest on a finding of negligence." (*See* SEC Order ¶ 34 (citing *Aaron v. SEC*, 446 U.S. 680, 685, 701-2 (1980)).)

Defendant argues further that the principle of *respondeat superior* counsels against awarding VTBC restitution because one of its employees, banker Makram Abboud, accepted illicit payments. (*See* Opp. 6-9.) It is true that federal law "generally imposes liability on a corporation for the criminal acts of its agents taken *on behalf of the corporation* and *within the scope of the agent's authority*"; however, if the offense conduct "solely furthered the employee's interests at the employer's expense (for instance, where the employee was embezzling from the employer)," then *respondeat superior* does not apply. *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018) (emphases added); *see also United States v. Yarmoluk*, 993 F. Supp. 206, 209 (S.D.N.Y. 1998), *aff'd,* 172 F.3d 39 (2d Cir. 1999)( "[A]n institution may be defrauded even if its employees allow or participate in the fraudulent practices."). *Respondeat superior* does not apply here because Abboud was not acting on behalf of VTBC or within the scope of his authority at VTBC when he accepted the payments:

---

[7] The Proindicus and MAM loans were executed in 2013 and 2014. (PSR ¶ 15.) VTBC is not seeking restitution as to the EMATUM loan. (Gov't Br. at 2 n.2.)

VTBC was not an alleged co-conspirator to any of the crimes committed by Chang or his co-defendants, VTBC did not willingly participate in the wire fraud conspiracy, and VTBC lost hundreds of millions on the Proindicus and MAM loans. Defendant's reliance on *United States v. Petit*, 541 F. Supp. 3d 304, 310 (S.D.N.Y. 2021) is misplaced. In *Petit*, at the time the defendant committed the offenses at issue there, he was the chief executive officer of the company claiming restitution. *Id.* at 306. The court declined to award the company restitution because "[a]lthough [defendant's criminal actions] were undoubtedly also motivated by personal financial gain, such gain was a function of anticipated gain by the company." *Id.* at 310. Here, Defendant has put forward no evidence that Abboud's acceptance of illicit payments was designed to benefit VTBC; Abboud's activity furthered his own personal interests and not VTBC's corporate interests. *See Fed. Ins. Co.* 882 F.3d at 368. Accordingly, Defendant's *respondeat superior* argument fails.

Second, the evidence adduced at trial demonstrates that VTBC's loss was proximately caused by Chang and his convicted co-defendants' conduct. For the purposes of restitution under the MVRA, a "misstatement or omission" is the "proximate cause" of an investment loss "if the risk that caused the loss was within the zone of risk *concealed* by the misrepresentations and omissions alleged by a disappointed investor." *United States v. Marino*, 654 F.3d 310, 321 (2d Cir. 2011) (emphasis in original). The Government adduced evidenced at trial that the sovereign guarantees signed by Chang are what gave VTBC the confidence that VTBC would ultimately be repaid if the project companies defaulted on their loan payments. (*See* Tr. 970:17-971:6 (VTBC senior attorney testifying that VTBC "assum[ed], or expect[ed], that the repayment would come from the Government of Mozambique and not from the projects itself," and that, without the guarantees signed by Chang on behalf of Mozambique, VTBC "would not" have invested in any of the loans). "Indeed, Pearse

testified that Chang had the parties modify a provision that would have required Chang to notify the IMF about the loans, requesting that it instead represent that Mozambique was in compliance with its obligations to the IMF." *Chang*, 2024 WL 4766371, at *10. Chang's decision to misrepresent the Mozambican government's debt position to the IMF concealed the true risk underlying VTBC's investment in Proindicus and MAM. (*See* Sent. Tr. 44:13-19 ("THE COURT: How can you say the projects were bona fide? All three of them failed. Not even one of them was a success. The blindness of the [Mozambican] [g]overnment to the risk that was inherent in signing these guarantees is sort of a palpable mistake that it's hard to believe all these people, including [Chang], decided to go along with what the bankers were doing.").) *United States v. Calderon*, 944 F.3d 72, 96 (2d Cir. 2019) (concluding that because defendant "misrepresented his own creditworthiness, his financial inability to repay his loans was quite clearly within the zone of risk concealed by his fraud"). The court finds that Chang's conduct proximately caused VTBC's losses.

    4. Defendant's financial circumstances

Defendant argues that the court should decline to award restitution here in light of his inability to pay. (Opp. at 19 ("Minister Chang is a 69-year-old man who dedicated decades of his life to a career in public service.").) In support of this argument, Defendant cites 18 U.S.C § 3663(a)(1)(B)(i)(II), which requires the court ordering restitution under Section 3663 to consider "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." Section 3663 allows the court to award restitution at its discretion for certain offenses. *See* 18 U.S.C § 3663(a) (limiting Section 3663's application to certain violations of the Controlled Substances Act (21 U.S.C. §§ 841, 848(a), 849, 856, 861, 863) and 49 U.S.C. §§

5124, 46312, 46502, 46504). However, Chang's offense is a mandatory restitution offense governed by Section 3663A, not Section 3663. Section 3663A applies to, *inter alia*, "offense[s] against property under [Title 18]" and cases where identifiable "victims ha[ve] suffered . . . pecuniary loss." 18 U.S.C § 3663A(c)(1). Section 3663A orders of restitution must "be issued and enforced in accordance with section 3664." 18 U.S.C § 3663A(d). And Section 3664 provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant*." 18 U.S.C § 3664(f)(1)(A) (emphasis added). Thus, because Chang was convicted of wire fraud conspiracy under 18 U.S.C. § 1343 for conspiring to fraudulently obtain loans and money laundering conspiracy under 18 U.S.C. 1956(a)(2), his offenses were "against property" and the victims suffered "pecuniary loss." (*See* Third Superseding Indictment (S-3); Jury Verdict; VTBC Aff.) 18 U.S.C § 3663A(c)(1). Restitution for Chang's offenses is therefore governed by Section 3663A.[8] Accordingly, the court's restitution award must issue without regard to the defendants' economic circumstances. *See* 18 U.S.C § 3664(f)(1)(A).[9]

### 5. Eighth Amendment

The Eighth Amendment protects criminal defendants against "excessive" fines. *See* U.S. Const. amend. VIII. Defendant argues

---

[8] Chang's convicted co-defendants were also convicted of offenses governed by Section 3663A. *See infra* Section I (Pearse convicted of wire fraud conspiracy, Singh and Subeva convicted of money laundering conspiracy).

[9] The court considers Chang and his convicted co-defendants' limited financial resources only to the extent that it declines to award prejudgment interest. *See* 18 U.S.C § 3664(h) (permitting court to consider "economic circumstances of each defendant" when "the court finds that more than 1 defendant has contributed to the loss of a victim"); *United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011) (reasoning that prejudgment interest awards under 18 U.S.C. § 3664 are within the district court's discretion).

that, "where the government already obtained a $7 million forfeiture award," a restitution award of over $640 million would violate Defendant's Eighth Amendment rights. (Opp. at 20-21 (citing *Paroline v. United States*, 572 U.S. 434, 456 (2014) ("[T]here is a real question whether holding a single [defendant] liable for millions of dollars in losses collectively caused by thousands of independent actors might be excessive and disproportionate in these circumstances.").) However, *Paroline* is inapposite because in that case the Court analyzed restitution under 18 U.S.C. § 2259, a mandatory restitution statute specific to Chapter 110 of the United States criminal code, which covers sexual exploitation and other abuse of children. The Court explained its reasoning at length:

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

572 U.S. at 458. Unlike the defendant in *Paroline*, Chang is not one among thousands of "independent actors" that caused VTBC's losses. *Id.* at 456. The evidence at trial demonstrated that Chang and his small group of co-defendants caused investors in the three Mozambican development projects to lose money as a result of their fraudulent conspiracy. *See Chang*, 2024 WL 4766371, at *5-13 (determining that the trial evidence was sufficient to sustain convictions); *United States v. Kolodesh*, 787 F.3d 224, 242 (3d Cir. 2015) (distinguishing *Paroline* on the grounds that the case "involve[d] straightforward consideration of moneys obtained by fraud"), *cert. denied*, 577 U.S. 912 (2015).

17

Given the scale of VTBC's losses caused by Chang and his co-conspirators, this court's order directing Chang and his convicted co-defendants to collectively pay VTBC hundreds of millions of dollars in restitution does not violate their Eighth Amendment rights. *See United States v. Bajakajian*, 524 U.S. 321, 334 (1998) ("The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality."). The court finds that the Government has met its burden of proving that VTBC incurred a loss $352,200,000[10] as a result of Defendant's criminal conduct by a preponderance of the evidence. (*See* VTBC Aff.; Gov't Br. at 5-7; Repl. at 1-10.) *Donaghy*, 570 F. Supp. 2d at 423.

### C. Apportionment

Defendant argues that, in the event the court finds it appropriate to award VTBC its requested restitution, Section 3664(h) calls for an apportionment of liability among Defendant's co-conspirators. (Opp. at 21-23.) The Government takes no position as to the apportionment of liability and defers to the court on this issue. (Repl. at 9.)

"[C]ourts have discretion in deciding whether to apportion liability and in determining how [much] restitution to apportion to each defendant." *Kerekes*, 2012 WL 3526608, at *2. Because Defendants Chang, Pearse, Subeva, and Singh each contributed to the losses that VTBC suffered on the Proindicus and EMATUM loans, the court agrees with the Defendant that apportionment of liability among Defendant's convicted co-defendants is appropriate in this case. *See* 18 U.S.C. § 3664(h).[11] The court

---

[10] The court declines to award VTBC prejudgment interest and accordingly subtracts VTBC's prejudgment interest amount of $288,697,387.44 from its total restitution request of $640,897,387.44. (*See* VTBC Aff. at 3-4.)

[11] Chang contends that Credit Suisse should be among the defendants liable for the restitution award to VTBC because three of its employees were

18

recognizes that apportioning liability between the defendants in this case is not a perfect science. Nevertheless, the court finds that the relative kickback payments received by the defendants is a reasonable proxy for their relative culpability for VTBC's losses.

The evidence at Defendant's trial demonstrated that Andrew Pearse received $45 million, Manuel Chang received $7 million, Surjan Singh received $5.7 million, and Detelina Subeva received $2.2 million, all numbers being approximate. (*See* Trial Tr. 130:19-23 (Pearse admission); Sent. Tr. 28:10-17 (court noting that Chang "received $7 million in bribes"); Trial Tr. 1271:20-24 (Singh admission); *id.* at 158:12-16 (Pearse testimony on payments to Subeva).) This comes out to a total of $59.9 million in illicit payments received by the convicted co-defendants: Pearse accounted for 75%, Chang accounted for 12%, Singh accounted for 10%, and Subeva accounted for 3%.[12] The court applies these relative shares of culpability to VTBC's loss of $352,200,000: Pearse accounts for $264,150,000, Chang accounts for

---

members of the criminal conspiracy. (*See* Opp. at 21.) However, the court finds that VTBC is not entitled to restitution from Credit Suisse. The plea agreement reached between the Government and Credit Suisse in 2021 contemplated restitution. (*See* Plea Agreement (*United States v. Credit Suisse Securities (Europe) Limited*, No. 21-CR-520 (WFK), (Dkt. 11)) ¶ 19.) The agreement provides that "investors who held the EMATUM Securities on April 15, 2016 and/or on April 29, 2016 may be entitled to restitution," and does not provide for restitution for the lenders for the Proindicus and MAM loans. (*Id.*) As part of Credit Suisse's sentencing, Judge Kuntz awarded $22,619,174 in restitution to 18 investor-victims, none of which were VTBC. (*See* Restitution Order (*Credit Suisse*, No. 21-CR-520, (Dkt. 20)) at 1-2.) Because VTBC is seeking restitution *only* for its Proindicus and MAM loans, (Gov't Br. at 2 n.2), VTBC's instant restitution request is not covered by Credit Suisse's plea agreement and the court declines to disturb the court's restitution order as to Credit Suisse, (*see* Restitution Order).

[12] The percentage breakdowns are approximations of each defendant's respective share of the $59.9 million total.

$42,264,000, Singh accounts for $35,220,000, and Subeva accounts for $10,566,000. The court apportions VTBC's restitution award accordingly.

## IV. CONCLUSION

Stone Harbor did not suffer a loss under the MVRA and is therefore not entitled to restitution. VTBC lost $352,200,000 as a result of the offenses of conviction and is entitled to restitution. Because multiple defendants contributed to the losses suffered by VTBC, the court apportions liability among Chang and his convicted co-defendants. 18 U.S.C. § 3664(h). Accordingly, the court DIRECTS the Government to file proposed restitution orders as to each of the following defendants as follows:

1. Andrew Pearse: $264,150,000.00
2. Manuel Chang: $42,264,000.00
3. Surjan Singh: $35,220,000.00
4. Detelina Subeva: $10,566,000.00
5. The restitution orders shall not include prejudgment interest.

Each of the above-listed defendants will be liable only to the extent of the restitution order as against that individual.

SO ORDERED.

Dated:   Brooklyn, New York
         May 16, 2025

                                          s/Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge